UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNIROYAL CHEMICAL COMPANY, INC.,       :
d/b/a CROMPTON MANUFACTURING           :
COMPANY                                :
                                       :
                Plaintiff,             :    Civil Action No.
                                       :    3:02cv02253 (AHN)
v.                                     :
                                       :
SYNGENTA CROP PROTECTION, INC.         :
                                       :
                Defendant.             :    OCTOBER 14, 2002

## PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO PRODUCE CONFIDENTIAL DOCUMENTS

## I.    INTRODUCTION

The plaintiff hereby objects to the defendant's Motion to Compel, dated

September 15, 2003, in which the defendant seeks confidential, proprietary research

and marketing information.  The defendant has rejected the plaintiff's proposed

confidentiality order, dated May 25, 2003, as well as two different compromise

proposals.  Indeed its Motion does not even address these proposals.  The defendant

demands that the plaintiff submit all documents (almost 5,000 pages), the vast

majority of which is technical research, to the Court for its review and that the plaintiff

demonstrate that each document is confidential.  In filing its Motion, the defendant has

rejected, apparently without consideration and certainly without comment in its

{W1271701}

CARMODY & TORRANCE LLP       50 Leavenworth Street
Attorneys at Law                            Post Office Box 1110
                                            Waterbury, CT 06721-1110
                                            Telephone: 203 573-1200

Memorandum of Law and supporting Affidavits, all of the plaintiff's reasonable offers to allow the defendant (not only its counsel) to review but not keep the documents. Consequently, the defendant's Motion to Compel should be denied.

The plaintiff, on the other hand, has proposed in good faith a practical and workable Confidentiality Order using the "umbrella approach" endorsed by many courts. This would allow counsel and designated experts to have access to the confidential documents and challenge any such documents that they do not deem to have been appropriately designated. Using such a procedure would result in massive economies of time and costs for both parties and the Court. Any Motion to Compel filed under such a scenario would in all likelihood concern only a few documents rather than defendant's global challenge to 5,000 documents.

Furthermore, in its papers the defendant repeatedly distorts the circumstances giving rise to its Motion; on this basis, alone, the defendant's Motion should be denied. Contrary to the defendant's representations, the plaintiff has made the documents at issue available for review by counsel since May 25, 2003. Thus, to say that counsel has been granted only limited review of the documents is both incorrect and disingenuous. Indeed, counsel did review the documents for several hours on July 10 at Carmody & Torrance's Waterbury office, where a separate, complete set of documents labeled as confidential have been available for review by defense counsel since early July 2003.

{W1271701}

- 2 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

In addition, the defendant both in its Memorandum of Law and previously in Court (on July 22 and August 29, 2003) has misrepresented that the plaintiff has admitted mismarking non-confidential documents as being confidential. In fact, only two videocassettes were inadvertently mismarked, but this error was promptly corrected. Finally, as noted above, the defendant fails even to comment on the plaintiff's various offers to compromise. Therefore, the Motion should be denied.

## II.    BACKGROUND

### A.    The Parties, Bonzi and the Development Agreement

The plaintiff, Uniroyal Chemical Company, Inc., doing business as Crompton Manufacturing Company ("Crompton"), manufactures, distributes and sells a variety of chemical products, including insecticides, herbicides, fungicides and plant growth regulators (commonly referred to as a "PGRs"). Crompton is considered by many in the ornamental industry to be the leading expert on ornamental PGRs. (See Affidavit of Kevin Donovan, Technical Manager Specialty Agricultural Products for Crompton, attached as Exhibit A.)

Paclobutrazol is a PGR used on ornamental plants. Producers of greenhouse and nursery ornamentals often apply PGRs to ensure that plants are compact with dense growth, have lush dark green foliage and produce more flowers. PGRs can also

{W1271701}

- 3 -

increase drought and smog resistance, allowing plants to ship better, be maintained under less than ideal conditions and have a longer shelf life.

The defendant Syngenta Crop Protection, Inc. ("Syngenta") owns the right to make, use and sell paclobutrazol under the trademark "Bonzi® ". When proper dosages and application techniques are used, "Bonzi" is an effective agent in establishing the optimum size and marketability of plants for which its use is authorized on the federally approved label.

In 1991, Crompton and Syngenta entered into the Development Agreement and a Supply Agreement for Bonzi. Development Agreement conveyed to Crompton the right to develop and market Bonzi and also provided that Crompton shall retain marketing and sales rights to each new use and formulation for Bonzi that it developed. In June 2002, Syngenta terminated the Development Agreement.

**B.    Crompton's Bonzi Research**

During the term of the Development Agreement, Crompton invested considerable time and expense and developed thereby several new applications for Bonzi. (See Affidavit of Kevin Donovan, Exhibit A.) The collective results of the research and field trials (which are maintained by Crompton in a database) are highly proprietary. If Syngenta marketing Bonzi or any other company marketing generic paclobutrazol were to have access to the database it would be able to use the research directed by Crompton to provide growers with specific rate recommendations based

{W1271701}

- 4 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

on the plant variety, age/growth stage, application method and as well as the soil type, geography and climate (collectively referred to as "Growing Conditions").

Further, the process of developing the trial protocols is time consuming and costly, as is reviewing and interpreting the results from the trials. If Syngenta or a competing maker of paclobutrazol were to have access to Crompton's database of field development reports, Crompton would lose its distinct and hard-won competitive advantage of being able to provide growers with specific rate recommendations, an advantage which has earned Crompton its reputation as being the technical expert of choice regarding the use of Bonzi/paclobutrazol.

Although Syngenta retains rights to Bonzi, Crompton and others may compete with Bonzi through sales and marketing of the generic paclobutrazol. In fact, Crompton has filed applications with the United States Environmental Protection Agency (the "EPA") for registration of generic paclobutrazol products. Once these applications are approved and Crompton's products are registered, Crompton will be a direct competitor with Syngenta's Bonzi. Hence, if the field trial reports in their entirety were provided to Syngenta or the generic competitors, Crompton would lose its primary remaining competitive advantage, *i.e.*, particularized expert technical support that cannot currently be provided by Syngenta or any generic competitor.

Although Crompton may have disseminated the general results of its field trials while it had the development and marketing rights to Bonzi, it has never distributed or

{W1271701}

- 5 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
    Waterbury, CT 06721-1110
    Telephone: 203 573-1200

made available its database or the underlying research to third parties.  Crompton's

activities were thus analogous to those of a drug-maker that publishes its instructions

for its drug and widely touts the benefits of the drug in advertising and industry

literature, but carefully guards its underlying research.  Such marketing activities do

not constitute transfer to generic competitors any propriety claim relating to the

confidential research details.

## C.    Discovery and Proposed Confidentiality Agreement

The instant action was commenced by Crompton's December 19, 2002

complaint, which alleges, inter alia, that Syngenta has breached the Development

Agreement and has appropriated the new uses for Bonzi developed by Crompton,

which under the Development Agreement, were ceded to Crompton by Syngenta's

predecessor in interest.

### 1.    Discovery Requests and Responses

Syngenta served the following discovery on Crompton: First Request for

Production of Documents dated March 25, 2003; and First Set of Interrogatories and

Second Request for Production of Documents on March 28, 2003 (collectively

referred to as the "Discovery Requests").  The Discovery Requests are attached as

Exhibits B and C, respectively.  On May 28, 2003, Crompton filed its responses to the

Discovery Requests (attached as Exhibit D and E respectively).

