UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNIROYAL CHEMICAL COMPANY d/b/a CROMPTON MANUFACTURING COMPANY | : : : : | |
| Plaintiff, | : : | Civil Action No. 3:02CV02253 (AHN) |
| v. | : : : | |
| SYNGENTA CROP PROTECTION, INC. | : : | |
| Defendant. | : | OCTOBER 14, 2003 |

### PLAINTIFF'S OBJECTION TO MOTION TO COMPEL DOCUMENTS OVER WHICH PLAINTIFF CLAIMS ATTORNEY-CLIENT PRIVILEGE

The plaintiff, Uniroyal Chemical Company, Inc. d/b/a Crompton Manufacturing Company ("Crompton") hereby objects to the defendant's Motion to Compel Crompton to produce documents protected by the attorney-client privilege. Crompton has in fact, as promised, reconsidered its initial designations regarding privilege and has now produced eight documents originally listed on its Privilege Log of May 28, 2003. Crompton believes in good faith that the twelve documents remaining are in fact privileged attorney-client communications, which should not be disclosed. The documents are submitted herewith, under seal, for the Court's in camera review.

In its Motion to Compel, the defendant Syngenta Crop Protection, Inc. ("Syngenta") seeks to persuade this Court to apply the wrong law to the current

CARMODY & TORRANCE LLP  50 Leavenworth Street
Attorneys at Law           Post Office Box 1110
                          Waterbury, CT 06721-1110
                          Telephone: 203 573-1200

dispute, and, furthermore, incorrectly asserts that the mere bringing of this action defeats the privilege by placing the disputed communications at issue. The plaintiff simply alleges in this action that the defendant has breached a contract between the parties; this claim does not waive the privilege protecting attorney-client communications, even those concerning the contract underlying this dispute. Defendant's Motion to Compel should therefore be denied.

## I. BACKGROUND

### A. The Development and Supply Agreements

In 1990, Crompton and Syngenta[1] commenced negotiations on a Development Agreement and a Supply Agreement concerning the supply, development and marketing of Bonzi, the trademarked name for paclobutrazol. Bonzi/paclobutrazol is a plant growth regulator used on ornamental plants. The parties ultimately executed the Development and Supply Agreements in January 1991. The Agreements provided that Crompton would have exclusive rights to develop and market Bonzi and would retain the rights to the new uses it developed. Syngenta terminated the Agreements in June of 2002.

The present action was commenced by Crompton's December 19, 2002 complaint, which alleges, *inter alia*, that Syngenta has breached the Agreements and has now unlawfully appropriated unto itself the new uses for Bonzi developed by Crompton.

---

[1] At this time the negotiations were between Crompton and ICI America's, Inc., Syngenta's predecessor.

{W1572048}
CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

**B.     Discovery Requests**

Syngenta has served the following discovery requests on Crompton: First Request for Production of Documents dated March 25, 2003; and First Set of Interrogatories and Second Request for Production of Documents on March 28, 2003 (collectively referred to as the "Discovery Requests"). The Discovery Requests are attached as <u>Exhibits A and B</u>, respectively. On May 28, 2003, Crompton filed its Answers and Objections to the Discovery Requests (attached as <u>Exhibits C and D</u>, respectively). In its Objections, Crompton claimed that the Discovery Requests sought documents protected by the attorney-client privilege.

**C.     Privilege Log and Documents at Issue**

On May 28, 2003, Crompton also filed a Privilege Log (attached as <u>Exhibit E</u>). In its Privilege Log, Crompton listed 19 documents, which it claimed were confidential attorney-client communications. By letter dated October 7, 2003, Crompton released eight documents from its privilege log. Since once document was partially released (*i.e.* in redacted form) the following 12 documents remain at issue and are subject to protection from discovery:

CC01870: This is a series of e-mails and responses, dated October 28, 2002, concerning label amendments. The final e-mail at the top of the page has been redacted and the balance of the messages has been released to the defendant. The final, redacted e-mail is from Kevin Donovan to Laureen Treu with a copy, *inter alia*, to Attorney Richard Weiss; however, the text is explicitly addressed to in-house counsel and seeks legal advice. This is a privileged communication from a client to its counsel seeking legal advice.

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

NO BATE NUMBER: This is a letter, dated December 4, 2002, from Kevin Donovan to Attorney Charles F. Corcoran, III, Crompton's outside counsel and its lead attorney in the present action. The letter is communicating information for use in this action. This document is a privileged attorney-client communication.

CC02328 - 336: Memorandum with attachments from Attorney M.F. Guss of Crompton's law department, initialed in hand by Attorney Guss, enclosing his draft of the proposed Supply Agreement, and seeking comment. This is also a privileged communication between client and its counsel.

