UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNIROYAL CHEMICAL COMPANY, INC., :
d/b/a CROMPTON MANUFACTURING :
COMPANY :
 :
                                                                                                Civil Action No.
                      Plaintiff,         :     3:02CV02253 (AHN)
 :
v. :
 :
SYNGENTA CROP PROTECTION, INC. :
 :
                      Defendant.      :     OCTOBER 24, 2003

**DEFENDANT'S REPLY
TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS
IDENTIFIED IN PLAINTIFF'S PRIVILEGE LOG DATED MAY 28, 2003**

Defendant Syngenta Crop Protection, Inc. ("Syngenta") respectfully submits this reply to Uniroyal Chemical Company, Inc. d/b/a Crompton Manufacturing Company's ("Uniroyal") opposition to Syngenta's motion to compel production of documents identified in Plaintiff's Privilege Log over which plaintiff claims attorney-client privilege ("Motion to Compel").

In the eleventh hour, Uniroyal has chosen to waive the attorney-client privilege as to seven of the eighteen[1] documents that are the subject of Syngenta's Motion to Compel. Uniroyal fails to apprise the Court what reasoning it used to incorrectly place

---

[1] Contrary to the Uniroyal's assertion, Syngenta seeks disclosure of 18 of the 19 documents listed in Uniroyal's Privilege Log. See Part I.C of Uniroyal's Objection To Motion To Compel Documents Over Which Plaintiff Claims Attorney-Client Privilege ("Objection To Motion"). The 19th document, which Syngenta does not seek, is described as "a letter, dated December 4, 2002, from Kevin Donovan to Attorney Charles F. Corcoran, III, Uniroyal's outside counsel . . . ." See Objection, Part I.C, second document (no Bates Number).

these documents on the Privilege Log in the first instance; what reasoning it used to determine that these documents did not belong on the Privilege Log; and what reasoning it uses to maintain the assertion of attorney-client privilege on the remaining similar documents. In short, Uniroyal fails to address why the remaining eleven documents should be considered privileged and the others not.

As Uniroyal notes by way of citation, Connecticut courts look to federal jurisprudence when analyzing claims of attorney-client privilege when necessary. While Connecticut courts have spoken on attorney-client privilege, the narrower question of when the privilege arises in the business context requires resort to federal law, the same law cited in Connecticut court opinions.

Syngenta's reliance on <u>TVT Records v. Island Def Jam Music Group</u>, 214 F.R.D. 143, 2003 U.S. Dist. LEXIS 3061 (S.D.N.Y. 2003) is useful in explicating an analysis consistent with another federal case, <u>In re Grand Jury Subpoena Duces Tecum</u>, 731 F.2d 1032, 1036 (2d Cir. 1984). <u>In re Grand Jury</u>, as noted in Defendant's Motion To Compel, was cited by the Connecticut Supreme Court in <u>Ullman v. State</u>, 230 Conn. 698, 647 A.2d 324 (1994). Hence, resort to <u>In re Grand Jury</u> and cases that rely upon it is appropriate, and while it is not binding authority, that case serves as persuasive authority for the narrow issue presented in this case. Uniroyal's attempt to minimize the significance of federal jurisprudence on the issue is misleading, particularly as Connecticut courts look to federal decisions for guidance.

The issue is narrow and the Connecticut case law on point is sparse. Uniroyal cites <u>Carrier Corporation v. the Home Insurance Company</u>, 1992 WL 139778 (Conn.

Super. Ct. June 12, 1992) (Schaller, J.)[2], a case which cites federal case law in setting forth the test for evaluating the attorney-client privilege in the business advice context. See Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 204 (E.D.N.Y. 1988) (noting that "the primary purpose of the communications must be for securing legal advice). Indeed, as the Plaintiff notes, "the privilege does not protect non-legal communications, including business and technical advice, unless the communications are intended to meet problems which can be characterized as predominantly legal." Id. It is noteworthy that in Cuno, the court ruled that attorney-client privilege did not protect most of the documents over which the privilege was sought. Id.

I. The Connecticut Test

As noted in both the Motion To Compel and Uniroyal's opposition papers, the TVT court noted that "[t]he Second Circuit has explained that (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except [where] the protection [is] waived . . . ." TVT Records v. Island Def Jam Music Group, 214 F.R.D. 143, 144 (citing In re Grand Jury Subpoena, 731 F.2d at 1036). This is the same formulation as that set forth in Walsh, 184 F.R.D. at 496 as the *Connecticut formulation* of the test for the applicability of the privilege; as such, it is the same test set for the in the Plaintiff's Objection.

