UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY : : : : Plaintiff, : : v. : : SYNGENTA CROP PROTECTION, INC. : : Defendant. : | Civil Action No. 3:02CV02253 (AHN) OCTOBER 24, 2003 |

**REPLY MEMORANDUM TO PLAINTIFF'S
OBJECTION TO DEFENDANT'S MOTION TO COMPEL
PLAINTIFF TO PRODUCE CONFIDENTIAL DOCUMENTS**

Defendant Syngenta Crop Protection, Inc. ("Syngenta") submits this reply memorandum in further support of its Motion to Compel Plaintiff to Produce Documents, dated September 15, 2003 (the "Motion to Compel"), and to rebut issues raised in Plaintiff's Objection to Defendant's Motion to Compel Plaintiff to Produce Confidential Documents, dated October 14, 2003 (the "Opposition Memorandum"). Syngenta's proposed confidentiality order should be entered because plaintiff, Uniroyal Chemical Company, Inc. d/b/a Crompton Manufacturing Company ("Uniroyal"), has not objected to it. In fact, Uniroyal does not even address, in its Opposition Memorandum, that prong of Syngenta's Motion to Compel requesting the Court to enter its proposed confidentiality order. Furthermore, Syngenta will gladly accept

Uniroyal's offer of unredacted copies of Site Description Forms for all of Uniroyal's research and trial reports relating to Bonzi, in lieu of the complete research reports, which Uniroyal maintains are "confidential: attorneys eyes only" documents. Uniroyal should be ordered to produce the remaining "attorneys eyes only" documents sought by Syngenta because Uniroyal has failed to meet its burden of proof in demonstrating that a protective order is necessary.[1]

## Argument

I. **Syngenta's Proposed Confidentiality Order Should Be Entered**

Syngenta's proposed confidentiality order, attached as Exhibit A to its Memorandum of Law in Support of its Motion to Compel, should be entered because Uniroyal has not objected to it. Uniroyal fails to even address Syngenta's confidentiality order in the Opposition Memorandum.[2] Instead, Uniroyal refers to its own confidentiality order, which Syngenta has refused to accept because of its Draconian terms.

---

[1]  Syngenta does not object to the designation of any Uniroyal documents as confidential "Class 1 Documents." This dispute concerns the extent to which Uniroyal can designate documents as "confidential: attorneys eyes only," which Syngenta has labeled "Class 2 Documents" in its proposed confidentiality order. See Syngenta Confidentiality Order, ¶1.

[2]  D. Conn. L. Civ. R. 7(a) provides, in pertinent part, that: "Failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion. Nothing in this Rule shall require the Judge ruling on the motion to review portions of the record in response to a motion, where the moving papers do not make specific reference to such portions of the record."

Syngenta's proposed confidentiality order limits disclosure of any "confidential" documents to only three individuals at Syngenta, provided that they execute an agreement to maintain the documents' confidentiality. See Mem. of Law, p. 19.[3] These individuals include Alan Nadel, in-house counsel for Syngenta, Dr. David Ross, a technical person, and Dr. Joseph DiPaola. See id. None of these individuals have any direct marketing responsibilities relating to Bonzi. Like Uniroyal's proposal, Syngenta's proposed order also provides that a party can challenge the other party's designation of documents as "attorneys eyes only." See Syngenta Confidentiality Order, ¶4. Moreover, at the Court conference on August 29, 2003, Ms. Laurie Treu from Uniroyal stated that she had no objection to a scientist at Syngenta reviewing the "attorneys eyes only" documents as long as the individual was not involved with Bonzi marketing. Syngenta's proposal addresses Ms. Treu's concerns. See Mem. of Law, p. 19. Therefore, there is no reason why Syngenta's proposed order should not be accepted.

II. **Syngenta Accepts Uniroyal's Offer To Allow Syngenta Full And Unrestricted Access to Its Site Description Forms**

In the Opposition Memorandum, Uniroyal offers to provide Syngenta full and unrestricted access to the two-page summary sheet for each of its research and field trial reports referred to as "Site Description Forms." See Opp. Mem., p. 9[4]; Kevin

---

[3]   All references to Syngenta's Memorandum of Law in support of its Motion to Compel are cited to as Mem. of Law, p. __.

