UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY : : : : Plaintiff, : v. : : SYNGENTA CROP PROTECTION, INC. : : Defendant. : | Civil Action No. 3:02CV02253 (AHN) MAY 12, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION (i) TO COMPEL DISCOVERY RESPONSES; (ii) TO COMPEL DEPOSITIONS; (iii) TO SERVE ADDITIONAL INTERROGATORIES; and (iv) FOR EXTENSION OF TIME

**Preliminary Statement**

This is a dispute over the marketing and sales rights to a chemical plant growth regulator known as paclobutrazol, which is sold under the trade name "Bonzi." Defendant Syngenta Crop Protection, Inc. ("Syngenta") has served multiple discovery requests on plaintiff Uniroyal Chemical Company, Inc. d/b/a Crompton Manufacturing Company ("Uniroyal") in an effort to learn the factual bases for Uniroyal's Complaint allegations and to identify the persons with knowledge of those allegations. Uniroyal has failed fully to comply with those discovery obligations. Among other things, Uniroyal has failed to respond to repeated requests for the production of documents related to (i) the development of alleged new Bonzi product uses by Uniroyal and documents dealing with its field research trials, (ii) the

financial and contractual arrangements pursuant to which those field trials were conducted, and (iii) the manner in which Uniroyal used those field trials to develop those new uses for Bonzi contemplated by the parties' agreements, and the outcome of the research done to create new uses of Bonzi. These issues lie at the core of this case. Without this information, Syngenta would be severely prejudiced in its ability to depose Uniroyal's witnesses and to develop its defense.

Moreover, Uniroyal has failed to identify witnesses with knowledge of particular matters relevant to the allegations and factual background supporting its Complaint. Despite numerous good faith efforts by Syngenta to ascertain who these people are and to confirm deposition dates, Uniroyal has not responded in a meaningful way as required by the Federal Rules. With respect to those witnesses Uniroyal has identified, it has frustrated Syngenta's efforts to depose those individuals by taking the position that Syngenta may depose certain of those individuals for less than the full amount of time to which Syngenta is entitled.

Because of the ongoing failure of Uniroyal to comply with discovery and to submit its witnesses to deposition, Syngenta seeks an order from this Court compelling responses to these outstanding discovery requests and requiring Uniroyal's witnesses to submit to deposition for the full amount of time allotted to Syngenta. Syngenta further seeks an order permitting it to serve additional interrogatories pertaining to Uniroyal's alleged damages. Finally, in order to complete discovery and adequately to prepare this matter for trial, Syngenta seeks a 180 day extension of all discovery and other pretrial deadlines set forth in the Court's February 12, 2004 Scheduling Order.

## Facts

Uniroyal commenced this action against Syngenta by Complaint dated December 19, 2002. The gravamen of plaintiff's Complaint stems from its allegations that Syngenta breached two agreements entered into between the parties in January 1991, a Development Agreement and a Supply Agreement.[1] By those agreements, Syngenta granted to Uniroyal, for a certain time period and under certain terms and conditions, the right to sell Syngenta's chemical plant growth regulator, "Bonzi," and to develop, sell and market new uses and formulations of Bonzi pursuant to strictly defined contractual parameters.

Among other things, the Development Agreement granted to Uniroyal the "exclusive right to develop, register, market and sell new uses of Bonzi," for various defined "permitted uses." Development Agreement, § 2. The Development Agreement further provides that:

> For each new use and formulation developed by Uniroyal for use in the Development Field, ICIA [Syngenta's predecessor in interest] will grant to Uniroyal marketing and sales rights as defined in Section 1.2 of the [Supply Agreement]. Said marketing and sales rights shall be granted for 5 years from the date of registration of any new use or formulation. Uniroyal shall retain all marketing and sales rights to any new use or formulation which it develops under this Agreement. This provision shall survive the termination of this Agreement provided termination is not the result of any breach by Uniroyal of this Agreement or the [Supply Agreement]."

Id. § 4.

---

[1] The Development and Supply Agreements are Exhibits A and B, respectively, to the Complaint.

Furthermore, the Development Agreement specifies that "[i]n consideration of the right to develop the new uses and formulations . . ., Uniroyal agrees to make average annual expenditures of $80,000 for five years, beginning in 1992, for the development of new Bonzi uses. Uniroyal agrees to spend $40,000 in 1991 to develop new uses of Bonzi." <u>Development Agreement</u>, § 3. Thus, the plain language of the Development Agreement required Uniroyal to expend a minimum amount in development costs each year in exchange for those development rights from Syngenta.

