UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY | : : : : | |
| Plaintiff, | : : | Civil Action No. 3:02cv02253 (AHN) |
| v. | : : | |
| SYNGENTA CROP PROTECTION, INC. | : : | |
| Defendant. | : | JUNE 9, 2004 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DATED MAY 12, 2004**

**INTRODUCTION**

The plaintiff objects to the defendant's motion to compel dated May 12, 2004. The defendant asks this Court for an order compelling the plaintiff to comply fully with certain of the defendant's allegedly outstanding discovery requests. In addition, the defendant asks this Court to order the plaintiff to produce certain of its witnesses for second depositions based on their status as Rule 30(b)(6) designees. The defendant also asks for this Court's permission to file up to an additional 15 interrogatories, as well as a 180-day extension of the current scheduling order.

The plaintiff submits that it will comply with two discovery requests which are the subject of the defendant's motion. Specifically, the plaintiff will withdraw its prior objection to interrogatory 1 of the Fourth Set of Interrogatories and Fifth Request for Production, on the grounds that counsel for the defendant has limited the scope of the

interrogatory. As to the remainder of the defendant's motion to compel, the plaintiff objects for the reasons set forth herein.

**ARGUMENT**

The plaintiff in this case has produced over 8,500 documents thus far in response to the defendant's production requests. Included in this production are approximately 3,000 pages of field data research and trials. These documents are in fact responsive to many of the requests set forth below with which the defendant claims the plaintiff has failed to comply. Moreover, in response to a request from defendant's counsel, (although it was under no obligation to do so), the plaintiff has generated and produced two charts summarizing certain aspects of these research reports. Clearly, the plaintiff is not obligated to "create" documents in order to comply with production requests, but chose in this instance to create a document summarizing and clarifying the research production. In addition, and as is more fully set forth below, counsel for the defendant recently deposed Kevin Donovan, an employee of the plaintiff Crompton Manufacturing Corp. ("Crompton"). Mr. Donovan testified at length regarding several of the categories of documents that the defendant is seeking to compel production of, and the fact that such documents simply do not exist in the manner in which the defendant believes they should. Therefore, for many of the document production requests set forth below, the plaintiff is not in possession of any responsive documents, and there is simply nothing to compel.

Finally, counsel for the defendant has been told on several prior occasions by the undersigned counsel for the plaintiff that, during the course of a merger and office

consolidation undergone by the plaintiff several years ago, many documents that would have otherwise been maintained by the plaintiff have been destroyed. This fact was confirmed once again to counsel for the defendant at Mr. Donovan's deposition. For example, Attorney Ruskin has made repeated requests to the plaintiff to produce documents relating to Crompton's "in-house" dollars spent on Bonzi during the period the agreements between Syngenta and Crompton were in place. Although certain of these documents have been located and produced to the defendant, such information for the earlier years of the requests has been destroyed during the merger process:

> Q    (Mr. Ruskin)    What specific budget documents did you review?
> A    (Mr. Donovan)    The 2002 budget, the 2001 budget, the 2000 budget, the 1999 budget, 1998 budget, 1997 budget.
> Q    Have you been -- Were you able to locate any of the earlier budgets?
> A    No.
> Q    Did you look for them to see if you could find the budgets from 1991 to 1996 for Bonzi?
> A    Yes.
> Q    What efforts did you make as part of your search for those budgets?
> A    I requested them from the vice-president of R&D.
> Q    Mr. Lacadie?
> A    Yes. I requested them from the regional product development manager at the time.
> Q    Who was who?
> A    Thomas Harger. And I requested them from the product development manager, David Judge.
> Q    What in sum or substance did they report to you?
> MR. CORCORAN:  Could that be read back, please?
> (Whereby, the pertinent question was read.)
> BY THE WITNESS:
> A    They provided to me whatever they had.
> Q    Did they have -- Were they able to provide any of the budgets for Bonzi development from 1991 to 1996?
> A    Yes.
> Q    Which budget years were they able to provide that information?
> A    1996.
> Q    Were they able to provide any of the budgets from 1991 to 1995?
> A    No.

