FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT** 2004 JUN 28 P 3: 01

U.S. DISTRICT COURT
BRIDGEPORT, CONN

Charles F. Corcoran, III (ct 04299)
**Carmody & Torrance LLP**
195 Church Street
P.O. Box 1950
New Haven, Connecticut  06509-1950
Tel:  (203) 777-5501
Fax:  (203) 784-3199

Attorneys for Plaintiff

---

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC.,<br>doing business as<br>CROMPTON MANUFACTURING<br>COMPANY<br><br>        Plaintiff,<br><br>    v.<br><br>SYNGENTA CROP PROTECTION, INC.,<br><br>        Defendant. | Civil Action No.<br>3:02CV023253    (AHN)<br><br>May 18, 2004 |

---

## AMENDED COMPLAINT

Uniroyal Chemical Company, Inc., doing business as Crompton Manufacturing

Company, through its attorneys, Carmody & Torrance LLP, for its complaint against the

defendant herein, alleges as follows:

{N0717473}

CARMODY & TORRANCE LLP     195 Church Street
Attorneys at Law                    Post Office Box 1950
                                    New Haven, CT 06509-1950
                                    Telephone: 203 777-5501

## PARTIES

1.     Plaintiff is a corporation organized and existing under the laws of the State of New Jersey, with an office and place of business at 199 Benson Road, Middlebury, Connecticut.

2.     On information and belief, defendant is a corporation organized and existing under the laws of the State of Delaware, with an office and place of business at 200 Concord Pike, Wilmington, Delaware, and is the successor in interest to ICI Americas, Inc.

3.     Defendant does business in the State of Connecticut and is registered with the Connecticut Secretary of State.

## NATURE OF THE ACTION

4.     This is an action under the laws of the State of Delaware for breach of contract; conversion; breach of the covenant of good faith and fair dealing; violation of Delaware's Franchise Security Law, 6 Del. C. §2552; and promissory estoppel.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of these proceedings pursuant to the provisions of 28 U.S.C. §1332 because the parties are incorporated in different states and the amount in controversy exceeds $75,000.

{N0717473}

CARMODY & TORRANCE LLP          195 Church Street
Attorneys at Law                Post Office Box 1950
                                New Haven, CT 06509-1950
                                Telephone: 203 777-5501

2

6.    Venue lies pursuant to 28 U.S.C. §1391(a) and (c) because a substantial part of the events and omissions giving rise to this claim occurred in this District and/or because the defendant is subject to personal jurisdiction in this District.

## COUNT I:  BREACH OF CONTRACT

7.    Plaintiff is, and for many years prior to the acts complained of herein has been, engaged in the distribution, manufacturing and sale of a variety of chemical products.

8.    Defendant manufactures and sells chemicals used in the growing and care of plants.

9.    Prior to January 29, 1991 and at all times relevant hereto, defendant was in possession of the right to make, use and sell in the United States and its territories a certain plant growth regulating chemical known under the generic name of "paclobutrazol" and known under defendant's trademark as "Bonzi® ".

10.    "Bonzi®" is used in regulating the growth of ornamental plants.

11.    When proper dosages and application techniques are used, "Bonzi®" is an effective agent in establishing the targeted size and marketability of such plants.

12.    To achieve the desired results, "Bonzi®" must be applied to the subject growing plants in precisely measured doses.

13.    Correct dosage varies widely from plant variety to plant variety; climate to climate; and from application method to application method.

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law                    Post Office Box 1950
                                         New Haven, CT 06509-1950
                                         Telephone: 203 777-5501

14.    Correct dosage also varies depending on the growth stage of the treated plant; the growth effects which the grower wishes to achieve; and the environmental conditions under which the plant is being grown.

15.    Absent correctly determined dosages, unintended, destructive and sometimes catastrophic results occur.

16.    Prior to the calendar year 1991 the defendant granted to Sandoz Corporation ("Sandoz") rights for the development and sales of "Bonzi®".

17.    The market developed and served by Sandoz was limited to container grown flowers and bedding plants in greenhouses and shade houses.

18.    Defendant's arrangement with Sandoz was of limited success.

19.    In comparison with plaintiff's subsequent performance, Sandoz's sales of "Bonzi®" were materially lower.

20.    Growers complained of unintended, destructive results from the application of "Bonzi®" as prescribed by Sandoz.

21.    Sandoz's rights to "Bonzi®" expired at the end of 1990.

22.    At the end of Sandoz's franchise many growers were reluctant to use "Bonzi®".

23.    The reputation of "Bonzi®" was damaged during the period of Sandoz's rights.

24.    Defendant did not extend Sandoz's rights.

{N0717473}

4

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

25.    Defendant did not elect to develop on its own any further uses for "Bonzi®".

26.    In 1990 and 1991 defendant did not elect on its own to sell "Bonzi®" directly to the marketplace.

27.    Rather, defendant advised plaintiff that it would welcome a proposal from plaintiff for the right to develop, market and sell "Bonzi®".

