UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY | : : : : | |
| Plaintiff, | : : | Civil Action No. 3:02cv02253 (AHN) |
| v. | : : | |
| SYNGENTA CROP PROTECTION, INC. | : : | |
| Defendant. | : | August 19, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND/OR DISMISS COUNTERCLAIMS**

**I.  INTRODUCTION**

Through its Amended Answer dated July 16, 2004, the defendant has improperly attempted to inject new controversy into this action through untimely and meritless counterclaims. The defendant filed its Amended Answer, Affirmative Defenses and Counterclaims in response to the plaintiff's May 18, 2004 Amended Complaint, which the plaintiff had amended to set forth a cause of action under the Connecticut Unfair Trade Practices Act ("CUTPA") and a claim for unjust enrichment. The plaintiff's modest amendment of its complaint did not open the door for the defendant to allege, for the first time, counterclaims that it could have asserted in its initial response to the plaintiff's complaint. Under the Federal Rules of Civil Procedure, the defendant must obtain permission from the court to file such counterclaims. Having failed to do so, the

{N0721188}

defendant's counterclaims should be stricken. Moreover, even if the defendant had moved for permission to file its counterclaims, as it was required to, it would not be entitled to such permission. Finally, if the defendant's counterclaims are deemed permitted, they should be dismissed for failing to state claims upon which relief may be granted.

II.     **PROCEDURAL BACKGROUND**

The plaintiff filed its original complaint in this matter on December 20, 2002 seeking legal and equitable relief against the defendant for breach of contract (Count I), conversion (Count II), breach of the covenant of good faith and fair dealing (Count III), violation of the Delaware Franchise Security Law (Count IV), and promissory estoppel (Count V). The plaintiff's claims arise out of certain Supply and Development Agreements concerning the defendant's granting to plaintiff exclusive rights to develop, register, market and sell defendant's plant growth regulating chemical "Bonzi," and to develop register, sell and market new formulations of the product.

The defendant first responded to the complaint by moving to dismiss the claim for violation of the Delaware Franchise Security Law (Count IV). The court granted the defendant's motion by Ruling dated September 30, 2003. Thereafter, the defendant filed its Answer and Affirmative Defenses on October 30, 2003. The defendant did not assert any counterclaims in response to the complaint.

By motion dated May 18, 2004, the plaintiff moved to amend its complaint to add a claim for violation of CUTPA and a claim for unjust enrichment. The defendant consented to the motion with respect to the addition of the CUTPA claim and the court granted the motion as to both counts. These amendments simply presented new theories of recovery and did not inject substantial or significant new facts into the action. (See Am. Compl., Counts VI and VII.) The plaintiff did not significantly change its demand for relief other than to seek the statutory damages available under CUTPA. On July 16, 2004, the defendant filed its response to the plaintiff's Amended Complaint, which response included, for the first time, the counterclaims that are the subject of this motion. Discovery in this matter has been protracted and is ongoing. The trial originally scheduled in this matter for June of 2004 has been delayed.

### III.  NATURE OF DEFENDANT'S COUNTERCLAIMS

The defendant asserts two counterclaims. The first alleging tortious interference with business expectancies, and the second alleging violation of the Connecticut Unfair Trade Practices Act. The sole basis for both counterclaims is the plaintiff's bringing of this lawsuit, which the defendant characterizes as "sham litigation."[1]

The defendant provides, in essence, a counterstatement of facts to the plaintiff's allegations, characterizing the business relationship between the parties and their conduct

---

[1] The defendant alleges that the plaintiff has undertaken a wrongful course of conduct against it "by, among other things, prosecuting this action insofar as it seeks equitable relief barring and/or limiting Syngenta's ability to market and sell Bonzi without any good faith basis for doing so." (Counterclaim, ¶ 25.) Nowhere in the counterclaims however does the defendant identify any wrongful conduct beyond the commencement of this lawsuit.

{N0721188}

-3-

under the Supply and Development Agreements. (Counterclaim, ¶¶ 1-20.)  Based on the conduct of the parties alleged by the defendant and its reading of the Supply and Development Agreements, the defendant concludes it did not breach the Agreements since "(i) Uniroyal's right to develop New Uses pursuant to the Development Agreement expired on December 31, 1996, and (ii) the Development Agreement grants to Uniroyal marketing and sales rights to New Uses only for a period of five years from the date of registration of those New Uses with the EPA." (Id., ¶ 20.)

