1996 WL 120685                                                                                        Page 4
1996 WL 120685 (S.D.N.Y.)
(Cite as: 1996 WL 120685 (S.D.N.Y.))

▷

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Colm NOLAN, et al., Plaintiffs,
v.
CITY OF YONKERS, et al., Defendants.

No. 92 CIV. 6067 (KMW).

March 19, 1996.

OPINION AND ORDER

KIMBA M. WOOD, District Judge.

*1 Presently before the court are motions for reconsideration of three separate orders of Magistrate Judge Kathleen A. Roberts [FN1] in this civil rights action arising out of an incident (the "Incident") that occurred in the early morning hours of December 2, 1991 in the parking lot of the Coach 'N Four Restaurant (the "Restaurant") in Yonkers, New York. Plaintiffs were celebrants at a party at the Restaurant in honor of the christening of the daughter of plaintiffs Patrick and Theresa McNulty. Defendants are police officers who responded to a call regarding the Incident.

For the reasons set forth below, I deny all of the motions for reconsideration.

*I. Analysis*
*A. The Standard of Review*

District courts reviewing pretrial orders entered by magistrate judges on nondispositive matters determine only whether the magistrate's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

*B. Defendants' Motion for Reconsideration of the May 4, 1994 Order*

Defendants seek reconsideration of that part of Magistrate Judge Roberts's May 4, 1994 Order that denied disclosure of the redacted portions of a document entitled a "Quick Case Status Report" (the "Report"). The Report is a document produced by plaintiffs' counsel, Brian O'Dwyer ("O'Dwyer"), after he met with several of the plaintiffs on December 5, 1991, three days after the Incident. The Report was primarily based on a interview with Patrick McNulty ("McNulty"). O'Dwyer prepares such a report after meeting with each new client, in order to summarize the client's version of the incident, evaluate the injuries and assess the case. Such a document is protected from disclosure by attorney-client privilege and attorney work product privilege, unless these privileges have been waived.

At a federal criminal trial, charges were brought against defendant officers Michael Buono ("Buono") and Bruce Nickels ("Nickels") for allegedly violating the civil rights of plaintiffs McNulty, Patrick Lilly ("Lilly"), and Margaret Nolan during the Incident. [FN2] The indictment brought against Buono and Nickels charged, *inter alia,* that after McNulty and Lilly were arrested at the parking lot of the Restaurant and handcuffed, Buono and Nickels stopped on the way to the precinct, pulled McNulty and Lilly from the police car and beat them again (in the "Second Beating"). Having obtained a limited waiver of attorney-client privilege and work product privilege with respect to the Report from McNulty and O'Dwyer, respectively, the government attempted to call O'Dwyer as a witness and, if need be, to introduce a partially redacted version of the Report in order to rebut defendants Buono and Nickels's claim that the story about the Second Beating was of recent fabrication. However, the trial court refused to allow the government to present a rebuttal case.

Defendants claim that in light of the limited waiver of attorney-client and work product privileges in the federal criminal case, they are entitled to the production of the entire Report in this civil action. Plaintiffs concede that defendants are entitled to that portion of the Report concerning the Second Beating over which attorney-client and work product privileges were waived so that they could be introduced at the federal criminal trial. However, plaintiffs argue that defendants have no right to the other, redacted portions of the report. On May 16, 1994, Magistrate Judge Roberts "memo endorsed" and "so ordered" a letter from defendants' counsel, stating that she had undertaken an *in camera* review of the entire Report, found that plaintiffs had disclosed all portions pertinent to the Second Beating, and that no further portions of the Report need be disclosed to defendants.

