IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY, | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. ) 3:02cv02253 (AHN) |
| vs. | ) ) |
| SYNGENTA CROP PROTECTION, INC., | ) ) |
| Defendant. | ) ) |

VIDEO DEPOSITION

OF

KEELAN PULLIAM

Tuesday, September 14, 2004
At Greensboro, North Carolina
Reporter:  Mildred P. Jones, CVR



WESTMORELAND REPORTING, INC.

704-892-8172
Post Office Box 489
Cornelius, North Carolina 28031

WestmorelandReporting.com

704-333-3831
Post Office Box 32243
Charlotte, North Carolina 28232

MR. PULLIAM                                                    58

1         development agreement -- withdrawn.

2             Has Syngenta -- do you claim that -- withdrawn.

3             At any point prior to the institution of this

4     lawsuit, did Syngenta claim that Bonzi breached the

5     development agreement?

6         MS. TREU:  Uniroyal.

7         MR. CORCORAN:  Sorry?

8  Q.  Oh.  Uniroyal.  I'm sorry.  Uniroyal breached -- let me

9     -- let me start that again.

10            At any point prior to the institution of this

11    lawsuit, to your knowledge, did Syngenta make a claim

12    that Uniroyal breached the development agreement or not,

13    if you know?

14 A.  Did we make a claim -- did we make a specific claim?

15 Q.  No.  Did you make a claim?  I'll ask it again, if you

16    want.

17            At any point before this lawsuit was filed by

18    Uniroyal, did Syngenta claim that Uniroyal had breached

19    the development agreement or not, if you know?

20 A.  And did we -- did Syngenta make a claim?  The answer

21    would be no.

22 Q.  Okay.  Thank you.

23            Now, my next --

24 A.  Excuse me.  Could I finish answering the question?

25 Q.  No.  The question calls for a yes or no answer.  If, on



WESTMORELAND REPORTING, INC.

MR.  PULLIAM                                                              140

1           was marked for identification.)
2   Q.  You don't need to read it all, unless you want to; in
3       which case, you may, and we will give you the time.
4           You have read this before?
5   A.  I'm aware of the document, and I reviewed it.  I have
6       not read it in great detail.
7   Q.  Have you read it all?
8   A.  I reviewed it all and --
9   Q.  Okay.  We're going to talk about various paragraphs.
10  A.  Okay.
11  Q.  And if you want to read more than the paragraph that I
12      bring to your attention, feel free.
13  A.  Okay.
14  Q.  I would like you to turn to Page 28 and read Paragraph
15      16.
16  A.  "Beginning no later than early 2002, while the Supply
17      Agreement was still in effect and Uniroyal was still the
18      exclusive marketer and seller of Bonzi, Uniroyal began
19      exploring whether to market its own generic
20      paclobutrazol product to introduce into the PGR market
21      for the purpose of competing with Bonzi.  Uniroyal gave
22      no notice to Syngenta that it was taking this action."
23  Q.  Okay.  Are you aware of any evidence to show that any
24      exploration by Uniroyal of whether to market its own
25      generic paclobutrazol was made for the purpose of



WESTMORELAND REPORTING, INC.

MR. PULLIAM                                                      141

```
 1         competing with Bonzi rather than in self defense in the
 2         event that Syngenta decided to terminate Uniroyal's
 3         supply of Bonzi?
 4   A.    I think in early '02 we were aware that Uniroyal was
 5         looking for an alternative supply of paclobutrazol.  It
 6         was evident in the discussions as this process was
 7         transpiring on whether or not we would continue with
 8         Uniroyal or bring the marketing back in house -- they
 9         verbally told us that they were looking at a generic
10         product, had identified source -- I think numerous
11         sources, best of my recollection.  So we were aware that
12         they had started the process.
13   Q.    So the last sentence in Paragraph 16 is false?  We can
14         agree on that, then?  The last sentence in Paragraph 16?
15   A.    There was no formal --
16   Q.    Well, forget formal.  You knew, and you have stated that
17         Uniroyal actually told you.  So that sentence is -- if
18         what you are saying is true, then the second sentence in
19         Paragraph 16 can't be true, can it?  They can't both be
20         true?
21   A.    They gave us no notice.  But now you had asked --
22   Q.    They told you.  That's what you just told me.
23   A.    Okay.
24   Q.    Okay.  So they can't both be true, can they?
25               All right.  But didn't they tell you, we're going
```



WESTMORELAND REPORTING, INC.

