Exhibit A

FILED

UNITED STATES DISTRICT COURT 2004 OCT 12 P 3: 39
DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., : <br> d/b/a CROMPTON MANUFACTURING : <br> COMPANY : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SYNGENTA CROP PROTECTION, INC. : <br> : <br> Defendant. : | Civil Action No. <br> 3:02cv02253 (AHN) <br><br><br><br><br> October 12, 2004 |

## MOTION TO SEAL

Defendant Syngenta Crop Protection, Inc. ("Syngenta"), pursuant to D. Conn. L.

Civ. R. 5(d), respectfully files this Motion to Seal its attached Memorandum in Opposition to

Plaintiff's Motion to Strike and Dismiss Counterclaims (the "Opposing Memorandum"). Portions

of the Opposing Memorandum discuss deposition testimony of a Uniroyal witness, which

testimony was designated by Uniroyal's counsel as "Confidential: Attorney's Eyes Only" because

it contains information deemed by Uniroyal to be highly confidential and proprietary. Syngenta

previously moved for entry of a proposed Confidentiality Order, which provides that pleadings

containing information designated as "Confidential: Attorney's Eyes Only" shall be filed under

seal under limited circumstances. Judge Fitzsimmons is awaiting the parties' submission of a

revised proposed Confidentiality Order in accordance with Her Honor's ruling on Syngenta's

motion. Although Syngenta does not necessarily agree with Uniroyal's designation of the subject

testimony as "Confidential: Attorney's Eyes Only," to preserve the confidentiality of that

information pending Judge Fitzsimmons' entry of the Confidentiality Order, Syngenta requests

that its Opposing Memorandum be filed under seal.

DEFENDANT,
SYNGENTA CROP PROTECTION, INC.

By

William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo, Jr. (Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: rmeo@goodwin.com

and

Amy E. Souchuns (Fed. Bar No. ct21223)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Phone: (860) 251-5000
Fax:    (860) 251-5318
E-mail: asouchuns@goodwin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Seal, and the accompanying

Memorandum in Opposition to Plaintiff's Motion to Strike and Dismiss Counterclaims, was sent

via U.S. Mail, postage prepaid, on this 12th day of October 2004, to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

R. Michael Meo, Jr.

114969 v.01

3

UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

UNIROYAL CHEMICAL COMPANY, INC.,  :
d/b/a CROMPTON MANUFACTURING       :    2004 OCT 12  P 3: 39
COMPANY                            :
                                   :    U.S. DISTRICT COURT
        Plaintiff,                 :    BRIDGEPORT, CONN
                                   :    Civil Action No.
                                   :    3:02cv02253 (AHN)
v.                                 :
                                   :
SYNGENTA CROP PROTECTION, INC.     :
                                   :
        Defendant.                 :    OCTOBER 12, 2004

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION TO STRIKE AND DISMISS COUNTERCLAIMS

### I.      INTRODUCTION

By motion dated August 19, 2004, plaintiff Uniroyal Chemical Company, Inc.

("Uniroyal") moves to strike and dismiss the counterclaims filed by defendant Syngenta Crop

Protection, Inc. ("Syngenta") in its Answer, Affirmative Defenses and Counterclaims dated

July 16, 2004 (the "Counterclaims"). Syngenta opposes this Motion on the grounds that the

Counterclaims are properly before the Court, and state valid causes of action for tortious

interference and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA").

Syngenta respectfully requests that the Court deny Uniroyal's Motion.

As fully set forth below, Syngenta filed its Counterclaims in response to

plaintiff's Amended Complaint. That Amended Complaint asserted new theories of recovery

against Syngenta. Because plaintiff's amendments were more than mere insubstantial,

technical revisions to the complaint, Syngenta was entitled to plead anew, without seeking leave of Court. Even if leave of Court were necessary, it is warranted here, because Syngenta's Counterclaims are based on new information learned since the filing of Syngenta's initial answer.

Moreover, Syngenta pleads valid causes of action of tortious interference, and violation of CUTPA. Those Counterclaims allege with specificity the "sham litigation" exception to the <u>Noerr-Pennington</u> doctrine. Accordingly, plaintiff's Motion to Dismiss those Counterclaims should be denied.