{W1271701}

- 6 -

Crompton also submitted to Syngenta a proposed Confidentiality Stipulation and Order (the "Proposed Order", attached as Exhibit F) to address the many confidential documents called for in response to the Discovery Requests. The Proposed Order provided that either party could designate documents as confidential and that there would be two levels of confidentiality: "Confidential" and "Confidential for Review by Outside Attorneys Only". The former designation would limit documents to the parties and experts and would prohibit disclosure to third parties, while the latter would restrict the documents to outside counsel and experts. Both designations provide that counsel may see *all* documents. Syngenta has refused to agree to the Proposed Order.

In response to the Discovery requests, Crompton identified approximately 7,123 documents. All of these documents were made available to Syngenta's counsel for inspection. Approximately 2,000 documents were actually copied and delivered to the defense counsel, William Ruskin of Shipman & Goodwin, with no confidentiality restrictions. Approximately, 4,767 documents[1] were designated as "Confidential" or "Confidential for Review by Outside Attorneys Only" (collectively referred to as "Confidential Documents") and were made available for inspection by Attorney Ruskin. Crompton's counsel agreed to immediately deliver the Confidential Documents to Attorney Ruskin subject to entry of a the Proposed Order (or a mutually

---

[1] Because these documents were combined for production to defense counsel, Crompton has not segregated the documents thus does not have an exact count of documents labeled "Confidential" or "Confidential Outside Attorneys Only".

{W1271701}

- 7 -

satisfactory version thereof). Approximately 4,500 documents (four boxes) of the Confidential Documents constitute Crompton's confidential research on Bonzi generated between 1991 and 2002. Copies of the entire set of the Confidential Documents have been continually available for review by defense counsel at Carmody & Torrance's Waterbury and New Haven offices and defense counsel has in fact visited Carmody & Torrance on one occasion to review them.

### 2.     Defense Counsel's Review of Discovery

In July 2003, plaintiff's counsel made arrangements with Attorney Ruskin for his review of the Confidential Documents. On July 10, 2003, Attorney Ruskin reviewed the Confidential Documents at Carmody & Torrance's Waterbury office. At that time, Attorney Ruskin was also provided with a large banner (approximately 2 feet by 4 feet) that had not been previously provided as part of Crompton's discovery compliance because it was large and bulky and because the meeting with Attorney Ruskin was being planned.[2] Attorney Ruskin was informed that the banner could be copied for him but he looked at the banner and then declined the offer.

During Attorney Ruskin's review of the Confidential Documents, plaintiff's counsel realized for the first time that two videos were incorrectly marked as

---

[2] To date, Attorney Ruskin continues to mistakenly suggest that this banner was labeled as being "Confidential Outside Attorneys Eyes Only". (See Defendant's Memorandum of Law, p. 6). However, plaintiff's counsel never told Attorney Ruskin that the banner was confidential or that it had been improperly designated as such. Moreover, there was no marking on the banner that it was "Confidential" or "Confidential Outside Attorneys Eyes Only" as there is on each of the other documents so designated. In fact, the banner was not previously produced because of its size and because Attorney Ruskin would be able to see it on July 10 and determine if it was even something he wanted copied. (See Affidavit of Attorney Russell A. Green, attached as Exhibit G.)
{W1271701}

- 8 -

"Confidential Outside Attorneys Eyes Only". Plaintiff's counsel removed the "Confidential Outside Attorneys Eyes Only" label on both videos. (See Affidavit of Attorney Green, Exhibit G.) Plaintiff's counsel then informed Attorney Ruskin that he could review the videos and he *declined*. At no time did plaintiff's counsel state that any documents (other than the videos) had been mismarked or incorrectly labeled. Finally, at no time was Attorney Ruskin limited in his review of the Confidential Documents, either on July 10 or since.[3] Id.

### 3.     Crompton's Offers to Compromise

At settlement conferences before the Honorable Magistrate Fitzsimmons, in an effort to resolve the dispute over the Crompton's confidential research, Crompton made two different offers to allow Syngenta to review the confidential research. (See affidavit of Kevin Donovan, Exhibit A.) First, Crompton offered to allow Syngenta access to the full research reports, provided that Syngenta would not copy or retain the reports. Alternatively, Crompton proposed to give Syngenta full access to the two-page Site Description form that serves as a cover page to each research report. This Site Description form specifies the test location, cooperator, year tested, products

---

[3] Defendant's Memorandum of Law page 2, note 1, improperly implies that the July 10 review was somehow restricted ("Uniroyal permitted counsel for Syngenta to conduct a cursory inspection of the attorney eyes only documents in Waterbury on the morning of July 10, 2003").
{W1271701}

CARMODY & TORRANCE LLP     50 Leavenworth Street
Attorneys at Law                        Post Office Box 1110
                                                  Waterbury, CT 06721-1110
                                                  Telephone: 203 573-1200

tested and the crops tested.  The form also provides a general summary of the trial.

Syngenta has not accepted either offer.[4]

### 4.     Defendant's Motion to Compel

The defendant filed the instant Motion to Compel on September 15, 2003.  In

its supporting Memorandum of Law, the defendant incorrectly asserts that Crompton

admits it has withheld "many documents" by "mistake" or "oversight".  (See

Memorandum of Law in support of Defendant's Motion to Compel Plaintiff to

Produce Documents, dated September 15, 2002 ("Defendant's Memorandum of

Law"), p. 2.)  The defendant thus maintains that the Confidential Documents should

not be accorded confidential status because they have been wrongfully withheld.  This

claim is one hundred percent inaccurate. The defendant also asserts that the

Confidential Documents, primarily the Bonzi research undertaken by Crompton, is not

confidential or proprietary because the conclusions from the research have been

disseminated in Crompton's marketing literature.  Finally, the defendant claims that

Syngenta will not be able to assist in its defense if it cannot review the Confidential

Documents.

---

[4] It is curious to note that the Motion to Compel, the supporting Memorandum of Law and the
Affidavits of Attorney Ruskin and Mr. Buffington make no mention of these good faith overtures.
{W1271701}

CARMODY & TORRANCE LLP      50 Leavenworth Street
Attorneys at Law                          Post Office Box 1110
                                          Waterbury, CT 06721-1110
                                          Telephone: 203 573-1200

## III.     ARGUMENT

### A.     Standard of Review

### 1.  Protective Orders

Under Fed. R. Civ. P. 26(c)(7), the court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ...." Thus confidential research and commercial information are proper subjects for issuance of a protective order.

The party seeking the protection has the burden to show good cause for the protection sought. Dove v. Atlantic Capital Corporation, 963 F. 2d 15, 19 (2d Cir. 1992); United States v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994).

Protective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information. Vesta Corset Co., Inc. v. Carmen Foundations, Inc., 1999 WL 13257 (S.D.N.Y. 1999).[5] Courts often afford fuller protection to technical, proprietary information than that extended to ordinary business information. Davis v. AT&T, 1998 WL 912012 (W.D.N.Y. 1998) citing Safe Flight

---

[5] All decisions not officially published are attached.
{W1271701}

- 11 -

CARMODY & TORRANCE LLP     50 Leavenworth Street
Attorneys at Law                        Post Office Box 1110
                                        Waterbury, CT 06721-1110
                                        Telephone: 203 573-1200

Instrument Corp. v. Sunstrand Data Control, Inc., 682 F. Supp. 20, 22 (D. Del. 1988);

Maritime Cinema Service Corp. v. Movies En Route, Inc., 60 F.R.D. 587, 590

(S.D.N.Y. 1973). As stated in Safe Flight, supra, 682 F.Supp. at 23, "[c]ourts dress

technical information with a heavy cloak of judicial protection because of the threat of

serious economic injury to the discloser of scientific information." Thus, where a

party seeks a protective order restricting the scope of discovery of technical,

proprietary information, the court should balance the interests in full disclosure of

relevant information and reasonable protection from economic injury.   Id.