CC02337-345: Handwritten memorandum with attachments from Attorney Guss to Kelley *et al.* enclosing Attorney Guss' interim draft of the proposed Supply Agreement, and seeking comment. The draft is extensively annotated in hand by Attorney Guss. This is a privileged communication between client and counsel.

CC02346-356: Memorandum with attachments, dated September 14, 1990, from K. Kelley to various recipients (with a copy to Attorney Guss) enclosing ICI's interim drafts of the supply and development agreements and asking for comments to be forwarded to him for subsequent review by him with in-house counsel M.F. Guss. In this memorandum, Mr. Kelley is acting as a go-between for the law department and is co-coordinating comments to be discussed with the Company's in-house attorney for the purpose of securing legal advice. This memorandum is Attorney Guss' copy, and the attachment is heavily annotated in Attorney Guss' handwriting, so the privileged communications go in both directions. This document is therefore subject to the attorney-client communication privilege.

NO BATE NUMBER: This is the same memorandum from K. Kelley as Bates No. CC02346 above, to various recipients (with a copy to Attorney Guss) enclosing ICI's draft Development Agreement and asking for comments. Again, Mr. Kelley is acting as a go-between for the law department and is co-coordinating comments to be made to the Company's in-house attorney for the purpose of securing legal advice. As such, this document is also subject to the attorney-client communication privilege.

NO BATE NUMBER: This is a July 23, 1990 memorandum from K. Kelley to Attorney Guss enclosing a different version of Uniroyal's draft proposal to ICI, with attachments, seeking legal advice on two issues. This document is an attorney-client communication and is privileged.

CARMODY & TORRANCE LLP
Attorneys at Law
{W1272048}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

CC 02227: This is a memorandum, dated February 1, 1991 from K. Kelley to Attorney Guss, seeking advice on four points concerning the proposed agreement between Crompton and ICI. This document is an attorney-client communication and is privileged.

CC 02228-2235: Memorandum, dated January 30, 1991, from K. Kelley to Attorney Guss and two others, seeking legal advice from Attorney Guss. This is indicated as Attorney Guss's copy. This document is an attorney-client communication and is privileged.

CC 02250-53: Memorandum, dated January 10, 1991, from K. Kelley to Attorney Guss and two others, seeking legal advice from Attorney Guss. This is indicated as Attorney Guss's copy. This document is an attorney-client communication and is privileged.

CC 02272-281: Draft of Bonzi Chemical Supply Agreement annotated and commented on by the law department in response to K. Kelley's request for legal advice. This document is an attorney-client communication and is privileged.

CC 02254-271: Memorandum, dated January 10, 1991, from K. Kelley to Attorney Guss and two others enclosing ICI's drafts of the Supply and Development Agreements and asking for comments. This is indicated as Attorney Guss' copy, and the attachment is annotated in Attorney Guss' hand, so the privileged communications go in both directions. This document is an attorney-client communication and is privileged.

On October 7, 2003, Attorney Charles F. Corcoran, III, counsel for Crompton, contacted Attorney Ruskin by phone and requested that they discuss the remaining documents at issue. Attorney Ruskin responded with a voicemail indicating that he was not interested in discussing Crompton's reasoning for keeping the remainder of the challenged documents on the Privilege Log. The message further indicated that Attorney Ruskin would have welcomed that discussion some weeks ago when Syngenta first challenged Crompton's privilege assertions, but having gone to the

expense of filing a motion, he "would just as soon have the Court rule on the remainder of the documents at issue after its in-camera review." Attorney Corcoran then responded to Attorney Ruskin by e-mail and requested that he reconsider his position. (See e-mail response of Attorney Corcoran attached as <u>Exhibit F</u>.) Attorney Ruskin then called Attorney Corcoran, but he was not at his desk. When Mr. Corcoran immediately called Mr. Ruskin back he was not available. In an effort to keep communications open, on October 8, 2003, Attorney Corcoran, again e-mailed Attorney Ruskin listing the only remaining documents at issue, describing the basis of the privilege claim in detail, and again requesting that Attorney Ruskin reconsider his refusal to discuss the documents remaining on the Privilege Log. (Attached as <u>Exhibit G</u>.) Attorney Ruskin has not responded to that e-mail.

## II. ARGUMENT

### A. <u>Federal Courts Sitting in Diversity Must Apply State Law to Privilege Issues</u>

Contrary to the defendant's claims, it is Connecticut law, *not* "federal common law" which governs the attorney-client privilege issues in this case. In its Memorandum of Law, the defendant has set forth a long, tortured argument, which apparently seeks to persuade this Court to apply New York law. However, the privilege questions at issue here are properly resolved under Connecticut law.