In its Objection, the Plaintiff provides additional self-serving information, not contained in its Privilege Log, that clearly is a contrivance to meet the elements of the

---

[2]    Copies of all unreported cases are attached hereto as Exhibit A.

test outlined above. None of the descriptions contained in the Privilege Log include any notation that legal advice was sought or provided. The plaintiff in its Objection now claims that the remaining documents either provided or sought legal advice, but the precise subject of the supposed legal advice is vague and undefined. Moreover, the fact that plaintiff has belatedly waived the privilege as to seven documents without explanation makes it at least questionable whether the remaining documents meet the test.

As the Plaintiff admits, "the [attorney-client] privilege does not protect non-legal communications, including business and technical advice, unless the communications are intended to meet problems which can be characterized as predominantly legal." Carrier Corporation v. the Home Insurance Company, 1992 WL 139778, at *3. Hence, communications that include legal advice are not necessarily privileged. The documents over which the Plaintiff claims privilege require close scrutiny to determine whether the alleged legal advice provided in them amounts to the predominant characteristic of the communications. Even Uniroyal concedes that several of the documents originally sought could not withstand this scrutiny.

Plaintiff's broad circulation of several of the Privilege Log documents to as many as eleven unidentified persons raises an issue concerning whether these documents were intended to be confidential attorney-client communications. As noted by the Plaintiff, "A communication made to or in the presence of third parties is not privileged 'unless those other individuals present are agents or employees of the attorney or the client and their presence is necessary to the consultation." Id. (citing

State v. Gordon, 197 Conn. 413, 424 (1985). Syngenta concurs with this analysis, but questions how Uniroyal can have failed to identify these individuals in its Objection in order to meet its burden. In the absence of explanation by Uniroyal, it may be inferred that these eleven individuals are representatives of various Uniroyal corporate offices or functions. Merely including the Legal Department in the distribution does not protect the communication.

II.     "At Issue" Exception to the Attorney Client Privilege

The Connecticut Supreme Court has held that the "at issue" exception is invoked when the contents of the legal advice is integral, as it is here, to the outcome of the legal claims of the action. Thus, the "at issue" exception applies when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, "*or specifically places at issue, in some other manner, the attorney-client relationship.*" Metropolitan Life Insurance Company v. Aetna Casualty and Surety Company, 249 Conn. 36, 53 (1999) (emphasis added). In the case at bar, Uniroyal claims that it specifically negotiated special contractual protection in the Development and Supply Agreements that provided it with exclusive rights in perpetuity to Bonzi uses which it developed. The documents that Uniroyal is seeking to withhold on attorney-client privilege grounds go to the heart of this critical issue in the case.

### Conclusion

For the reasons set forth above, Syngenta respectfully requests that its motion to compel plaintiff to produce documents identified in Plaintiff's Privilege log be granted, together with such other and further relief as the Court deems just and proper.

**DEFENDANT
SYNGENTA CROP PROTECTION, INC.**

By: _____
William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo (Fed. Bar No. ct16318)
Piyush Sharma (Fed. Bar No. ct23463)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: psharma@goodwin.com

- and -

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
John S. Folmsbee (Fed. Bar No. ct24887)
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com
Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2003, a copy of the foregoing Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Compel Production of Documents Identified in Plaintiff's Privilege Log Dated May 28, 2003 was sent via First Class U.S. mail to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

                                                                  _____
                                                                  Piyush Sharma
                                                                  Fed. Bar No. ct23463

103473 v.01

# EXHIBIT A

Not Reported in A.2d
6 Conn. L. Rptr. 478
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Hartford-New Britain, at Hartford.

CARRIER CORPORATION
v.
The HOME INSURANCE COMPANY.

No. 35 23 83.

June 12, 1992.

*MEMORANDUM OF DECISION ON DEFENDANTS' RENEWED JOINT MOTION FOR COMPLIANCE*

SCHALLER, Judge.

*Procedural Background*

\*1 The plaintiff, Carrier Corporation ("Carrier"), has brought this declaratory judgment action to determine whether the defendant insurance companies must indemnify the plaintiff for cleanup costs, liability and fines, and defense costs incurred in connection with alleged hazardous waste contamination occurring at approximately forty-four sites in which the plaintiff has been or will be held liable for environmental damage. This case has involved hundreds of defendants, although not all of the defendants remain; the discovery requests have concerned hundreds of thousands of documents. Indeed, the privilege log alone involves over ten thousand documents.

The defendants in this case have undertaken a joint defense, and will be referred to herein as the defendants or joint defendants except where otherwise indicated.

The procedural history relevant to the instant motion follows:

On April 18, 1989, Carrier filed responses to the defendants' first set of interrogatories and requests for production of documents. Pursuant to the Case Management Order dated August 29, 1989, Carrier compiled a log for all documents withheld on the basis of claims of privilege and work product. According to the Case Management Order, the privilege log was required to contain, for each document withheld on the grounds of privilege or work product, information pertaining to the type of document, the number, date, author, addressee, recipients of copies, the subject matter, as well as the legal basis for withholding the document.