Donovan Aff. ¶ 29.[5] In light of Uniroyal's willingness to provide the unredacted two-page Site Description Form for each and every Bonzi research and field trial in its database, Syngenta has no objection to Uniroyal maintaining the underlying field trial database as "attorneys eyes only" pursuant to the terms set forth in Syngenta's proposed confidentiality order.  See Mem. of Law, Ex. A.

### III. Uniroyal Has Failed To Demonstrate A "Clearly Defined And Serious Injury"

With respect to the remaining "attorneys eyes only" documents, Uniroyal has failed to meet its burden of proof in demonstrating that a protective order is necessary. Uniroyal concedes that to demonstrate good cause a movant must show a *"clearly defined and serious injury."*  See Opp. Mem., pps. 12-13.  In meeting this burden, courts have recognized that, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); Sprinturf, Inc. v. Southwest Recreational Indus., Inc., Civil Action No. 01-7158, 2003 U.S. Dist. LEXIS 4707, at *3 (E.D. Pa March 10, 2003)[6]; United States v. Garrett, 571 F.2d 1323, 1326, n. 3

---

[4]  All references to the Opposition Memorandum are cited to as Opp. Mem., p. __.

[5]  This is a new offer. Uniroyal's Mr. Donovan offered to provide Syngenta these two page reports at the settlement conference conducted on August 29, 2003, but was immediately overruled by his colleague, Ms. Laurie Treu, who stated that even these two page forms would be subject to redaction. Indeed, when Mr. Corcoran sent a specimen, Site Description Form to Syngenta's counsel following the conference, he sent a B-Nine form rather than a Bonzi form so that he would not have to redact it.  See Affidavit of William A. Ruskin, dated October 23, 2003, which accompanies this Reply Memorandum.

[6]  Copies of all unreported cases are attached hereto as Exhibit A.

disclosure of "attorneys eyes only" documents will result in a "clearly defined and serious injury."

Furthermore, Uniroyal's Opposition Memorandum completely misses the point. Syngenta has no objection to Uniroyal's adoption of an "umbrella" approach with respect to "confidential" documents. What is at issue here is the extent to which Uniroyal can designate documents as "confidential: attorneys eyes only." A protective order should not extend to "attorneys eyes only" documents because Uniroyal has not met its burden of proof.

In fact, the case to which Uniroyal cites, <u>Topo v. Dhir</u>, acknowledges that "[t]he majority of courts in this district court have only used the specificity requirement of <u>Cipollone</u> when dealing with protective orders seeking to prevent injury to business." <u>See</u> 210 F.R.D. 76, 78 (S.D.N.Y. 2002) (emphasis added). This is precisely the case here. In <u>Topo</u>, the Court granted an employee's motion for protective order barring her employers from inquiring into her immigration status. <u>See id.</u> at 79. That case is completely irrelevant here as it has nothing to do with proprietary business information.

IV.  **Syngenta Is Entitled To Unrestricted Access To All Documents Concerning Bonzi Use Except The Field Trial Database**

Uniroyal does not dispute that the documents sought by Syngenta are relevant and necessary to prepare its defense. Many of these documents contain scientific and industry specific information, which goes to the heart of Uniroyal's allegations. Indeed, Uniroyal alleges that Syngenta "has appropriated the new uses for Bonzi

---

[6]    Copies of all unreported cases are attached hereto as Exhibit A.

developed by Crompton, which under the Development Agreement, were ceded to Crompton by Syngenta's predecessor in interest." See Opp. Mem., p. 6. Therefore, whether the uses Uniroyal claims Syngenta appropriated were confidential and proprietary to Uniroyal, or whether those uses were non-confidential and in the public domain, is highly relevant to the issue of how new uses and application for Bonzi have evolved over the last thirteen years.