The Development Agreement expired by its own terms on December 31, 1996. On June 26, 2002, Syngenta advised Uniroyal, in accordance with the Supply Agreement, that the Supply Agreement would terminate as of December 31, 2002.

At issue here is what marketing and sales rights for new uses of the Bonzi product Uniroyal maintains post-termination of the Development and Supply Agreements, and for how long any such rights last. Uniroyal asserts causes of action against Syngenta for breach of contract, conversion of property rights, promissory estoppel and breach of the covenant of good faith and fair dealing. Moreover, Uniroyal seeks permanently to enjoin Syngenta from advertising, promoting and selling Bonzi in the future, and further demands, <u>inter alia</u>, that all Bonzi promotional materials and advertising be delivered to plaintiff's counsel for destruction.

In order to defend against these claims, Syngenta has served numerous discovery demands on Uniroyal. Those requests seek information and documents related to the issues described above including, without limitation, Uniroyal's research and development

("R&D") expenditures for new uses of Bonzi; Uniroyal's purported development of new Bonzi uses; and persons with knowledge of the allegations of Uniroyal's Complaint. Notwithstanding the direct relevance of Syngenta's requests, to date Uniroyal has failed to provide adequate responses.

## ARGUMENT

The Federal Rules of Civil Procedure establish a broad scope of permissible discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). As the Supreme Court has held, a valid discovery request need only "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

When a party fails to comply with a valid discovery request, Rule 37(a) authorizes the Court to grant a motion for order compelling discovery, both written and oral. This power supports the trial court's authority over scheduling and planning of the case. See Fed. R. Civ. P. 16(b); FMC Corp v. Vendo Co., 196 F. Supp. 2d 1023, 1030 (E.D. Cal. 2002) (finding that Rule 16(b) authorizes the court to "modify the pretrial schedule if it cannot

reasonably be met despite the diligence of the part seeking the extension") (internal citations omitted).

## POINT I

## UNIROYAL SHOULD BE COMPELLED TO COMPLY WITH SYNGENTA'S OUTSTANDING DISCOVERY REQUESTS

The discovery requests at issue bear on key contract terms in the Supply and Development Agreements. Several of the outstanding requests involve financial information that is relevant to the provision of the Development Agreement requiring a minimum amount of spending by Uniroyal during the pendency of the agreement, as well as Uniroyal's allegations that Bonzi R&D -- which it claims is proprietary to Uniroyal -- was in fact financed and paid for by Uniroyal. Other requests seek information regarding the new uses of Bonzi that Uniroyal claims it created during the course of the parties' contractual relationship. These issues go to the heart of Uniroyal's claims against Syngenta, and discovery thereon is critical to Syngenta's defense.

Moreover, Uniroyal seeks to enjoin Syngenta from labeling its Bonzi product for uses that Uniroyal claims to have developed. This is an extraordinary remedy, and Syngenta is entitled to a full disclosure of all documents relevant to this claim. For <u>each</u> new use claimed to have been developed by Uniroyal, Syngenta is entitled to discovery of the contractual and financial documentation that led to the underlying R&D of those uses. Only then may it be determined whether these are in fact "new uses," and if so, whether they were "developed by Uniroyal."

In accordance with Local Rule 37(a), the discovery requests at issue are addressed below by the pleading in which they were sought, copies of which are attached as exhibits.

A.  **First Request for Production**

By its First Request for Production dated March 8, 2003 ("First Request") (Exhibit A hereto), Syngenta seeks "[d]ocuments relating to Uniroyal's monetary expenditures for promotion and technical development of Bonzi during the Relevant Time Period." See First Request, No. 18. This request seeks documents that support a key contract provision -- § 3 of the Development Agreement -- mandating a minimum average yearly expenditure of $80,000 during the 1992-1997 time period. Whether Uniroyal satisfied its contractual obligation is directly relevant to Uniroyal's allegation that it has invested large sums of money to develop new uses of Bonzi that purportedly have been misappropriated by Syngenta.

In response to this request, Uniroyal provided only a summary bar graph outlining its expenses. None of the documents underlying that summary graph were turned over. In addition, Uniroyal itself claims in its Complaint that in 2002, it "was spending approximately $500,000 annually in manpower, promotion and technical development for Bonzi," and cumulatively had spent "approximately $3,500,000 in development and promotion of Bonzi." Complaint, ¶¶ 54-55. That assertion must be based on data, accounting materials, or other documents that tracked and totaled these expenditures. Nonetheless, none of these documents has been produced by Uniroyal.