> Q   Do you know if those records were destroyed?
> A   Yes.
> Q   Were they destroyed?
> A   Yes.
> ……….
> Q   Did they indicate the circumstances under which they were destroyed?
> A   Yes.
> Q   What was that?
> A   For Mr. Lacadie -- Dr. Lacadie and Dr. Judge, we had consolidated our offices back in -- well starting in 2000 and we purged a good many of our files due to space limitations.

Deposition of Kevin Donovan, pp. 14-17. (Copy of relevant pages attached hereto). Despite the defendant's contention, the plaintiff has produced a significant number of documents responsive to these requests. Undersigned counsel has conferred with the Crompton employees most heavily involved in this litigation and have determined that all documents responsive to the defendant's requests that are currently in Crompton's possession have previously been produced.[1] The defendant's motion to compel should be denied.

**The Specific Discovery Requests**

**First Request for Production**

The defendant claims, persistently and incorrectly, that the plaintiff has failed to fully respond to the following discovery requests contained in defendants First Request for Production of Documents:

> 7.   For each new use Uniroyal claims to have developed for Bonzi, produce documents supporting Uniroyal's contention that (1) these uses were developed by Uniroyal; and (2) increased Bonzi sales.

---

[1] As noted by the defendant at page 18, n. 7 of its motion to compel, there are unresolved discovery motions currently pending before the Court, involving issues of attorney-client privilege and confidential business documents. The plaintiff makes no representation that it has produced those documents that are the subject of outstanding discovery motions.

{N0718121}                           4

> 8. Documents relating or concerning to each new use and formulation of Bonzi developed by persons other than Uniroyal during the Relevant Time Period.
>
> 15. Documents concerning or relating to Syngenta's Bonzi label and any analysis or evaluation by Uniroyal concerning Bonzi uses which Uniroyal alleges it developed during the term of the Development Agreement.
>
> 18. Documents relating to Uniroyal's monetary expenditures for promotion and technical development of Bonzi during the Relevant Time Period.
>
> 19. Documents concerning or relating to Uniroyal's annual reports on its developmental and promotional expenditures; on Bonzi's market position vis a vis the competition; and on plaintiff's progress in developing new uses and formulations for Bonzi. See Complaint at 56.

The defendant argues at page 8 of its motion that, although the plaintiff claims to have produced documents responsive to these requests, "any such documents Uniroyal has produced fail to address the specific issues described herein." Def. Mem. in Support of Mot. to Compel, p. 8, n. 2. Once again, counsel for the defendant seems to be under the mistaken impression that the plaintiff is required to "create" documents that would be responsive to every specific request propounded by the defendant or documents that counsel for the defendant is of the opinion "must exist" somewhere. The plaintiff has previously produced all documents in its possession that are responsive to these requests, and the motion to compel should therefore be denied.

**Second Set of Interrogatories and Third Request for Production**

The defendant likewise claims, again incorrectly, that the plaintiff has failed to comply with the following discovery requests:

**Interrogatories 1 and 2**

      1.      Making specific reference to Syngenta's Bonzi product label (attached to plaintiff's complaint), identify all uses or formulations which Uniroyal alleges are uses or formulations for which it retains all marketing and sales rights pursuant to the terms of the Development Agreement.
           (a) for each such use or formulation, identify the Trial Reference(s) associated with that use or formulation;
           (b) for each such use or formulation, indicate the dates the work associated with each Trial Reference was performed.

      2.      For each "Trial Reference" referred to by Uniroyal in the table attached to its Supplemental Responses to Defendant's First Set of Interrogatories and Second Request for Production of Documents, identify:
           (a) the person(s) who performed the trial;
           (b) the employer of the person(s) who performed the trial;
           (c) the institution or facility at which the trial was performed; and
           (d) what rights to the trial data, if any, were retained by the institution or facility (identified in the preceding sub-section "c").