28.    Plaintiff duly submitted a proposal for such a franchise for "Bonzi®", and the parties entered into discussions.

29.    On January 29, 1991 defendant entered into development and supply agreements with plaintiff, captioned the "Bonzi Development Agreement," and the "Bonzi Supply Agreement," respectively.

30.    According to their express terms, the development and supply agreements are governed by the laws of the State of Delaware.

31.    The development and supply agreements are annexed hereto as Exhibits A and B, respectively.

32.    The specified term of the development agreement was from January 1, 1991 through December 31, 1996 unless otherwise terminated as provided in the supply agreement.

33.    At the time plaintiff and defendant entered into the development and supply agreements, very limited uses were permitted for "Bonzi®": greenhouse spray

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law                    Post Office Box 1950
                                    New Haven, CT 06509-1950
                                    Telephone: 203 777-5501

application on certain container-grown annuals, chrysanthemums, hibiscus and poinsettias; greenhouse drench applications to chrysanthemums and poinsettias in Florida only; and bulb dip applications to freesias only.

34.    Said uses were registered by the United States Environmental Protection Agency ("EPA") and were listed on the then current EPA approved label, annexed hereto as Exhibit C.

35.    In the development and supply agreements defendant extended to plaintiff special incentives to develop additional uses for defendant's product.

36.    The development agreement granted to plaintiff the exclusive right to "develop, register, market and sell" "Bonzi®" for new uses, in addition to the then current EPA registered uses: greenhouse flowers; said new uses were to include use on woody ornamentals, shrubs, shade trees, and interior and exterior landscapes in the U.S. and its territories, excluding turf and commercial rights of way.

37.    In consideration for plaintiff's development of new uses and formulations for "Bonzi®", defendant agreed that plaintiff would "retain all marketing and sales rights to each such new use and formulation."

38.    Defendant also specifically agreed that the said marketing and sales rights would survive any termination of the agreement, provided that such termination was not the result of any breach by plaintiff of the development or supply agreement.

39.    In consideration of the right to retain marketing and sales rights to such new uses and formulations for "Bonzi®", plaintiff promised in the development

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

agreement to expend annually, for the five years succeeding 1991, the average sum of $80,000 in connection with the development of said new uses.

40.     Plaintiff expended far more than these sums in its development work.

41.     During the term of the development agreement, plaintiff developed significant, highly popular and very profitable new uses for the product, including but not limited to:

- spray and drench application on azaleas;

- drench application on bedding plants;

- spray and drench applications on bedding plant plugs;

- spray, drench and soak application to bulb crops;

- spray and drench applications on other flowering plants, foliage plants and hanging baskets;

- drench application on geraniums and hibiscus;

- late drench applications on chrysanthemums and poinsettias;

- spray and drench applications on trees and shrubs.

42.     Said uses were registered by the EPA and were listed on the EPA approved label current as of November, 2002, annexed hereto as <u>Exhibit D</u>.

43.     Said new uses were instrumental in driving the extraordinary growth and profitability of "Bonzi®" which followed their introduction.

CARMODY & TORRANCE LLP     195 Church Street
Attorneys at Law     Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

44.    Plaintiff has complied with its obligations under the development agreement.

45.    In the supply agreement, defendant granted to plaintiff the exclusive and royalty-free right to use the "Bonzi®" trademark in the defined marketing area.

46.    In the supply agreement, defendant agreed to sell and deliver "Bonzi®" exclusively to plaintiff in quantities sufficient to satisfy plaintiff's requirements for the product as prescribed therein.

47.    In the supply agreement, defendant granted to plaintiff the exclusive right to sell "Bonzi®" in a defined "Marketing Area" for currently registered uses as determined by the then existing U.S. EPA approved label, attached hereto as <u>Exhibit D</u>.

48.    In the supply agreement, defendant granted to plaintiff the exclusive right to develop, register and sell the product in the "Marketing Area" for use on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interior and exterior landscapes excluding turf and commercial rights of way.

49.    In the supply agreement, defendant granted to plaintiff the exclusive right to develop, register, sell and market new formulations of "Bonzi®" in the marketing area for the described uses.

50.    In consideration of the exclusive right to receive, supply and sell "Bonzi®", plaintiff promised to expend annually, beginning for five years from 1991, the average sum of $76,000.00 in connection with the promotion of sales of that product.

51.    Plaintiff's expenditures far exceeded this sum.

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

52.    In connection with its promotion of "Bonzi®", plaintiff, *inter alia,* established Plant Growth Regulation Management Schools, and generated "How To" videos and detailed, technical use guides.

53.    By virtue of its diligence in the development and promotion of new uses for "Bonzi®" and its aggressive and highly successful program of customer instruction and service, plaintiff reversed the negative reputation which "Bonzi®" had acquired during Sandoz's term.

54.    By 2002, plaintiff was spending approximately $500,000.00 annually in manpower, promotion and technical development for "Bonzi®".