Based on its interpretation of the Supply and Development Agreements, the defendant concludes, "Uniroyal's lawsuit, including the equitable relief [sought], is a sham, and is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  There are no provable facts in the Complaint that could justify [the relief sought by the plaintiff]…" (Id., ¶ 22.)  The defendant therefore infers that "Uniroyal brings this lawsuit, and seeks the foregoing equitable relief, to conceal an attempt to interfere directly with the business relationships of Syngenta, to impede Syngenta's ability to sell Bonzi, and to gain a competitive advantage over Syngenta in the sale of paclobutrazol products by limiting the uses for which Syngenta may market and sell Bonzi." (Id., ¶ 23.)  Finally, the defendant alleges, in conclusory terms, that the plaintiff's actions constitute tortious interference with business expectancies and a violation of CUTPA. (Id., ¶¶ 24-33.)

**IV.   ARGUMENT**

*A.   The defendant may not assert its counterclaims in response to the plaintiff's Amended Complaint as of right and they should therefore be stricken.*

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party amends its pleading with leave of the court or by consent of the adverse party- as the plaintiff did here- the adverse party "shall plead *in response* to [the] amended pleading." (emphasis added). Based on this rule, the courts have held that an adverse party may not, as a matter of right, assert new claims, defenses and allegations in an amended answer that do not directly respond to the new matters raised in the amended complaint. See e.g. Wechsler v. Hunt Health Systems, Ltd., 186 F.Supp.2d 402, 415-416 (S.D.N.Y. 2002) (where defendants filed an amended answer that asserted new claims, defenses and allegations that were "not in response to the Amended Complaint, and because their time to amend their answer as of right had expired under Fed.R.Civ.P. 15(a), defendants should have obtained prior leave of the Court before submitting their Amended Answer."); Equal Employment Opportunity Commission v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002) ("If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause. This would deprive the Court of its ability to effectively manage the litigation."); Nolan v. City of Yonkers, 1996 WL 120685 at *4 (S.D.N.Y. March 19, 1996) (rejecting defendants' claim that "plaintiffs amended their complaint at their peril, opening themselves up to any and

{N0721188}

-5-

all counterclaims that defendants chose to assert" and holding that "defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had a right to assert counterclaims in their original answer.")[2]  But see American Home Products Corporation v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) (permission not required for defendant to add new counterclaim following plaintiff's amendment of complaint).

     In Chrysler Corporation v. Fedders Corporation, 540 F.Supp. 706 (S.D.N.Y. 1982), the plaintiff, with leave of the court and permission from the defendant, amended its complaint to add a new claim to enforce a prepayment clause in a Note that was already the subject of the litigation.  In response to the amended complaint, the defendant filed an amended answer in which it added new counterclaims for malicious prosecution and abuse of process.  Thereafter, the plaintiff moved to strike the defendant's new counterclaims pursuant to Federal Rule 15 as untimely and prejudicial.  The plaintiff also moved to dismiss the counterclaims under Rule 12 (b)(6) for failure to state a claim upon which relief could be granted.  The defendant argued that since the plaintiff was given the opportunity to amend its complaint that the defendant was "absolutely entitled" to add new counterclaims.  The court rejected the defendant's argument and held that its counterclaims should be stricken. Id., 540 F. Supp. at 708, 713.

---

[2] Copies of all unreported cases cited herein are attached.
{N0721188}

The court premised its holding on the interplay between Federal Rules 13 and 15.[3] While observing that Rule 15 does not expressly limit the issues that can be alleged in response to an amended pleading, the court noted that "Rule 15 does state that the pleading must be 'in response to the amended pleading'." Id., 540 F.Supp. at 712-713. Since Rule 15 speaks of a "pleading", the court then looked to the provisions of Rule 13(a). While acknowledging that Rule 13(a) "was not written principally to address the problem of counterclaims asserted in response to amended complaints", the court found significant that the rule directs that "a pleading shall state as a counterclaim any claim… which the pleader has against the opposing party." Id. The court continued:

> Furthermore, Rule 13's broad requirement that pleader 'shall state… counterclaim(s)' in his responsive papers applies only to claims existing