*2 When a client selectively discloses portions of communications otherwise protected by the attorney-

client privilege, the "subject matter waiver" doctrine requires that other communications about the same subject matter also be disclosed. See *In re Von Bulow*, 828 F.2d 94, 101-102 (2d Cir. 1987); *Brock Equities Ltd. v. Josephthal, Lyon & Ross, Inc.*, No. 92 Civ. 8588, 1993 WL 350026, *1 (S.D.N.Y. Sept. 9, 1993) ("A party can only waive the attorney-client privilege as to certain subjects as a whole, and may not select only certain testimony or documents to produce while leaving other evidence shrouded in privilege."). Thus, "[i]t has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder." *In re Von Bulow*, 828 F.2d at 101 (citation omitted). The purpose of this "fairness rule" is to ensure that factfinding, and the judicial process, are not distorted by the introduction of selectively disclosed and potentially misleading evidence. See id.; *Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 641 (S.D.N.Y. 1981).

The Second Circuit has stated that because the subject matter waiver rests on these fairness considerations, it "has been invoked most often where the privilege-holder has attempted to use the privilege as both 'a sword' and 'a shield' or where the attacking party has been prejudiced at trial." *In re Von Bulow*, 828 F.2d at 103 (collecting cases). Although it was technically the government and not any of the plaintiffs who attempted to use of the Report in the federal criminal trial, plaintiff McNulty and his attorney did consent to the use of the Report, and plaintiffs' civil case, which was pending at the time of the federal criminal trial, would have benefitted from a criminal conviction of these officers. Thus, the attempt to introduce the Report at the federal criminal trial constituted an affirmative use of this document as a sword by one of the plaintiffs.

The limited issue raised by the parties is whether the subject matter waiver requires the production of the entire Report. After conducting my own *in camera* review of the entire Report, I agree with Magistrate Judge Roberts that in this case, McNulty waived attorney client privilege only as to the subject matter of the Second Beating, not as to all of the subject matter related to the entire Incident.

Recognizing only such a limited subject matter waiver here comports with the principle of fairness underlying the subject matter waiver doctrine. It was the defendants in the federal criminal trial who argued that the charges of a Second Beating had been recently fabricated. McNulty and his lawyer reasonably consented to waive their privileges with respect to the Second Beating portions of the Report, in an attempt to refute these charges. Plaintiffs were not attempting to distort factfinding or the judicial process by selectively disclosing potentially misleading evidence. Cf. *In re Von Bulow*, 828 F.2d at 101 (The fairness doctrine "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information."); *Teachers Ins. & Annuity Ass'n*, 521 F. Supp. at 641 ("When a party discloses part of an otherwise privileged communication, he must in fairness disclose the entire communication, or at least so much of it as will make the disclosure complete and not misleadingly one-sided.").

*3 Moreover, recognizing a wider subject matter waiver under the circumstances of this case would actually impede the factfinding and judicial process by making it less likely that victims in criminal cases would consent to the government's request for limited waivers of attorney client privilege for fear that such limited waivers would later be expanded by means of the application of the subject matter waiver doctrine.

For these reasons, no further disclosures of redacted portions of the Report need be made.

*C. Defendants' Motion for Reconsideration of the June 6, 1994 Order*

Defendants move for reconsideration of an Order of Magistrate Judge Roberts dated June 6, 1994, denying defendants' motion to transfer this action to White Plains pursuant to Rules 21(a) and 22 of the Southern District of New York Rules for the Division of Business Among District Court Judges.

Defendants brought the present motion for reconsideration on June 1, 1995, almost one year after Magistrate Judge Roberts entered the Order being challenged. Rule 72(a) of the Federal Rules of Civil Procedure states that a party may file objections to a pretrial order on a nondispositive matter entered by a magistrate judge within ten days after being served with a copy of the magistrate's order. Fed. R. Civ. R. 72(a). The Rule specifically states that "a party may not thereafter assign as error a defect in the

magistrate's order to which objection was not timely made." *Id.*

In the declaration submitted by defendants in support of this motion for reconsideration, defendants argue, without citing any case law, that this court has discretion to grant the motion for reconsideration and to transfer this case to White Plains despite the fact that the motion for reconsideration was not timely, because plaintiffs "*twice* deliberately violat[ed] the rules and misplac[ed] their cause in Manhattan." June 27, 1995 Cohn Decl. at ¶ 7. However, I find that there is no legal basis for this court to entertain this untimely motion for reconsideration. [FN3]