MR. PULLIAM                                                                143

1          go into generic paclobutrazol sales, would it not?
2              MR. MEO:   Objection to form.
3     A.   Well, I --
4     Q.   You couldn't -- they couldn't have done both, could
5          they?  Wouldn't have made any sense?
6     A.   Well, I don't know if -- you used the term idiotic.  But
7          I don't know what was on their mind as they were --
8     Q.   All right.
9     A.   -- looking at an alternative --
10    Q.   Was it clear --
11    A.   -- source of paclobutrazol.
12    Q.   Was it clear to you that Uniroyal's interest in
13         marketing generic paclobutrazol and its possible
14         exploration of that in early nineteen -- in early 2002
15         was only in the event that Syngenta said good-bye?
16    A.   And, again --
17    Q.   Can you answer my question rather than saying again?
18    A.   I don't know what they were thinking.
19    Q.   But did they say this to you?
20             Did they affirmatively say, "If you don't continue
21         this relationship, then we will have to market generic
22         paclobutrazol"?  Didn't they actually say this to you?
23    A.   I don't remember.
24    Q.   Okay.  Are you aware of any facts -- not speculation,
25         not surmise, not guesses, but any facts to support the



WESTMORELAND REPORTING, INC.

MR. PULLIAM                                                          144

1        claim in this counterclaim that Uniroyal was exploring
2        whether to market its own generic paclobutrazol in order
3        to compete with Bonzi?
4   A.   There were some other discussions, I believe, that were
5        taking place with paclobutrazol, but I'm not familiar
6        with them.
7   Q.   So the answer --
8   A.   So I don't have the detail to answer your question.
9   Q.   So you are not aware of any such facts; correct?
10  A.   I'm not aware.
11  Q.   Good. Okay.
12            In your opinion, is there anything in the supply or
13       development agreement which would prevent Uniroyal from
14       developing generic paclobutrazol?
15  A.   Actually, I believe -- I would have to refer back to it,
16       but I do believe that there is some exclusivity language
17       in it.
18  Q.   And how would that operate in the event that Syngenta
19       were considering marketing generic paclobutrazol -- I'm
20       sorry -- Uniroyal? It's getting late.
21            Can you find the language for me? This is the
22       language which would prohibit Syngenta from marketing --
23       from developing generic -- withdrawn.
24  A.   Syngenta?
25  Q.   I'm sorry. Something in the supply and development

WESTMORELAND   REPORTING, INC.

MR. PULLIAM                                                    146

```
 1         further, probably don't understand clearly what that
 2         answer might be.
 3    Q.   So you don't know?  Is that what you're saying?
 4    A.   That's right.
 5    Q.   Oh.  Okay.  Okay.
 6              So certainly it doesn't constitute a violation, in
 7         your --
 8    A.   Okay.
 9    Q.   All right.  That's a fairly complicated way of saying I
10         don't know, but I get it.
11    A.   Need some lawyer help.
12    Q.   Okay.  No.  You're out on a raft all by yourself, and he
13         can't send you any signals.
14    A.   All right.
15    Q.   All right.  Let's see.  And in fact Uniroyal didn't sell
16         generic paclobutrazol during the period of its
17         agreements with Syngenta, did it?  To your knowledge,
18         they never did?
19    A.   Not to my knowledge.
20    Q.   Okay.  Do you know if they are even selling generic
21         paclobutrazol now?
22    A.   They have a registration pending.  Today, they are not
23         selling, but --
24    Q.   Okay.
25    A.   -- will sell when -- I assume they will sell when they
```



MR.  PULLIAM                                                          155

1   A.   We are, but we could be more proactive.
2   Q.   Are Syngenta sales representatives spending time working
3        on this Bonzi lawsuit?
4   A.   They are not, but certainly --
5   Q.   Okay.
6   A.   -- the marketing and management team is, and that's
7        where the directions and strategy and the ultimate
8        resources originate.
9   Q.   If Syngenta sales representatives are not spending time
10       on this case, then how does this suit detract from
11       Bonzi's --
12  A.   And as --
13  Q.   -- selling efforts?
14  A.   And as I stated, strategy, direction, and resource stems
15       -- or originates at the management team, and the
16       development of, and the resources to support those
17       marketing efforts are now a part of that time and
18       resource that is being distracted and utilized in and
19       around the lawsuit.
20  Q.   Let's take a look at Paragraph 25.  Quote, since
21       commencing this lawsuit and continuing until the
22       present, Uniroyal has engaged in a scheme and course of
23       conduct aimed at interfering with Syngenta's business
24       relationships with existing and prospective customers
25       and end-users of Bonzi by, among other things,


WESTMORELAND REPORTING, INC.