## II.    FACTUAL ALLEGATIONS

Syngenta alleges that in January 1991, Syngenta's predecessor-in-interest, ICIA, and Uniroyal entered into the Bonzi Chemical Supply Agreement (the "Supply Agreement") and Bonzi Development Agreement (the "Development Agreement"). By the Supply Agreement, ICIA agreed to sell and deliver exclusively to Uniroyal, and Uniroyal agreed to purchase and receive exclusively from ICIA, ICIA's paclobutrazol product known as "Bonzi," in specified quantities. ICIA also granted Uniroyal the right to sell Bonzi in a defined market and to develop, register, sell and market Bonzi in that area for a defined and limited range of "Permitted Uses." Counterclaims, ¶ 10. The term of the Supply Agreement was January 1, 1991 to December 31, 1996, with successive annual terms thereafter unless terminated by either party on 180 days written notice. Counterclaims, ¶ 11.

In the companion Development Agreement, ICIA granted Uniroyal the exclusive right to develop and register new uses and formulations of Bonzi for use in the contractually

2

defined "Development Field." The Development Agreement also granted Uniroyal the marketing and sales rights for each new use and formulation as to "Permitted Uses" of Bonzi for a period of five years from the date of its registration with the EPA. Counterclaims, ¶ 12. By its terms, the Development Agreement expired on December 31, 1996. Counterclaims, ¶ 13. As the result of the operation of these two agreements, Uniroyal had the exclusive right to sell and market Bonzi for the "Permitted Uses" in the United States commencing on January 29, 1991. Counterclaims, ¶ 14.

As early as 2000, Uniroyal began to conduct internal discussions about developing its own generic paclobutrazol product to compete with Bonzi. Counterclaims, ¶ 15. Beginning by early 2002, while Uniroyal was still marketing and selling Bonzi, it investigated how it might market its own generic paclobutrazol. Counterclaims, ¶ 16. Since that time, Uniroyal has registered its own generic paclobutrazol product with the EPA and submitted a proposed label for that product, which label includes several of the allegedly "new uses" that Uniroyal claims it developed during the term of the Development Agreement. Counterclaims, ¶ 17-18.[1]

In June 2002, Syngenta gave Uniroyal the requisite 180 day notice that it was terminating the Supply Agreement as of December 31, 2002. Counterclaims, ¶ 19. Within a few months, on December 19, 2002 Uniroyal filed this lawsuit against Syngenta. Counterclaims, ¶ 20. By this lawsuit, Uniroyal seeks to bar Syngenta's ability to market and

---

[1]     Significantly, Syngenta disputes that Uniroyal independently developed these "new uses," or that the scientific studies underlying these uses were proprietary Uniroyal studies.

3

sell its Bonzi product and thus compete with Uniroyal's generic paclobutrazol. It seeks to accomplish this through the entry of preliminary and permanent injunctions prohibiting Syngenta from advertising, promoting and selling Bonzi, not only for the "new uses" for which Uniroyal claims to have ongoing rights under the Development Agreement, but for any uses whatsoever, including uses that pre-existed the parties' 1991 agreements, to which Uniroyal has no possible claim of entitlement. Counterclaims, ¶ 21.

Uniroyal filed its Amended Complaint -- with Syngenta's consent -- on May 18, 2004. In response to that Amended Complaint, and in light of new evidence and other information only recently learned in 2004, Syngenta filed its Counterclaims on July 16, 2004. Those counterclaims assert causes of action against Uniroyal for tortious interference with business expectancies, and violation of CUTPA.

## III.    ARGUMENT

### POINT I

### SYNGENTA'S COUNTERCLAIMS ARE PROCEDURALLY PROPER

### A.    Syngenta Was Entitled to Assert Its Counterclaims in Response to the Amended Complaint as of Right

Federal Rule of Civil Procedure 15(a) gives the adverse party an absolute right to "plead in response to an amended pleading." Rule 15 states no limitation on the scope of that responsive pleading. Indeed, the rule clearly provides that the responding party shall plead in response to the amended pleading, rather than only to the amendment itself. Nevertheless, Uniroyal maintains that Syngenta was required to seek leave of Court prior to filing its Counterclaims. Uniroyal is wrong.

The operative determination on whether leave of Court is required is whether the plaintiff made substantive changes to a complaint by adding new theories of recovery or new allegations, or instead made merely insubstantial, technical revisions to the complaint. See Equal Employment Opportunity Comm'n v. Morgan Stanley & Co., 211 F.R.D. 225, 227 (S.D.N.Y. 2002). In that case, which is relied on by Uniroyal, the plaintiff EEOC merely made "a change in terminology" for a certain class of claimants in its amended complaint; it did not add new claims. Accordingly, the court determined that this modification, without more, did not permit defendant Morgan Stanley to assert new counterclaims. See id.