Whether information is confidential "depends upon (1) the extent to which

information is known outside the business; (2) the extent to which information is

known to those inside the business; (3) the measures taken to guard the secrecy of the

information; and (4) the value of the information to the business and its competitors."

Sullivan Marketing, Inc. v. Valassis Communications, Inc., No. 93 Civ. 6350, 1994

WL 177795, at *2 (S.D.N.Y. 1994) (Francis, Mag. J.).

The moving party must demonstrate that disclosure of the confidential

information without the requested protection "will work a clearly defined and very

serious injury." Cuno Inc. v. Pall Corp., 117 F.R.D. 506, 508 (E.D.N.Y. 1987) quoting

Zenith Radio Corp. v. Matushita Electric Industrial Co., Ltd., 529 F.Supp. 866, 891

(E.D.Pa. 1981). However, the Second Circuit has not ruled on whether a party seeking

a protective order must demonstrate the need for protection based on the good cause

{W1271701}

- 12 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

standard or the "specific examples or articulated reasoning" standard used in other circuits. See Topo v. Dhir, 210 F.R.D. 76, 77-78 (S.D.N.Y. 2002).[6] In Topo, supra, the District Court noted that other district courts in the Circuit have only applied the specificity requirement when dealing with protective orders to prevent injury to business.

A showing of good cause requires a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gelb v. American Tel. & Tel. Co., 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) (McKenna, J.) (quoting John Does I-VI v. Yogi, 110 F.R.D. 629, 632 (D.D.C. 1986). Once these factors are established, the burden shifts to the party requesting discovery to demonstrate that the "information is sufficiently relevant and necessary to the case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." 8 Charles Alan Wright et al., Federal Practice and Procedure §2034, at 559 (2d ed.1994).

Moreover, a protective order restricting discovery to counsel is sufficient to protect defendant's interests and is a preferable means for guarding its proprietary information. See e.g., Federal Open Market Committee of Federal Reserve System v. Merrill, 443 U.S. 340, 356 (1979) (observing that protective orders limiting disclosure are standard practice). For example, pricing and marketing information are widely

---

[6] The Defendant's Memorandum of Law ignores this case and blurs the two standards, at times stating the plaintiff must show good cause and at other times asserting that it must show specific harm. (See Defendant's Memorandum of Law, p. 8, 10 respectively.)

{W1271701}

- 13 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law              Post Office Box 1110
                             Waterbury, CT 06721-1110
                             Telephone: 203 573-1200

held to be confidential business information that may be subject to a protective order.

Vesta Corset Co., Inc. v. Carmen Foundations, Inc., 1999 WL 13257 (S.D.N.Y. 1999).

(Citations omitted.) *See, e.g.,* American Standard Ind. v. Pfizer Inc., 828 F.2d 734,

740 (Fed. Cir. 1987) (marketing plans, pricing information); Gelb v. American Tel. &

Tel. Co., 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) (revenue information); *see also*

Goher v. Wood, 162 F.R.D. 691, 693-94 (D. Utah 1995) (audit practice manuals);

Tonnemacher v. Sasak, 155 F.R.D. 193, 195 (D. Ariz. 1994) ( "[I]nternal manuals are

highly confidential and constitute proprietary trade secrets.").

### 2)    To Manage Large Volumes of Confidential Documents, Courts Use the Umbrella Approach

When Courts do approve confidentiality agreements, particularly where a large

number of confidential documents are at issue, the "umbrella approach" is often

preferred (where categories of documents are protected), not the individual, document-

by-document court review urged by the defendant. Cipollone v. Liggett Group, Inc.,

785 F.2d 1108 (3d. Cir. 1986); In Re Agent Orange Product Liability Litigation, 96

F.R.D. 582, 585 (E.D.N.Y. 1983).[7]  In Cipollone, the Third Circuit Court of Appeals

rejected the District Court's protective order, which utilized a document-by-document

review and recommended instead the "umbrella approach".

---

[7] Although some courts have moved away from the umbrella approach, those cases involved public access to discovery materials and/or the sealing of all documents (neither of which are at issue in the instant matter.) See Citizens First Nation Bank of Princeton v. Cincinnati Insurance Company, 178 F.3d 943, 945-6 (7th Cir. 1999).

{W1271701}

- 14 -

It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered [are] under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

As set forth in <u>Cipollone v. Liggett Group, Inc.</u>, supra, at 1123, there are several advantages to the umbrella approach. First, it is far less time-consuming for the courts and for the parties, particularly where thousands of documents are involved. <u>Id.</u> Second, the umbrella approach reduces court involvement and encourages the parties to work together during the discovery process. <u>Id.</u> For example, once documents are designated as confidential, the opposing party can review them, and the parties, rather than the court, can initially try to resolve any disputes concerning the documents. Finally, the document-by-document approach may prevent the parties and the court from getting a broad overview of the documents. <u>Id.</u> The danger of the document-by-document approach is not only the loss of time, but perhaps more

{W1271701}

- 15 -

CARMODY & TORRANCE LLP     50 Leavenworth Street
Attorneys at Law     Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

importantly, the loss of perspective about what is at issue. In other words, the court

and the parties may "lose the forest for the trees". Id.

**B.**     **The Plaintiff has Satisfied its Burden that the Confidential Documents are Proprietary and were Appropriately Labeled Confidential**

Crompton's Confidential Documents, the Bonzi research and its marketing

information, clearly constitutes "confidential research, development, or commercial

information" and are appropriate for protection under Rule 26. Further, there is good

cause for protecting this information.

As set forth in the Affidavit of Kevin Donovan, (Exhibit A), Crompton

invested significant resources in the development of new uses and applications for

Bonzi. The research undertaken by Crompton while the Development Agreement was

in effect is highly proprietary and closely guarded within Crompton. Although results

of the research were widely disseminated, as correctly noted by the defendant in its

Motion to Compel, the underlying data was not disseminated. The defendant's

attempt to equate the dissemination of the research results with the underlying

research itself is misguided at best and disingenuous at worst.

Of course, while the Development Agreement was in effect, Crompton

published and actively promoted its conclusions regarding the effects of Bonzi and

how to use it as part of Crompton's marketing efforts for the product. However, *this is*

*not same* as providing open access to the research database. In fact, absent this

litigation, Syngenta would have no claim to review Crompton's database, so under the

{W1271701}

- 16 -

CARMODY & TORRANCE LLP        50 Leavenworth Street
Attorneys at Law            Post Office Box 1110
                           Waterbury, CT 06721-1110
                           Telephone: 203 573-1200

pretext of discovery, it should not be able to do so now. See <u>Davis v. AT&T</u>, 1998 WL 912012 (W.D.N.Y. 1998).