CARMODY & TORRANCE LLP
Attorneys at Law
{W1772048}
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

As a preliminary matter, it should be noted "there is no federal general common law." Erie R.Co. v. Tompkins, 304 U.S. 64, 78 (1938). "The broad command of *Erie* was... federal courts are to apply state substantive law and federal procedural law." Hanna v. Plumer, 380 U.S. 460 (1965). Although federal courts have long recognized the difficulty in making the substance/procedure distinction, it is well established in the District of Connecticut that "under Federal Rule of Evidence 501, where state law provides the rule of decision in a civil action, it is the state law of privilege which applies." Walsh v. Seaboard Surety Company, 184 F.R.D. 494, 496 (D. Conn. 1999), citing EDO Corp. v. Neward Ins. Co., 145 F.R.D. 18, 21 (D.Conn. 1992).

In its Memorandum of Law, the defendant relies heavily—and inappropriately—on TVT Records v. Island Def Jam Music Group, 214 F.R.D. 143, 2003 U.S. Dist. LEXIS 3061 (S.D.N.Y 2003), in which the New York district court sitting in diversity resolved privilege issues by applying New York state law. The defendant erroneously refers to the law in that case as "federal common law" and makes the peculiar argument that "resort to federal common law is appropriate in resolving questions as [to] the scope of the Connecticut attorney-client privilege in federal courts hearing state law claims." Defendant's Memorandum of Law, p. 12.

It is true that "when a state's law is unclear, a federal court sitting in diversity 'must determine what result the state court would reach if the case had been brought in state court,'" EDO Corp, 145 F.R.D. at 22, citing Brastex Corp. v. Allen International,

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Inc. 702 F.2d 326, 330 (2d Cir. 1983). However, Connecticut courts have spoken on the attorney-client privilege issues in need of resolution in this case. Furthermore, the federal case the Defendant relies on is not a Connecticut District Court or Second Circuit case in which the Court was forced to determine for itself how a Connecticut court would likely resolve the issue. Therefore, the defendant's reliance on a Southern District of New York case, which applied New York *state* law, is both unnecessary and inappropriate.

To resolve the attorney-client privilege issues in this case, it is appropriate for this Court to rely on Connecticut law, as applied by Connecticut state courts and federal courts sitting in diversity. In cases where Connecticut law is unclear, it is proper for the federal district court to make a determination of how *Connecticut* courts would likely resolve the issue.

## II. Under Connecticut Law, The Privilege Log Documents Are Protected By The Attorney-Client Privilege.

Under Connecticut law, "the following test is used to evaluate a party's claims of privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." Walsh v. Seaboard Surety Company, 184 F.R.D. 494, 495-96 (1999); EDO Corporation v. Newark Ins. Co., 145 F.R.D. 18, 21 (1992); Rienzo v. Santangelo, 160

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Conn. 391, 395 (1971). "The burden of proving facts essential to the privilege is on the person asserting it." State v. Hanna, 150 Conn. 457, 465-66 (1963). Contrary to the defendant's claims, Crompton meets this burden because the Privilege Log documents being withheld are indeed "communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice" and are therefore entitled to the protection of the attorney-client privilege.

As noted above, the plaintiff has in good faith reconsidered its initial designations of privilege and, on reflection, has now produced eight documents originally listed in its Privilege Log. Therefore, most of the documents on which the defendant focuses its argument are in fact no longer at issue because plaintiff's counsel has now produced them.[2] However, after reviewing the documents it is clear that twelve of the documents the defendant is seeking to compel production of are confidential attorney-client communications to which the privilege applies. It should also be noted that under Connecticut law, "the attorney-client privilege protects communications where the client is an organization, such as a corporate entity, rather than an individual." Pas Associates v. Twin Laboratories, Inc., 2001 WL 1659466 (Conn. Super. 2001) at 3.[3]

Of course, "the attorney-client privilege applies to in-house counsel." Id. The Connecticut Supreme Court has held that "the privilege applies to communications

---

[2] When plaintiff's counsel attempted to avoid the necessity of judicial intervention in this matter by offering to explain the reasons for claiming privilege on the remaining documents, defense counsel refused to engage in any discussion.

[3] Copies of all decisions not officially published are attached.

between officials or employees of a corporate entity and the attorney for that entity, provided the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." Id. citing Cadlerock Properties v. Commissioner, 253 Conn. 661, 675 n. 13 (2000), cert. denied, 531 U.S. 1148 (2001). Under this standard, the plaintiff maintains that the documents remaining in issue qualify for the privilege.