The defendants, arguing that the privilege log compiled by the plaintiff fell short of the requirements of the Case Management Order by failing to set forth with adequate specificity the subject matter of the documents withheld and the legal basis for withholding them, filed a motion for compliance on September 26, 1990. In that motion, the defendants sought an order requiring Carrier to revise its privilege log and to produce certain documents put at issue by the plaintiff through the filing of the underlying declaratory judgment action. The motion was heard by the court, Koletsky, J., who, on September 11, 1991, ordered, inter alia, that the plaintiff revise its privilege log to include with more specificity the information requested by the defendants and required by the earlier case management order, and that the privilege log conform "in terms of the amount of information disclosed and the specificity of the information" to the privilege log prepared by defendant Travelers in response to the plaintiff's request for production.

In response to Judge Koletsky's order, the plaintiff compiled and submitted a supplemental privilege log which included some of the additional information required by Judge Koletsky. The defendants claim, however, that the plaintiff has yet to comply with the guidelines set forth by Judge Koletsky, and that the plaintiff has otherwise failed to provide sufficient information in its supplemental privilege log to support its asserted claims of privilege and work product protection. In their renewed joint motion for compliance, the defendants request the court to order the plaintiff to produce all documents for which the supplemental privilege log entry does not meet or exceed the specificity required by Judge Koletsky's September 11, 1991 ruling; all documents for which the supplemental privilege log entry does not adequately support the plaintiff's claims of attorney-client privilege or work product protection; all documents relating to matters which the plaintiff has put at issue by its claims for defense and indemnification; and other just and equitable relief. The defendants' motion is supported by a memorandum of law, a reply memorandum, and by copious exhibits, submissions, and affidavits.

\*2 The plaintiff has objected to the motion, arguing,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d  
6 Conn. L. Rptr. 478  
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 2

inter alia, that the law of the case prevents the defendants from reopening issues resolved by Judge Koletsky's September 11, 1991 order, that the supplemental privilege log complies with that order, that the plaintiff does not lose its attorney-client privilege or its work product protection simply by filing this lawsuit against its insurers. Plaintiff further argues that neither Judge Koletsky's order nor Connecticut law support the defendants' argument that attorney involvement is required to support a claim for work product protection. The plaintiff has supported its objection with a memorandum of law, a supplemental memorandum, and with numerous exhibits and submissions.

*Issues*
A. *THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT CLAIMS*

1. *Attorney-Client Privilege*

In their renewed joint motion for compliance, the defendants have raised at least three issues with respect to the plaintiff's claims of attorney-client privilege. First, the defendants argue that public, business, or technical information is not privileged; second, that communications to or from an attorney are privileged only when such communications take place within the context of an attorney-client relationship and when confidential communications are, in fact, made for the purpose of seeking legal advice; and, third, that communications sent to third parties, with a copy to the plaintiff's attorneys, are not confidential and, therefore, not protected by the privilege.

"The basic principles of the attorney-client privilege are undisputed. Communications between the client and attorney are privileged when made in confidence for the purpose of seeking legal advice." *State v. Burak,* 201 Conn. 517, 527, 518 A.2d 639 (1986), citing *Doyle v. Reeves,* 112 Conn. 521, 523, 152 A. 882 (1931); Tait & LaPlante, *Handbook of Connecticut Evidence* (1976) § 12.5. A widely-cited formulation of the privilege states that "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Rienzo v. Santangelo,* 160 Conn. 391, 395, 279 A.2d 565 (1971); *United States v. Goldfarb,* 328 F.2d 280, 281 (6th Cir.1964); see also Wigmore, *Wigmore on Evidence,* § 292, p. 584 (McNaughton Rev.1961). The plaintiff's claims of attorney-client privilege must satisfy these elements as they have been interpreted by decisional law and as more fully set forth below.

The burden of proving facts essential to the privilege is on the person asserting it. *State v. Hanna,* 150 Conn. 457, 465-66, 191 A.2d 124 (1963); *Tunick v. Day, Berry & Howard,* 40 Conn.Sup. 216, 219, 486 A.2d 1147 (1984). The question of whether a communication is privileged is a question of law for the court to decide. *Miller v. Anderson,* 30 Conn.Sup. 501, 505, 294 A.2d 344 (App.Div.1972).