Although Uniroyal argues that its field trials should be considered confidential, the discussions of those field trials routinely reported in Uniroyal's newsletters, product use guides and bulletins, and in educational seminars conducted by sales representatives, are not confidential. In his Affidavit, Uniroyal's Kevin Donovan does not dispute that, although Uniroyal's database and field trial reports are not disseminated, marketing and educational materials are disseminated to the public. According to Kevin Donovan:

> There is a crucial distinction between: Crompton's publishing and marketing of the results of the Bonzi field trials (i.e. what works and what doesn't); and the dissemination of the underlying research and trials, which Crompton did not do. Although the <u>results of specific trials were sometimes disseminated</u> to the public through various means, (i.e. trade magazines, Crompton's 'O' Report, educational seminars given by cooperators) during the course of Crompton's expansion of Bonzi's uses, <u>Crompton and the cooperators did not disseminate the trial protocols and/or specific field trial reports of the research</u>. For example, while Crompton widely advertised and marketed its summarized trial results for Bonzi use on poinsettias, it never published or otherwise disseminated the underlying research. (emphasis in the original)

6

Donovan Aff. ¶ 20

Mr. Donovan distinguishes between the underlying field research and database, which he argues is confidential, and the wide dissemination of sales literature, which is not. According to Mr. Donovan, the results of specific trials are publicly disseminated through various means, including trade magazines, Crompton's 'O' Report and educational seminars given by cooperators. Donovan Aff. ¶ 20. Later he states:

> Again, the end product of this work, the expansion of the federal EPA label and the provision of general rate recommendations for specific crops and application methods were widely publicized in the product use guide, technical bulletins, trade magazines and educational seminars.

Donovan Aff. ¶ 24.

Thus, the range of documents that Mr. Donovan urges should be labeled "attorneys eyes only" is very narrow. Therefore, this Court should direct Uniroyal to produce every marketing and sales document concerning Bonzi <u>except</u> for the Bonzi field trial research and database. For purposes of the instant motion, Syngenta will not challenge Uniroyal's designation of the field trial database as "attorneys eyes only", pursuant to the terms of Syngenta's proposed confidentiality order. Finally, Mr. Donovan distinguishes between Bonzi sales and marketing pieces and specific marketing "strategies" designed for "penetrating the PGR market and reaching new customers." Uniroyal does not dispute that its sales and marketing materials are not confidential. Syngenta has no objection to Uniroyal designating specific "marketing strategy" documents as "attorneys eyes only", pursuant to the terms of Syngenta's

proposed confidentiality order. However, the Court should direct Uniroyal to produce all communications between Uniroyal and third parties concerning Bonzi uses and applications, including internet e-mail and sales persons' communications with customers.

## Conclusion

For the foregoing reasons, as well as those stated in Syngenta's Motion to Compel, Syngenta's proposed confidentiality order should be entered. In addition, Syngenta respectfully requests that Uniroyal be ordered to produce "attorneys eyes only" documents responsive to Syngenta's First Request for Production of Documents, dated March 25, 2003, and First Set of Interrogatories and Second Request for Production of Documents, dated March 28, 2003.

DEFENDANT
SYNGENTA CROP PROTECTION, INC.

By: _____
William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo, Jr. (Fed. Bar No. ct16318)
Piyush Sharma (Fed. Bar No. ct23463)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: psharma@goodwin.com
Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2003, a copy of the foregoing Reply Memorandum to Plaintiff's Objection to Defendant's Motion to Compel Plaintiff to Produce Confidential Documents was sent via First Class U.S. mail to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

Piyush Sharma
Fed. Bar No. ct23463

103157 v.01

# EXHIBIT A

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 4707**

*216 F.R.D. 320, \*; 2003 U.S. Dist. LEXIS 4707, \*\**

SPRINTURF, INC. and HANK JULCHER, Plaintiffs, v. SOUTHWEST RECREATIONAL INDUSTRIES, INC., VILLANOVA UNIVERSITY, Defendants.