Syngenta also requested all of Uniroyal's annual reports on "its developmental and promotional expenditures." See First Request, No. 19. Indeed, Uniroyal was specifically required to produce these reports to Syngenta pursuant to § 6 of the Development Agreement. However, to date Uniroyal only has provided those documents for select years. Uniroyal should be ordered to turn over all of the annual reports that specify any such development or promotional expenditures.

Uniroyal also has failed to produce documents responsive to Syngenta's Request Nos. 7, 8 and 15 for documents related to new Bonzi uses, or uses for Bonzi on the Syngenta label.[2] With respect to Request No. 7, Uniroyal has not offered any documents to support its contention that each of the new uses of Bonzi that it developed led to increased Bonzi sales. In fact, in its Complaint Uniroyal cites eight different "very profitable" uses it claimed to create during the term of the agreement. Complaint ¶¶ 41, 43 (stating that the new uses "were instrumental in driving the extraordinary growth and profitability of Bonzi. . ."). Despite this allegation, Uniroyal has failed to provide documents reflecting that each of these uses led to higher Bonzi sales and more profits. Similarly, Uniroyal has not responded to Request No. 8, which seeks documents reflecting development of new uses of Bonzi, even if those new uses were not created by Uniroyal. Uniroyal objected to this request on confidentiality grounds, but clearly documents reflecting a third-party's creation of a new use, absent an express agreement with Uniroyal, would not be proprietary to Uniroyal.

---

[2] Uniroyal has taken the position that it has produced at least some documents responsive to these three requests. However, any such documents Uniroyal has produced fail to address the specific issues described herein.

- 8 -

Regarding Request No. 15, Uniroyal has provided no documents that discuss the analysis or evaluation it conducted on Syngenta's Bonzi label. Such documents must exist in light of the allegations of the Complaint. Uniroyal asserts that Syngenta created a "specimen label" that includes the new uses it developed. Complaint ¶ 75. A determination that the use of such a label would be detrimental to Uniroyal, as alleged in ¶ 76 of the Complaint, required some sort of evaluation and consideration of the Syngenta label. These allegations of the Complaint demonstrate the relevance and importance of Syngenta's discovery request, and Uniroyal should be ordered to comply.

**B.    Second Set of Interrogatories and Third Request for Production**

With respect to the Second Set of Interrogatories and Third Request for Production dated August 22, 2003 ("Second Set" or "Third Request") (Exhibit B hereto), two interrogatories and a related request for production have not been answered. In response to earlier discovery requests, Uniroyal provided a table with "Trial References" purporting to demonstrate Uniroyal's creation of new Bonzi uses. These "Trial References" are a list of numbers that correspond to the "over 2500 trials in our database to support the uses of Bonzi since 1991." See Uniroyal's Supplemental Responses to Defendant's First Set of Interrogatories and Second Request for Production of Documents, dated July 24, 2003 (Exhibit C hereto). However, as revealed by that table, not all of these trials were done by Uniroyal in-house; in fact, the majority were performed at outside institutions, such as state universities, and under a variety of circumstances. Regardless of those circumstances, Uniroyal apparently claims that all such work should be considered proprietary to Uniroyal. Syngenta disputes that

claim. In order to understand the basis for Uniroyal's allegations, Syngenta seeks written responses and documents related to these purported new uses, the agreements between Uniroyal and the cooperating entities, and financial information regarding payments to those cooperators.

Specifically, with respect to the Bonzi product label, Syngenta requested that Uniroyal "identify all uses or formulations which Uniroyal alleges are uses or formulations for which it retains all marketing and sales rights pursuant to the terms of the Development Agreement [and] for each such use or formulation, identify the Trial Reference(s) associated with that use or formulation . . . ." See Second Set, No. 1. For those "Trial References," Syngenta asked for the "institution or facility at which the trial was performed; and what rights to the trial data, if any, were retained by the institution or facility (identified in the preceding sub-section 'c')." See Second Set, No. 2. With respect to documents, Syngenta requested "documents concerning the grant-in-aid for each trial identified by a 'Trial Reference'; documents concerning the contract for each trial identified by a 'Trial Reference'; documents concerning financial expenditures or payments by Uniroyal in support of each trial identified by a 'Trial Reference'; and documents indicating whether the trial associated with a 'Trial Reference' was sponsored by Uniroyal." See Third Request, No. 7.