In response to interrogatory 1, the plaintiff produced the applicable Bonzi label with the claimed uses highlighted. In fact, counsel for the defendant marked this label as an exhibit at Kevin Donovan's deposition, and questioned Mr. Donovan extensively on these claimed new uses. *See,* Donovan deposition at pp. 162-167, attached hereto. In addition, and as discussed previously, the plaintiff has produced approximately 3,000 pages of documents containing all of Crompton's field research data on Bonzi for the years 1991-2002. All of the information requested by these interrogatories is found on the Bonzi label and field research documents previously produced to the defendant. In addition, and although it had no obligation to do so, the plaintiff has prepared two summary charts at Attorney Ruskin's request summarizing certain information found on these reports. Specifically, Kevin Donovan has testified that, as to the remainder of the topics covered by these requests, no documents exist. For example, interrogatory 2 seeks information regarding the rights to the trial data retained by the institution performing the

{N0718121}      6

research study. The following excerpt from the Donovan deposition confirms that this type of information, if it existed, would be included in the field research reports that have already been produced to the defendant:

> Q      Has any university or college with whom Uniroyal has a -- with whom Uniroyal has given grant-in-aids for performing Bonzi research ever agreed to maintain the confidentiality of its field trial results?
> MR. CORCORAN: Objection to the form. You can answer.
> BY THE WITNESS:
> A      Yes.
> Q      Can you tell me one instance?
> A      I don't remember the name of the individual. It's in the documents.
> Q      But that's the exception rather than the rule; correct?
> MR. CORCORAN: Objection to the form of the question.
> BY THE WITNESS:
> A      Yes.
> Q      So when Uniroyal gives a grant-in-aid to a state college or university to do Bonzi field trials, it has no expectation, with limited exceptions, that the field trial work will remain confidential?
> MR. CORCORAN: Objection to the form of the question.
> BY THE WITNESS:
> A      There is an expectation.
> Q      How -- What is that expectation?
> A      I believe it's just, you know, an oral understanding that the information is not to be shared with competition.
> …
> Q      Is there any document you have that you are aware of in Uniroyal's files that contains references to any of these expectations of confidentiality that you state exist between Uniroyal and these university cooperators?
> MR. CORCORAN: Can that be read back, please?
> Whereby, the pertinent question was read.)
> BY THE WITNESS:
> A      Yes.
> Q      What was the answer? What documents do you have?
> A      The same answer as I gave before. I don't know the exact document, but it's in the -
> Q      Is it in the field --
> MR. CORCORAN: I think you cut him off. He said it's in the --
> BY THE WITNESS:
> A      In the field reports.

Deposition of Kevin Donovan, at pp. 137-140. (Relevant pages attached hereto). Because the plaintiff has produced all documents in its possession responsive to these requests, the defendant's motion to compel should be denied.

**Request for Production # 7**

> 7.  For each "Trial Reference" referred to by Uniroyal in the table attached to its Supplemental Responses to Defendant's First Set of Interrogatories and Second Request for Production of Documents, produce:
> > (a) documents concerning the grant-in-aid for each trial identified by a "Trial Reference";
> > (b) documents concerning the contract for each trial identified by a "Trial Reference";
> > (c) documents concerning financial expenditures or payments by Uniroyal in support of each trial identified by a "Trial Reference"; and
> > (d) documents indicating whether the trial associated with a "Trial Reference" was sponsored by Uniroyal.

Once again, this issue was explained to counsel for the defendant by Mr. Donovan at his deposition. Mr. Donovan testified at length regarding the process by which Uniroyal obtains the research trial work and associated field research reports:

> Q   (By Attorney Ruskin): Does Uniroyal ever use agreements of any kind to document that a particular cooperator is going to do field trials for Uniroyal?
> **A   (By Kevin Donovan): No, not to my knowledge.**
> Q:  Well when Dr. Barrett is paid his $12,000 per year, does he give Uniroyal any promise that he will do any particular field study?
> A:  Yes.
> Q:  How is that promise conveyed? Is it oral or in writing?
> **A:  Oral.**
> **Q:  Is it ever in writing?**
> **A:  No, not to my knowledge**.
> **Q:  When the oral statement is made, does someone at Uniroyal write it down or commemorate it?**
> **A:  No.**

{N0718121}                                           8

> Q: No one says I spoke to Dr. Barrett, he's going to do a B-nine study on pansies?
> A: Yes. Orally it's --
> Q: But it's not reduced to writing, into a memo?
> A: The only form it would have been put in writing would be a request to write him a check.