55.    By 2002, plaintiff had invested approximately $3,500,000 in the development and promotion of "Bonzi®".

56.    Pursuant to the requirements of the development agreement, plaintiff provided to defendant annual reports on its developmental and promotional expenditures; on "Bonzi®"'s market position vis-à-vis the competition; and on plaintiff's progress in developing new uses and formulations for "Bonzi®".

57.    In the supply agreement, plaintiff agreed to purchase and take delivery of specified minimum quantities of "Bonzi®".

58.    At all times hereunder plaintiff did in fact purchase and take delivery of the specified minimum quantities of "Bonzi®", and sold it to distributors throughout the United States, who sold it nationally, including the State of Delaware.

59.    During the period of its franchise, plaintiff exceeded contract minimum purchase expectations and contract target purchase expectations by an average of over 120 percent and 53 percent respectively.

60.    By 2002, plaintiff's annual sales of "Bonzi®" had grown to $5,500,000 per year.

61.    By 2002, the annual growth rate of plaintiff's "Bonzi®" sales averaged fifteen percent.

62.    By 2002, plaintiff and defendant were each enjoying approximately $2,000,000.00 in gross profits per year from the sale of "Bonzi®".

63.    From the inception of its franchise to the present, plaintiff has delivered to defendant more than $10,000,000.00 in profit from the sale of "Bonzi®".

64.    Plaintiff has complied with its obligations under the supply agreement.

65.    The specified term of the supply agreement was from January 1, 1991 through December 31, 1996.

66.    Thereafter, the supply agreement continued in full force and effect for successive annual terms unless terminated by either party in writing not less than 180 days before the termination date of the prior term.

67.    Defendant was permitted to terminate the plaintiff's franchise only in good faith and for just cause.

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law                          Post Office Box 1950
                                          New Haven, CT 06509-1950
                                          Telephone: 203 777-5501

68.    On June 26, 2002 defendant notified plaintiff of defendant's intention to terminate the agreement as of December 31, 2001, see, <u>Exhibit E</u>, attached hereto.

69.    Said purported termination was and is of no legal effect.

70.    Said purported termination was and is inequitable.

71.    Plaintiff protested defendant's purported termination.

72.    Plaintiff reminded defendant that defendant is contractually prohibited from marketing or selling "Bonzi®" for any new use which plaintiff developed during the term of the development agreement.

73.    Defendant did not withdraw its purported termination; rather, it advised plaintiff that it intended to market and sell "Bonzi®" directly to the ornamental trade market as of January, 2003.

74.    Defendant thereafter created and published to the trade a specimen label which it has denominated a "final version", and which it has stated it intends to use in January, 2003, See, <u>Exhibit F</u> attached hereto.

75.    Contrary to law and to the terms of the agreements between the parties, the said specimen label lists the new uses which plaintiff developed for "Bonzi®" during the term of the development agreement.

76.    Plaintiff has been damaged and will continue to suffer damage as a result of the defendant's acts described herein and has no adequate remedy at law.

WHEREFORE, plaintiff seeks appropriate relief as prayed for hereinafter.

## COUNT II:  CONVERSION

77.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

78.     Defendant's said acts constitute a conversion of plaintiff's property rights, and have caused and will continue to cause irreparable harm to the business and goodwill of plaintiff unless restrained by this Court.

79.     Plaintiff has no adequate remedy at law.

WHEREFORE, plaintiff seeks appropriate relief as prayed for hereinafter.

## COUNT III:  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

80.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

81.     Defendant's knowing, deliberate, improper promotion and impending sale of  "Bonzi®" for uses reserved exclusively to plaintiff and defendant's improper termination of the supply agreement constitute a breach of the covenant of good faith and fair dealing under the law of Delaware and other states in which defendant transacts its business.

82.     Defendant's acts as aforesaid have caused and will continue to cause irreparable harm to the business and goodwill of plaintiff unless restrained by this Court.

83.     Plaintiff has no adequate remedy at law.

CARMODY & TORRANCE LLP     195 Church Street
Attorneys at Law                    Post Office Box 1950
                                    New Haven, CT 06509-1950
                                    Telephone: 203 777-5501

WHEREFORE, plaintiff seeks appropriate relief as prayed for hereinafter.

## COUNT IV: VIOLATION OF FRANCHISE SECURITY LAW

84.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

85.    Defendant's acts constitute a violation of Delaware's Franchise Security Law, 6 Del. C. §2552, and have caused and will continue to cause irreparable harm to the business and goodwill of plaintiff unless restrained by this Court.

86.    Plaintiff has no adequate remedy at law.

## COUNT V: PROMISSORY ESTOPPEL

87.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

88.    The plaintiff reasonably relied upon the defendant to honor its agreements and deal with the plaintiff in good faith.

89.    Plaintiff has been damaged and will continue to suffer damage as a result of the defendant's acts described herein and has no adequate remedy at law.

90.    It would be unjust to permit the defendant to terminate the supply agreement and sell "Bonzi®" for the new uses developed by the plaintiff.

## COUNT VI:  UNJUST ENRICHMENT

91.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

92.     Defendant knew that Plaintiff intended to continue to develop new uses for Bonzi® under the terms of the development agreement.