---

[3] Rule 15 provides, in pertinent party, as follows:

(a) Amendments.  A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party;  and leave shall be freely given when justice so requires.  A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

(d) Supplemental Pleadings.  Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.  If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

> 'at the time of serving the pleading' and only if 'they arise( ) out of the transaction or occurrence that is the subject matter of the opposing party's claim.' A pleader must seek the permission of the court to assert claims which were omitted from the original pleading, Rule 13(f)[4], or which matured after the original pleading, Rule 13(e)[5], or which arise out of more recent transactions or occurrences, Rule 15(d)[6]. On balance, then, given the treatment of various types of counterclaims under the Federal Rules of Civil Procedure, the Court finds that [the defendant] does not have a right to assert new counterclaims at this time in the same way that it had a right to assert counterclaims in its original answer."

Id., 540 F.Supp. at 713.

Here, the defendant's counterclaims do not respond to any new matters raised in the plaintiff's amended complaint and are not premised on facts that have occurred since the filing of the plaintiff's original complaint.[7] To the contrary, the defendant's counterclaims matured when the plaintiff filed its original complaint in December of 2002 and consist of allegations that the defendant could have made in its initial answer. Accordingly, the defendant may not assert its counterclaims as of right and can only assert them with the permission of the court under Rule 13(f). Because the defendant failed to obtain the court's permission, its counterclaims should be stricken.

---

[4] "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of the court set up the counterclaim by amendment."

[5] "A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

[6] "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented…"

[7] Defendant's vague allegation that the plaintiff "has conceded in deposition" to the validity of defendant's interpretation of the Agreements does nothing to inform the defendant's conclusion that the plaintiff's complaint is a sham. Even if this "concession" were considered new, relevant information, it would not excuse the defendant from obtaining permission to assert a counterclaim based upon it. See Fed. R. Civ. P. 13(e).

{N0721188}

**B.    *If the defendant were to request permission to assert its counterclaims, as is required, such permission would not be warranted under these circumstances.***

The defendant's counterclaims for sham litigation are compulsory ones that should have been pled in the defendant's initial answer to the complaint. Federal Rule 13(a) defines a compulsory counterclaim as "any claim which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…" The Second Circuit Court of Appeals has held, "[t]he test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (internal citations omitted). Based on this test, the courts have held that a claim for sham litigation is a compulsory counterclaim. Critical-Val Filtration Corporation v. Minuteman International, Inc., 233 F.3d 697 (2d Cir. 2000) (plaintiff was required to assert sham litigation claim in prior litigation since it "had" the claim at that time); U.S. Philips Corporation v. Sears Roebuck & Co., 55 F.3d 592, 597 (Fed. Cir. 1995) ("the place to challenge litigation as sham is in the asserted sham litigation…").

Since the defendant's counterclaims for sham litigation are compulsory and were not filed in its initial answer to the complaint, the defendant must seek permission to file them under Rule 13(f) or 15(a). Chrysler Corporation, 540 F.Supp. at 713. In

{N0721188}

-9-

considering a motion to amend a pleading, "delay, accompanied by prejudice to the opposing party, is a fully adequate reason for denying leave to amend." Id., 540 F.Supp. at 716. In addition, Rule 13(f) places the burden upon the moving party to demonstrate oversight, inadvertence or excusable neglect in failing to set up a counterclaim or that justice requires leave to amend. See also Wechsler, 186 F.Supp.2d at 418-419 (denying request to amend answer *nunc pro tunc* where defendants were long aware of facts underlying new claims, defenses and allegations and where new matters raised by defendants would require new discovery, delay adjudication of case and prejudice plaintiff.) Finally, the Second Circuit has held that "futility" provides a solid ground on which to deny leave to amend. Marchi v. Board of Coop. Educ. Servs. Of Albany, 173 F.3d 469, 478 (2d Cir.), cert denied 528 U.S. 869 (1999).