Plaintiffs request that I impose sanctions on defendants pursuant to 28 U.S.C. § 1927 or Rule 11 of the Federal Rules of Civil Procedure for bringing this motion and thus "unreasonably requiring plaintiffs to respond to this time-barred and frivolous application." June 20, 1995 Neufield Decl. at ¶ 3. Although it was inappropriate for defendants to file this clearly time-barred motion, I find that this action does not rise to the level of conduct that is sanctionable under 28 U.S.C.§ 1927.

A finding of bad faith is ordinarily required to sanction a party under 28 U.S.C. § 1927. *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award under Sec. 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."), *cert. denied,* 480 U.S. 918 (1987). Although the motion for reconsideration was clearly time-barred, defendants' attorney apparently filed the motion on the theory that due to the alleged flagrant violations of the filing rules committed by plaintiffs, this court could ignore the untimeliness of the motion and grant the transfer to White Plains as a sanction against plaintiffs. Thus, the motion was not necessarily filed in bad faith.

*4 A Rule 11 sanction would also be inappropriate in this case. Under Rule 11, as amended, the party moving for a sanction must have served the opposing party with the Rule 11 motion and given the opposing party an opportunity to withdraw the allegedly frivolous motion before filing the Rule 11 motion with the court. Fed. R. Civ. P. 11(c)(1). Plaintiffs nowhere allege that they gave defendants an opportunity to withdraw this motion for reconsideration before filing it.

*D. Plaintiffs' Motion for Reconsideration of the March 31, 1995 Order*

Plaintiffs move for reconsideration of an order of Magistrate Judge Roberts dated March 31, 1995, denying plaintiffs' motion to strike and to dismiss the counterclaims asserted by defendants Buono, Linda Rousseau, and Nickels in their Answers to the Second Amended Complaint.

On November 30, 1994, after having received Magistrate Judge Roberts's permission to do so, plaintiffs filed their Second Amended Complaint. That Complaint substituted the names of two officers for two defendants previously identified only as "John Doe" defendants. On December 7, 1994, defendants served answers to the Second Amended Complaint. In these answers, three of the five original defendants asserted new counterclaims against certain of the plaintiffs for assault and battery.

Defendants initially contend that they were entitled to assert any counterclaims they chose in their answers to the Second Amended Complaint, without requesting leave of the court, because the answers were not amended answers but rather were original answers to the Second Amended Complaint. Essentially, they claim that plaintiffs amended their complaint at their peril, opening themselves up to any and all counterclaims that defendants chose to assert. Plaintiffs contend that defendants did not have an absolute right to add any counterclaims they chose in their answers to the Second Amended Complaint, because Rule 15 of the Federal Rules of Civil Procedure requires that a "party shall plead in *response* to an amended pleading ...." Fed. R. Civ. P. 15(a) (emphasis added). Thus, plaintiffs argue, defendants could only assert as of right in their answers to the Second Amended Complaint counterclaims that responded to the specific amendments made in the Second Amended Complaint. I am persuaded by the discussion of the interplay of Rules 13, governing counterclaims, and 15, governing amended pleadings, of the Federal Rules of Civil Procedure presented in *Chrysler Corporation v. Fedders Corporation,* 540 F. Supp. 706, 712-13 (S.D.N.Y. 1982), and find that defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had a right to assert counterclaims in their original answer. *Id.* at 713.

However, because defendants belatedly requested permission to amend their answers to assert the

1996 WL 120685 Page 7
(Cite as: 1996 WL 120685, *4 (S.D.N.Y.))

counterclaims at issue, I must consider (1) whether Magistrate Judge Roberts's order should be construed as having granted permission for defendants to file their counterclaims and (2) whether that grant of permission was clearly erroneous or contrary to law.