MR. PULLIAM                                                      156

1           prosecuting this action.
2               Do you see that?
3    A.     Uh-huh (yes).
4    Q.     You have to say yes.
5    A.     Yes.
6    Q.     What are the other things?
7    A.     Could I read it? Have time to read the --
8    Q.     Sure.
9    A.     -- entire paragraph? (Witness peruses document.)
10          The latter part of it I don't understand, don't
11          know.
12   Q.     You don't know of any other things; correct?
13   A.     That's right. I don't know.
14   Q.     Okay. Paragraph 26, do you see that?
15   A.     Uh-huh (yes).
16   Q.     You have to say yes.
17   A.     I'm sorry. Yes.
18   Q.     What evidence, if any, are you aware of to support the
19          claim that -- that Uniroyal's prosecution of this
20          lawsuit has been conducted in bad faith and with malice?
21   A.     (Witness peruses document.) And, again --
22   Q.     I don't know why you start a question -- an answer and
23          again when I have asked you to identify anything.
24              I'm asking you to tell me if there is any evidence
25          that you're aware of --

MR. PULLIAM                                                   157

1  A.   I think the evidence --
2  Q.   -- that -- pardon me --
3  A.   I'm sorry.
4  Q.   -- that Uniroyal has in bad faith and malicious -- so
5       far you haven't said anything to indicate that they are
6       malicious or in bad faith.  So I'm asking you not to say
7       again anything, but to give me whatever evidence you
8       have that Ms. Treu and I are engaged in something which
9       is malicious.
10          MR. MEO:  Objection to form.
11 Q.   You can answer.
12 A.   And I believe that, as I stated earlier, the intent of
13      the entire lawsuit is not around the contracts and the
14      legality of them, but it's to divert our attention and
15      resource away from our business and to the lawsuit.
16 Q.   You have told us that's your belief, but there is a
17      difference between your belief, which I would submit is
18      entirely fallacious, and any evidence which will support
19      that belief.
20          So now I'm asking you to walk away for a minute
21      from what you believe incorrectly and tell us what
22      evidence you have which supports that belief.
23 A.   I would probably say I don't know.
24 Q.   Okay.  Paragraph 27, Uniroyal's interference with
25      Syngenta's business relationship, both existing and



WESTMORELAND   REPORTING, INC.

MR. PULLIAM                                                         163

1                          * * * * *
2           (The foregoing testimony contained in Pages
3           160 through 162 has been designated as
4           confidential by the parties and is therefore
5           submitted under seal as Attachment A to the
6           deposition.)
7           MR. CORCORAN: You can go back on. We'll
8           start up without her, anyway.
9               Sorry? Oh. You are on. I see. All
10          right. That's right. Sorry. Different kind
11          of record, but we are still on.
12   Q.   Fair to say that Syngenta has not suffered any
13        ascertainable or --
14          (WHEREUPON, Ms. Laureen True enters the
15          deposition room.)
16   Q.   -- calculable financial loss as a result of any actions
17        which Uniroyal has taken?
18          MR. MEO: Objection to form.
19   A.   And I think that's a difficult question to answer
20        because you don't know what the effect would have been
21        if we had not been involved in, again, diverting
22        resource and time of the management team to the lawsuit.
23   Q.   Okay. So you don't know?
24   A.   That's right.
25   Q.   All right. And you can't identify any customers or



WESTMORELAND REPORTING, INC.

MR. PULLIAM                                                                  164

1     sales of Bonzi which Syngenta has in fact lost because
2     of Uniroyal's conduct, can you?
3  A. I can't from my role, sitting here.
4  Q. Okay.
5         MR. CORCORAN:  I would like to take a brief
6         moment off the record.  We may be concluding,
7         but I don't want to do that without --
8         VIDEOGRAPHER:  Off the record at 4:27.
9         (WHEREUPON, a short break was taken.)
10        VIDEOGRAPHER:  On the record at 4:30.
11        MR. CORCORAN:  Based on the documents which we
12        have been provided by Syngenta, we have no
13        further questions of this witness at this time
14        and adjourn the deposition.
15        MR. MEO:  I have no questions for the witness
16        at this time.
17        VIDEOGRAPHER:  Off the record at 4:30.
18        (WHEREUPON, the taking of the foregoing
19        deposition was concluded at 4:30 p.m.)
20                        * * * * *