By contrast, in Pereira v. Cogan, No. 00 Civ. 619(RWS), 2002 U.S. Dist. Lexis 14581, at *2-3 (S.D.N.Y. Aug. 7, 2002),[2] the plaintiff amended the complaint to add an additional theory of recovery and violation of a statute. The defendant responded by filing an additional affirmative defense to offset the damages sought. On a motion to strike that defense, the court specifically rejected the same argument that Uniroyal makes here. It surveyed the cases in the Second Circuit District Courts and then reviewed the analysis applied by other circuits. Reconciling these decisions, it found that "[i]f the plaintiff expands its case by adding new theories or claims, it cannot complain if the defendant seeks to do the same by

---

[2]    All unreported cases are attached as Exhibit A in the order in which they appear.

averring new counterclaims." Id. at *11-12.[3]  See also American Home Products Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) (holding that when plaintiff filed its amended complaint, on consent, defendant was entitled as of right to assert a new counterclaim in its responsive pleading); Veronico v. Pastapunto, No. 98 Civ. 1154 (NRB), 1999 U.S. Dist. LEXIS 23235, at *3-4 (S.D.N.Y. Dec. 17, 1999) (finding that Rule 15(a)'s "in response to" language does not limit the scope of amendments that defendants may make due to the "liberal standard for the amendment of pleadings" under the rule and Second Circuit case law).

The present case closely resembles the Pereira line of cases holding that leave of Court is not required to assert counterclaims in response to an amended complaint.  Uniroyal's Amended Complaint does not merely involve a "change in terminology," or other minor, insubstantial revision.  Rather, it asserts two additional causes of action against Syngenta for violation of CUTPA and unjust enrichment.  Uniroyal concedes that its amendments present "new theories of recovery" against Syngenta.  See Motion to Strike and Dismiss, at p. 3. Under the analysis of the cases detailed above, this addition was sufficient to permit Syngenta to amend its answer and assert counterclaims against Uniroyal without first seeking permission from the Court.  Uniroyal made the conscious decision to amend its complaint and add new causes of action.  It cannot now seek to limit the consequences of that action.

---

[3]     The Pereira Court ultimately rejected the addition of the defense, finding the fact that it was an affirmative defense, rather than a counterclaim, to be controlling.

**B.     Newly Discovered Evidence Warrants
        the Assertion of Syngenta's Counterclaims**

Even if Syngenta were required to seek permission to assert its Counterclaims,
that permission is warranted here.[4]  Generally, leave to file an amended pleading is "freely
given when justice so requires.  Leave should not be denied in the absence of undue delay, bad
faith, undue prejudice to the non-movant, or futility." Stanley Works v. Alltrade, Inc., No.
3:02 CV 1468 (PCD), 2004 U.S. Dist. Lexis 2833, at *13 (D. Conn. Feb. 23, 2004) (citing
Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)).  Moreover, the interplay
between Rule 13 addressing counterclaims and Rule 15 allowing amendment of pleadings
supports Syngenta's addition of its Counterclaims in this matter.  Should its CUTPA and
tortious interference claims be deemed compulsory counterclaims that could be barred in a
later case, Syngenta should be permitted to assert those claims here and now. See Moore's
Federal Practice (3rd Edition), § 13.41[1] ("the risk of the claim being barred in a subsequent
action supports a liberal amendment standard to include omitted compulsory counterclaims.").

In addition to the reasons discussed above, Syngenta's Counterclaims are
warranted because of newly discovered evidence that came to light only after Syngenta filed its
initial answer, without counterclaims, on October 30, 2003.  That new evidence goes to the
heart of the issues raised by Syngenta's Counterclaims.

---

[4]     As explained above, Syngenta does not believe that leave of Court to file its
Counterclaims was required.  However, to the extent that the Court may hold otherwise, then
Syngenta hereby respectfully requests that it be permitted to assert its Counterclaims in
accordance with those previously filed on July 16, 2004.