Indeed, if Crompton's research database were provided to Syngenta, marketing Bonzi, or another company, marketing paclobutrazol, such companies would be able to use the research directed by Crompton to provide growers with specific rate recommendations based on the plant variety, age/growth stage, application method and Growing Conditions. As alleged in the Complaint, Crompton maintains that Syngenta is improperly marketing Bonzi with uses that Crompton developed. Therefore, if Syngenta has the database, it will be able use that data to support the uses at issue, further injuring Crompton.

On this, the Affidavit of Chuck Buffington utterly misses the point. Mr. Buffington states (¶18) that Crompton will not suffer any harm because Crompton and Syngenta are not competitors.[8]  However, pursuant to the Development Agreement, the new Bonzi uses and applications developed by Crompton clearly belong to Crompton whether or not Crompton still markets Bonzi.  It is the legal agreement which controls the rights of the parties. Also, because Crompton intends to market paclobutrazol in the future,[9] Crompton should not be forced to share its Bonzi/paclobutrazol research with Syngenta.  Thus, the unrestricted turnover to

---

[8] Curiously, Mr. Buffington's affidavit acknowledges that Syngenta "is already marketing Bonzi for <u>all</u> of the uses for which [Crompton] claims it is entitled to damages." (See Buffington Affidavit, ¶ 18.)
[9] Indeed, as noted above, Crompton has already submitted applications to the EPA to register paclobutrazol products.  Once these applications are approved, Crompton will directly compete with Syngenta in the Bonzi/paclobutrazol market.
{W1271701}

- 17 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Syngenta of Crompton's Bonzi database will do substantial economic harm to Crompton's competitive position in the marketplace for paclobutrazol and to Crompton's well-deserved reputation as an expert in the field of PGRs.

Moreover, there will be no prejudice to Syngenta if it does not actually have the database. Further, Mr. Buffington's claims that Syngenta will not be able to assist in its defense of this action ignore Crompton's compromise proposals. Crompton has offered and is willing to allow Syngenta to review (but not copy or retain) the confidential research or to have the research summaries. Inexplicably, this is not enough for Syngenta as evidenced by Syngenta's failure to respond to this overture. Syngenta does not address Crompton's good faith offers in Syngenta's Memorandum of Law or the Affidavits of Mr. Buffington or Attorney Ruskin. It is especially remarkable that Attorney Ruskin's 'Good Faith Affidavit' ignores these good faith and practical offers from the Plaintiff. Instead, Attorney Ruskin disingenuously and unfairly states that "However, at no time has plaintiff's counsel indicated a willingness to modify the Draconian terms of this proposal" Affidavit of Attorney Ruskin, ¶ 3.

Crompton's marketing strategies are also clearly confidential. Although it appears that Syngenta may not be seeking non-research Confidential Documents, to the extent it seeks them without confidential protections, they should not be provided to Syngenta. Pricing and marketing information are widely held to be confidential business information subject to protective order. <u>Vesta Corset Co., Inc. v. Carmen</u>

{W1271701}

- 18 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
    Waterbury, CT 06721-1110
    Telephone: 203 573-1200

Foundations, Inc., 1999 WL 13257 (S.D.N.Y. 1999);  American Standard Ind. v.

Pfizer Inc., 828 F.2d 734, 740 (Fed. Cir. 1987); Gelb v. American Tel. & Tel. Co., 813

F. Supp. 1022, 1034 (S.D.N.Y. 1993).  Crompton invested a significant amount time

and cost in developing and marketing Bonzi while the Development Agreement was in

effect.  Now that Syngenta has terminated the Development Agreement and is

marketing uses/applications developed by Crompton, it should not have a road map on

how to do so more effectively.

### D.    The Court Should Utilize the Umbrella Approach

Having demonstrated that the Confidential Documents are in fact confidential

and should be protected, the Court should enter the Proposed Confidentiality Order

and proceed with discovery using the "umbrella approach".

As noted above, this approach is commonly employed, particularly where, as

here, there are a large number of documents at issue and the approach will result in a

far more efficient discovery process.  Cipollone v. Liggett Group, Inc., supra, 785 F.2d

at 1123.  The advantages of the umbrella approach, and the disadvantages of the

document-by-document approach urged by the defendant, are highlighted by the

instant Motion to Compel.  The defendant urges the Court to conduct an extended and

numbing review of thousands of documents.  Nevertheless, had the defendant

consented to the umbrella approach as set forth in the Proposed Confidentiality

{W1271701}

- 19 -

Agreement, the defendant would have already had four months to review the documents and raise all of its concerns with the plaintiff as to the validity of the plaintiff's confidentiality claims. Moreover, under one of the compromises proposed to the defendant, allowing Syngenta personnel to review but not keep copies of the confidential research, there would be no hindrance of Syngenta's ability to advise its counsel.

In addition, the umbrella approach reduces court involvement and encourages the parties to work together during the discovery process. Cipollone v. Liggett Group, Inc., supra. Under the Protective Confidentiality Order, defense counsel will have all Confidential Documents, including those designated attorney review only, and will be able to then specifically raise issues with specific documents. Again, this could have occurred months ago and the parties would now be engaging in potentially more fruitful discussions directed to specific documents, or at least specific categories of documents, rather than arguing three months later about the general designation of approximately 5,000 pages of documents.

Finally, as cautioned in Cipollone v. Liggett Group, Inc., supra, the document-by-document approach may prevent the parties and the Court from getting a broad overview of the documents and "lose the forest for the trees". This pitfall is highlighted in the instant Motion to Compel, wherein the defendant points to a few specific documents but then, in a colossal leap, urges that 5,000 pages of confidential

{W1271701}

- 20 -

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law    Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

documents, the vast majority of which is research, be turned over without any protection or only after an exhaustive and exhausting document-by-document review by the Court.

### E.    The Motion should be Denied Because Syngenta Has Not Acted In Good Faith

The Motion to Compel should also be denied because, notwithstanding the affidavits of Attorney Ruskin and Mr. Buffington, Syngenta has not acted in good faith. Attorney Ruskin has misrepresented, both in Court and in his Affidavit, the discussions with plaintiff's counsel regarding the Confidential Documents. As set forth in the Affidavit of Attorney Green, the banner, which Attorney Ruskin suggests was marked as a Confidential Document, was never so marked. Also, at the July 10 meeting, when Attorney Ruskin reviewed Crompton's Confidential Documents, only two videos were identified as being mislabeled and this was promptly corrected. Similarly the statements that Crompton counsel admitted that documents were mismarked and labeled by mistake, and that they generally acted in "blunderbuss fashion" is equally untrue.

In its Memorandum of Law the defendant also suggests that counsel has been denied access to the Confidential Documents and that counsel was only permitted to conduct a limited inspection on July 10. These claims are completely and utterly untrue. Complete sets of the Confidential Documents have been available to defense counsel at both of Carmody & Torrance's offices (Waterbury and New Haven) since

{W1271701}

- 21 -

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

early June.  Moreover, Attorney Ruskin's review of the Confidential Documents was not in any way restricted or curtailed by plaintiff's counsel.  See Affidavit of Attorney Green, (Exhibit G).

The Motion should also be denied because Syngenta has irresponsibly rejected Crompton's repeated good faith efforts to reach a compromise on the Confidential Documents.  At two settlement conferences before the Honorable Magistrate Fitzsimmons, Crompton made two separate offers to share the Confidential Documents directly with Syngenta subject to reasonable restrictions.  Both proposals would address Syngenta's unsupported claims that without access to the Confidential Documents they will be unable to assist counsel in defending this case.  Notably, the Affidavits of Attorney Ruskin and Mr. Buffington are silent on these offers.   To date Syngenta has not accepted or responded to either offer.  In light of this refusal to act in good faith and to even attempt to resolve this matter short of Court intervention, the Motion to Compel should be denied.