It is true that "the privilege does not protect non-legal communications, including business and technical advice, unless the communications are intended to meet problems which can be characterized as predominantly legal." Carrier Corporation v. the Home Insurance Company, 1992 WL 139778 (Conn. Super. 1992) at 3, citing Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 203-204 (E.D.N.Y. 1988). "Only if the attorney is 'acting as a lawyer' – giving advice as to the legal implications of a proposed course of business – may the privilege be properly invoked." Id. An examination of the documents, which are produced herewith for the Court's *in camera* inspection, does not support the defendant's argument, based on the incorrect assumption that Crompton's in-house counsel was providing mere business, as opposed to legal, advice in the communications being withheld. The communications

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

remaining in issue all relate to the legal advice sought by Crompton of its in-house lawyers.

The defendant maintains that because, in some instances, there were several recipients on the remaining documents at issue, the communication is not privileged. The fact that some of these communications had more than one in-house recipient does not indicate that they were not intended to remain confidential. "A communication made to or in the presence of third parties is not privileged *'unless those other individuals present are agents or employees of the attorney or the client and their presence is necessary to the consultation.'*" Id. citing State v. Gordon, 197 Conn. 413, 424 (1985) (Emphasis added). Such was the case here. Indeed, the other Crompton employees listed were not in fact third parties in any practical sense at all but were, rather, employees whose "presence" was essential to the completeness of the consultation.

### III. The "At Issue" Exception, As Developed By The Connecticut Supreme Court, Does Not Require That Crompton Produce The Privileged Documents.

In its Motion to Compel, the defendant incorrectly argues that the plaintiff, by filing this action, has placed the Agreements in issue, and thus the privilege that would otherwise protect the attorney-client communications relating to the Agreements has been waived under the "at issue" exception. The defendant relies on Walsh v. Seaboard Surety Company, supra, 184 F.R.D. 496, which articulated a broad reading of the "at issue" exception. As such, the defendant's entire argument relies on a

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

formulation of the "at issue" exception, which has since become irrelevant. The formulation of the "at issue" exception articulated in Walsh lacks any precedential value because the Connecticut Supreme Court resolved the issue in Metropolitan Life Insurance Company v Aetna Casualty and Surety Company, 249 Conn. 36 (1999).

In Metropolitan, the Connecticut Supreme Court declined to adopt a broad "at issue" exception to the attorney-client privilege. "Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications." Id. at 52. After Metropolitan, the existence of which the defendant fails to even to acknowledge, the "at issue" exception "is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action. Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship." Id. at 53. Under this standard, initiating a breach of contract action does not put in issue the attorney-client communications related to the formation of the contract and thereby waive the privilege that protects such communications.

Furthermore, "merely because the communications are relevant does not place them at issue." Id. at 54, citing Remington Arms Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 415 (D.Del. 1992) (finding no waiver regarding documents that relate to underlying actions and are protected by attorney-client privilege, because merely

CARMODY & TORRANCE LLP
{W1272048}
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

relevant in coverage action.) In light of the formulation of the exception that the Connecticut Supreme Court has adopted, it is clear that the plaintiff in this case has not waived the attorney-client privilege protecting communications relating to legal advice on the contract underlying the dispute. Therefore, the defendant's argument that merely by filing a breach of contract action, the plaintiff waives any claim of attorney-client privilege concerning the Agreements should be rejected and the Motion to Compel should be denied.

## IV. CONCLUSION

As this Court will observe from examining them, the communications remaining at issue are privileged, confidential attorney-client communications. The defendant has cited the wrong law, failed to cite controlling law, and incorrectly seeks to have this Court apply New York law here. Furthermore, the plaintiff has not put its pre-contract legal advice "at issue" and this argument should also be rejected. The Motion to Compel should therefore be denied.

PLAINTIFF
UNIROYAL CHEMICAL COMPANY,
INC. d/b/a CROMPTON
MANUFACTURING COMPANY

*Russell A. Green* (signature)

**Russell A. Green** (ct14976)
Carmody & Torrance LLP
50 Leavenworth Street, P.O. Box 1110
Waterbury, CT 06721-1110
Tel: (203) 573-1200
Fax: (203) 575-2600
E-mail: rgreen@carmodylaw.com
Its Attorneys

**Charlie F. Corcoran, III** (ct04299)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, Connecticut 06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
E-mail: ccorcoran@carmodylaw.com
Its Attorneys

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com

CARMODY & TORRANCE LLP
Attorneys at Law
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com

Russell A. Green