*3 The defendants' first argument is that the public, business, and technical information is not protected by the privilege. In fact, public information is not protected by the attorney-client privilege. *Syracuse Supply Co. v. U.S. Lumber Co.,* 40 Conn.Sup. 198, 201, 484 A.2d 1377 (1985, Fracasse, J.); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 515 (1976). Technical information, such as the results of research, tests and experiments, communicated to an attorney, is not protected by the attorney-client privilege unless such information is communicated to the attorney for a legal opinion or interpretation. *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 147 (citations omitted); see also *Willemijn Houdstermaatschaapij BV v. Apollo Computer,* 707 F.Supp. 1429, 1448-49 (D.Del.1989). The privilege does not protect non-legal communications, including business and technical advice, unless the communications are intended to meet problems which can be characterized as predominantly legal. *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 203-04 (E.D.N.Y.1988). "Only if the attorney is 'acting as a lawyer'-- giving advice as to the *legal implications* of a proposed course of business-- may the privilege be properly invoked." (emphasis added) *Willemijn Houdstermaatschaapij BV v. Apollo Computer,* supra, 1448, quoting *Hercules, Inc. v. Exxon Corp.,* supra, 147.

The attorney-client privilege attaches to the communication itself, not to the facts communicated, and, therefore, may not be used to protect the disclosure of underlying facts to opposing counsel. *Buford v. Holladay,* 133 F.R.D. 487, 491 (S.D.Miss.1990); *Solomon v. Scientific American, Inc.,* 125 F.R.D. 34, 37 (S.D.N.Y.1988). "Legal departments are not citadels into which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality." *SCM Corp. v. Xerox Corp.,* supra, 515 (1976). Thus, the attorney-client privilege does not protect

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
6 Conn. L. Rptr. 478
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 3

documents or communications that can be characterized as conveying purely technical or business information, nor does the privilege protect against the disclosure of the facts communicated. "Whatever legal judments are contained in the documents would merit protection, if at all, as work product, not by application of the attorney-client privilege. *Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947)." *SCM Corp. v. Xerox,* supra, 515.

Because the privilege exists only to secure the client's subjective freedom of communication, *State v. Hanna,* supra, 466; *Syracuse Supply Co. v. U.S. Lumber Co.,* supra, 201, the communication sought to be protected by the attorney-client privilege must be confidential, *LaFaive v. DiLoreto,* 2 Conn.App. 58, 65, 476 A.2d 626 (1984), citing *State v. Hanna,* supra, 466. The attorney-client privilege applies only to "that information born of confidential communication." *Trumpold v. Besch,* 19 Conn.App. 22, 28, 561 A.2d 438, cert. denied 212 Conn. 812 (1989), U.S. cert. denied 100 S.Ct. 1476. A communication made to or in the presence of third parties is not privileged "unless those other individuals present are agents or employees of the attorney or the client and their presence is necessary to the consultation." *State v. Gordon,* 197 Conn. 413, 424, 497 A.2d 965, 504 A.2d 1020 (1985).

*4 The hallmark of a privileged communication is that it must be disclosed by the client to the attorney with a "reasonable expectation of confidentiality." *State v. Burak,* supra, 526, citing *State v. Colton,* 174 Conn. 13, 138-39, 384 A.2d 343 (1977). It is a reality of our adversary system, however, that attorneys must often rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. *United States v. Nobles,* 422 U.S. 225, 237-38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975); *United Coal Companies v. Powell Construction Co.,* 839 F.2d 958, 966 (3rd Cir.1988). For that reason, the attorney-client privilege may be used to protect communications made through agents for communication and to persons hired by the attorney to collect and assemble facts necessary for the representation, but to no greater extent than they would have been had they been made directly between the principals. *Syracuse Supply Co. v. U.S. Lumber Co.,* supra, 201. Therefore, where a client invokes the attorney-client privilege for communications made by, to, or in the presence of third parties other than the client or the attorney, such third parties must be agents of either the attorney or the client, and such parties must be "necessary to the consultation." *State v. Gordon,* supra, 424.

Where the party asserting the attorney-client privilege is a corporation, the court must also determine which officers or employees constitute the "corporate client." The Connecticut courts have not yet developed or adopted a test to determine the scope of the attorney-client privilege in this situation. According to the "control group" test, which is the traditional method for determining the identity of the corporate "client," an employee or other representative of a corporation may be considered the client "if the employee making the communication ... is in a position to control or even to take a substantial part in the decision about any action which the corporation may take upon the advice of the attorney." *City of Philadelphia v. Westinghouse Electric Corp.,* 210 F.Supp. 483, 485 (E.D.Pa.1962). The United States Supreme Court has declined to adopt as determinative the control group test, opting instead for a case by case, fact-oriented approach rather than a broad statement of principle. See *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In doing so, the Court noted that the control group test may be too narrow in that it "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." Id., 392. Responding to this and like criticism, the New York courts have formulated the following test: In order for the attorney-client privilege to apply in the corporate context, (1) the communication should have been made for the purpose of securing legal advice; (2) the employee making the communication should have done so at the direction of his corporate superiors; (3) the superiors should have made the request so that the corporation could secure legal advice; (4) the subject matter of the communication should have been within the scope of the employee's duties; (5) and the communication should not have been disseminated beyond those persons who needed to know the information. *Cuno, Inc. v. Pall Corp.,* supra, 203-04.