Civil Action No. 01-7158

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

216 F.R.D. 320; 2003 U.S. Dist. LEXIS 4707

March 7, 2003, Decided
March 10, 2003, Filed, Entered

**SUBSEQUENT HISTORY:** Motion denied by Sprinturf, Inc. v. Southwest Rec. Indus., 2003 U.S. Dist. LEXIS 4683 (E.D. Pa., Mar. 11, 2003)

**PRIOR HISTORY:** Sprinturf, Inc. v. Southwest Rec. Indus., 2002 U.S. Dist. LEXIS 23508 (E.D. Pa., Nov. 18, 2002)

**DISPOSITION:** [\*\*1] Defendants' first motion for protective order granted. Defendant's motion for approval of Stipulated Protective Order denied. Defendants' second and third motions for protective order denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, a company and an individual, sued defendants, a recreation company and a university, over a patent for a turf product. The recreation company and university filed three separate, unopposed motions for protective orders pursuant to Fed. R. Civ. P. 26(c). The parties also filed a stipulated protective order for court approval.

**OVERVIEW:** The court did not approve the stipulated protective order because it failed to require the demonstration of good cause prior to designating any documents as confidential. Moreover, the order did not require the parties to show with any specificity what documents fell within the purview of the order or what precise and well-defined harm would have accompanied the disclosure of such documents. Finally, due to the sheer breadth of the order, its effectuation could have resulted in significant judicial time and resources. The court granted the first motion for a protective order limiting the disclosure of certain documents already submitted to the court because the information about the recreation company's past and future market share, its customers, and other proprietary information was confidential and sensitive and the release of that information could have resulted in a competitive disadvantage to the company. However, the other two motions for protective orders were denied because the information was not a protectable trade secret and the recreation company failed to demonstrate a specific injury.

**OUTCOME:** The first motion for a protective order was granted, but the remaining motions for a protective order and the request to approve a stipulated protective order were denied.

**CORE TERMS:** disclosure, protective order, confidential, good cause, confidentiality, confidential information, first motion, specificity, unnamed, information contained, trade secret, designated, protective, specific injury, serious injury, unopposed, adversely affected, articulate, financial status, product line, demonstration, disadvantage, competitive, competitors, requisite, customers, inflict, confidentiality agreement, designation

**LexisNexis (TM) HEADNOTES - Core Concepts -** ♦ Hide Concepts

Civil Procedure > Disclosure & Discovery > Parotective Orders
HN1 The court may order, upon the demonstration of good cause, that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed in a designated way. Fed. R. Civ. P. 26(c)(7). However, a protective order cannot be granted arbitrarily. Rather than routinely signing orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders, courts must carefully scrutinize requests for confidentiality orders. Even unopposed motions must be scrutinized. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders
HN2 In order to receive the benefit of a protection order, the party seeking the order must show that the information sought is a trade secret or other confidential information protected by Fed. R. Civ. P. 26(c)(7), and that good cause exists to prevent the disclosure of this information. Good cause is established by showing that disclosure will inflict a clearly defined and serious injury on the moving party. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not meet the requisite level of specificity to show good cause. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders
HN3 In determining whether good cause exists under Fed. R. Civ. P. 26(c)(7), the court must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. The United States Court of Appeals for the Third Circuit identifies a number of factors that may be considered when conducting this balancing test: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders
HN4 Protective orders stipulated between the parties are not guaranteed judicial approval. Stipulated protective orders must still meet the requirements of Fed. R. Civ. P. 26(c), which requires demonstrating the existence of confidential information and good cause as to why such information should not be disclosed. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders
HN5 When the court declines to sign a proposed stipulate protective order, the parties may still stipulate among themselves to whatever confidentiality they reasonably, lawfully, and ethically conclude is appropriate. In turn, any alleged breach thereafter may result in sufficient grounds to apply to the court for a court order for protection of some sort permitted by the rules or specifically by Fed. R. Civ. P. 26(c)(7). More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders
HN6 Information that reflects corporation's price competitiveness in market constitutes confidential commercial and research information under Fed. R. Civ. P. 26(c)(7). More Like This Headnote

Civil Procedure > Disclosure & Discovery > Protective Orders
HN7 Failure to show with any specificity that disclosure will cause a defined and serious injury is fatal to a party's request for protective order. More Like This Headnote

**COUNSEL:** For SPRINTURF, INCORPORATED, HANK JULICHER, PLAINTIFFS: JOSEPH M. FIORAVANTI, MEDIA, PA USA.

For SPRINTURF, INCORPORATED, HANK JULICHER, PLAINTIFFS: ANTHONY J. DIMARINO, III,

FREDERICK A. TECCE, MCSHEA/TECCE, P.C., PHILADELPHIA, PA USA.