In order for Syngenta to determine whether the new uses Uniroyal allegedly developed during the contract term were the result of Uniroyal's own independent research -- as opposed to research conducted by others, and therefore not proprietary to Uniroyal -- Syngenta must know where this research took place, and whether Uniroyal or another entity

- 10 -

has the legal right to use this data. These two interrogatories and the production request seek information to determine whether Uniroyal owns proprietary rights to the new uses it claims to have developed on a study-by-study basis. Without that information, Syngenta is unable to rebut or even determine the veracity of the allegations that Uniroyal developed these uses and has the exclusive right to market them under its own forthcoming generic Bonzi label.

Three other requests for production from the Third Request have not been answered fully or completely. Given the strict regulatory procedures for this type of chemical, Syngenta requested documents reflecting "Uniroyal's consideration of marketing its own generic paclobutrazol, including but not limited to data compensation pursuant to FIFRA Section 3(c)(1)(F); EPA submissions pursuant to FIFRA; projected or forecasted sales and/or profits from Uniroyal's sale of generic paclobutrazol; documents concerning the impact of Uniroyal's sale of generic paclobutrazol on Syngenta's sales and/or profits; documents concerning the impact, if any, of Uniroyal's sale of generic paclobutrazol and the claims asserted in this case; and marketing materials for the generic paclobutrazol." See Third Request, No. 10.

Uniroyal objected to this request, claiming it was irrelevant and would reveal confidential business information that could have an adverse effect on its business. Syngenta's counsel proposed by letter dated November 6, 2003 to Uniroyal's counsel Attorney Corcoran (Exhibit D hereto) that Uniroyal disclose these documents subject to a "Confidential –

Attorneys' Eyes Only" stamp on each document claimed to be confidential.[3]  Despite that proposal, Uniroyal has never produced these documents, with or without any designation stamp.

Finally, Syngenta seeks documents related to another agreement with Uniroyal, an agreement that preceded both the Supply and Development Agreements.  Syngenta requested all documents "concerning the Confidentiality Agreement titled 'Confidential Information (Out)', dated May 23, 1990. . . ."  See Third Request, Nos. 12 and 13.  Uniroyal objected, claiming that the request was "vague" despite the clear reference to a specific document, which was further identified by Bates stamp number in subsequent correspondence in an effort to address the objection.  Uniroyal also directed Syngenta to previously disclosed documents.  Although Uniroyal eventually withdrew its objection to this request, Uniroyal still has not produced any responsive documents.

C.      **Third Set of Interrogatories and Fourth Request for Production of Documents**

With respect to Syngenta's Third Set of Interrogatories and Fourth Request for Production of Documents dated January 16, 2004 ("Third Set") (Exhibit E hereto), Syngenta seeks documents supporting Uniroyal's contention that Uniroyal "in-house dollars" were spent to assist Uniroyal in meeting its contractual obligations.  In her deposition, Uniroyal's Vice President Laurie Treu testified that Uniroyal incurred Bonzi development costs as a result of paying third-parties to assist in the development of new Bonzi uses.  She also testified that

---

[3]     The treatment of documents identified as Confidential – Attorney Eyes Only is set forth in Syngenta's proposed Confidentiality Order submitted to the Court September 15, 2003.  The Court has not yet ruled on that proposed Confidentiality Order.

Uniroyal incurred "in-house dollars," which were considered by Uniroyal in determining its Bonzi-related expenses. Requests Nos. 3, 4 and 5 seek documents concerning the accounting for these "in-house dollars" and other documents supporting Uniroyal's contention that these internal costs assisted Uniroyal in meeting its contractual obligations. In response to these requests, Uniroyal objected on the grounds that the requests were overly broad and unduly burdensome, and called for the production of confidential accounting and corporate reporting documents not relevant to the litigation. These objections should be overruled and the documents produced.

Moreover, at the conclusion of the negotiation of the Development and Supply Agreements, Kevin Kelley, who headed the Uniroyal negotiating team, drafted an internal memorandum to twelve Uniroyal staffers with varying responsibilities within the Uniroyal organization. See Memo dated Feb. 18, 1999, Exhibit F hereto. In pertinent part, Mr. Kelley's memo states:

> It is recommended that involved departments maintain records to be able to document their expenditures for Bonzi promotion and development. [Uniroyal] is to supply a report on an annual basis indicating that these expenditures were made and how they were made.