Deposition of Kevin Donovan, at pp. 96-97. (Emphasis added)(Relevant pages attached hereto). The plaintiff has previously produced those responsive documents that are in its possession regarding these requests. As testified to by Mr. Donovan, other categories of documents sought by the defendant simply do not exist, and the defendant's motion to compel should therefore be denied.

**Request for Production Number 10**

> 10. All documents concerning Uniroyal's consideration of marketing its own generic paclobutrazol, including but not limited to:
>     (a) Data compensation pursuant to FIFRA Section 3(c)(1)(F);
>     (b) EPA submissions pursuant to FIFRA;
>     (c) Projected or forecasted sales and/or profits from Uniroyal's sale of generic paclobutrazol;
>     (d) Documents concerning the impact of Uniroyal's sale of generic paclobutrazol on Syngenta's sales and/or profits;
>     (e) Documents concerning the impact, if any, of Uniroyal's sale of generic paclobutrazol and the claims asserted in this case; and
>     (f) Marketing materials for the generic paclobutrazol.

The plaintiff has objected to this request for production on the grounds that it seeks production of highly confidential and proprietary documents relating to, *inter alia*, the possible future marketing of generic Paclobutrazol. Discovery of Uniroyal's consideration of the potential future marketing its own generic Paclobutrazol will lead to serious economic harm to Uniroyal and furthermore is not relevant to the case at hand. At issue in this litigation are the relative rights of the two parties pursuant to Suppy and

Developent Agreements executed in 1991, which embodied an arrangement whereby Crompton was to develop, market and sell Bonzi. Specifically, the parties are in disagreement with regard to what rights to Bonzi uses developed during the period of the agreements Crompton retains following the termination of the agreements. Any consideration by Crompton of the possibility of entering the market with generic paclobutrazol has no possible relevance with regard to the meaning or interpretation of the agreements at issue in this litigation. Furthermore, none of this information could possibliy lead to the discovery of information relevant to this action. Syngenta is well aware that Uniroyal may compete against Bonzi by marketing its own generic paclobutrazol some time in the future and it clearly seeks the requested documents for the purpose of competitive advantage. Because this request does not seek discovery of relevant evidence or even evidence likely to lead to the discovery of relevant evidence, the plaintiff's objection should be sustained.

**Request for Production Number 12 and 13**

> 12.   All documents concerning, constituting or referring to correspondence, memoranda, notes and e-mail concerning the Confidentiality Agreement titled "Confidential Information (Out)", dated May 23, 1990, between Uniroyal and ICI.
>
> 13.   All documents provided to Uniroyal by ICI pursuant to the Confidentiality Agreement titled "Confidential Information (Out)", dated May 23, 1990.

The foregoing requests relate to a single page document, dating back 14 years ago. Counsel for the defendant has questioned two Crompton employees about this document at deposition. *See,* Deposition of Laurie Treu, at p. 118, and Deposition of Kevin Kelly at p. 65, attached hereto. Ms. Treu testified that that she had seen this document for the first time 2 days prior to her deposition in this case. Mr. Kelly likewise testified that he did not

recognize this document, and had no recollection of executing it on behalf of Crompton in May, 1990. Once again, the plaintiff has produced all documents in its possession responsive to the defendant's discovery requests. If counsel for the defendant has been unable to locate documents responsive to these particular requests in the 8,500 pages of documents produced, it is because no such documents exist. Despite the defendant's repeated and dogged insistence to the contrary regarding those documents which "must exist" somewhere, the plaintiff cannot be compelled to produce that which it does not have.

**Fourth Request for Production**

The defendant asks this Court to compel the plaintiff to respond to the following requests for production, concerning the "in-house" dollars spent by Uniroyal during the time period of the agreements at issue:

    3.    All documents concerning Uniroyal`s response to Interrogatory No. 2.

    4.    All documents reflecting or accounting for Uniroyal "in-house dollars" that were spent during the Relevant Time Period to develop new uses for Bonzi.