93.     Defendant also knew that Plaintiff expected to be financially rewarded by sales into the ornamental trade market as a result of its efforts and investment in developing new uses for the use of Bonzi® in that market.

94.     Notwithstanding Defendant's knowledge of Plaintiff's development and marketing efforts and financial expenditures in furtherance thereof, Defendant nevertheless unilaterally misappropriated Plaintiff's contractual rights to market new uses for Bonzi® that Plaintiff had developed.

95.     Defendant has benefited from Plaintiff's investment in developing new uses of Bonzi® for the ornamental trade market.

96.     Defendant has unjustly appropriated for itself, to the detriment and exclusion of the Plaintiff, the benefits resulting from Plaintiff's development of new uses for Bonzi® under the terms of the development agreement.

97.     Defendant has been unjustly enriched as a result of its misappropriation of the ornamental trade market from the Plaintiff.

{N0717473}

14

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law                     Post Office Box 1950
                                             New Haven, CT 06509-1950
                                             Telephone: 203 777-5501

98.   Plaintiff has no adequate remedy at law.

## COUNT VII: CONNECTICUT UNFAIR TRADE PRACTICES ACT VIOLATION

99. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 and 92 through 98 as though fully set forth herein.

100.   Defendant's actions constitute unfair and deceptive trade practice as prohibited by § 42-110b of the Connecticut General Statutes.

101.   Plaintiffs have suffered an ascertainable loss as a direct and proximate result of Defendants unfair and deceptive trade practices.

102.   Pursuant to Conn. Gen. Stat. § 42-110g(c) a copy of this Complaint has been mailed to the Attorney General for the State of Connecticut.

WHEREFORE, plaintiff prays:

1.   For an order *pendente lite*, pursuant to Delaware's Franchise Security Law, 6 Del. C. §2552, enjoining defendant's purported termination of the supply agreement;

2.   For an order that defendant, its agents, officers, servants, and employees and all those holding by, through or under them or any of them, and all persons acting in concert or participation with them be preliminarily and thereafter permanently enjoined and restrained from advertising, promoting and selling "Bonzi®";

3.   For an order that defendant, its agents, officers, servants, and employees and all those holding by, through or under them or any of them, and all persons acting in

{N0717473}

15

CARMODY & TORRANCE LLP
Attorneys at Law

195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

concert or participation with them be preliminarily and thereafter permanently enjoined and restrained from advertising, promoting and selling "Bonzi®" with any representations that it may be employed for the uses as to which plaintiff enjoys exclusive rights pursuant to law and the agreement of the parties;

4.    For an order that defendant, its agents, officers, servants, and employees and all those holding by, through or under them or any of them, and all persons acting in concert or participation with them be preliminarily and thereafter permanently enjoined and restrained from advertising, promoting and selling "Bonzi®" for those uses as to which plaintiff enjoys exclusive rights pursuant to law and the agreement of the parties;

5.    For an order that defendant be ordered to deliver up to the attorney for plaintiff for destruction all labels, signs, prints, packaging, promotional materials, advertisements and other materials in its possession or under its control which have been created in violation of law and the agreement of the parties;

6.    For an order that defendant be required to notify all members of the trade to whom it has offered to sell "Bonzi®" labeled improperly, contrary to law and to the agreement of the parties that it has been enjoined by this Court from such sales;

7.    For an order that defendant recall all product labeled improperly, contrary to law and to the agreement of the parties which has already been shipped to customers of defendant, including all such products presently available for resale or other retail sale;

8.    For an order that defendant be ordered to account for and pay to plaintiff defendant's profits from its sales of "Bonzi®" and all damages sustained by plaintiff;

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law                Post Office Box 1950
                                New Haven, CT 06509-1950
                                Telephone: 203 777-5501

9.    For an order that defendant pay plaintiff's reasonable attorneys' fees pursuant to Delaware law, including but not limited to the provisions of Delaware's Prohibited Trade Practices Act, 6 Del. C. 2532 and Delaware's Franchise Security Law, 6 Del. C. §2552;

10.    For an order that defendant pay plaintiff's reasonable attorneys' fees pursuant to Connecticut General Statutes § 42-110g for violations of the Connecticut Unfair Trade Practices Act;

11.    For an order that defendant pay plaintiff's actual and punitive damages pursuant to Connecticut General Statutes § 42-110g for violations of the Connecticut Unfair Trade Practices Act;

12.    That plaintiff be granted such other and further relief as the Court may deem just and proper.

PLAINTIFF, UNIROYAL CHEMICAL
COMPANY, INC. d/b/a CROMPTON
MANUFACTURING COMPANY

By:_____
    Charles F. Corcoran, III (ct 04299)
    Carmody & Torrance LLP
    195 Church Street, P.O. Box 1950
    New Haven, CT 06509-1950
    Tel: (203) 777-5501
    Fax: (203) 784-3199
    E-mail:ccorcoran@carmodylaw.com
    Its Attorneys

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law              Post Office Box 1950
                              New Haven, CT 06509-1950
                              Telephone: 203 777-5501

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT 06901-3522
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com

_____
Charles F. Corcoran, III

CARMODY & TORRANCE LLP     195 Church Street
Attorneys at Law                  Post Office Box 1950
                                  New Haven, CT 06509-1950
                                  Telephone: 203 777-5501



## BONZI DEVELOPMENT AGREEMENT

This agreement, effective as of the 29th day of January 1991, by and between ICI Americas Inc., a Delaware corporation with its principal place of business at New Murphy Road and Concord Pike, Wilmington, Delaware, 19897 hereinafter ("ICIA") and Uniroyal Chemical Co. Inc., a New Jersey corporation with its principal place of business at Middlebury, Connecticut, 06749 hereinafter ("Uniroyal").