      Here, the defendant has proffered no grounds that would permit the filing of its counterclaims. If the defendant were permitted to assert its counterclaims, the trial of this matter would be further delayed. As is set forth below, the defendant's prosecution of its sham litigation claims will entail discovery on entirely new issues involving, among others, the subjective intent of the plaintiff corporation in pursuing this action. The plaintiff will be unduly prejudiced in that it will be required to retake depositions and expand the scope of previously served discovery to encompass the damages purportedly suffered by the defendant and the causal link between those damages on the plaintiff's lawsuit. The plaintiff will also suffer prejudice in that the injunctive relief and the recovery for ongoing damages it seeks will be further delayed. As discussed above, the

{N0721188}

only "fact" relied on the by the defendant to support the allegations in the counterclaims is the plaintiff's filing of the present lawsuit nearly two years ago.  There are no conceivable grounds to find this delay excusable, and there is likewise no doubt but that allowing these counterclaims to stand would be highly prejudicial to the plaintiff.  Finally, as set forth below, permitting the defendant's amendment of its answer to include these counterclaims would be futile since they fail to state claims upon which relief may be granted.

C. *The counterclaims fail to state claims upon which relief may be granted since the plaintiff is immune from suit under the Noerr-Pennington doctrine.*

The standards governing motions to dismiss under Rule 12(b)(6) are well known to the court.  The court's function on a motion to dismiss "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Festa v. Local 3 Int'l Board of Electrical Workers, 905 F.2d 35, 37 (2d Cir. 1990).  Although the court must limit its analysis to the four corners of the complaint,  Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir., 1991), mere conclusory allegations or legal conclusions are not sufficient to withstand a Rule 12(b)(6) motion to dismiss.  Briehl v. General Motors Corp., 172 F.3d 623, 627-28 (8th Cir., 1999); DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir., 1999).

The plaintiff is immune from the counterclaims asserted by the defendant under the Noerr-Pennington doctrine.  "The Noerr-Pennington doctrine was established by the Supreme Court in a trilogy of antitrust cases…[and] is derived from First Amendment

{N0721188}

-11-

principles guaranteeing the right to petition the government." Hartford Life Insurance Company v. Variable Life Insurance Company, Inc., 964 F.Supp. 624, 626 (D. Conn. 1997) (internal citations omitted). In sum, "[t]he Noerr-Pennington doctrine protects a litigant's First Amendment right to seek judicial redress of grievances by immunizing the litigant from a claim that the mere act of pursuing a lawsuit causes harm." Id., 964 F.Supp. at 625.

The courts, however, have recognized a limited exception to the Noerr-Pennington doctrine known as the "sham" exception. Professional Real Estate Investors v. Columbia Pictures Industries, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). "Under the sham exception, litigation may be deprived of immunity if it constitutes 'a mere sham to cover… an attempt to interfere directly with the business relationships of a competitor.'" Hartford Life Insurance Company, 964 F.Supp. at 626-27 (internal citations omitted). Under Professional Real Estate Investors, *supra*, a two-part test is used to determine when litigation will be considered a sham not immunized under Noerr:

> First the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail." If the court concludes that the challenged litigation is objectively meritless, then the court must next consider the second prong of the test.
>
> The second prong involves an inquiry into the litigant's subjective motivation. An improper purpose will be found if the court determines that "the baseless lawsuit conceals 'an attempt to interfere *directly* with the

...

> business relationships of a competitor,' through the 'use [of] the governmental *process*--as opposed to the *outcome* of that process--as an anticompetitive weapon.'"
>
> Because the question of subjective intent is not considered unless a claim is first held to be objectively baseless, a finding that a lawsuit was instituted with probable cause is an absolute defense to a claim that the case is a sham regardless of litigant's subjective motivation. Probable cause to institute civil proceedings requires no more than a " 'reasonabl[e] belie[f] there is a chance that [a] claim may be held valid upon adjudication.' " Where there is no dispute over the predicate acts of the underlying proceedings, the court may determine probable cause as a matter of law.
>
>  … Even if a lawsuit is ultimately lost, probable cause to pursue the action will exist if it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.' "

Hartford Life Insurance Company, 964 F.Supp. at 627 (internal citations omitted).

"Where possible, … this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." Agfa Corporation v. United Marketing Group, Inc., 2003 WL 21555087 at *3 (S.D.N.Y. July 10, 2003) (internal citations omitted).

Based on the Noerr-Pennington doctrine, the Second Circuit Court of Appeals has held that "the filing of a single non-sham lawsuit cannot form the basis of a claim under CUTPA or Connecticut's common law of tortuous interference with a business expectancy." Suburban Restoration Co., Inc. v. ACMAT Corporation, 700 F.2d 98, 102 (2d Cir. 1983), cited with approval in Zeller Consolini, 59 Conn. App. 545, 553 (2000).