*5 The counterclaims at issue arose out of the same occurrence that is the subject matter of the original complaint and thus are compulsory counterclaims. Fed. R. Civ. P. 13(a). Because these counterclaims could have been asserted in response to the original pleading, they must be treated as omitted counterclaims pursuant to Rule 13(f) of the Federal Rules of Civil Procedure. Rule 13(f) states that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f). Rule 15(a) states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In interpreting Rule 15(a), the Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

Although this request to amend defendants' answer to add counterclaims was made more than two years after the counterclaims could have been asserted in the original answer, the court permits the amendment because plaintiffs assert no significant prejudice resulting from allowing it. In addition, these counterclaims are so intimately connected to the claims made by defendants that judicial economy requires that they be tried at the same time. Therefore, I find that the magistrate judge did not clearly err in granting the defendants' request to amend their answer to add these counterclaims.

Plaintiffs claim that the counterclaims, even if properly added, should be dismissed as time-barred because the statute of limitations has already run on these claims. N.Y. Civ. Prac. L. & R. § 215 (McKinney 1990). However, Rule 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when, *inter alia*, "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...." Fed. R. Civ. P. 15(c). *See also Banco Para el Comercio Exterior de Cuba v. First National City Bank,* 744 F.2d 237, 242-43 (2d Cir. 1981) ("*Bancec*") ("The Federal Rules are to be construed so as to secure the just determination of every action, Fed. R. Civ. P. 1, and trial courts in this Circuit have accordingly ruled that a counterclaim amended pursuant to Rule 13(f) may relate back to the date of the original answer when the counterclaim arises out of the same transaction that was pleaded in the answer and there is no prejudice to the opposing party's ability to defend the merits of the counterclaim.").

*6 Plaintiffs argue that *Bancec* is distinguishable from this case (1) because it concerns the amendment of a previously asserted counterclaim and not the assertion of wholly new counterclaims; and (2) because it involved a counterclaim for an offset, whereas here the counterclaiming defendants are seeking affirmative damages. However, the counterclaim at issue in *Bancec* could be viewed as a mere amendment of a previously asserted counterclaim, the Second Circuit stated that "to the extent that [the counterclaim] should be considered first raised in the [later] amended answer, the Second Circuit conclude[d] that the counterclaim related back to the date of the original answer." *Id.* at 242. In addition, in *Bancec* the Second Circuit nowhere states that it is relevant that the counterclaims at issue were for an offset, not for affirmative damages.

II. *Conclusion*

I deny all three motions for reconsideration.

SO ORDERED.

> FN1. After the issuance of the last of these three orders, dated March 31, 1995, this case was reassigned to Magistrate Judge Andrew J. Peck.

> FN2. Buono and Nickels were acquitted of all charges.

> FN3. I note that even had this motion for reconsideration been timely, I would have found that the magistrate judge's determination was not clearly erroneous or contrary to law.

1996 WL 120685 (S.D.N.Y.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1996 WL 120685  
**(Cite as: 1996 WL 120685, \*6 (S.D.N.Y.))**  Page 8

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
2003 WL 21555087 (S.D.N.Y.)  
**(Cite as: 2003 WL 21555087 (S.D.N.Y.))**

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,  
S.D. New York.

AGFA CORPORATION, Plaintiff,  
v.  
UNITED MARKETING GROUP, INC., and Profico, Ltd., Defendants.

No. 02 Civ. 8468(LAP).

July 10, 2003.

Photographic paper manufacturer sued unauthorized distributors for tortious interference with contract. Distributors asserted antitrust counterclaim. On cross-motions to dismiss, the District Court, Preska, J., held that: (1) photographic paper manufacturer was entitled to immunity, under *Noerr-Pennington* doctrine, from claim that its tortious interference suit against unauthorized distributors was illegally anticompetitive, and (2) photographic paper manufacturer stated claims against unauthorized distributors for tortious interference with contract and tortious interference with prospective economic advantage.

Plaintiff's motion granted; defendants' motion denied.