For example, at the deposition of Laureen Treu, Uniroyal's Vice President of Specialty Agricultural Products and for plant growth regulators, taken on January 12, 2004, Ms. Treu testified that Uniroyal began internally discussing coming out with a generic paclobutrazol as early as 2000. See Deposition of Laureen Treu, January 12, 2004, at 160-63 (attached as Exhibit B). Ms. Treu's supervisor, Alfred Ingulli, Uniroyal's Executive Vice President of the Crop Protection Division, testified at his deposition on April 14, 2004 about Uniroyal's objectives in bringing this lawsuit, and acknowledged that they included enhancing Uniroyal's sales of its own generic paclobutrazol product that will compete with Bonzi. See Deposition of Alfred Ingulli, April 14, 2004 ("Ingulli Dep."), at 177-79 (attached as Exhibit C).[5]

In addition, while Syngenta has maintained from the outset of this litigation that Uniroyal's claims are meritless, only since the recent Uniroyal depositions and the filing of the Amended Complaint has Syngenta determined that Uniroyal's lawsuit rises to the level of a sham. For example, Mr. Ingulli acknowledged that the marketing and sales rights to Bonzi for which Uniroyal claims rights under the Development Agreement refer to the new uses and formulations developed by Uniroyal for use in the Development Field. See Ingulli Dep. at 62-63 (attached as Exhibit D). Uniroyal's Manager of Product Development for Specialty Products, Kevin Donovan, affirmed this understanding at his own deposition on May 14, 2004. See Deposition of Kevin Donovan, May 14, 2004 at 43-44 (attached as Exhibit E). Thus, no

---

[5]    These two specific examples are not exclusive. Indeed, other Uniroyal witnesses also have testified at their depositions about Uniroyal's plans to develop and market a generic paclobutrazol product to compete with Bonzi.

fewer than two Uniroyal executives have effectively admitted that any marketing and sales

rights that were granted to Uniroyal are limited to a narrow category of uses and use sites

defined in the Development and Supply Agreements.

Despite these admissions, Uniroyal's Amended Complaint -- filed after the

above depositions -- seeks an injunction barring Syngenta from marketing and selling Bonzi for

all uses, rather than only for the much more limited scope of "new uses" described above.  In

the face of the clear language of the operative agreements, and Uniroyal's witnesses' own

testimony concerning their understanding of those agreements, there can be no good faith basis

for Uniroyal to seek such extraordinary relief.  Rather, the only reasonable conclusion to be

drawn is that Uniroyal is pursuing this claim in an effort to interfere with Syngenta's business

and to gain a competitive advantage for Uniroyal's generic Bonzi competitor.[6]

Uniroyal's arguments that permitting Syngenta's Counterclaims would result in

delay, prejudice and/or futility are red herrings.  The plaintiff will not be required to "retake"

any depositions.  In fact, plaintiff's counsel inquired at great length concerning defendant's

Counterclaims at the depositions of Syngenta witnesses Travis Dickinson, Keelan Pulliam and

Charles Buffington taken in September 2004.  See, e.g., Deposition of Charles Buffington,

September 15, 2004 at 120-46 (attached as Exhibit F).  Moreover, Uniroyal has recently

served two separate sets of discovery requests on Syngenta, to which Syngenta is in the process

of responding, each of which seeks information primarily related to the Counterclaims.  See

---

[6]        Of course, as set forth in its Counterclaims, Syngenta's claims of sham litigation
and tortious interference are not limited to this single claim for relief, but also are based on
other improper conduct by Uniroyal.

9

Plaintiff's Second Set of Interrogatories and Third Request for Production of Documents dated

August 2, 2004, and Plaintiff's Third Set of Interrogatories and Fourth Request for Production

of Documents dated October 1, 2004 (attached as Exhibit G).

Furthermore, there is no futility in permitting Syngenta's Counterclaims. As set

forth below, those Counterclaims set forth valid causes of action that survive Uniroyal's

Motion to Dismiss. The statute of limitations has not run on these claims. Indeed, far from

being futile, permitting these claims would give Syngenta its day in Court to seek redress for

Uniroyal's tortious efforts to gain the upper hand in this important agricultural chemical market

segment.

## POINT II

### THE COUNTERCLAIMS STATE VALID
### CLAIMS UPON WHICH RELIEF MAY BE GRANTED

"In reviewing a motion to dismiss counterclaims for failure to state a claim, a

court must take the allegations in the counterclaims as true. All reasonable inferences must be

drawn in the claimant's favor. The counterclaims should be dismissed only where it appears

beyond a doubt that the claimant can prove no set of facts in support of his claim entitling him

to relief." See A&G Healthplans, Inc. v. National Network Servs., Inc., No. 99 CV 12153

(GBD), 2003 U.S. Dist. Lexis 3879, at *2 (S.D.N.Y. Mar. 14, 2003) (internal citations

omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant

is entitled to offer evidence to support the claims. Indeed it may appear on the face of the

pleadings that a recovery is very remote and unlikely but that is not the test." Waring v.