## IV.    CONCLUSION

The documents at issue are clearly confidential and proprietary.  Their disclosure to Syngenta would cause serious economic injury to Crompton.  Moreover, Crompton has offered to disclose the Confidential Documents pursuant to a reasonable Protective Order, and has even offered to compromise beyond this to allow Syngenta direct access to the highly confidential documents.  These good faith overtures, which

{W1271701}

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law             Post Office Box 1110
                             Waterbury, CT 06721-1110
                             Telephone: 203 573-1200

would address any effective representation issues, have been ignored.  Therefore, the

defendant has not acted in good faith and its Motion to Compel should be denied.

PLAINTIFF
UNIROYAL CHEMICAL COMPANY,
INC. d/b/a CROMPTON
MANUFACTURING COMPANY

Russell A. Green (ct14976)
      Carmody & Torrance LLP
50 Leavenworth Street, P.O. Box 1110
Waterbury, CT  06721-1110
Tel:  (203) 573-1200
Fax:  (203) 575-2600
E-mail:  rgreen@carmodylaw.com
Its Attorneys

Charles F. Corcoran, III (ct 04299)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, Connecticut  06509-1950
Tel:  (203) 777-5501
Fax:  (203) 784-3199
E-mail: ccorcoran@carmodylaw.com
Its Attorneys

{W1271701}

- 23 -

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
Shipman & Goodwin LLP
300 Atlantic Street, Suite 1700
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Shipman & Goodwin LLP
One American Row
Hartford, CT  06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com

Russell A. Green

1999 WL 13257
50 U.S.P.Q.2d 1219
(Cite as: 1999 WL 13257 (S.D.N.Y.))

Page 1

C

United States District Court, S.D. New York.

VESTA CORSET CO., INC., and James G. Brown,
Plaintiffs,
v.
CARMEN FOUNDATIONS, INC., and Howard
Lehman, Defendants.

No. 97 CIV. 5139(WHP).

Jan. 13, 1999.

Philip Furgang, Furgang & Adwar, L.L.P., New
York.

Steve Ackerman, Law Offices of Steve Ackerman,
Chicago, IL.

MEMORANDUM AND ORDER

PAULEY, District J.

*1 In this action for damages and injunctive relief,
Vesta Corset Co ., Inc., and its president, James G.
Brown ("Vesta") allege patent infringement,
contributory patent infringement, breach of
contract, fraud, trademark infringement and unfair
competition by Carmen Foundations, and its
president, Howard Lehman ("Carmen"). The issue
to be decided by this Court is the appropriate scope
of a proposed protective order. The parties agree
that the information sought to be discovered is
subject to Fed.R.Civ.P. 26(c)(7), and have jointly
proposed a stipulated protective order. However,
they are unable to agree on the scope of the
proposed order, namely on the issue of whether
"confidential information," as defined in the
proposed order, may be disclosed to the presidents
of each of the parties.

After a careful review of the letter memoranda
submitted in connection with this dispute, this Court
finds that disclosure should be limited to counsel
for the parties and experts retained for purposes of
litigation.

Factual Background

Plaintiff Vesta and Defendant Carmen are both
engaged in the business of designing,
manufacturing, distributing, and selling intimate
apparel for women. In this action, Vesta seeks
compensatory damages in excess of $3,000,000 and
punitive damages in excess of $500,000. Carmen
argues that Vesta has not identified any facts in
interrogatory answers or any documents supporting
these numbers except for the statement that Vesta's
damages include the loss of past, present, and future
sales to United States Sales. Carmen requests that
Vesta produce information relating to its pricing,
profits, costs, overhead, manufacturing
specifications, customer lists, price structure, and
dealings with a common customer.

Both parties agree that this information falls under
the provisions of the proposed stipulated protective
order. However, the parties are unable to reach an
agreement on who should have access to this data.

Discussion

The Federal Rules of Civil Procedure provide
qualified protection for "confidential commercial
information" or "trade secrets." FED. R. CIV. P.
26(c)(7). Rule 26(c)(7) provides that a court may
enter an order "that a trade secret or other
confidential research development or commercial
information not be revealed or revealed only in a
designated way." *Id.* The function of a Rule 26(c)
protective order is to "secure the just, speedy, and
inexpensive determination" of civil disputes. *United
States v. Davis,* 702 F .2d 418, 420 (2d Cir.1983) (
*quoting Martindell v. International Telephone and
Telegraph Corp.,* 594 F.2d 291, 295 (2d Cir.1979)).
Rule 26 "is not a blanket authorization for the court
to prohibit disclosure of information whenever it
deems it advisable to do so, but is rather a grant of
power to impose conditions on discovery in order to
prevent injury, harassment, or abuse of the court's
process ." *Bridge C.A.T. Scan Assoc., v. Technicare
Corp.,* 710 F.2d. 940, 944 (2d. Cir.1983).

*2 The narrow issue to be decided by this Court is
whether the presidents of each of the parties should
have access to the confidential information.
"Ordinarily, a party to an action does have the right
to review all material produced in discovery except
in the rare instance where a trade secret may not be
disclosed even to a party." *In re "Agent Orange"
Product Liability Litigation,* 104 F.R.D. 559, 572
(E.D.N.Y.1985); *see Chesa Int'l, Ltd., v. Fashion
Assoc., Inc.,* 425 F.Supp. 234, 236 (S.D.N .Y.1977)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1999 WL 13257
50 U.S.P.Q.2d 1219
(Cite as: 1999 WL 13257 (S.D.N.Y.))

(issuing protective order limiting access to confidential information concerning defendant's customers to plaintiff's attorneys in trademark infringement action). This action involves one of those rare instances where a party's right to review all material produced in discovery may be limited due to the commercially sensitive nature of the information.

Pricing and marketing information are widely held to be **"confidential business information"** that may be subject to a **protective order.** *Sullivan Marketing, Inc., v. Valassis Communications, Inc.,* 1994 WL 177795, at *1 (S.D.N.Y.1994). Although such information falls into a category that is traditionally protected, whether it merits protection in any particular case depends upon: 1) the extent to which information is known outside the **business;** 2) the extent to which information is known to those inside the **business;** 3) the measures taken to guard the secrecy of the information; and 4) the value of the information to the **business** and its competitors. *Id.* at *2. In the present action, Carmen is seeking Vesta's pricing, profits, costs, overhead, manufacturing specifications, customer lists, price structure, and dealings with a common customer. The parties agree that this information is **"confidential information"** subject to the proposed **protective order.**

In order to gain access to such confidential information, the party seeking discovery must show that it is relevant and necessary. *United States v. Davis,* 131 F.R.D. 391, 400 (S.D.N.Y.1990). "A showing of relevance can be viewed as a showing of need." *Id.* (quoting *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C.Cir.1984)). In *Davis,* an action by the government for fraud and mistake of fact in a subsidy contract for the delivery of ships, the defendant requested the production of documents relating to cost estimates and price information for other ships constructed or planned by its competitors and subsidized by the government. The government provided the requested information subject to redactions for "confidential trade information, specifically sensitive cost data." The court, finding that the defendant had made the requisite showing of relevance, structured a confidentiality order under which the plaintiff was ordered to produce the confidential information to opposing counsel and the defendants' independent experts to prepare for trial, but the information was not to be transmitted to the defendant for competitive use. *See United States v. Davis,* 131 F.R.D. 391, 400 (S.D.N.Y.1990).