*5 The court finds the New York test satisfactory in that it protects the corporation's right to seek the advice of counsel, while at the same time ensuring that the communications protected are clothed in at least some degree of confidentiality. Accordingly, this test shall be applied to determine the scope of the privilege where the client is a corporation. It is thus, incumbent upon the plaintiff to prove, in addition to the above outlined general rules of attorney-client

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
6 Conn. L. Rptr. 478
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 4

privilege, each element of the test for application of the privilege in the corporate context.

### 2. Work Product

In their motion to compel production of documents withheld by the plaintiff on the ground of work product protection, the defendants argue that, for the protection to apply, documentary and other evidence must have been prepared: 1) by or at the request of an attorney; 2) in anticipation of litigation; and 3) by the party or by the party's representative. These issues will be considered together.

The Connecticut Supreme Court has defined work product as "the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." *Stanley Works v. New Britain Redevelopment Agency*, 155 Conn. 86, 95, 230 A.2d 9 (1967). The definition of work product has since been revised and codified in Practice Book § 219, which states that:

> a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative only upon a showing that the party seeking discovery has a substantial need of the materials in preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials ..., the court shall not order disclosure of the mental impressions, conclusions, legal opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The burden of establishing that the information sought constitutes work product is upon the party asserting such a claim. *Buckland v. New Haven Podiatry Associates*, 4 CSCR 176 (January 10, 1989, Flanagan, J.), citing *Hydramar, Inc. v. General Dynamics Corp.*, 119 F.R.D. 367, 369 (E.D.Pa.1988); *Conoco, Inc. v. United States Dept. of Justice*, 687 F.2d 724, 730 (3d cir.1982).

The Practice Book definition of work product extends only to materials prepared "by or for another party or by or for that party's representative." Practice Book § 219. The *Stanley Works* decision included an additional requirement that "[t]he attorney's work must have formed an essential step in the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys." *Stanley Works v. New Britain Redevelopment Agency*, supra. The parties disagree on the issue of whether this requirement was modified by the subsequent amendment of the Practice Book, which does not contain an "attorney involvement" requirement, or whether the term "representative" contained in the Practice Book definition of work product incorporates this requirement.

*6 While the Practice Book did not adopt language identical to that contained in the *Stanley Works* decision, numerous cases decided since the adoption of Practice Book § 219 have cited *Stanley Works* in holding that attorney involvement is a necessary element of the work-product doctrine, while none have held that attorney involvement is not required. See, e.g., *Witkowski v. Gryboski*, 5 Conn.L.Rptr. 417, 417-418 (January 2, 1992, Sheldon, J.); *Emerick v. Moraes*, J.D. Hartford/New Britain at Hartford (January 3, 1992, Walsh, J.); *Litwak v. Lemans*, 1 Conn.L.Rptr. 778, 779 (June 19, 1990, Jones, J.); *Gonzalez v. White, Jr.*, 5 CSCR 545 (June 18, 1990, Jones, J.); *Falvey's Inc. v. Republic Oil Co., Inc.*, 3 CSCR 931, 932 (November 3, 1988, Schimelman, J.). "Connecticut has adopted a narrower concept of the work product privilege; i.e., the privilege is limited to work product of *lawyers*." *Falvey's Inc. v. Republic Oil Co., Inc.*, supra, 932 (emphasis added), citing *Jacques v. Cassidy*, 28 Conn.Sup. 212, 219 (Super.Ct.1969). Thus, a lack of involvement by plaintiff's counsel in securing the requested information would bar the application of the work-product privilege to the requested information. *Jacques v. Cassidy*, supra; see also *Litwak v. Lemans*, supra, 779; *Gonzalez v. White, Jr.*, supra, 545. The court concludes that "attorney involvement" in the production of the requested documents or information is required.

Unlike the "attorney involvement" element of the work product doctrine, the "in anticipation of litigation" requirement was made express by the adoption of Practice Book § 219, which limits application of the work product rule to materials "prepared in anticipation of litigation or for trial." This requirement seeks to distinguish between materials prepared in the ordinary course of business, which are "clearly discoverable under Practice Book § 218," and those prepared for litigation, which may be protected by the work product rule, a distinction which can become particularly problematic where both motives are involved. See *Falvey's, Inc. v. Republic Oil Co.*, supra, 932.