For SOUTHWEST RECREATIONAL INDUSTRIES, INCORPORATED, VILLANOVA UNIVERSITY, DEFENDANTS: A. KIRK GASPERECZ, ADAMS & REESE, CHRIS P. PERQUE, ADAMS AND REESE, LLP, NEW ORLEANS, LA USA.

For SOUTHWEST RECREATIONAL INDUSTRIES, INCORPORATED, VILLANOVA UNIVERSITY, DEFENDANTS: JULIANNA BURDO, FOX, ROTHSCHILD, O'BRIEN & FRANKEL, PHILA, PA USA.

**JUDGES:** Louis H. Pollak, J.

**OPINIONBY:** Louis H. Pollak

**OPINION:** [*322] MEMORANDUM/ORDER

March 7, 2003

Presently before the court are three separate, unopposed motions by defendants Southwest Recreational Industries ("Southwest") and Villanova University ("Villanova") for protective orders pursuant to Federal Rule of Civil Procedure 26(c). Defendants have also submitted with Plaintiffs Sprinturf, [**2] Inc. and Hank Julicher ("Julicher") a document titled "Stipulated Protective Order" ("SPO") for court approval. For the following reasons, the SPO will be denied, the first motion for a protective order will be granted, and the second and third motions will be denied.

I. Federal Rule of Civil Procedure 26(c)

*HN1* The court may order, upon the demonstration of good cause, that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed in a designated WAY" Fed Rul Civ Pro 26(c)(7), cannot be granted arbitrarily. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 785-86 (3d Cir. 1994). Rather than "routinely signing orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders," courts must carefully scrutinize requests for confidentiality orders. *Id.* at 785-86. Even unopposed motions must be scrutinized. *Software Consulting Partners, Inc. v. Medline Indus., Inc.,* 1999 U.S. Dist. LEXIS 5908, at *2 (E.D. Pa. April 26, 1999) (denying unopposed motion for protective order).

*HN2* In order [**3] to receive the benefit of a protection order, the party seeking the order must show that the information sought is a trade secret or other confidential information protected by Rule 26(c)(7), and that good cause exists to prevent the disclosure of this information. *Miles v. Boeing Co.,* 154 F.R.D. 112, 114 (E.D. Pa. 1994). Good cause is established by showing that disclosure will inflict a clearly defined and serious injury on the moving party. *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984). Broad allegations of harm, "unsubstantiated by specific examples or articulated reasoning," do not meet the requisite level of specificity to show "good cause." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986).

*HN3* In determining whether "good cause" exists, the court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled." *Pansy,* 23 F.3d at 787. The Third Circuit has identified a number of factors that may be considered when conducting this balancing test:

> (1) whether disclosure will violate any privacy [**4] interests;
>
> [*323] (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> (3) whether disclosure of the information will cause a party embarrassment;
>
> (4) whether confidentiality is being sought over information important to public health and safety;
>
> (5) whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefiting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

*Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995). Once again, the "burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order." *Pansy,* 23 F.3d at 786-87.

II. Stipulated Order

HN4 Protective orders stipulated between the parties are not guaranteed judicial approval. *See, e.g., Horgan v. Independence Blue Cross,* 1994 U.S. Dist. LEXIS 1145, at *7 (E.D.Pa. Feb. 3, 2000) (denying judicial approval for stipulated protective order). Stipulated protective orders must still [**5] meet the requirements of Rule 26(c), which requires demonstrating the existence of confidential information and good cause as to why such information should not be disclosed.