Based upon this memorandum, it may be inferred that the documents requested were maintained by Uniroyal during the period of time the contracts were in effect. Those documents are directly relevant to Uniroyal's claims concerning the costs it alleges to have incurred in developing any new uses for Bonzi. There is no valid reason to withhold them.

### D.  Fourth Set of Interrogatories and Fifth Request for Production

With respect to Syngenta's Fourth Set of Interrogatories and Fifth Request for Production, dated February 6, 2004 ("Fourth Set") (Exhibit G hereto), Syngenta seeks to identify witnesses it needs to depose. It therefore requested that Uniroyal specify people with "knowledge concerning any of the allegations in paragraphs 19-67 of the Complaint in this action and for each such person specify the paragraph(s) in the Complaint with respect to which such person has knowledge." See Fourth Set, No. 1. Shortly after receiving an objection from Uniroyal, by letter dated March 11, 2004, Syngenta agreed to limit this Interrogatory to those persons with knowledge of the allegations contained in paragraphs 20, 22-23, 39-40, 44, 50-51 and 54-55 of the Complaint. Nevertheless, Uniroyal has failed to provide that information.

Obviously, persons exist with knowledge of the allegations of the Complaint; otherwise those allegations would not have been made. Uniroyal identified only three Uniroyal employees in its Rule 26 initial disclosures. This interrogatory seeks discoverable information and demands only slightly more work than an initial disclosure under the Federal Rules. Certainly, Uniroyal already has identified its own potential witnesses and the scope of their knowledge of the facts of this case. There is no basis for Uniroyal's failure to identify those individuals to Syngenta.

## POINT II

## UNIROYAL SHOULD BE COMPELLED TO SUBMIT ITS WITNESSES TO DEPOSITION FOR THE TIME PERIOD PROVIDED BY LAW

In addition to its failure to respond to written discovery requests, Uniroyal has frustrated Syngenta's efforts to depose key witnesses in this case.  As a result, Syngenta is faced with a fact discovery deadline of May 21, 2004 -- an extension of which is sought herein -- that would expire before the dates Uniroyal has offered for the depositions of witnesses that played key roles in the development of new Bonzi uses and/or in the negotiation of the parties' agreements.

Among other things, Uniroyal refuses to subject its witnesses that will testify both as individuals and as designated corporate witnesses pursuant to Rule 30(b)(6) to depositions longer than seven hours.  For example, Syngenta has begun deposing Uniroyal Vice President Laurie Treu, a witness who has extensive knowledge as an individual about the contracts at issue, the development of new Bonzi uses and R&D expenditures by Uniroyal.[4]  Ms. Treu also has been named a Uniroyal 30(b)(6) witness on these issues, among others.  Similarly, Syngenta noticed the depositions of Kevin Donovan and Kevin Kelley as individuals, after which Uniroyal also designated them as Rule 30(b)(6) witnesses.[5]  However, Uniroyal

---

[4] Ms. Treu's deposition commenced on January 12, 2004.  Her deposition began at approximately 10:25 a.m. and ended at approximately 4:02 p.m., and included a lunch break and several other interruptions.  In an e-mail dated April 15, 2004, plaintiff's counsel advised that he was only willing to produce Ms. Treu for another 2 ½ hours.

[5] Mr. Kelley's deposition was taken on November 17, 2003, and lasted approximately five hours.

- 15 -

refuses to allow any of those three employees' depositions to last more than the seven hours allotted by Fed. R. Civ. P. 30(d)(2). That position is contrary to the Advisory Committee Notes stating that "the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." See Advisory Committee Notes, Rule 30, 2000 Amendments (attached as Exhibit H). At least one federal district court has ruled that such depositions are separate from depositions as individuals, and therefore are to be given a separate seven hour limitation. See Sabre v. First Dominion Capital, LLC, No. 01 Civ. 2145, 2001 U.S. Dist. Lexis 20637, at *4 (S.D.N.Y. Dec. 10, 2001) (finding that "the 30(b)(6) deposition of a witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit").[6]

      Given the critical importance of these and possibly other Uniroyal witnesses, Syngenta should have the opportunity to conduct two, seven-hour depositions for any witness testifying individually and as a designated Rule 30(b)(6) representative of Uniroyal. This would eliminate the problems anticipated by the Sabre court, and existing in this case with Ms. Treu, Mr. Donovan and Mr. Kelley, as well as possibly other Uniroyal witnesses. See Sabre, 2001 U.S. Dist. Lexis 20637, at *3. Not allowing two separate seven-hour depositions would allow a corporate party to limit the scope of witness testimony merely by designating that witness as a Rule 30(b)(6) representative. An even more egregious result would occur by allowing a corporate party to designate an individual as a 30(b)(6) witness after his or her

---

[6]     A copy of Sabre is Exhibit I hereto.

individual deposition has already been taken, as has happened here with respect to Mr. Kelley. Uniroyal cannot fairly designate Mr. Kelly as a 30(b)(6) witness after his deposition was taken in his individual capacity, and then claim that Syngenta is not entitled to a second, seven-hour deposition of Mr. Kelley in his capacity as Uniroyal's chosen spokesperson on various 30(b)(6) issues. Such an interpretation conflicts with the clear purpose and spirit of the discovery rules.