    5.    All documents supporting Uniroyal's contention that Uniroyal "in-house dollars" were spent to assist Uniroyal in meeting its contractual obligation (pursuant to Paragraph 3 of the Development Agreement) expenditures for the development of new Bonzi uses and formulations.

For purposes of clarification, interrogatory 2, along with the complete text of the plaintiff's response thereto, is set forth herein:

    2.    Describe in detail the process by which Uniroyal accounted for and kept track of "in-house dollars" used for the development of new uses for Bonzi and/or Bonzi R&D during the Relevant Time Period.

{N0718121}    11

**ANSWER:**
    During the July - August timeframe of any particular year, budgets are proposed for the following year. These proposed budgets are developed by each of the individual department managers, based on general objectives previously agreed upon between the department managers, Business Director, Product Development Manager, and Technical Manager. The proposed budget details individual projects by product, specifying the man years, inside dollars and outside dollars estimated to complete said project. These estimates are based in large part on experience and the resources used for similar ongoing or past projects. For any number of reasons the proposed budget may be revised, sometimes more than once, until such time as the budget is given final approval. This can occur as early as August or as late as December in any given year. Once the budget is approved, individual projects within a product are developed in more detail by the department manager. **Although outside expenses are tracked and records maintained for a period of time, there is no procedure whereby Uniroyal accounts for, or keeps track of, actual man years and inside dollars spent for individual products.** (Emphasis added).

Despite the plaintiff's statement in response to interrogatory 2 that actual inside dollars are not accounted for to the penny at Uniroyal, counsel for the defendant nevertheless persists in contending that such documents "must exist" somewhere. Kevin Donovan's deposition testimony again clarifies and confirms the fact that this is not so:

> Q    Have you tracked the outside -- you tracked the outside dollars on Exhibit 12. Where do you track the in-house dollars?
> A    We do not track inside dollars.
> Q    Oh. Well how do you know that you've -- Assuming that field development costs can be both in-house and outside dollars, how would you know whether you've satisfied the $80,000 contractual minimum?
> A    Through our budget process.
> Q    Well if you don't track inside dollars, how would you know whether you had made it over the top adding inside dollars to the outside dollars?
> MR. CORCORAN: Asked and answered. Through the budget process.
> BY MR. RUSKIN:
> Q    How would the budget process do that, if you don't track --
> A    At the end of each year we -- the product development manager estimates the amount of time that his representatives spend on a project and he uses that as a gauge for developing the budget for the coming year.
> Q    Are there company guidelines as to how you do that?
> A    No.

> Q    Does the company, to the best of your knowledge, calculate the contribution of inside dollars in a consistent way from department to department?
>
> MR. CORCORAN: Objection to the form of the question.
> BY THE WITNESS:
> A    A consistent way? No.
> Q    I mean if I'm a manager doing a budget and I've got an $80,000 yearly requirement in '94 and I see I've spend $45,000 in outside dollars, aren't I going to find a way to get it up over $80,000?
>
> MR. CORCORAN: Objection to the form of the question. Misrepresents the testimony.
> BY THE WITNESS:
> A    They don't need to find a way. There was always much more than $80,000 spent in any one year.

Deposition of Kevin Donovan, at pp. 127-129. (Relevant pages attached hereto). Once again, the plaintiff has produced all documents in its possession responsive to this request. Defendant's conviction that additional responsive documents "must exist" somewhere at Crompton has been fully answered by Mr. Donovan's deposition testimony. Because the plaintiff cannot be compelled to produce that which it does not possess, the motion to compel should be denied.

**<u>Fourth Set of Interrogatories and Fifth Request for Production</u>**

The defendant requests an order compelling the plaintiff to respond to the following interrogatory:

> 1.    Identify all persons that Uniroyal believes have knowledge concerning any of the allegations in paragraphs 19-67 of the Complaint in this action and for each such person specify the paragraph(s) in the Complaint with respect to which such person has knowledge.

Counsel for the defendant subsequently agreed to reduce the scope of this interrogatory to a lesser number of paragraphs in the Complaint. The plaintiff has no

objection to answering the above interrogatory as it has been limited by counsel for the defendant.