### WITNESSETH:

WHEREAS ICIA has the right to make, use and sell in the United States and its territories a plant growth regulator known by its generic name paclobutrazol and sold under the Bonzi trademark (hereinafter "the ICIA Product") and desires to promote the development of new uses and formulations of ICIA Products; and whereas, the parties have entered into a confidentiality agreement, dated May 23, 1990, regarding Uniroyal's development of new ICIA Product uses and sales of ICIA Product for presently registered uses as more fully set forth in the Bonzi Chemical Supply Agreement of even date herewith.

NOW THEREFORE, in consideration of foregoing premises and mutual promises hereinafter contained, the parties hereto agree as follows:

1. This agreement shall take effect on January 1, 1991 and shall remain in effect thru December 31, 1996, unless otherwise terminated as provided in the Bonzi Chemical Supply Agreement. Termination of the Development Agreement shall not necessarily cause termination of the Bonzi Chemical Supply Agreement, which shall be terminable pursuant to its own terms.

2. ICIA grants to Uniroyal the exclusive right to develop, register, market and sell new uses of Bonzi on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes in the U.S. and its territories excluding turf and commercial rights of way. ICIA further grants to Uniroyal exclusive rights to develop and register new ICIA Product formulations such as spikes and granules in the U.S. and its territories for use on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes in the U.S. and its territories excluding turf and commercial rights of way (hereinafter the "Development Field").

3. In consideration of the right to develop the new uses and formulations as identified in paragraph 2 hereof, Uniroyal agrees to make average annual expenditures of $80,000 for five years, beginning in 1992, for development of new Bonzi uses. Uniroyal agrees to spend $40,000 in 1991 to develop new uses of Bonzi. Uniroyal in its sole discretion shall determine how this money shall be spent.

4. For each new use and formulation developed by Uniroyal for use in the Development Field, ICIA will grant to Uniroyal marketing and sales rights as defined in Section 1.2 of the Bonzi Chemical Supply Agreement. Said marketing and sales rights shall be granted for 5 years from the date of registration of any new use or formulation. Uniroyal shall retain all marketing and sales rights to any new use or formulation which it develops under this Agreement. This provision shall survive the termination of this Agreement provided termination is not the result of any breach by Uniroyal of this Agreement or the Supply Agreement.

5. ICIA agrees to authorize the Environmental Protection Agency to reference ICIA registrations, without right of compensation, in support of Uniroyal Bonzi registration(s) and to support state registrations. (To include federal and state).

6. Uniroyal agrees to provide to ICIA an annual report by the anniversary date of this agreement on progress made in developing new Bonzi uses and formulations and on promotional and developmental expenditures and on market position vs. competition.

7. Commercialization of any new Bonzi uses and formulations shall be governed by the terms of the Bonzi Chemical Supply Agreement.

8. Uniroyal agrees to obtain all permits and licenses necessary for development of new Bonzi uses and formulations. Neither party may-assign its rights or delegate its performance hereunder without the prior written consent of the other party.

9. This agreement shall contain all the terms and conditions between the parties hereto regarding the development of new Bonzi uses and formulations. No modification, extension or release from any provision hereof shall be effected by mutual agreement, acknowledgement, acceptance or otherwise, unless the same be in writing, signed by both parties hereto, and specifically described as an amendment or extension of this agreement.

10. In the performance of this agreement, each party is an independent business and nothing herein shall be construed to the contrary. Nothing in this agreement shall make either party the party, agent or representative of the other party.

11. The validity,.Construction, and performance of this agreement shall be governed by the internal laws of the State of Delaware.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed by their duly authorized representative effective as of the date first written above.

ACCEPTED AND AGREED:

ICI AMERICAS INC.                UNIROYAL CHEMICAL COMPANY, INC.

By: _Charles R Nash_        By: _Af Anulli_

Title: _Business Mgr_        Title: _V.P. & Sp Proj. Dir_

Bonzi - ICI and Uniroyal



BONZI
CHEMICAL SUPPLY AGREEMENT

THIS AGREEMENT, made this 29th day of January, 1991, by and between ICI AMERICAS INC., a Delaware corporation with its principal place of business at New Murphy Road and Concord Pike, Wilmington, Delaware 19897 (hereinafter "ICIA") and Uniroyal Chemical Company, Inc., a New Jersey corporation with its principal place of business at Middlebury, CT 06749 (hereinafter "Uniroyal").