Accordingly, the defendant may only sustain its counterclaims if it properly alleges the sham litigation exception to the Noerr-Pennington doctrine as set forth above. The defendant here has not done so.

As the court made clear in Hartford Life Insurance Company, *supra*, mere allegations that the plaintiff will not prevail on its complaint fail to state a claim of sham litigation. Here, the defendant's counterclaim, at most, alleges disagreement with the plaintiff as to the meaning and effect of the Supply and Development Agreement and the parties' respective rights and obligations thereunder. The predicate allegations in the defendant's counterclaim for sham litigation (Counterclaim, ¶¶ 1-20) contain no facts that would support the conclusion that the plaintiff's complaint is not "arguably warranted by existing law or at the very least was based on an objectively good faith argument for the extension, modification, or reversal of existing law." Instead, the defendant merely concludes that since its interpretation, and not the plaintiff's interpretation, of the Supply and Development Agreements is the correct one, "no reasonable litigant could realistically expect success on the merits" of the plaintiff's complaint. (Id., ¶¶ 20, 22.) Respectfully, the defendant has fallen far short alleging facts that, if proven, would support the inference that the plaintiff commenced this action without probable cause.

As was the case in Hartford Life Insurance Company , "[s]tripped of everything but its essentials, [defendant's] argument is that because its defenses ultimately will prevail, [plaintiff's] lawsuit must be 'objectively baseless' within the meaning of the sham exception." 964 F.Supp. at 628. But "[e]ven if [defendant] is correct in its assertion

that it will win this lawsuit, it is incorrect in then concluding that [plaintiff's] claims must have been brought with no probable cause." Id.  Accordingly, even when reading the allegations of the defendant's counterclaims as true "the court is left with nothing from which it can infer that [the plaintiff's] claims were not even arguably warranted by existing law when [plaintiff] commenced the underlying litigation." Id.  Since the counterclaims do not allege facts that, if proven, would show that the plaintiff's complaint is objectively baseless, the first prong of the sham exception has not been met and there is no need to address the second prong. Id.  Based on the foregoing, the defendant's counterclaims fail to state claims upon which relief may be granted and should be dismissed.

## V.    CONCLUSION

The defendant's afterthought, eleventh-hour attempt to inject into this action new controversy based on facts long known to it should not be sanctioned.  The defendant's counterclaims are not properly joined in this action and, in any event, are meritless.  Accordingly, the plaintiff respectfully requests that the court grant its motion.

Respectfully submitted,

THE PLAINTIFF
UNIROYAL CHEMICAL COMPANY,
INC. d/b/a CROMPTON
MANUFACTURING COMPANY

By: /s/
Charles F. Corcoran, III (ct 04299)
David S. Hardy (ct 20904)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, CT  06509-1950
Tel:  (203) 777-5501
Fax:  (203) 784-3199
E-mail: ccorcoran@carmodylaw.com
E-mail: dhardy@carmodylaw.com
Its Attorneys

## **CERTIFICATION**

 This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

| | |
|---|---|
| William A. Ruskin<br>(Fed. Bar No. ct20898)<br>R. Michael Meo, Jr.<br>(Fed. Bar No. ct16318)<br>Shipman & Goodwin LLP<br>300 Atlantic Street<br>Stamford, CT  06901<br>Telephone: (203) 324-8100<br>Facsimile: (203) 324-8199<br>E-mail: wruskin@goodwin.com<br>E-mail: rmeo@goodwin.com | Paul D. Sanson (Fed. Bar No. ct05477)<br>Karen T. Staib (Fed. Bar No. ct21119)<br>Amy E. Souchuns (Fed.Bar No ct21223)<br>Shipman & Goodwin LLP<br>One Constitution Plaza<br>Hartford, CT  06103-1919<br>Telephone: (860) 251-5000<br>Facsimile: (860) 251-5600<br>E-mail: psanson@goodwin.com<br>E-mail: kstaib@goodwin.com<br>E-mail: asouchuns@goodwin.com |

 _/s/_____
 David S. Hardy

{N0721188}

-16-