West Headnotes

[1] Monopolies ☞12(16.5)  
265k12(16.5)

Photographic paper manufacturer was entitled to immunity, under *Noerr-Pennington* doctrine, from claim that its tortious interference suit against unauthorized distributors was illegally anticompetitive, regardless of manufacturer's actual motive, absent showing that its suit was objectively baseless.

[2] Torts ☞10(3)  
379k10(3)

[2] Torts ☞12  
379k12

Under New York nt.

DISCUSSION  
I. Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), I must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the [pleader's] favor." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is proper only when "it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994).

II. The *Noerr-Pennington* Doctrine and Plaintiff's Motion to Dismiss the Counterclaim

[1] The *Noerr-Pennington* doctrine provides immunity from liability for conduct seeking to influence government action. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc. .,* 365 U.S. 127, 136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 669-70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). "Essentially, the Doctrine protects under the First Amendment efforts to influence governmental action through litigation, lobbying, and the like. Such activities are immunized from antitrust liability, provided that such activities are more than a mere 'sham.' " *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.,* No. 00-7302, 2000 U.S.App. LEXIS 25440, at *3 (2d Cir. Oct. 11, 2000) (affirming district court's dismissal of a claim under the *Noerr-Pennington* doctrine). Immunity under the *Noerr-Pennington* doctrine attaches regardless of whether the claim is based on a state or a federal cause of action. *See Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 128-29 (3d Cir.1999) (applying *Noerr-Pennington* to state tort law claims because "we have been presented with no persuasive why these state tort claims, based on the same petitioning activity as the federal claims, would not be barred by the *Noerr-Pennington* doctrine"); *H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 672 F.Supp. 724, 745 (S.D.N.Y.1987) (granting summary judgment on state Donnelly Act claim because summary judgment was

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d  
(Cite as: 2003 WL 21555087, *2 (S.D.N.Y.))

Page 2

appropriate on federal Sherman Act claims).

*3 To invoke the "sham" exception to the doctrine, a party must allege that the lawsuit is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Bath Petroleum,* 2000 U.S.App. LEXIS 25440, at *3-4 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 56-57, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). If a court first determines that the challenged litigation is objectively meritless, that court may then examine the subjective motivation of the litigant. *See T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.,* 312 F.3d 90, 93 (2d Cir.2002); *see also Cheminor Drugs,* 168 F.3d at 122-23. "Where possible, ... this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,* 207 F.Supp.2d 221, 223 (S.D.N.Y.2002).

Here, defendants do not argue that consideration of *Noerr-Pennington* immunity is improper but only that the "sham" exception applies. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaim and in Support of Defendants' Motion to Dismiss the Complaint, hereafter, "Defs' Br.," at 2). Defendants, however, have not carried their burden on this argument. As a threshold matter, defendants do not allege, in their Counterclaim, that Agfa's lawsuit is "objectively baseless." *See Bath Petroleum,* 2000 U.S.App. LEXIS 25440, at *3-4. To the contrary, defendants do not even address the merit of the claims set forth in Agfa's Complaint, *viz.,* defendants' alleged tortious interference with contract and interference with prospective economic advantage. Instead, defendants assert their own right to purchase Agfa products and to resell them on the secondary market. (Defs' Counterclaim at ¶¶ 7-9). Defendants then allege, in conclusory fashion, that Agfa's Complaint constitutes a violation of the Sherman Act and the Donnelly Act. (*Id.* at ¶¶ 10-11). Such a conclusion is inconsistent with the requirement, as set forth in the prior case law, that allegations of "sham" litigation be contained in the pleadings, *see, e.g., Twin City Bakery Workers,* 207 F.Supp.2d at 223, and is, as such, insufficient to defeat the application of the *Noerr-Pennington* doctrine. In any event, Agfa has pleaded the elements of tortious interference with contract and interference with prospective economic advantage, *see* section III, *infra,* and has included facts in its Complaint to support its claims. Thus, defendants have failed to carry their burden on the first step of the sham litigation exception to the *Noerr-Pennington* doctrine of showing the claim to be objectively baseless. *See T.F.T.F. Capital Corp.,* 312 F.3d at 93.