Carrier Corp., No. 3:01 CV 1822(JBA), 2002 U.S. Dist. LEXIS 17650, at *5-6 (D. Conn.

Aug. 21, 2002) (internal citations omitted); see also Courtenay Comm. Corp. v. Hall, 334

F.3d 210, 213 (2d Cir. 2003).

 Uniroyal's claim that it is immune from suit under the Noerr-Pennington

doctrine fails as a matter of law.  The Noerr-Pennington doctrine, based on a line of antitrust

cases, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127

(1961) and United States Mine Workers v. Pennington, 381 U.S. 657 (1965), holds that a

party has the right to petition the government for relief.  This doctrine establishes immunity

from liability for a party's conduct seeking to influence government action, which includes the

use of the courts.  See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508,

510 (1972).

 However, the doctrine is not absolute.  It does not provide immunity for "sham

litigation."  The Supreme Court has established a two part test to determine whether the

lawsuit at issue constitutes sham litigation.  In its decision in Professional Real Estate

Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993), the Court ruled that

the courts must assess the following:

> First, the lawsuit must be objectively baseless in the sense that no reasonable
> litigant could realistically expect success on the merits. If an objective litigant
> could conclude that the suit is reasonably calculated to elicit a favorable
> outcome, the suit is immunized under Noerr, and an antitrust claim premised on
> the sham exception must fail. Only if challenged litigation is objectively
> meritless may a court examine the litigant's subjective motivation. Under this
> second part of our definition of sham, the court should focus on whether the
> baseless lawsuit conceals "an attempt to interfere directly with the business

relationships of a competitor," through the "use [of] the governmental process — as opposed to the outcome of that process — as an anticompetitive weapon."

Id. at 60-61 (internal citations omitted).

In the context of a motion to dismiss, however, a party is not obligated to prove each of these elements at the outset. While the above sham litigation test establishes factors that must be pled, it does not alter the standard for motions to dismiss under Rule 12(b)(6).[7] "All that is required is that the complaint allege facts, which, if proven, show that the defendant is not entitled to Noerr-Pennington immunity under the sham litigation exception." Jarrow Formulas, Inc. v. International Nutrition Co., 175 F. Supp. 2d 296, 310-11 (D. Conn. 2001); see also Moore U.S.A., Inc. v. Standard Register Co., 139 F. Supp. 2d 348, 359 (W.D.N.Y. 2001); Skinder-Strauss Assocs. v. Massachusetts Continuing Legal Educ, Inc., 870 F. Supp. 8, 10 (D. Mass. 1994).

In Jarrow, the Court determined that the allegations made in the complaint set forth a valid sham litigation claim. The plaintiffs sued for damages and injunctive relief stemming from related patent litigation. The defendants moved to dismiss several of the plaintiffs' claims, including those for tortious interference and a CUTPA violation. See Jarrow, 175 F. Supp. 2d at 309. The Court (Covello, J.) found that the complaint alleged that the patent litigation was "objectively baseless and that the litigation concealed an attempt to

---

[7]     Importantly, the Professional Real Estate Court applied the "sham litigation" test in the context of ruling on a motion for summary judgment, not a motion to dismiss, and thus was focused on an examination of the material facts, and not merely the allegations of the pleadings.

interfere directly with the business relationships of a competitor." Id. at 311. This language was sufficient to defeat the motion to dismiss. Id.

Similarly, in Moore, the plaintiff filed an amended complaint, to which the defendant responded by filing new counterclaims in a case involving patents and licensing agreements. The plaintiff moved to dismiss the antitrust counterclaims on the basis of the Noerr-Pennington doctrine. See Moore, 139 F. Supp. 2d at 358. The counterclaims, however, alleged that the plaintiff knew its patent was not violated and that the plaintiff agreed to collaborate with its affiliates to thwart defendant's discovery and its defense. Id. at 359. The court concluded that these allegations, by themselves, were adequate to withstand a motion to dismiss. Id.

Finally, in Skinder-Strauss, the Court, in a copyright case, determined that a sham litigation claim was stated so long as the pleading alleged that the lawsuit was objectively baseless and concealed an attempt to interfere with a competitor's business. See Skinder-Strauss, 870 F. Supp. at 10. The court refused to apply any heightened pleading requirements, as argued by the plaintiff. Id.