*3 Similarly, the information sought by Carmen is relevant to the calculation of Vesta's compensatory damages, and thus must be produced to Carmen. However, Carmen has not presented any compelling justification for allowing disclosure of the confidential commercial information to the presidents of the parties. The competing interests between Vesta, the party holding the information, and Carmen, the party seeking the information, are not irreconcilable. Given that Vesta does not want the information disseminated to third parties, but that Carmen needs it to prosecute its case, a balance may be struck which limits the dissemination to counsel and experts.

Protective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information. *See Quotron Systems, Inc., v. Automatic Data Processing, Inc.,* 141 F.R.D. 37, 40 (S.D.N.Y.1992) (limiting disclosure to counsel and experts); *Culligan v. Yamaha Motor Corp.,* 110 F.R.D. 122, 126 (S.D.N.Y.1986) (limiting disclosure to plaintiff's counsel); *Stillman v. Vassileff,* 100 F.R.D. 467, 468 (S.D.N.Y.1984) (limiting disclosure to plaintiff's counsel); *Sullivan Marketing, Inc., v. Valassis Communications, Inc.,* 1994 WL 177795, at *2 (S.D.N.Y.1994) (limiting disclosure of documents relating to pricing and market strategies to outside counsel, their employees, and consultants retained for litigation because in-house counsel was sufficiently involved in competitive decision-making). *But see Princeton Management Corp., v. Assimakopoulos,* 1992 WL 84552 (S.D.N.Y.1992) (limiting access to documents regarding trade secrets to two specifically designated representatives of the plaintiff solely for the purposes of litigation).

In *Quotron,* a case involving copyright infringement and misappropriation of trade secrets, the plaintiff's proposed protective order provided for limited disclosure of confidential documents to not more than three employees designated by each of the parties, in addition to outside and in-house counsel preparing for the litigation and their support

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Page 4 of 4

1999 WL 13257
50 U.S.P.Q.2d 1219
**(Cite as: 1999 WL 13257 (S.D.N.Y.))**

Page 3

staff, independent experts, and court reporters. *Quotron Systems, Inc., v. Automatic Data Processing, Inc.,* 141 F.R.D. 37, 39 (S.D.N.Y.1992) . In *Quotron,* the defendant's proposed protective order provided for a "Highly Confidential" category of documents, for which access was limited to counsel working for or retained in connection with that litigation and their support staff, and approved outside experts. In denying Quotron's motion for entry of its proposed protective order, the court found that allowing plaintiff's employees access to material that may contain proprietary programming of the defendant raises concerns of potential commercial espionage and the possibility of engendering a counterclaim by the defendant. *Id.* at 40. Furthermore, the court held that the plaintiff had not demonstrated a need for its employees to access the confidential information sufficient to outweigh these concerns. Similarly, allowing the parties, James G. Brown, and Howard Lehman access to the confidential commercial information raises concerns of commercial espionage. Additionally, Carmen has failed to demonstrate why limiting access to counsel and experts is inadequate for it to litigate its case. Thus, disclosure is limited to counsel and experts.

*4 For the above reasons, Carmen's motion for entry of its proposed protective order is denied, and Vesta's motion for entry of its proposed protective order is granted.

SO ORDERED:

1999 WL 13257, 1999 WL 13257 (S.D.N.Y.), 50 U.S.P.Q.2d 1219

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1994 WL 177795
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

SULLIVAN MARKETING, INC., Plaintiff,
v.
VALASSIS COMMUNICATIONS, INC. and News
America FSI, Inc., Defendants.
VALASSIS COMMUNICATIONS, INC.,
Counterclaim-Plaintiff,
v.
SULLIVAN MARKETING, INC.,
Counterclaim-Defendant,
and
Sullivan Graphics, Inc., Additional Counterclaim
Defendant.
NEWS AMERICA FSI, INC., Defendant and
Counterclaim-Plaintiff,
v.
SULLIVAN MARKETING, INC., Plaintiff and
Counterclaim-Defendant,
and
Sullivan Graphics, Inc., Paul Moschetti, John Lang,
Reid Wettersten, John
Hendrickson, Walter Cohan, Marshall Johns,
Patricia DeFazio and Lynne
Tenhoopen, Additional Counterclaim Defendants.
No. 93 CIV. 6350 (PKL).

May 5, 1994.

Kenneth M. Kramer, Kathleen M. Comfrey,
Sherman & Sterling, New York City.

Michael O. Finkelstein, Peter G. Farrell, Lord Day
& Lord, Barrett Smith, New York City.

Gerald A. Novack, Eric T. Schneiderman,
Kirkpatrick & Lockhart, New York City.

Joseph P. Cyr, Moran, Lewis & Bockius, New
York City.

John H. Shenefield, Morgan Lewis & Bockius,
Washington, DC.

Steven M. Edwards, Davis, Scott, Weber &
Edwards, P.C., New York City.

MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.

*1 This is an antitrust action involving the publication of free-standing inserts ("FSIs"). FSIs are the advertising and coupon booklets inserted into newspapers for distribution to consumers. Sullivan Marketing, Inc. ("Sullivan"), Valassis Communications, Inc. ("Valassis"), and News America FSI, Inc. ("News America") were all publishers of FSIs during the relevant time period. Sullivan alleges that Valassis and News America operated as a duopoly in the FSI industry from 1988 until 1992, thereby violating the antitrust laws. Both of the defendants have asserted counterclaims against Sullivan. The picture is complicated by the fact that Sullivan is no longer in the FSI business. In February 1994, it transferred its contracts and sales agreements to News America. Nevertheless, it remains in an adversary position to News America in this litigation.

*Scope of the Dispute*

Currently before the Court is a dispute concerning the appropriate scope of a protective order governing the dissemination of documents exchanged in discovery. All parties agree that sensitive corporate documents may be deemed "confidential" and protected from disclosure to the general public. Certain corporate employees, including in-house counsel and designated financial officers, would be allowed to review such documents.

News America seeks increased protection for a group of documents that it characterizes as "restricted." Such documents would consist of: (1) contracts, proposals, negotiations or arrangements of a party with its actual or potential customers in effect, or proposed to be in effect, after January 1, 1994; (2) any documents in which a party proposed, determined, or analyzed prices or terms of sale that were anticipated to be in effect after January 1, 1994; current or future strategic and marketing plans or proposals or financial projections relating to market activities anticipated to be in effect after January 1, 1994; (4) any proprietary market research or analysis conducted by or for any party for market activities anticipated to be in effect after January 1, 1994; and (5) any additional materials that are determined to be

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1994 WL 177795
(Cite as: 1994 WL 177795 (S.D.N.Y.))

restricted by agreement of the parties or by order of the Court.

As to such restricted documents, News America asks that they be disclosed only to outside counsel, their employees, and consultants retained for the litigation. Valassis objects, arguing that it will be hindered in its trial preparation if its in-house counsel is not permitted to review such documents. Initially, Valassis also sought to have restricted documents made available to designated financial officers, but it is no longer pressing that demand. Valassis argues that it is particularly unjust for any such restrictive confidentiality order to apply to Sullivan documents, since News America is already privy to such documents by virtue of its acquisition of Sullivan's contracts.