The *Stanley Works* decision provides work product

Case 3:02-cv-02253-AHN     Document 48     Filed 10/24/2003     Page 13 of 16

Not Reported in A.2d
6 Conn. L. Rptr. 478
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 5

protection for the products of an attorney's activities "when those activities have been conducted with a view to pending or anticipated litigation." *Stanley Works v. New Britain Redevelopment Agency,* supra, 95. The *Falvey's* court noted that "certainly, litigation is a contingency to be recognized" where the allegedly improper disposal of hazaradous wastes is involved, but "given the equally reasonable desire" of the plaintiffs to satisfy governmental orders, "it cannot be said that the plaintiff's records were not prepared in the ordinary course of business." *Falvey's, Inc. v. Republic Oil Co.,* supra, 932 (finding that the materials at issue had in fact been prepared in anticipation of litigation). A more restrictive application of the work-product rule was recognized in *Lieberman v. Freedom of Information Commission,* 3 CSCR 711, 712 (August 2, 1988, Ripley, J.), where it was held that work product protection only applies to materials obtained or produced when a "*specific* legal action is pending or contemplated." (emphasis added) Id.

*7 Because application of the work product doctrine tends to prevent a full disclosure of facts relevant to the truthful disposition of a case, and because the rule is an exception to the general rule permitting discovery of "documents and tangible things," *State v. Cascone,* 195 Conn. 183, 186, 487 A.2d 186, appeal after remand 10 Conn.App. 163, cert. denied 203 Conn. 808 (1985), the rule should be narrowly interpreted. Accordingly, the work product rule may be used to protect against disclosure of materials or facts obtained or produced by an attorney or the attorney's representative in preparation for a particular litigation, pending or reasonably anticipated; materials otherwise subject to discovery may be subject to a motion to compel.

B. THE "AT ISSUE" EXCEPTION AND RELATED ISSUES

1. *The "Placing-at-Issue" Issue*

The defendants have advanced the argument that fairness and equity require that the plaintiff produce documents relating to matters that the plaintiff has itself put into issue by filing this declaratory judgment action. The plaintiff argues in response that it does not forfeit its attorney-client privilege or its work product protection simply because it exercises the right to enforce its rights under the various contracts of insurance at issue in this action.

It is noted that no Connecticut appellate court has addressed the "at issue" exception to the attorney-client privilege. However, courts in other jurisdictions have addressed the issue, although with varying conclusions. See, e.g., *Handgards, Inc. v. Johnson & Johnson, Inc.,* 413 F.Supp. 926, 929 (N.D.Cal.1976; *Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.,* 22 F.R.D. 129 (E.D.Pa.1973); *Sedco International, S.A. v. Cory,* 683 F.2d 1201 (8th Cir.), cert. denied 459 U.S. 1017 (1982); *Lorenz v. Valley Forge Ins. Co.,* 815 F.2d 1095 (7th Cir.1987); *Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674 (S.D.N.Y.1983); see also Note, Developments in the Law of Privileged Communications, 98 Harv.L.Rev. 1450, 1637-43 (1985). While these and other cases have identified the existence of an "at issue" exception, also known as the doctrine of implied waiver, there is little consensus on its scope and application.

The attorney-client privilege exists only to secure the client's subjective freedom of consultation with his or her professional legal advisor, *State v. Hanna,* supra 465-66, while the work product rule is designed to protect the right of an attorney to thoroughly prepare a case by precluding a less diligent adversary from taking undue advantage of an opponent's efforts. See *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 835, 91 L.Ed. 451 (1947; *Falvey's Inc. v. Republic Oil Co., Inc.,* supra, 932. Because the exercise of these protections are viewed as obstructing the truth-finding process and tending to prevent a full disclosure of the truth, the scope of the protections is narrowly construed. *State v. Cascone,* supra, 186; see also *Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439 (S.D.N.Y.1990). Thus, the injury that would inure to the attorney-client relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of litigation before the privilege may be upheld. See *State v. Cascone,* supra; 8 Wigmore, *Wigmore on Evidence,* (McNaughten Rev.1961) § 2285, p. 527. Furthermore, the attorney-client privilege should be applied only when necessary to effect its limited purpose of encouraging complete disclosure by the client to the attorney; the work product privilege should be applied only where necessary to protect those aspects of the adversarial system which underlie its existence. See *Torney v. U.S.,* 840 F.2d 1424, 1428 (9th Cir.1988). In addition, the privilege may not be used to prejudice an opponent's case or to disclose some selected communications for self-serving purposes. *U.S. v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991); *In re Von Bulow,* 828 F.2d 91, 101-02 (2d Cir.1987).

*8 In a civil damages action, fairness requires that the privilege holder surrender the privilege to the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
6 Conn. L. Rptr. 478
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 6

extent that it will weaken in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claims, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.
*Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire,* 838 F.2d 13, 20 (1st Cir.1988).