Under the SPO proposed by the parties in the case at bar, "either party, or any third person subject to subpoena in this action ... may designate [discovery materials] as 'confidential' or 'confidential—attorneys only.'" Stipulated Protective Order at P 1. Any party may object in writing to the designation of any material, and, if the dispute cannot be resolved, the "objecting party may invoke this Protective Order by objecting in writing to the party who has designated the document or information as Confidential Information." *Id.* at P 11. The designating party is then required to move the court for an "order preserving the designated status of such information within fourteen days of receipt of the written objection, or else waive the confidential status of this document permanently." *Id.* at P 11. The protective order also articulates who may be shown information designated "confidential," what limitations exist on disclosure of this information, and the appropriate standard of care that must be used [**6] to ensure the confidential nature of the material. *Id.* at PP 6, 13.

This court will not approve the SPO for several reasons. First, the SPO fails to require the demonstration of good cause prior to a designation of "confidential." *See Syncor Int. Corp. v. Mody,* 2000 U.S. Dist. LEXIS 1020, at *5 (E.D. Pa. Feb. 3, 2000) (no judicial approval for joint protective order failing to consider good cause standard). Second, the order itself does not require parties to show with any specificity what documents will fall within the purview of the order or what precise and well-defined harm will accompany the disclosure of such documents. 2000 U.S. Dist. LEXIS 10120 at *5 (no judicial approval for joint protective order failing to state with specificity that disclosure will cause defined injury). Third, due to the sheer breadth of this order, its effectuation could well "result in the expenditure of significantly scarce judicial time and resources by entangling the court in a contempt hearing and other proceedings regarding tangential disputes of the parties, and between parties and third parties." *Behrendt v. Unum Life Insur. Co. of America,* 2000 U.S. Dist. LEXIS 13247, at [**7] *1 (E.D. Pa. Sept. 5, 2000).

HN5 Although the court declines to sign the proposed SPO, the parties may still "stipulate among themselves to whatever confidentiality they reasonably, lawfully, and ethically conclude is appropriate." *Horgan,* 1994 U.S. Dist. LEXIS 1145, at *6. In turn, "any alleged breach thereafter may result in sufficient grounds to apply to the court for a court Order for protection of some sort permitted by the rules or specifically by Rule 26(c)(7)." *Id.*

III. Defendants' Motions For Protective Orders

1. First Motion For Protective Order

The defendants' first motion seeks a protective order limiting disclosure of the following [*324] documents already submitted to the court: Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction; the Declaration of Reed Seaton ("Seaton Decl."); and Exhibits "W" and "X" attached to the Seaton Declaration. Def.'s First Mot. at P 1. The defendants seek to limit the disclosure of the contents of these documents to purposes directly related to this litigation, necessary for the prosecution or defense of the litigation, and/or necessary to respond to motions within this litigation.

The defendants have demonstrated [**8] that the information contained in the enumerated documents is confidential and sensitive. This information includes: Southwest's past and future market share, the size of future markets, the impact of plaintiffs' request for injunctive relief on Southwest's customers, and proprietary information regarding the development of Southwest's AstroPlay product line. This information, taken together, constitutes confidential commercial information. See Miles, 154 F.R.D. at 114 HN6 (information that reflects corporation's price competitiveness in market constitutes confidential commercial and research information under Rule 26(c)(7)).

The defendants have also demonstrated that the release of this information could result in competitive disadvantage to Southwest within the Astroturf market. See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866, 890 (E.D. Pa. 1981) (competitive disadvantage recognized harm under Rule 26). This release could enable Southwest's competitors to duplicate Southwest's trade secrets, particularly to the extent that Exhibits "W" and "X" to the Seaton Declaration contain testimony about the development and testing of the [**9] AstroPlay product line. Southwest's competitors would be able to exploit this information during negotiations with Southwest's customers, thereby undermining the defendant's market position. Accordingly, the defendants have demonstrated the good cause necessary to justify a confidentiality order.