## POINT III

### SYNGENTA SHOULD BE ALLOWED TO SERVE AN ADDITIONAL FIFTEEN INTERROGATORIES PERTAINING TO UNIROYAL'S DAMAGES

Syngenta has served twenty-five interrogatories on Uniroyal. That number was necessary given the complicated nature of this dispute, as outlined above. However, Syngenta has not had an opportunity to serve interrogatories pertaining to Uniroyal's alleged damages. Accordingly, Syngenta requests permission, pursuant to Fed. R. Civ. P. Rule 26(b)(2), to serve up to fifteen additional interrogatories directed towards the damages Uniroyal claims to have suffered. Uniroyal's counsel, Charles Corcoran, has represented that Uniroyal consents to Syngenta's request to serve an additional fifteen interrogatories.

## POINT IV

### A 180 DAY EXTENSION OF TIME OF ALL DISCOVERY, PRETRIAL AND TRIAL EXPOSURE DEADLINES IS NECESSARY AND APPROPRIATE

Under the current scheduling order dated February 12, 2004 (the "Scheduling Order"), fact discovery is to close on May 21, 2004. By virtue of the above-described discovery disputes, and despite the parties' good-faith efforts to resolve them, the parties are

unable to comply with that deadline.[7] In order for the parties to complete the remaining depositions and other necessary discovery, Syngenta respectfully requests a 180 day extension of all discovery, pretrial and trial exposure dates set forth in the Scheduling Order. Attorney Corcoran has represented that Uniroyal consents to a 90 day, but not 180 day, extension of the subject deadlines. By virtue of the volume of discovery that remains to be completed, Syngenta does not believe that a 90 day extension of time is sufficient.

## CONCLUSION

WHEREFORE, Syngenta moves for an Order:

(1) compelling Uniroyal to comply with all outstanding interrogatories and requests for production, and specifically:

    (a) First Request for Production, Nos. 7, 8, 15, 18 and 19;

    (b) Second Set of Interrogatories, Nos. 1 and 2;

    (c) Third Request for Production, Nos. 7, 10, 12 and 13;

    (d) Fourth Request for Production of Documents, Nos. 3, 4 and 5; and

    (e) Fourth Set of Interrogatories and Fifth Request for Production, No. 1;

(2) compelling any person designated by Uniroyal as a 30(b)(6) witness to subject himself or herself to a separate seven-hour deposition in his or her capacity as

---

[7] Another contributing factor to the parties' inability to meet the May 21 discovery deadline is that two previous discovery motions filed by defendant Syngenta -- namely, Defendant's Motion to Compel Plaintiff to Produce Documents, filed September 15, 2003, and Defendant's Motion to Compel Plaintiff to Produce Documents Identified in Plaintiff's Privilege Log, filed September 24, 2003 -- have not yet been ruled on by the Court.

Uniroyal's 30(b)(6) witness, in addition to any deposition taken of said person in his or her individual capacity;

   (3) permitting Syngenta to serve up to an additional fifteen interrogatories on Uniroyal; and

   (4) extending the current discovery, pretrial and trial exposure deadlines set forth in the Scheduling Order for a period of no less than 180 days;

together with such other and further relief as the Court deems proper.

             DEFENDANT
             SYNGENTA CROP PROTECTION, INC.

             By: _____
               William A. Ruskin
               Fed. Bar No. ct20898
               R. Michael Meo, Jr.
               Fed. Bar No. ct16318
               Shipman & Goodwin LLP
               300 Atlantic Street
               Stamford, Connecticut 06901
               Telephone: (203) 324-8100
               Facsimile: (203) 324-8199
               E-mail: wruskin@goodwin.com
               E-mail: rmeo@goodwin.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2004, a copy of the foregoing Memorandum of Law was mailed, postage pre-paid to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

_____
R. Michael Meo, Jr.

369249 v.05