**The 30(b)(6) depositions.**

Although the plaintiff concedes that certain of its witnesses may be required to attend a second deposition in their capacity as designated 30(b)(6) witnesses on behalf of Crompton, the plaintiff does not waive its right to seek a protective order from this Court in the event that the witnesses are being subject to repetitive or otherwise objectionable questioning. *See,* Sabre v. First Dominion Capital, LLC 2001 WL 1590544 (S.D.N.Y.), attached to defendant's brief as Exhibit I, holding that "as a separate deposition that probes the knowledge of the entity and not the personal knowledge of the individual testifying, a 30(b)(6) deposition should be subject to its own independent seven-hour limit." However, the court in Sabre was also careful to point out that

> This is not to say, however, that the inquiring party has *carte blanche* to depose an individual for seven hours as an individual and seven hours as a 30(b)(6) witness. In the case of many closely held corporations, the knowledge of an individual concerning a particular subject also constitutes the total knowledge of the entity. In such a situation, the witness could simply adopt the testimony he or she provided in a former capacity, thereby obviating the need for a second deposition. **In addition, if the questioning at any deposition becomes repetitive or is otherwise being conducted in an oppressive manner, the aggrieved party can always make application for a protective order.**

Id., at *2. (Emphasis added). Therefore, although the plaintiff concedes that certain individuals may be compelled to submit to additional deposition testimony in their capacity as designated 30(b)(6) witnesses, the plaintiff reserves the right to seek a protective order from this Court if necessary on a case-by-case basis.

**Request to Serve Additional Interrogatories**

The plaintiff also objects to the defendant's requests to serve an additional 15 interrogatories on the plaintiff. The defendant has already served four sets of interrogatories and five sets of production requests on the plaintiff. To date, the plaintiff has responded to over 30 interrogatories and over 80 separate document production requests. As previously noted, the plaintiff has also produced approximately 8,500 documents thus far. Rule 33 of the Federal Rules of Civil Procedure limits the number of interrogatories, including all "discrete subparts" thereof, to 25, but also permits the Court to allow additional interrogatories "to the extent consistent with the principles of Rule 26(b)(2)." Rule 26(b)(2) states, in part, that "The frequency or extent of use of the discovery methods otherwise permitted under these rules … shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative …; or (ii)the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought …" Because the defendant has already propounded discovery requests in excess of the limit set forth in Rule 33, it cannot argue that it has not had "ample opportunity" to obtain the information it now claims it needs. The defendant's request to serve additional interrogatories should be denied.

**Request for Extension of Time**

The plaintiff objects to the defendant's request for an extension of time of 180 days. The parties are currently scheduled to conclude depositions of fact witnesses during the month of July. Accordingly, there is no need for an extension of time of 180 days, and

the plaintiff respectfully requests an Order from this Court extending all dates in the current scheduling order for 120 days.

>
> Respectfully submitted,
>
> THE PLAINTIFF
> UNIROYAL CHEMICAL COMPANY,
> INC. d/b/a CROMPTON
> MANUFACTURING COMPANY
>
>
> /s/_____
> Charles F. Corcoran, III (ct 04299)
> Carmody & Torrance LLP
> 195 Church Street, P.O. Box 1950
> New Haven, Connecticut  06509-1950
> Tel:  (203) 777-5501
> Fax:  (203) 784-3199
> E-mail: ccorcoran@carmodylaw.com
> Its Attorneys

## **CERTIFICATION**

       This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

| | |
|---|---|
| William A. Ruskin | Paul D. Sanson (Fed. Bar No. ct05477) |
| (Fed. Bar No. ct20898) | Karen T. Staib (Fed. Bar No. ct21119) |
| Shipman & Goodwin LLP | Shipman & Goodwin LLP |
| 300 Atlantic Street | One American Row |
| Stamford, Connecticut 06901 | Hartford, CT  06103 |
| Telephone: (203) 324-8100 | Telephone: (860) 251-5000 |
| Facsimile: (203) 324-8199 | Facsimile: (860) 251-5600 |
| E-mail: wruskin@goodwin.com | E-mail: psanson@goodwin.com |
| | E-mail: kstaib@goodwin.com |

                                                                          ___/s/_____
                                                                          Charles F. Corcoran, III