WITNESSETH:

WHEREAS ICIA has developed a plant growth regulator with a common or generic name of Paclobutrazol, identified by the trademark "Bonzi", meeting the specifications set forth in Exhibit A to this Agreement (hereinafter "ICIA Product"); and

WHEREAS Uniroyal desires to purchase on an exclusive basis the ICIA Product, and ICIA desires to sell to Uniroyal ICIA Product for use by Uniroyal in its sales of ICIA Product, all on the terms and conditions set forth herein.

NOW THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, ICIA and Uniroyal, intending to be legally bound, hereby agree as follows:

1. **Purchase and Sales of ICIA Product**

    1.1  ICIA agrees to sell and deliver exclusively to Uniroyal and Uniroyal agrees to purchase and receive ICIA Product exclusively from ICIA in sufficient quantities to satisfy 100% of Uniroyal's requirements of the ICIA Product according to the sales Target Forecast more specifically set forth in Section 4 hereof.  Uniroyal further agrees to make average annual expenditures of $72,000 for five years, beginning in 1992, to commercially promote the sale of Bonzi.  Uniroyal agrees to spend $36,000 during 1991 to promote the sale of Bonzi.  Uniroyal, in its sole discretion, shall determine how this money shall be spent.

    1.2  Except for Product purchased by others from ICIA prior to January 1, 1991, Uniroyal shall have the exclusive right to sell ICIA Product for presently registered uses as determined by the current U.S. EPA approved label attached hereto as Exhibit B, in the U.S. and its territories (hereinafter "Marketing Area") on an exclusive basis and Uniroyal shall have the exclusive right to develop, register, sell and market ICIA product in the Marketing Area for use on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes, excluding turf and commercial rights of way (hereinafter "Permitted Use").  Uniroyal shall also have the exclusive right to develop, register, sell and market new formulations of ICIA Product, such as spikes and granules, in The Marketing Area for the Permitted Use.

    1.3  Except as expressly set forth in this Supply Agreement and the Bonzi Development Agreement ("Development Agreement") of even

date herewith, both parties agree and acknowledge that no express or implied license, right or interest is granted to Uniroyal by reason of the sale of ICIA Product hereunder or otherwise.

1.4  ICIA permits Uniroyal to repackage ICIA Product which is purchased under the terms of this Agreement.

## 2.  Term; Termination

2.1  Unless earlier terminated as provided hereunder, the term of this Agreement shall be for an initial term commencing on January 1, 1991 and ending December 31, 1996.  Thereafter, this Agreement shall continue in full force and effect for successive annual terms unless terminated by either party in writing not less than 180 days before the termination date of the prior term.

2.2  This Supply Agreement may be terminated by either party at any time by reason of a material breach by the other under the terms of this Supply Agreement or under the terms of the Development Agreement between Uniroyal and ICIA, dated of even date herewith relating to Uniroyal's commitment to develop new uses for Bonzi, and upon ninety (90) days prior written notice to the other setting forth the basis therefor and providing the other with the opportunity to cure such breach.  Failure of the breaching party to cure such breach in the said ninety (90) day period shall permit the nondefaulting party to terminate this Supply Agreement and the Development Agreement upon thirty (30) days prior written notice thereafter.

## 3.  Price

3.1  The initial purchase price of ICIA Product sold hereunder shall be $108.00 per gallon.  Beginning June 1992, ICIA shall have the right once each June during the term of this agreement, to increase the purchase price of ICIA Product to offset cost escalation and inflation. The amount of any such increase shall be the greater of either 4% of the existing purchase price or 50% of inflation as reported by the Producer Price Index for Chemicals and Allied Products for the preceding June 1 - May 31 period.  The price increase will be delivered to Uniroyal by written notice and shall apply to purchase orders dated at least fifteen (15) days after the date notice of the price increase is given.

## 4.  Product Purchase Terms

4.1  Payments are due net 45 days after date of invoice (the "Net Due Date").  Payments must be received by ICIA on or before the Net Due Date and at the location specified on the invoice.  In the event Uniroyal fails to pay in full the balance due in accordance with the invoice on or before the Net Due Date, ICIA at its option may suspend further deliveries under this Supply Agreement after ten (10) days prior written notice of Uniroyal's failure to pay or may charge Uniroyal an interest fee on the outstanding balance, such fee not to exceed 12% per annum, until all overdue indebtedness has been paid.

4.2  ICIA Product shall be delivered in 55 gallon drums to a destination chosen by Uniroyal, within sixty (60) days of receipt of a quarterly purchase order release.  Shipments will be made f.o.b. ICIA's Richmond, California plant.

4.3  Uniroyal will purchase and receive from ICIA during each year of this Agreement one hundred percent (100%) of Uniroyal's requirements of ICIA Product for the Permitted Use for sales in its Marketing Area during each year.  These requirements shall not be less than 75% of the Sales Target Forecast outlined below ("Minimum Quantity").  In the event that these Minimum Quantity amounts are not met, ICIA's remedies shall be set forth in Section 6.1 of this Agreement.