Proceeding directly to the second step of the sham litigation exception, plaintiff's motivation, defendants introduce evidence in the form of two affidavits (one from the President of defendants, the other from one of the attorneys for defendants) of efforts by Agfa to acquire defendants' list of suppliers during pre-litigation, settlement-type discussions. Relying on those affidavits, defendants assert that the instant case is a sham because it was filed only after defendants refused to share the pertinent list of suppliers with Agfa and for the sole purpose of obtaining this list, which defendants maintain is a trade secret. (Defs' Br. at 4-6).

*4 First, because this is a motion to dismiss not converted to summary judgment, it is not clear that the affidavits may even be considered. Second, assuming, *arguendo,* that the conversations discussed in defendants' affidavits would be admissible (which they almost certainly would not be), such evidence is insufficient to render Agfa's claim a sham because motivation may only be considered if the claim is found to be objectively meritless. Here, as noted above, I cannot so find. Accordingly, defendants have not satisfied their burden of demonstrating the sham litigation exception to the *Noerr-Pennington* doctrine, and, therefore, Agfa is entitled to invoke immunity from defendants' Counterclaim under that doctrine. Accordingly, Agfa's motion is granted, and defendants' Counterclaim is dismissed.

III. Defendants' Cross-Motion to Dismiss

[2] Under New York law, the elements of a claim for tortious interference with contract are: "(1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; and (4) damages." *G-I Holdings, Inc. v. Baron & Budd,* 179 F.Supp.2d 233, 252 (S.D.N.Y.2001); *see also Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). To state a claim for tortious interference with prospective economic advantage, "a plaintiff must also plead facts that demonstrate that the defendant acted with the sole purpose of harming the plaintiff or that the defendant used dishonest, unfair or improper or wrongful means." *G-I Holdings,* 179 F.Supp.2d at 254 (internal citations omitted).

Here, Agfa's Complaint alleges that Agfa had a contractual relationship with its authorized dealers, in particular one dealer to whom defendants purportedly sold over $750,000 in Recording Product. (Compl. at ¶¶ 10, 24). The Complaint alleges that defendants were aware of the contractual relationship and the requirement that the dealer purchase all of their Agfa-branded Recording Product exclusively from Agfa. (*Id.* at ¶ 23). Moreover, the Complaint details the actions of defendants to induce Agfa's dealer to breach its dealer agreement. (*Id.* at ¶¶ 21-24). The Complaint also alleges that Agfa suffered damages as a result of defendants' actions. (*Id.* at ¶¶ 25-26).

As to the interference with prospective economic advantage claim, the Complaint also alleges, in addition to the facts recited above, that defendants maliciously and intentionally interfered with Agfa's prospective economic relationship with its authorized dealers, including a dealer by the name of Arkin Medo, Inc. (*Id.* at ¶¶ 37-38).

Other than alleging that plaintiff's claim is "sham" litigation, defendants do not specify any pleading deficiency in plaintiff's claims. Because, on a motion to dismiss, all allegations in the non-movant's pleadings are presumed to be true, *see Chambers,* 282 F.3d at 152, and because Agfa's complaint pleads the elements of its causes of action for tortious interference with existing contractual relations and tortious interference with prospective economic advantage, defendants' cross-motion to dismiss is denied.

CONCLUSION

*5 For the foregoing reasons, Agfa's motion to dismiss the Counterclaim (docket entry no. 5) is granted. Defendants' cross-motion to dismiss the Complaint (docket entry no. 9) is denied.

Counsel shall confer as to the steps necessary to resolve this action and shall appear for a conference on July 28, 2003 at 9:30 a.m. in Courtroom 12A at 500 Pearl Street, New York, New York.

SO ORDERED:

2003 WL 21555087 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

. 1:02CV08468 Docket) (Oct. 23, 2002)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works