Similar to the parties in Jarrow, Moore and Skinder-Strauss, Syngenta also has made detailed allegations concerning Uniroyal's conduct supporting its contention that Uniroyal's case is a sham. See, e.g., Counterclaims, ¶¶ 15-21. These detailed allegations contrast sharply with those in the cases cited by Uniroyal in which the Court dismissed a sham litigation claim. For example, in Hartford Life Insurance Co. v. Variable Annuity Life Insurance Co., 964 F. Supp. 624 (D. Conn. 1997), the defendant's basis for its conclusion that

13

the litigation was baseless was nothing more than its belief that its defenses would prevail. The Court (Nevas, J.) concluded this was insufficient to survive a motion to dismiss. Id. at 628. A nearly identical situation occurred in Agfa Corporation v. United Marketing Group, Inc., No. 02 Civ 8468(LAP), 2003 U.S. Dist. LEXIS 11760, at *8 (S.D.N.Y. 2003), in which the defendant did not even allege that the lawsuit was objectively baseless. Id.

Here, Syngenta carefully has alleged the sham litigation exception to the Noerr-Pennington doctrine. Specifically, among other things, Syngenta alleges that:

> Uniroyal's lawsuit, including the equitable relief set forth above, is a sham, and is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. There are no provable facts alleged in the Complaint that could justify completely barring Syngenta from advertising, promoting or selling Bonzi in any manner whatsoever. Moreover, there are no provable facts alleged in the Complaint that could justify barring Syngenta from advertising, promoting or selling Bonzi with a label containing any of the purported New Uses developed by Uniroyal, since any rights Uniroyal may have had to such New Uses have expired by the terms of the Development Agreement. Finally, Uniroyal has conceded in deposition that whatever marketing and sales rights were granted to Uniroyal -- assuming arguendo that Uniroyal retains any such rights, which Syngenta disputes -- are limited to a narrow category of uses and use sites as defined in the Supply Agreement and Development Agreement.
>
> Uniroyal brings this lawsuit, and seeks the foregoing equitable relief, to conceal an attempt to interfere directly with the business relationships of Syngenta, to impede Syngenta's ability to sell Bonzi, and to gain a competitive advantage over Syngenta in the sale of paclobutrazol products by limiting the uses for which Syngenta may market and sell Bonzi.

Counterclaims, ¶¶ 22-23. Clearly, Syngenta's counterclaims far exceed the minimalist pleading that was rejected by the Court in Hartford Life and Agfa.

14

Uniroyal attempts to bolster its argument by mischaracterizing Syngenta's Counterclaims as a disagreement as to the meaning and effect of the Supply and Development Agreements and the parties' respective rights and obligations thereunder.  However, even a cursory review of the Counterclaims reveals them to be much more than that.  For example, even if Uniroyal's interpretation of those agreements were correct, at most Syngenta might be restricted in its ability to market and sell Bonzi for the limited number of "new uses" and use sites developed by Uniroyal.  There is absolutely no interpretation of the agreements that would warrant a complete bar to Syngenta's rights to market and sell Bonzi -- a product that Syngenta indisputably owns -- in any manner whatsoever.  Nor has Uniroyal pled such a theory in its Amended Complaint.  Nevertheless, that is precisely among the relief that Uniroyal now seeks.  No "reasonable litigant" -- not even Uniroyal -- could realistically expect success on the merits of this claim.  The only reasonable and realistic interpretation of Uniroyal's pursuit of this and its other claims is to obtain a competitive advantage for its own generic paclobutrazol product.  This is precisely the claim set forth in Syngenta's Counterclaims.

15

## IV.    CONCLUSION

Syngenta's Counterclaims are properly raised, and set forth valid causes of action.  Accordingly, plaintiff's Motion to Strike and Dismiss Counterclaims should be denied, together with such other and further relief as the Court deems proper.

**Respectfully Submitted,**

**DEFENDANT,**
**SYNGENTA CROP PROTECTION, INC.**

By _____
William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo, Jr. (Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: rmeo@goodwin.com

and

Amy E. Souchuns (Fed. Bar No. ct21223)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Phone: (860) 251-5000
Fax:    (860) 251-5318
E-mail:  asouchuns@goodwin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to Plaintiff's Motion to Strike and Dismiss Counterclaims was sent via U.S. Mail, postage prepaid, on this 12th day of October 2004, to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

_____
R. Michael Meo, Jr.

382583 v.01

17