*Discussion*

As a threshold matter, it should be noted that the information at issue here is properly the subject of some form of protective order. Rule 26(c)(7) of the Federal Rules of Civil Procedure provides that the court may enter an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Though perhaps not on a par with a "secret formula," pricing and marketing strategies are widely held to be confidential business information that may be subject to a protective order. *See, e.g., American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 737, 740-41 (Fed.Cir.1987) (marketing plans, pricing information); *Gelb v. American Telephone & Telegraph Co.,* 813 F.Supp. 1022, 1034-35 (S.D.N.Y.1993) (revenue information).

*2 Though such information falls into a category that is traditionally protected, whether it merits protection in any particular case depends upon:
   (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors.

*Reliance Insurance Co. v. Barron's,* 428 F.Supp. 200, 203 (S.D.N.Y.1977). By these standards, News America has established its entitlement to a protective order. News America's pricing policies are revealed outside the corporation only to the

extent that individual customers are aware of the prices quoted to them. These customers may sometimes disseminate this information to News America's competitors as leverage in negotiations, but the competitors would still obtain only a partial picture of News America's strategies. Within News America, such information is provided only to employees who have a need to know it. Furthermore, News America has sued former employees who have divulged such information after their departure. *See* Affidavit of Gerard A. Fragetti dated April 15, 1994 at ¶ 6. Finally, knowledge of News America's pricing and marketing plans would give its competitors an unwarranted advantage in the market.

This brings us to the critical issue: whether it is necessary to restrict dissemination of such confidential information to outside counsel, their staff, and specially retained consultants, or whether in-house counsel should be permitted access as well. Access to confidential information may not be denied solely because of an attorney's status as in-house counsel. *See United States Steel Corp. v. United States,* 730 F.2d 1465, 1468-69 (Fed.Cir.1984); *Carpenter Technology Corp. v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D.Pa.1990). Nor should such access be permitted merely because in-house counsel is bound by the rules of professional responsibility, since there remains a risk of inadvertent use or disclosure of the information. *See Carpenter Technology,* 132 F.R.D. at 27. Rather, the decision turns largely on the specific role of in-house counsel within the business: whether he or she has a part in the type of competitive decision-making that would involve the potential use of the confidential information. *See United States Steel,* 730 F.2d at 1468 & n. 3; *Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.,* 796 F.Supp. 872, 874 (E.D.N.C.1992); *Carpenter Technology,* 132 F.R.D. at 27. At the same time, consideration must be given to the extent that denial of access to in-house counsel will prejudice a party in its trial preparation. *United States Steel,* 730 F.2d at 1468.

In this case, the parties sharply disagree over the role of Barry P. Hoffman, General Counsel of Valassis. Mr. Valassis, a member of the bar of Pennsylvania and Michigan, was formerly a director of Valassis but is not now. Affidavit of Barry P. Hoffman dated April 21, 1994, ¶¶ 1, 3. Mr. Hoffman's duties at Valassis include furnishing

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1994 WL 177795
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

legal advice to the company and managing its outside legal services. He also manages the corporate Human Resources Department, the corporate Services Department, and the corporate Security Department. Finally, he is involved in projects for the international expansion of the company. Hoffman Aff., ¶ 4. Mr. Hoffman states that he has no involvement in negotiating or setting of prices or other terms of sale of FSIs. He does draft and review FSI contracts negotiated by the Sales Division. Hoffman Aff., ¶ 5. Mr. Hoffman attests:

*3 I do not participate in market strategy decisions except where legal issues are raised, nor is my advice requested on this subject. I have no input on matters relating to production or sales, except when a legal issue is raised, *e.g.*, a controversial advertisement.

* * *

During the price war with Sullivan I attended strategy meetings at which the discussions included pricing strategy in response to the Sullivan challenge. My input was limited to legal issues raised by the price war.

Hoffman Aff., ¶¶ 5, 6.

News America points out that while Mr. Hoffman may no longer be a director at Valassis, he is the corporate secretary. Affidavit of Donald C. Klawiter dated April 14, 1994, ¶ 3 & Exh. A at 27. Furthermore, Mr. Hoffman is entitled to substantial annual bonuses based on Valassis achieving certain cash flow targets. Klawiter Aff., ¶ 4 & Exh. A at 28.

Based on all of this information, I find that Mr. Hoffman is involved in Valassis' competitive decision-making to such a degree that he should be denied access to competitively sensitive data. First, as a general matter, Mr. Hoffman takes a more active role in management than many general counsel. He not only provides the legal advice, but he also manages specific departments. His managerial role is reflected in the fact that his compensation is linked to the business' profitability.

More important than his general status is Mr. Hoffman's specific involvement in competitive decisions. According to his own affidavit, he attended *strategy* meetings where pricing tactics were discussed during a price war-- meetings where

knowledge of competitor's marketing plans would be particularly crucial. Though Mr. Hoffman states that his input was limited to legal issues, I am not sanguine that inadvertent disclosure could be avoided under such circumstances. It is often difficult to draw the line between legal and business advice. Moreover, where advice on a seemingly legal issue such as an antitrust question is sought, counsel's intimate knowledge of a competitor's pricing policies could surely influence the nature of the advice given. "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C.Cir.1980). Given the extent of Mr. Hoffman's involvement in strategy meetings, such compartmentalization would be nigh impossible.

The prejudice that Valassis would suffer from the more restrictive confidentiality order would be minimal. Outside counsel has been involved in this litigation from the beginning and is fully familiar with the facts. Thus, this case is distinguishable from *United States Steel*, where the exclusion of in-house counsel at an advanced stage of the litigation would have forced the party to retain new counsel. 730 F.2d at 1468. Moreover, although the subject matter of this litigation may be complex, it is familiar territory for experienced antitrust counsel. There are, for example, no issues of advanced technology that might require in-house counsel to interpret technical documents. While it may be more convenient for in-house counsel to review pricing or marketing documents, outside counsel are fully capable of doing so.

*4 This analysis is not altered by the fact that in-house counsel for News America will have access to the Sullivan documents while Mr. Hoffman will not. No competitive inequity is created by this distinction; as the new owner of Sullivan's contracts, News America is entitled to its pricing information for business purposes while Valassis, still a competitor, is not. The only disadvantage Valassis suffers is in its trial preparation, since its in-house counsel has less information than News America's. But this disparity is minimal since outside counsel for all parties have access to the same data. Accordingly, no special provision need be made for the Sullivan documents.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1994 WL 177795
**(Cite as: 1994 WL 177795 (S.D.N.Y.))**

Page 4

*Conclusion*

For the reasons set forth above, News America's application for a protective order is granted, and access to certain sensitive information shall be restricted to outside counsel, their staff, and consultants retained for this litigation. News America shall submit a copy of its proposed order for my signature.

SO ORDERED.

1994 WL 177795, 1994 WL 177795 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 912012
**(Cite as: 1998 WL 912012 (W.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

Elliot DAVIS, Plaintiff,
v.
AT & T CORP. and LUCENT TECHNOLOGIES,
INC., Defendants.

**No. 98-CV-0189S(H).**

Dec. 23, 1998.

DECISION AND ORDER

HECKMAN, Magistrate J.

**\*1** This case has been referred to the undersigned by Hon. William M. Skretny for pretrial matters, pursuant to 28 U.S.C. § 636(b)(1)(A). Defendants move for a **protective order** under Rule 26(c) of the Federal Rules of Civil Procedure. For the reasons that follow, and to the extent discussed herein, defendants' motion is granted.