The "at issue" doctrine, itself, originally gained acceptance in situations where the holder of the privilege relies on a legal claim or defense, the truthful resolution of which requires consideration of the confidential communications. See, e.g., *Byers v. Burleson,* 100 F.R.D. 436, 440 (D.D.C.1983) (legal malpractice action); *Handgards, Inc. v. Johnson & Johnson, Inc.,* supra, 929 (special defense of good faith reliance on the advice of counsel); *Tasby v. United States,* 504 F.2d 332, 36 (8th Cir.), cert. denied 419 U.S. 1125 (1975) (criminal defendant appealing on the grounds of inadequate legal representation). *Hearn v. Ray,* 68 F.R.D. 574 (E.D.Wash. 197) held that the "placing-at-issue" waiver applies where the privilege holder, through some affirmative act, makes an assertion that renders otherwise privileged matter directly relevant to the action, and where upholding the privilege would deprive the opposing party of information necessary to prosecute his or her claim or defense. Id., 581.

The genesis of this doctrine is grounded in fairness to the opposing party and in a judicial balancing of the costs to the truthful disposition of the litigation against the policies underlying the attorney-client privilege and the work product rule. See *Byers v. Burleson,* supra, 440; *Waste Management, Inc. v. International Surplus Lines,* 144 Ill.2d 178, 161 Ill.Dec. 74, 579 A.2d 322 (1991); see also J. Moore, Moore's Federal Practice § 26-60[6] (2d ed. 1983).

The placing-at-issue rule, however, while finding its justification in principles of fairness and equity, has been criticized as eviscerating the full, system-wide benefits of the privileges, and as providing an exception which cannot easily be limited. See Note, *Developments in the Law of Privileged Communications,* 98 Harv.L.Rev. 1450, 1640-43 (1988). Generally, the courts have been reluctant to pierce the protections provided by the privileges in situations where the nature of the protected communications and the legal effects thereof are not the direct subject of the dispute, but where the communications enter the case as an element of the opposing party's *proof* of a claim or defense. See *Lorenz v. Valley Forge Ins. Co.,* supra 1097-98; *Handgards, Inc. v. Johnson & Johnson, Inc.,* supra, 929; but see *Waste Management, Inc. v. International Surplus Lines,* supra.

Because there are satisfactory alternative grounds for appropriate resolution of the pending issues, the court declines to apply the "at issue" exception, at this time.

2. *The "Cooperation Clause" issue*

*9 In their original motion for compliance (before Judge Koletsky), the defendants attempted to procure the withheld documents by invoking the "cooperation clause" contained in the various contracts of insurance entered into by the parties. This clause contains boilerplate language, commonly included in contracts for insurance, which requires the insured to assist the insurer in defending claims against the insured. It is noted that a duty to cooperate may exist even in the absence of an express contractual provision, by virtue of the duty of good faith and fair dealing, which applies to insurance contracts, see *Hoyt v. Factory Mutual Liberty Ins. Co.,* 120 Conn. 156, 159, 179 A. 842 (1935); see also *Magnan v. Anaconda Industries,* 193 Conn. 558, 566, 479 A.2d 781 (1984).

In his earlier order rendered in a bench decision, Judge Koletsky held that the cooperation clause does not apply "unless there is a defense being provided" by the insurer. The existence of the cooperation clause affects the applicability of the attorney-client privilege in two important ways.

First, it is axiomatic that in order for a communication to be protected by the attorney-client privilege, the client must entertain at least a reasonable expectation of confidentiality. *State v. Cascone,* supra, 186-87, n. 3. Absent indications to the contrary, where an insured is contractually required to assist its insurer in preparing a defense to claims brought against the insured by third parties, the insured cannot *in good faith* entertain a reasonable expectation that the facts underlying those claims will not be disclosed to its insurer once the claim for coverage is made. "Good faith" has been defined as "honesty in fact" General Statutes § 42a-1-201(19), as "honesty of purpose, freedom from intention to defraud," and as "[a]n honest intention to abstain from taking an unconscientious advantage of another, *even through the forms or technicalities of law....*" (citations omitted). *Phillipe v. Thomas,* 3

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
6 Conn. L. Rptr. 478
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 7

Conn.App. 471, 474-75, 489 A.2d 1056 (1985).

When the claim first arises, insurer and insured are not adverse, but are in privity and share a common interest in minimizing their exposure to legal and monetary liability and, until there is a declaration to the contrary, insurers continue to bear responsibility for settlement and litigation costs in the underlying action. *Waste Management v. International Surplus Lines,* supra, 335-36. Furthermore, given the fact that the insurer is dependent upon the insured for fair and complete disclosure, see *Arton v. Liberty Mutual Ins. Co.,* 163 Conn. 127, 134, 302 A.2d 284 (1972), and given the fact that the insured is bound to exercise good faith and fair dealing, even if the plaintiff had intended to keep such information confidential, such an expectation would not have been reasonable. Therefore, while these communications may enjoy privileged status as to other parties, they should not properly be privileged as to insurers, who may well bear the ultimate burden of payment, because those communications relating to the underlying claims against the plaintiff were not produced with a reasonable expectation that they would be kept confidential from the insurer. Id.