2. Second Motion For Protective Order

The defendants' second motion seeks a protective order limiting disclosure of the following documents already submitted to the court: Defendants' Motion to Correct Inventorship; Defendants' Motion to Dismiss Plaintiffs' Complaint; and Memorandum and Exhibits B in support thereof. Def.'s Second Mot. at P 1. The defendants claim that they are entitled to protective relief because the disclosure of such information would violate a confidentiality agreement entered into between an unnamed individual and Southwest on January 24, 2002, which barred disclosure of certain confidential information pertaining to the conception and development of the turf product described and claimed in the '645 Patent. The defendants also claim that this unnamed individual "believes that his interests will be adversely affected if the documents and information sought to be protected [**10] are disclosed to the public." Id. at P 1. The defendants seek the same limitations on the disclosure of this information as sought in their first protective order.

The defendants have not met the requisite standard. First, the defendants have not demonstrated that the information in these documents constitutes a protectable trade secret. Nor have the defendants shown how the details of the unnamed party's role in the invention of the '645 Patent constitute confidential information.

Second, the defendants have failed to articulate with particularity why the disclosure of this information to the public will result in a defined and serious injury. See Wils v. Phillips, 1999 U.S. Dist. LEXIS 19298, at *2 (E.D. Pa. Dec. 17, 1999) HN7 (failure to show with any specificity that disclosure will cause a defined and serious injury fatal to protective order). To the extent that Southwest is worried about its financial status, Southwest has failed to demonstrate specific injury. Southwest does not claim that disclosure will hinder its market position or that disclosure will subject the corporation to liability for breach of its confidentiality agreement. On the other hand, to [**11] the extent that Southwest is concerned about the unnamed individual's financial status, this concern also fails to meet the Rule 26(c) standard. [*325] Southwest fails to demonstrate why the interests of an anonymous non-party should be protected in this way, or why this person would be adversely affected if the information about co-inventorship is disclosed to the public. Southwest's very generalized conclusions fail to demonstrate the specific injury necessary to support a showing of good cause. See Publicker Indus., Inc. v. Cohen, 733 F.2d at 1071.

3. Third Motion For Protective Order

The defendants third motion seeks a protective order limiting disclosure of the following documents already submitted to the court: Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction; Defendants Findings of Fact and Conclusions of Law; and "any of the information contained therein for any purpose that is not directly related to this litigation or necessary for its prosecution or defense." Def.'s Third Mot. at P 2. This motion also fails to show why the information contained in these documents should be considered either a trade secret or sensitive [**12] business information, and why the disclosure of such information would result in a specific injury. In fact, defendants once again rest on the bald conclusion that the unnamed third party "believes that his interests will be adversely affected if the documents and information sought to be protected are disclosed to the public or used in any way except by

the parties for reasons related to the prosecution and defense of this action." *Id.* at P 1. Accordingly, the third motion will also be denied for failing to meet the specificity standard of Rule 26(c).

IV. Conclusion

The SPO submitted by the parties will be denied. The defendants' first motion for a protective order will be granted, as it clearly articulates why the information contained in the documents is confidential and why the disclosure of that information would inflict specific harm. However, the defendants have failed to carry this burden for the section and third motions, which will consequently be denied, albeit with leave to amend. An appropriate Order follows.

**ORDER**

March 7, 2003

Upon consideration of the Stipulated Protective Order and the three Motions For Protective Orders from Defendants Southwest [**13] and Villanova University, it is hereby ORDERED that:

(1) the First Motion for Protective Order (Docket # 11) is GRANTED;

(2) approval of the Stipulated Protective Order is DENIED (copy attached hereto);

(3) the Second Motion For Protective Order (Docket # 39) is DENIED;

(4) the Third Motion For Protective Order (Docket # 55) is DENIED.

Louis H. Pollak, J.

Service: **Get by LEXSEE®**
Citation: **2003 us dist lexis 4707**
View: **Full**
Date/Time: Thursday, October 23, 2003 - 10:45 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

https://www.lexis.com/research/retrieve?_m=28a0914c8d28079950b625f12a4db7c5&csvc=    10/23/2003