### Uniroyal Sales Target Forecast (Bonzi 0.0367 Lbs./Gal.)

| Calendar Year | Gallons | Minimum Quantity of Gallons |
|---|---|---|
| 1991 | 2000 | 0 |
| 1992 | 3000 | 2250 |
| 1993 | 3500 | 2625 |
| 1994 | 4250 | 3188 |
| 1995 | 5000 | 3750 |
| 1996 and each one year extension thereafter | 6000 | 4500 |

4.4  For any new uses and formulations developed by Uniroyal, ICIA Product volumes and pricing shall mutually be agreed by the parties.

4.5  On or before August 31 of each calendar year, Uniroyal shall provide to ICIA an annual forecast, by quarter, of its requirements for ICIA Product for the following year.  At the end of each forecast year Uniroyal shall provide an annual purchase order for the following sales year and issue quarterly purchase order releases against the purchase order during the sales year.

## 5.  Trademarks

5.1  ICIA warrants that it owns all rights to the trademark BONZI.  ICIA hereby grants to Uniroyal an exclusive, royalty-free right to use the Bonzi trademark in the Marketing Area during the term of this agreement.

5.2  Uniroyal recognizes that the trademark BONZI is the property of ICIA and shall take all steps as are reasonable to assure that the property in this trademark shall remain with ICIA.  Uniroyal will sell Product only under ICIA's trademark BONZI.  Uniroyal will use reasonable efforts to ensure that the labels and any other promotion and marketing materials will be in compliance with the requirements of appropriate regulatory agency.  In no event shall Uniroyal sell any Product bearing the BONZI trademark with any label that has not previously been approved by EPA.

6. **ICIA's Remedies**

6.1 In the event Uniroyal fails to purchase and take delivery of the Minimum Quantities of ICIA Product specified in Section 4 hereof, ICIA may, at its sole election and on thirty (30) days prior written notice to Uniroyal, without liability and without prejudice to any other remedy, either terminate this Agreement or convert this Agreement to a non-exclusive supply agreement and terminate the Development Agreement. In the event of such failure by Uniroyal for any reason (excluding any circumstances or contingency affecting Uniroyal under Section 9 hereof), all marketing rights to any Uniroyal developed new product uses and/or formulations shall revert exclusively to ICIA at no cost to ICIA, and Uniroyal shall have no obligation to pay future promotional or development expenditures required under this Agreement and the Development Agreement.

7. **Registrations**

7.1 On or before February 1, 1991 ICIA shall take all necessary action to obtain the grant to Uniroyal of a supplemental registration with the EPA under ICIA's registration for the ICIA Product during the term of this agreement. Notwithstanding anything herein to the contrary, nothing herein, or in any section hereof, shall grant to Uniroyal any right, including without limitation the rights of data composition or exclusive use rights, with respect to any data submitted to EPA by ICIA in support of any registration, re-registration, application for registration or otherwise of the ICIA product. ICIA shall maintain and support such supplemental registration for the ICIA Product for at least as long as this Agreement is in effect and for such additional time and may be required by EPA.

7.2 In addition to ICIA's rights under any other provision of this agreement, ICIA shall have the right to terminate this agreement by giving at least 30 days prior written notice if the EPA issues a data call in, special review, re-registration standard, or other data requirement for the ICIA Product in response to which ICIA, in its sole discretion, decides not to supply data.

7.3 Uniroyal shall obtain and maintain at its expense all necessary state and local registrations and approvals required of Uniroyal for the sale and use of the ICIA product. Uniroyal shall have the right to prosecute and maintain such registrations in ICIA's name if required by state or local law with prior notice to ICIA. ICIA shall cooperate with Uniroyal in obtaining such registrations and approvals and shall provide Uniroyal and the appropriate agencies with all necessary information and data to the extent it is able to do so as long as Uniroyal is in full compliance with the terms and conditions of this agreement.

8. **Warranties; Limitation of Liability; Indemnification**

8.1 ICIA warrants that it has legal title to the ICIA Product sold hereunder, and that ICIA Product sold hereunder shall meet the specifications set forth in Exhibit A and shall be produced in

-4-

compliance with all applicable federal, state and local laws, ordinances, rules, regulations, and executive orders. ICIA MAKES NO OTHER REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE ICIA PRODUCT.

8.2  Subject to Sections 8.3 and 8.4, ICIA agrees to indemnify and hold Uniroyal harmless from and against any and all loss, liability, damage, expenses, costs and fees (including reasonable attorneys fees), based upon or arising out of ICIA's breach of its warranties hereunder, breach of this Supply Agreement and/or ICIA's negligence or willful misconduct.