BACKGROUND

On March 20, 1998, plaintiff filed this action for infringement of United States Patent 4,802,231 ("the '231 patent"), issued to plaintiff on January 31, 1989, relating to automated speech pattern recognition systems. Plaintiff claims that defendants' products, including AT & T's Watson Speech Recognition System and Lucent's Intuity TM Conversant (R) System, embody the subject matter of the '231 patent without license or authorization. On June 25, 1998, defendants answered the complaint and asserted counterclaims for invalidity of the '231 patent.

The parties agree that, due to the proprietary and confidential nature of the information subject to discovery in this case, a **protective order** is appropriate, and they have reached agreement on most of the terms of a proposed order (*see* Item 16, Ex. 1). However, plaintiff objects to the following provision in defendants' version of the proposed order:

[Defendants'] designated house litigation counsel and plaintiff given access to an adverse party's

"Confidential" information under this **protective order** shall not be permitted to file, prepare or prosecute any patent application in the field of automatic speech recognition during the pendency of this lawsuit and for two years after its conclusion.

(*Id.,* ¶ 7(b)).

According to plaintiff, this language unduly restricts his ability to engage in speech recognition research, his primary livelihood, since it is unlikely that he could obtain funding or employment if he is precluded from continuously producing patentable material (*see* Davis Aff., Item 19, ¶ 7). Defendants respond that, since plaintiff has never applied for any other patents, the risk of harm to his livelihood is outweighed by the risk of harm to defendants that would result from **disclosure** of **confidential, proprietary** speech recognition technology.

DISCUSSION

Under Fed.R.Civ.P. 26(c)(7), the court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way ...." The movant has the burden to show good cause for the protection sought. *Dove v. Atlantic Capital Corporation,* 963 F.2d 15, 19 (2d Cir.1992); *United States v. Talco Contractors, Inc.,* 153 F.R.D. 501, 513 (W.D.N.Y.1994).

In this case, as stated above, the parties agree that a **protective order** is appropriate, and there is no question that the information sought to be protected is indeed "confidential research, development, or commercial information." The issue here is the scope of the order. Defendants seek a restriction of plaintiff's patent activities in the field of automatic speech recognition during the pendency of this litigation plus two years, in return for the disclosure of confidential information developed by defendants over the course of more than 25 years.

**\*2** Courts often afford fuller protection to technical, proprietary information than that extended to ordinary business information. *Safe Flight Instrument Corporation v. Sundstrand Data Control Inc.,* 682 F.Supp. 20, 22 (D.Del.1988);

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 912012
**(Cite as: 1998 WL 912012 (W.D.N.Y.))**

*Maritime Cinema Service Corp. v. Movies En Route, Inc.,* 60 F.R.D. 587, 590 (S.D.N.Y.1973). As stated in *Safe Flight,* "[c]ourts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." Thus, where a party seeks a **protective order** restricting the scope of discovery of technical, proprietary information, the court should balance the interests in full disclosure of relevant information and reasonable protection from economic injury. *Safe Flight, supra,* 682 F.Supp. at 23. "In making this determination, the court is required to exercise its sound discretion to implement the philosophy of full disclosure of relevant information during discovery, while at the same time affording the parties reasonable protection against harmful side effects." *E.I. du Pont de Nemours & Company v. Phillips Petroleum Company,* 219 U.S.P.Q. 37, 38 (D.Del.1982).

Relevant considerations for striking this balance include (1) whether the person receiving the **confidential** information is involved in competitive decision making or scientific research relating to the subject matter of the patent, (2) the risk of inadvertent **disclosure** of **proprietary** information, (3) the hardship imposed by the restriction, (4) the timing of the remedy, and (5) the scope of the remedy. *Motorola, Inc. v. Interdigital Technology Corporation,* 1994 U.S.Dist. Lexis 20714, at *8-19 (D.Del.1994) (unavailable on Westlaw; copy attached as Ex. B to Item 17). Of course, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," will not aid the court in striking the balance. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *quoted in United States v. Talco Contractors, Inc., supra,* 153 F.R.D. at 513-14. Instead, the moving party must demonstrate that **disclosure** of the **confidential** information without the requested protection "will work a clearly defined and very serious injury." *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 529 F.Supp. 866, 891 (E.D.Pa.1981) (quoted in *Cuno Incorporated v. Pall Corporation,* 117 F.R.D. 506, 508 (E.D.N.Y.1987).

Considering these factors, I find that the balance should be struck in favor of the restrictions proposed by defendants. As to the risk of economic harm, defendants have submitted the declarations of Robert J. Perdue, David L. Thompson and Jay G.

Wilpon, management-level employees who have worked in the field of automatic speech recognition technology for both AT & T and (after "trivestiture") Lucent (*see* Item 16, Exs. 2, 3 & 4). As explained in the declarations, the market for speech recognition technology is highly competitive. The automatic speech recognition systems marketed by AT & T and Lucent are the result of more than 25 years of expensive research and development. Over the last five years alone, defendants have spent in excess of $50 million for research and development associated with speech recognition technology. The information gained from this research and development is maintained in strict confidence, and cannot be ascertained through use of the products or "reverse engineering." It is obviously very valuable to defendants.

*3 Needless to say, in the absence of this litigation, plaintiff would not have access to **confidential** information about defendants' automatic speech recognition systems. Allowing plaintiff access to this valuable, **proprietary** information without limiting his ability to apply for patents for a reasonable length of time would create an unwarranted risk of **disclosure,** as well as a heightened risk of irreparable harm to defendants' competitive business concerns.

With respect to the other factors outlined above, it is undisputed that plaintiff is (or at least has been) involved in scientific research relating to automatic speech recognition technology. It is also beyond dispute that, without some limitation on plaintiff's ability to file patent applications, there would be some risk that plaintiff might inadvertently disclose confidential information learned through discovery. There appears to be some dispute as to the extent of plaintiff's current involvement in the speech recognition field, and as to whether plaintiff--an individual patentee/licensor of related technology--is actually an economic competitor of AT & T and Lucent. Defendants point out that plaintiff has not applied for patents in the field of speech recognition, or in any other field, since 1987, and plaintiff has made no showing that any plans or projects would be affected by the proposed restriction on patent applications. Absent a showing of the likelihood of present or future harm to the plaintiff, the court concludes that the timing and scope of the patent application ban, effective immediately upon the filing of a finalized version of the **protective order** and for the pendency of this

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

1998 WL 912012
**(Cite as: 1998 WL 912012 (W.D.N.Y.))**

litigation plus two years, is reasonable under the circumstances.

If the hardship upon the plaintiff is too great, plaintiff has the option of foregoing access to the confidential proprietary information and restricting access to plaintiff's counsel and plaintiff's experts.

Accordingly, the court finds that the balance of interests in full disclosure and reasonable protection from economic harm is best struck by a **protective order** containing the language proposed by defendants. Defendants are directed to submit a finalized order, after reasonable opportunity for review by plaintiff's counsel in light of the matters set forth herein, to the undersigned for signature.

CONCLUSION

For the foregoing reasons, defendants' motion for a **protective order** (Item 16) is granted. Defendants' motion for leave to file a reply (Item 21) is also granted.

SO ORDERED.

1998 WL 912012, 1998 WL 912012 (W.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works