*10 The existence of the cooperation clause bears on a second problem inherent in the plaintiff's work product claims. The work product rule protects an attorney from being forced to disclose files prepared by the attorney in anticipation of litigation. Practice Book § 219; *Stanley Works v. New Britain Redevelopment Agency,* supra, 95. Because the dominant purpose of the work product rule is the protection of the adversary system, see *United States v. Nobles,* supra, 237-38, and because it is an exception to the general rule permitting discovery, the work product rule appropriately has been given a narrow interpretation consistent with its underlying purposes, see *State v. Cascone,* supra 186; *Falvey's Inc. v. Republic Oil Co., Inc.,* supra, 932. Faced with a situation similar to that presented here, the *Waste Management* court noted that:

> In the typical case, material is generated in preparation for trial against an adversary who may seek disclosure of his opponent's work product. Here, the sought-after materials were, in the first instance, prepared for the mutual benefit of insureds and insurers against a third-party adversary.... While the work-product materials, had they been requested by the third-party opponent in the underlying lawsuit, would have been entitled to protection, that same protection is not warranted here. This, we firmly believe, was not the situation contemplated by *Hickman [v. Taylor]....*
> Insureds here seek to use the doctrine's protection in a manner that is inconsistent with the purpose and intent of the rule.... To permit the insured's attorney to invoke the work-product rule as a bar to discovery in this instance would effectively allow the rule to be used as sword rather than, as intended, a shield.

*Waste Management, Inc. v. International Surplus Lines,* supra, 330.

Like the situation presented in *Waste Management,* the instant case does not present circumstances contemplated by *Hickman v. Taylor, Stanley Works,* or Practice Book § 219 because it appears that, at least, some of the materials sought were produced at a time when the parties shared predominantly common, *nonadversarial* interests and when, indeed, the insured was under a duty to cooperate with the insurer in its defense of the underlying action. Thus, while, ordinarily, materials prepared for an earlier litigation may enjoy work product protection in a subsequent action, see, e.g., *Midland Investment Co. v. Van Alstyne, Noel & Co.,* 59 F.R.D. 134 (S.D.N.Y.1973), in a case in which the parties shared a common interest in the underlying litigation ... one characterized by contractual privity, shared exposure, and the duty of cooperation, ... the parties may not refuse to disclose to one another materials obtained or produced within the scope of their common interest. Furthermore, regardless of whether the duty to cooperate extends to situations where the insurer denies coverage, the work product rule permits sufficient consideration of fairness and equity, see, e.g., *Hearn v. Ray,* supra, 581-82; *Handgards, Inc. v. Johnson & Johnson, Inc.,* supra, 929, to prohibit an insured from simultaneously seeking payment for liability incurred and denying the insurer's right to examine materials related to the underlying claims.

3. *Conclusion and Order*

*11 As noted above, because the defendants' motion for compliance can be decided satisfactorily on preferable alternative grounds, the court declines to adopt the "at issue" doctrine in this instance. For the foregoing reasons, however, the court does conclude that the attorney-client privilege and work product protection are not applicable to materials generated in connection with the underlying actions against the plaintiff by third parties, for which the plaintiff seeks indemnification and/or defense costs from the defendants under insurance contracts containing provisions requiring cooperation. However, these protections may be available to bar disclosure of any

Not Reported in A.2d  
6 Conn. L. Rptr. 478  
(Cite as: 1992 WL 139778 (Conn.Super.))

Page 8

communications or materials generated in preparation for this declaratory judgment action, subject to the principles of applicable law articulated in this memorandum of decision.

The nature of this decision renders it unnecessary to determine whether individual entries presently contained in the privilege log comply wih the orders previously rendered by the court, Koletsky, J.

The court anticipates that the principles and conclusions contained in this decision will provide sufficient guidance to the parties to enable compliance with discovery requests where claims of attorney-client privilege or work product protection have been made. The vast number of such claims effectively prevents judicial resolution of the disputes on an individual basis. Where necessary, special protective orders may be sought with regard to individual documents or information on a limited basis, however.

Accordingly, the court orders the plaintiff to comply with the discovery requests of defendants by applying the principles in this decision. Where a claim of privilege or work product is reasserted, the reason for such assertion must be accompanied by a reference to the principles articulated in this decision, together with factual representations sufficient to enable the court to determine the issue. Correspondingly, any subsequent motions to compel dealing with claims of privilege or work product shall also refer to the principles articulated herein. In the event that, hereafter, an issue of privilege or protection under the work product doctrine arises in a context reasonably governed by this decision, and a party either asserts the attorney- client privilege or work product protection or claims the unavailability thereof in contravention of the principles of this decision, sanctions may be requested by any affected party to the action.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works