8.3  Within one hundred twenty (120) days after receipt of each shipment of the ICIA Product, Uniroyal shall examine such ICIA Product for any damage, defect or shortage.  All claims for any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) shall be deemed waived unless made in writing and received by ICIA within one hundred twenty (120) days after Uniroyal's receipt of the ICIA Product, in respect to which such claim is made, or, if such claim is for non-delivery of such ICIA Product, within one hundred twenty (120) days after the date upon which such ICIA Product was to have been delivered; provided that as to any such cause not reasonably discoverable ("latent defect") within such one hundred twenty (120) day period (including that discoverable only in processing, further manufacture, other use or resale) any claim shall be made in writing and received by ICIA within one hundred twenty (120) days after Uniroyal learns of the latent defect giving rise to such claim.  Failure of ICIA to receive written notice of any such claim within the applicable time period shall be deemed an absolute and unconditional waiver by Uniroyal of such claim, known or unknown, irrespective of whether the facts giving rise to such claim shall have then been discovered or of whether processing, further manufacture, other use of resale of the ICIA Product shall have then taken place.

8.4  EXCEPT IN THE EVENT OF ICIA'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT AND EXCEPT AS OTHERWISE PROVIDED IN SECTION X, UNIROYAL'S EXCLUSIVE REMEDY SHALL BE FOR DAMAGES AND ICIA'S LIABILITY FOR ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ALLEGED NEGLIGENCE (OTHER THAN GROSS NEGLIGENCE), SHALL IN NO EVENT EXCEED THE PURCHASE PRICE OF THE ICIA PRODUCT IN RESPECT TO WHICH THE CLAIM IS MADE.

9.  Excuse of Performance

9.1  Neither party shall be subject to any liability for delay in performance or nonperformance as a result of fire, flood, natural catastrophe, strike, labor trouble, accident, riot, act of governmental authority or compliance with government request, act of God, or other contingencies and circumstances beyond its reasonable control interfering with the production, supply, transportation, or

consumption of ICIA Product or with the supply of any raw materials (including energy sources) used in connection therewith or, in the event either party ceases or suspends the operation of any facility where it is producing any quantity of ICIA Product deliverable hereunder, and such termination or suspension is made by such party because said facility, the operation thereof and/or the product therefrom violates or fails to comply with any applicable governmental law, regulation, ordinance, standard, order or decree relating to pollution, ecology, occupational safety and health or environmental matters. Quantities so affected may be eliminated from the Supply Agreement without liability, but this Supply Agreement shall otherwise remain unaffected. In no event shall Uniroyal or ICIA be obligated to purchase any materials in the marketplace to satisfy its obligations hereunder. Neither party shall be obligated to settle any labor trouble or strike for purposes of this Agreement.

## 10.  Patent Indemnity

10.1  ICIA agrees to indemnify and hold Uniroyal harmless from any liability or expense (including reasonable attorneys' fees) resulting from any claim or lawsuit alleging that ICIA Product infringes any claim of a patent provided that said liability or expense results from Uniroyal's use or sale of the ICIA Product and provided that Uniroyal has given ICIA prompt written notice of any suit for infringement brought against Uniroyal and has offered ICIA the opportunity to defend such suit. Article 8 does not apply to this Section 10.1.

## 11.  Miscellaneous

11.1  This Supply Agreement and the Development Agreement contain all the terms and conditions of sale and purchase of ICIA Product to Uniroyal and embody and integrate the entire understanding of the parties with respect thereto. No modification, extension or release from any provision hereof shall be effected by mutual agreement, acknowledgement, acceptance of purchase order, invoice or shipping instruction forms, or otherwise, unless the same shall be in writing, signed by the party to be bound and specifically described as an amendment or extension of this Supply Agreement.

11.2  No waiver by either Uniroyal or ICIA with respect to any breach or default or of any right or remedy, and no course of dealing shall be deemed to constitute a continuing waiver of any other breach or default or of any other right or remedy, unless such waiver be expressed in writing signed by the party to be bound.

11.3  This Agreement and performance hereunder shall be construed and governed by the laws of the State of Delaware.

-6-

11.4  Neither this Supply Agreement nor any interest therein shall be transferred or assigned by either party except upon the prior written consent of the other party which shall not be unreasonably withheld.

11.5  Notices hereunder shall be sent in writing by registered or certified mail to the party at the address set forth in the preamble to this Supply Agreement or at such other address as may be specified in writing by such party.

IN WITNESS WHEREOF, Uniroyal and ICIA have caused their duly authorized representatives to execute this Supply Agreement all as of the day and year first above written.

ICI AMERICAS INC.

By: _Charles R Nash_

Title: _Business Mgr._

UNIROYAL CHEMICAL COMPANY, INC.

By: _____

Title: _Director of Purchasing_

090790MK03

**EXHIBIT A**

PRODUCT SPECIFICATIONS

BONZI®
Ornamental Growth Regulator

| SPECIFICATION | MINIMUM | MAXIMUM | METHOD |
|---|---|---|---|
| ASSAY PACLOBUTRAZOL, WT% | 0.40 | 0.48 | PAM 630 |
| SPECIFIC GRAVITY | 1.01 | 1.02 | GAM 015/78A |
| COLOR, ODOR & APPEARANCE | MILKY WHITE ODORLESS SUSPENSION | | |

Approvals _____

Dates _2/14/91___