Exhibit A

LEXSEE 2002 US DIST LEXIS 14581

**JOHN S. PEREIRA, as Trustee of Trace International Holdings, Inc. and Trace Foam Sub, Inc., Plaintiff,-against-MARSHALL S. COGAN, SAUL S. SHERMAN, ANDREA FARACE, FREDERICK MARCUS, ROBERT H. NELSON, PHILIP SMITH, KARL WINTERS, TAMBRA KING, Defendants.**

**00 Civ. 619 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 14581*

**August 7, 2002, Decided**
**August 12, 2002, Filed**

**DISPOSITION:** [*1] Trustee's motion to strike affirmative defense granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Plaintiff: JOHN P. CAMPO, ESQ., THEODORE J. FISCHKIN, ESQ., ALISON J. CHEN, ESQ., Of Counsel, LeBOEUF, LAMB, GREENE, & MacRAE, L.L.P., New York, NY.

For Marshall S. Cogan, Defendant: ALEC P. OSTROW, ESQ., Of Counsel, SALOMON GREEN & OSTROW, P.C., ELKAN ABRAMOWITZ, ESQ., Of Counsel, MORVILLO, ABRAMOWITZ, GRAND, IASON & SILBERBERG, New York, NY.

For Saul S. Sherman, Defendant: GUY PETRILLO, ESQ., Of Counsel, SWIDLER, BERLIN, SHEREFF, FRIEDMAN, New York, NY.

For Robert H. Nelson, Philip Smith, Karl Winters, and Tambra King, Defendants: ROBERT A. MEISTER, ESQ., MICHAEL S. ETRA, ESQ., Of Counsel, PIPER MARBURY RUDNICK & WOLFE, LLP, New York, NY.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINIONBY:** ROBERT W. SWEET

**OPINION: Sweet, D.J.,**

Plaintiff John S. Pereira, as Chapter 7 Trustee (the "Trustee") of Trace International Holdings, Inc. ("Trace International") and Trace Foam Sub Inc. (collectively "Trace") has moved to strike the Thirteenth Affirmative Defense of defendant Frederick Marcus ("Marcus").

For the following reasons, [*2] that motion is granted.

**Parties**

Trace International is a Delaware corporation. It and its subsidiary Trace Foam filed for protection under Chapter 11 of the Bankruptcy Code on July 21, 1999. The cases were converted into proceedings under Chapter 7 on January 24, 2000, and the Trustee was appointed on January 25, 2000.

Marcus was a former director/officer of Trace.

**Prior Proceedings**

The parties and events discussed herein are described in greater detail in previous opinions, including *Pereira v. Cogan, 2001 U.S. Dist. LEXIS 2461, No. 00 Civ. 619, 2001 WL 243537* (S.D.N.Y. March 8, 2001) and *Pereira v. Cogan, 267 B.R. 500 (S.D.N.Y. 2001),* familiarity with which is presumed.

**Facts**

**The Third Amended Complaint and Marcus's Answer**

On April 15, 2002, the Trustee filed the Third Amended Complaint (the "Complaint"). The Complaint was amended to add an alternative theory concerning an already pleaded 1998 corporate governance issue. The preexisting complaint had alleged that, in violation of defendant's fiduciary duties and a Delaware statute, Trace was caused to redeem certain preferred shares in 1998 while its capital was impaired. [*3] The Complaint added an allegation that this same redemption also violated Trace's certificate of incorporation and another Delaware statute.

On April 22, 2002, Marcus submitted his amend-

2002 U.S. Dist. LEXIS 14581, *3

ment, purportedly as of right, including the Thirteenth Affirmative Defense, in which Marcus claims a damages offset of less than $2 million (present discounted value) based on separate 1985 and 1986 deferred compensation/severance agreements with a predecessor to Trace International Holdings, Inc. The offset presents no issue of liability. If proven, it would lessen the damages, if any, that may be recovered against Marcus in the event of a finding of liability on one or more of the causes of action. The Trustee seeks more than $40 million from Marcus. Marcus is one of the defendants in the case who is not accused of receiving any improper benefit from Trace.

Prior to this amendment as of right, Marcus sought the Trustee's consent to amend his Answer to include the Affirmative Defense. By letter dated April 5, 2002, Marcus requested the Trustee's consent to add his new offset defense and represented that "we will seek leave to amend Mr. Marcus' Answer in the absence of consent." By letter of April 16, 2002, the [*4] Trustee declined such consent. By letter that same day, Marcus specified, as an open Rule 16 Pretrial Order issue: "may Mr. Marcus amend his answer to add the two deferred benefit defenses?"

### Discovery Relating to Thirteenth Affirmative Defense

On October 6, 2000, the Trustee served a request for production of documents on Marcus. Request No. 9 called for production of "all documents concerning any contract or agreement entered into between Marcus and . . . Trace . . . ." Marcus produced documents on January 25, 2001. He did not produce the two agreements that form the basis of his purported amendment as of right, the 1985 and 1986 Agreements.

Marcus's deposition was held on August 16 and 17, 2001. On the evening of August 16, after the day's session was concluded and the Trustee's counsel had gone home, Marcus's counsel first delivered the 1985 and 1986 Agreements by a letter that identified the documents being produced but that did not give notice of any intent to amend the Answer. Because Marcus had not asserted a claim under these agreements, the Trustee claims that his counsel had no reason to, and did not, question Marcus about them at the conclusion of his deposition [*5] on August 17.

On October 15, 2001, Marcus's counsel questioned Ron Mamary, the Controller of Trace ("Mamary"), who was represented by the Trustee's counsel, about the existence of the Agreements.

During the deposition of Robert Nelson, the former Chief Financial Officer of Trace ("Nelson") on November 21, 2001, Marcus's counsel marked the Agreements

for identification and distributed them to all counsel. Further, Marcus's counsel questioned Nelson concerning the Agreements.

Fact discovery closed in mid-December. At that time, Marcus still had neither sought to amend his Answer to add offset defenses nor given any notice of his intention to do so.

### Behavior of Other Defendants With Offset Claims

The Trustee notes that other defendants with offset claims included them in their original Answers, which were served well prior to Marcus's Answer and deposition. In addition, on July 5 and 6, 2001, the Trustee and defendant Marshall Cogan exchanged correspondence putting each other on notice of potential amendments and consenting, in advance of depositions, that discovery might be had on these matters as if they were already pleaded.

The Trustee filed the instant motion [*6] by letter dated April 29, 2002. A hearing was held on June 19, 2002, and the motion was considered fully submitted at that time.

### Discussion

#### I. Amendment as of Right Pursuant to Rule 15

Under *Rule 15(a) of the Federal Rules of Civil Procedure,* "[a] party shall plead in response to an amended pleading . . . within 10 days after service of the amended pleading . . . unless the court otherwise orders." *Fed. R. Civ. P. 15(a)* (emphasis supplied).

The Trustee received permission from the defendants to file an amended complaint, which was so filed on April 15, 2002. There is no question that Marcus and the other defendants then had the right to file an answer "in response" to the complaint within 10 days and that Marcus timely filed his amended answer. The Trustee contends, however, that Marcus's Thirteenth Affirmative Defense in his Amended Answer should be stricken as it was not responsive to the changes in the Amended Complaint.

The case law addressing this particular situation, even within this district alone, is all over the map. The Trustee cites *Wechsler v. Hunt Health Sys. Ltd., 186 F. Supp.2d 402 (S.D.N.Y. 2002).* There, the plaintiff pleaded [*7] a breach of contract claim and was afforded leave to amend, late in the case, to add allegations that the defendants had engaged in various improper acts during performance. *Id. at 416.* The defendants then sought to amend their answer as of right to allege that the contract was invalid ab initio because of illegality and fraud. Id. Because the defenses were "not in response to the Amended Complaint"

and instead went "above and beyond responding to" the amended complaint, the defendants could not amend as of right. *Id. at 416.* A similar result was reached in *Nolan v. City of Yonkers, 1996 U.S. Dist. LEXIS 3221, 1996 WL 120685,* at *4 (S.D.N.Y. March 19, 1996),* which concerned the defendants' addition of counterclaims as of right. The defendants argued that "plaintiffs amended their complaint at their peril, opening themselves up to any and all counterclaims that defendants chose to assert." Id. The Court rejected this notion, finding that the "defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had the right to assert counterclaims [*8] in their original answer." Id. (citing *Chrysler Corp. v. Fedders Corp., 540 F. Supp. 706, 713 (S.D.N.Y. 1982)).*

Another sister court held oppositely in an analogous situation, however. In *American Home Products Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986),* the Court found that the defendants could amend their answer as of right. There, plaintiff AHP requested and received the permission of a defendant, McNeil, to file an amended complaint. That stipulation "placed no restrictions on the permissible scope of either side's pleading." Id. As a result, McNeil did not require the court's permission to file an additional counterclaim or revise its prayer for relief on six counterclaims to include damages. Id. See also *Veronico v. Pastapunto, 1999 WL 1216951* (S.D.N.Y. Dec. 17, 1999) (finding that Rule 15(a)'s "in response to" language does not limit the scope of amendments that defendants may make due to the "liberal standard for the amendment of pleadings" under the rule and Second Circuit case law).

Other courts have established a rule between the two apparent extremes above. The rule was most succinctly enunciated [*9] in *Tralon Corp. v. Cedarapids, Inc., 966 F. Supp. 812, 832 (N.D. Iowa 1997),* aff'd *205 F.3d 1347, 2000 WL 84400 (8th Cir. Jan. 21, 2000):*

> When a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff. ... The obvious corollary is that if an amended complaint does not change the theory or scope of the case, a [defendant] must seek leave of court pursuant to Rule 15(a) before it can amend its answer to assert a counterclaim.

Id. (quoting *Brown v. E.F. Hutton & Co., 610 F. Supp. 76, 78 (S.D. Fla. 1985)).*

A number of other district courts are in agreement with *Tralon. E.g. Digital Privacy, Inc. v. RSA Sec. Inc., 199 F. Supp. 2d 457, 459 (E.D. Va. 2002)* (finding defendant was entitled to include five new counterclaims in its answer to amended complaint because answer expanded scope of case and that plaintiff "chose to amend its complaint six weeks before the scheduled trial date at its own peril"); *E.I. Dupont De Nemours & Co. v. Millennium Chems., Inc., 1999 U.S. Dist. LEXIS 12447, 1999 WL 615164,* [*10] at *4 (D. Del. Aug. 2, 1999); *Salomon, S.A. v. Alpina Sports Corp., 737 F. Supp. 720, 722 (D. N.H. 1990)* ("It seems somewhat inequitable to allow Salomon to revise their theory of the case yet deny defendants the same opportunity."); *Synermed Int'l Inc. v. Laboratory Corp. of Am. Holdings, 1999 U.S. Dist. LEXIS 8202, 1999 WL 1939253,* at *1 (M.D.N.C. March 3, 1999) ("Because Synermed's second amended complaint expanded the theory or scope of its claims, the court finds that LabCorp had a right to assert its additional counterclaims without obtaining leave of the court."). See also 3 James W. Moore, et al., Moore's Fed. Prac. § 15.17[6] (3d ed. 1997) ("When a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of court before the defendant could respond with appropriate counterclaims."). But see *Veronico, 1999 WL 1216951* (noting that Tralon was limited to "prohibiting a defendant from amending an answer late in the litigation to assert a new counterclaim against the defendant" and did not apply to the presented situation of adding defenses as to whether the plaintiff had asserted subject matter [*11] jurisdiction and stated a claim upon which relief can be granted).

Yet another theory evolved in *Refuse Fuels Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa., 139 F.R.D. 576 (D. Mass. 1991),* in which the Court determined that defendants could assert new counterclaims and new defenses as of right in response to complaints amended pursuant to *Fed. R. Civ. P. 15(a),* but could not do so to complaints amended pursuant to *Fed. R. Civ. P. 15(d).* Id. See also 27A Fed. Proc., L. Ed. § 62:267 ("When a complaint is filed pursuant to *FRCP 15(a),* defendants do not need leave to serve new counterclaims and to assert new defenses.") (citing Refuse).

The "in response to" language of Rule 15(a) supports the views expressed both by the Wechsler and by the Tralon line of cases. A defendant who is responding to an amended complaint cannot amend his answer as of right without any regard to the amendments taken by his adversary. However, the Wechsler-type cases take too narrow a view of what "responsive" answers may be. It is not enough that a defendant could, for instance, admit or deny the veracity of new allegations. If the plaintiff expands its case by [*12] adding new theories or claims,

2002 U.S. Dist. LEXIS 14581, *12

it cannot complain if the defendant seeks to do the same by averring new counterclaims.

The instant case does not fit into the Tralon paradigm, even though the Trustee has arguably expanded the scope of his claims by adding an alternative theory for relief under a previously pleaded claim, because this case involves the assertion of an affirmative defense about which Marcus had knowledge for a long period of time, instead of a counterclaim. As the Trustee notes, parties are required to act promptly to assert affirmative defenses rather than "'lie behind a log' and ambush a plaintiff with an unexpected defense." *Venters v. City of Delphi, 123 F.3d 956, 967–68 (7th Cir. 1997).*

In addition, Marcus has failed to demonstrate that the amendment was responsive to the change in the Complaint in order to comply with Wechsler. Marcus states that his amendment is responsive because it "relates to damages sought by Plaintiff" and the Trustee's amendment provided another route by which he could obtain a damages award. This is not sufficiently responsive. As the Trustee notes, every defense goes to damages sought by plaintiffs,

either by [*13] stating that no damages should be had or that they should be offset. Such a rule would therefore vitiate any limitation on the ability to amend an answer as of right.

Marcus has failed to demonstrate that his addition of the Thirteenth Affirmative Defense was as of right in response to the Trustee's Amended Complaint. The affirmative defense therefore shall be stricken.

**Conclusion**

For the foregoing reasons, the Trustee's motion is granted and Marcus's Thirteenth Affirmative Defense is stricken.

It is so ordered.

**New York, NY**
**August 7, 2002**

**ROBERT W. SWEET**

**U.S.D.J.**

2 of 3 DOCUMENTS

**BENITO VERONICO, Plaintiff,–against–PASTAPUNTO and BIANCA DRAGOMETTI and FRANCO DRAGOMETTI, Individually, Defendant.**

**98 Civ. 1154 (NRB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1999 U.S. Dist. LEXIS 23235*

**December 17, 1999, Decided
December 17, 1999, Filed**

**DISPOSITION:** [*1] Defendant's attorney's motion to be relieved as counsle granted conditionally. Plaintiff's motion to strike defendants' amended answer denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Benito Veronico, PLAINTIFF: Teresa Anne Ryan, Seham, Seham, Meltz & Petersen the Westchester Financial, White Plains, NY USA.

For Pastappunto, Bianca Dragometti, Franco Dragometti, DEFENDANTS: Howard Birnbach, Great Neck, NY USA.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** NAOMI REICE BUCHWALD

**OPINION:**

**MEMORANDUM AND ORDER**

Doc # 21

## NAOMI REICE BUCHWALD
## UNITED STATES DISTRICT JUDGE

There are two motions pending before the Court in the above captioned case: (1) a November 18, 1999 motion by attorney Howard R. Birnbach ("Birnbach") to be discharged as defendants' attorney of record in this case and (2) plaintiff's October 14, 1999 motion to strike defendants' amended answer. For the reasons set forth below, the first motion, to relieve Birnbach, is granted on the conditions set forth; the second motion, to strike defendants' amended answer, is denied. In addition, a conference in this case is scheduled for January 24, 2000 at 11:45 a.m. in Courtroom 21A, 500 Pearl Street.

1. Defense Counsel's Motion to Withdraw [*2]

By letters of October 18 and 25, 1999 to Judge John E. Sprizzo, Birnbach notified this Court (and his clients via carbon copy) of his request to file a motion to withdraw as counsel for the defendants in this action. No response was received by the Court from the defendants themselves. This Court granted Birnbach permission to file such motion on November 2, 1999, with instructions to serve the motion on defendants and plaintiff's counsel. The only response to the motion was two letters from plaintiff's counsel dated December 2, and 9, 1999. Having found that Birnbach's motion contains a satisfactory showing, his request to withdraw is hereby granted pursuant to Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Birnbach is directed to return all relevant court documents to defendants. To address the concerns raised by plaintiff in the above mentioned letters, I have scheduled the January 24, 2000 conference.

Defendant Pastapunto is cautioned that corporate parties may not proceed pro se and must be represented by an attorney. Failure to appear by counsel can result in default judgment or dismissal of claims presented. [*3] *Jones v. Niagara Frontier Transportation Authority, 722 F.2d 20, 22 (2d Cir. 1983).* Thus, Pastapunto must secure representation in advance of the January 24, 2000 conference and counsel, if engaged, must appear at the conference.

Defendants Bianca and Franco Dragometti are cautioned that their failure to appear at the January 24, 2000 pretrial conference, personally or by incoming attorney of record, or to otherwise comply with court orders and rules of procedure would constitute sufficient grounds for entry of default against them. *Diversified Financial Systems, Inc. v. Tomich Corp., No. 95-4211, 1997 WL 177873 at *3 (E.D.N.Y. Mar. 27 1999).* No further extensions will be granted since defendants have had at least a month's notice of the need to hire new counsel.

1999 U.S. Dist. LEXIS 23235, *3

### 2. Plaintiff's Motion to Strike Defendant's Answer

Pursuant to an August 4, 1999 Order of Judge Kevin T. Duffy, plaintiff filed an amended complaint in this action on August 18, 1999. As required by *Federal Rule of Civil Procedure 15(a)*, defendant filed an amended answer on August 24, 1999. Plaintiff argues that the text of Rule 15(a), "a party shall plead in response to an amended [*4] pleading," limits the scope of amendments defendant may make. However, Rule 15(a) and Second Circuit precedent establish a liberal standard for the amendment of pleadings. *Fed. R. Civ. P. 15(a)* ("leave [to amend pleadings] shall be freely given"); Local 802, *Associated Musicians of Greater New York v. Parker Meriden Hotel, 145 F.3d 85, 89–90 (2d Cir. 1998)* ("justice weighs heavily in favor of permitting" a defendant to "correct [an] error that, if uncorrected, gives [defendant] no opportunity to challenge" the plaintiff's case). The thrust of defendant's amended answer addresses whether plaintiff has properly asserted subject matter jurisdiction and whether plaintiff has stated a claim for which relief can be granted. The main case cited by plaintiff, *Tralon Corp. v. Cedarapids, Inc., 966 F. Supp. 812 (N.D. Iowa 1997),* is clearly distinguishable as prohibiting a defendant from amending an answer late in the litigation to assert a new counterclaim against a plaintiff. Plaintiffs in this case assert no such counterclaim. Accordingly, the reasons given by plaintiff to bar amendment of defendant's answer must fail. This decision, of course, does [*5] not constitute an evaluation of the merits of defendants' asserted defenses.

**IT IS SO ORDERED.**

DATED: December 17, 1999

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

LEXSEE 2004 U.S. DIST. LEXIS 2833

**THE STANLEY WORKS, Plaintiff, v. ALLTRADE, INC., GINDAS INDUSTRIES CO., OLYMPIA GROUP, INC., and TAIWAN MEASURING TAPE CO., LTD. Defendants.**

**Civ. No. 3:02cv1468 (PCD)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2004 U.S. Dist. LEXIS 2833; 2004-1 Trade Cas. (CCH) P74,317*

**February 23, 2004, Filed**

**DISPOSITION:** Defendant Olympia's motion to dismiss counterclaims and amend answer granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Stanley Works, Plaintiff: Eric E. Grondahl, Jason C. Welch, McCarter & English, Hartford, CT.

For Olympia Group Inc, Defendant: Cathy E. Shore-Sirotin, Lackenbach & Siegel, Scarsdale, NY. David R. Schaefer, Brenner, Saltzman & Wallman New Haven, CT. Myron Greenspan, Lackenbach & Siegel, Scarsdale, NY. Robert B. Golden, Lackenbach & Siegel, Scarsdale, NY. Rowena Amanda Moffett, Brenner, Saltzman & Wallman, New Haven, CT.

For Olympia Group, Inc. Counter Claimant: David R. Schaefer, Brenner, Saltzman & Wallman New Haven, CT. Rowena Amanda Moffett, Brenner, Saltzman & Wallman, New Haven, CT.

For Stanley Works, Counter Defendant: Eric E. Grondahl, McCarter & English, Hartford, CT.

**JUDGES:** Peter C. Dorsey, United States District Judge.

**OPINIONBY:** Peter C. Dorsey

**OPINION:**

**RULING ON DEFENDANT'S MOTION TO DISMISS CERTAIN COUNTERCLAIMS WITHOUT PREJUDICE AND MOTION TO AMEND**

Pursuant to *FED. R. CIV. P. 41 and 15*, Defendant Olympia Group, Inc. ("Olympia") moves (1) to dismiss certain of its counterclaims without prejudice and without costs and (2) to amend its answer to omit certain of its defenses. [*2] For the reasons stated herein, Olympia's

motions are **granted.**

**I. Background**

Plaintiff filed its complaint on August 21, 2002 [Doc. No. 1], and filed an amended complaint on December 13, 2002, adding Olympia (among others) as an additional Defendant [Doc. No. 16]. On March 6, 2003, Olympia filed its answer, affirmative defenses, and counterclaims [Doc. No. 23]. Discovery closed on November 21, 2003 [Doc. No. 40].

Plaintiff is a worldwide manufacturer and marketer of tools, hardware, and specialty hardware for home improvement, consumer, industrial, and professional use. Pl. Opp. at 2. It owns *U.S. Patent No. 6,324,769,* entitled "Rule Assembly with Increased Blade Standout," which issued on December 4, 2001 (the "769 patent"). Plaintiff's initial complaint [Doc. No. 1] alleged infringement of the '769 patent against Defendant Alltrade, Inc., and its amended complaint [Doc. No. 16] added claims against Defendants Olympia and Gindas Industries Co. Olympia's First Counterclaim alleges that Plaintiff's '769 patent was invalid due to alleged on-sale and public-use bars under *35 U.S.C. § 102(b)*. Olympia's Fourth Counterclaim alleges that [*3] Plaintiff violated the *Sherman Antitrust Act* by bringing suit on a patent Plaintiff knew was invalid or unenforceable. Olympia's Fifth Counterclaim alleges that Plaintiff violated the *Connecticut Unfair Trade Practices Act* ("CUTPA").

Olympia moves to dismiss without prejudice a portion of its First Counterclaim (paragraphs 7-15, 19-22, 23 sub-sections (a)-(d), and 24), and the Fourth and Fifth Counterclaims in their entirety. It also seeks leave to amend its answer to delete a portion of the Second Affirmative Defense (sub-sections (a)-(d)), and the Fourth, Fifth, Eighth, Ninth, and Tenth Affirmative Defenses in their entirety.

**II. Motion to Dismiss Without Prejudice and Costs**

2004 U.S. Dist. LEXIS 2833, *3; 2004-1 Trade Cas. (CCH) P74,317

## A. Standard

*Rule 41* provides that, except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." *FED. R. CIV. P. 41(a)(2)*. "A voluntary dismissal without prejudice under *Rule 41(a)(2)* will be allowed if the [nonmovant ] will not be prejudiced therein." *D'Alto v. Dahon Cal. Inc., 100 F.3d 281, 283 (2d Cir. 1996)* [*4] (citation and quotation omitted). "Voluntary dismissal without prejudice is thus not a matter of right." *Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990)*. Relevant factors to considering a motion to dismiss without prejudice include

> the [moving party's] diligence in bringing the motion; any "undue vexatiousness" on [movant's] part; the extent to which the suit has progressed, including the [opposing party's] effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of [movant's] explanation for the need to dismiss.

*Id.* (citations omitted). "Starting a litigation all over again does not constitute legal prejudice." *D'Alto, 100 F.3d at 283*. These factors "are not exhaustive, and . . . do not exclude [other] factors particular to a specific case." *Vosburgh v. Indem. Ins. Co. of N. Am., 217 F.R.D. 384, 386 (S.D. W. Va. 2003)*. Rule *41(c)* instructs that "the provisions of this rule apply to the dismissal of any counterclaim."

## B. Discussion

Olympia argues that, upon the close of discovery, it "has determined that it no longer needs to pursue all of the [*5] defenses and counterclaims originally asserted." Def. Mem. at 2. Plaintiff responds Olympia's motion should be denied, because discovery has completed and Plaintiff "has filed motions for partial summary judgment on the very counterclaims and issues that Olympia belatedly seeks to withdraw without prejudice," and that it is prejudicial to allow Olympia an opportunity to relitigate such claims later on. Pl. Opp. at 1.

### 1. Diligence in Bringing Motion

Plaintiff argues that "Olympia has not shown diligence in bringing its motion, as it waited until after the close of discovery to seek dismissal." Pl. Opp. at 6. Olympia alleges that it bought its motion upon learning, in light of various discovery, that it "no longer needs to pursue all of these defenses and counterclaims originally asserted." Def. Mot. at 2. The record does not reflect that Olympia

was dilatory in bringing its motion; rather it seeks dismissal of certain counterclaims to facilitate the litigation. *See Catanzano v. Wing, 277 F.3d 99, 110 (2d Cir. 2001)*.

### 2. Undue Vexatiousness

Plaintiff contends that Olympia's conduct has been unduly vexatious, "as it brought claims that it apparently never [*6] intended to pursue." Pl. Opp. at 6. Plaintiff notes that while it conducted discovery regarding Olympia's counterclaims, "Olympia did not serve any written discovery, did not take a single deposition, and did not prepare an expert report on any subject." Pl. Opp. at 3. Olympia argues that because its sales of the alleged infringing tapes "were minuscule by the most liberal standards," and because it soon arranged to sell a modified tape, it chose not to spend either parties' money nor the Court's resources to pursue a cause that could be avoided.

Although Plaintiff alleges that Olympia behaved vexatiously, there is no evidence to support this claim. Plaintiff initiated this action against Olympia, and, to pursue its own claims, would have had to undertake discovery. The fact that Olympia did not conduct extensive discovery does not support a conclusion that it has engaged in unduly vexatious behavior. Moreover, Olympia alleges that Plaintiff rejected Olympia's attempts to reduce expenses by "stipulating with regard to certain dispositive motions." Def. Reply at 8. Plaintiff points to no evidence to demonstrate that Olympia acted without justification, in bad faith, or to harass Plaintiff. [*7]

### 3. Extent to Which Suit Has Progressed (Including Expense)

Plaintiff contends that it has expended "substantial" time and money responding to Olympia's counterclaims, researching the legal issues, and conducting discovery. Pl. Opp. at 5. Plaintiff argues that it has filed a motion for partial summary judgment "on the very claims and factual allegations Olympia seeks to have dismissed without prejudice" and that dismissal would "prejudice [Plaintiff] as it spent a significant n1 amount of time preparing and filing its motions for partial summary judgment." n2 Pl. Opp. at 6. Olympia responds that Plaintiff has not produced any evidence to substantiate its claims of duplicative expenses, noting that when Plaintiff added Olympia as a defendant, it "for the most part . . . essentially produced the same discovery requests it had submitted to Alltrade and sent them to Olympia." Def. Reply at 6. It further states that Plaintiff's sole deposition of Olympia primarily involved general background issues and infringement issues. Def. Reply at 6. Olympia also argues that when it tried to stipulate with regard to certain dispositive motions, Plaintiff was not interested, "resulting in [*8] the multiplicity of motions that were ultimately filed." and

consequently much of the expenses incurred are due to Plaintiff's behavior. Def. Reply at 8.

> n1 Plaintiff does not quantify the time spent.

> n2 To date, Plaintiff's motion for summary judgment has not been filed. Plaintiff filed a certificate of service, compliant with the Supplemental Order Doc. No. 3 , stating that the motion was served on Olympia on December 29, 2004.

The cases Plaintiff cites to support its proposition are distinguishable. In *Zagano*, the plaintiff moved for dismissal without prejudice the week before trial was to begin. *Zagano, 900 F.2d at 12*. The trial court denied her motion because "it had been made too late, . . . [the plaintiff] had used the federal action as 'an instrument of vexation,' and . . . defendants would be prejudiced because of the time spent preparing the case for the scheduled trial and the diminishing availability and recollection of witnesses." *Id. at 13*. The plaintiff [*9] refused to proceed with trial, and the trial court granted the defendants' motion for dismissal with prejudice. In *Andes v. Versant Corp., 788 F.2d 1033 (4th Cir. 1986)*, the defendants argued that they that "incurred significant expenses, not only in responding to [the plaintiff's] complaint and filing motions and memoranda in support of summary judgment, also by incurring substantial costs of discovery, through depositions, production of documents, and obtaining of expert opinions." *Andes, 788 F.2d at 1036*. The appeals court found that "although this is not a case of extreme prejudice to defendants, . . . there was a sufficient basis for [the trial court's] denying [the plaintiff's] *Rule 41(a)(2)* motion and thus we cannot say that the district court abused its discretion in refusing to dismiss without prejudice." *Id. at 1036–37* (internal citations omitted). The court cited cases where dismissal without prejudice occurred when the cases were already at trial. *Id. at 1036* (citing *Rollison v. Washington National Ins. Co., 176 F.2d 364 (4th Cir. 1949)* (dismissal without prejudice not proper where [*10] plaintiff sought to dismiss after complaint had been amended three times, a trial date set, and a jury sworn, and the trial judge had decided that plaintiff had not stated a claim); *Young v. John McShain, Inc., 130 F.2d 31 (4th Cir. 1942)* (proper to deny motion to dismiss made when case was already at trial and plaintiff had admitted that the claims sought to be dismissed were without merit)). In contrast, although this case is approximately eighteen months old and summary judgment motions are being filed, it is not the eve or middle of trial. Moreover, the present case does not involve a plaintiff seeking last minute dismissal, but instead involves a defendant seeking to withdraw some of its counterclaims.

Although discovery has ended and the parties are in the process of filing partial motions for summary judgment, this case most likely would have progressed to a similar degree based on Plaintiff's own complaint (e.g. Plaintiff would have conducted discovery even in the absence of Olympia's counterclaims), and Plaintiff makes no showing of extreme prejudice. It is within the Court's discretion to dismiss without prejudice in these circumstances.

### 4. Duplicate [*11] Expenses of Relitigation

As noted, the mere threat of relitigation is not dispositive because "starting a litigation all over again does not constitute legal prejudice." *D'Alto, 100 F.3d at 283*. If at some time Olympia asserts the same or similar claims in another lawsuit, Plaintiff's work regarding the counterclaims would not be wasted. Plaintiff makes no showing that having to defend against such claims in a different lawsuit would be more difficult.

### 5. Adequacy of Explanation

Olympia contends when its defenses and counterclaims were based on "a good faith belief that they were necessary for the proper defenses against the claims brought against it." Def. Reply at 2. Plaintiff argues that "Olympia has had a full and fair opportunity to litigate the claims raised in its counterclaims, but chose not to do so," and that Olympia "hopes to avoid entry of an adverse judgment on these claims." Pl. Opp. at 3–4.

Olympia states that the following factors led to its decision to not pursue presently the counterclaims it wishes to dismiss without prejudice: (1) the level of sales of the alleged infringing tape measure was low, and even Plaintiff's own damages expert [*12] estimated the sales to be minimal, and that consequently the cost of pursuing these counterclaims would outweigh any benefit to Olympia; (2) Olympia decided to market another measuring tape to avoid allegations of patent infringement. Def. Reply at 3. Olympia notes that it is in the best interest of the parties and to judicial economy to seek dismissal of these counterclaims, and alleges that "Olympia simply wants to fairly compete with Stanley and others in the trade, to sell a tape measure that does not infringe any valid claim of the '769 patent. . . ." Def. Reply at 9. Whereas Plaintiff contends that "Olympia hopes to avoid entry of an adverse judgment on these claims," Pl. Opp. at 4, Olympia asserts that it should not be foreclosed from later being able to "defend itself and assert any causes of action against [Plaintiff] that addresses [Plaintiff's] anti-competitive conduct," Def. Reply at 10. In *Catanzano*, the court found that "[the plaintiffs'] explanation, that they have brought the motion in order to facilitate an end to the litigation but that they wish to avoid preclusive effects

2004 U.S. Dist. LEXIS 2833, *12; 2004-1 Trade Cas. (CCH) P74,317

of the district court's ruling on this claim, is adequate." *Catanzano, 277 F.3d at 110.* **[*13]** Here, the record does not reflect that Olympia is trying to improperly manipulate the legal process, and its explanation for seeking dismissal is credited and deemed adequate. Plaintiff will retain its cause of action with a full entitlement to its adjudication.

After careful consideration of the *Zagano* factors and the context of the motion to dismiss, there is no finding that Plaintiff will suffer legal prejudice if the counterclaims are dismissed. Olympia's motion to dismiss without prejudice and costs is **granted**.

### III. Motion to Amend

Olympia also moves to amend its answer pursuant to *FED. R. CIV. P. 15.*

#### A. Standard

*Federal Rule of Civil Procedure 15(a)* provides that once a responsive pleading has been served, litigants may amend a pleading only "by leave of court or by written consent of the adverse party." *FED. R. CIV. P. 15(a).* As a general matter, "leave to file an amended complaint 'shall be freely given when justice so requires.'" *Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (quoting FED. R. CIV. P. 15(a)* **[*14]** *).* Leave should not be denied in the absence of undue delay, bad faith, undue

prejudice to the non-movant, or futility. *Id.* The propriety of granting a motion to amend remains within the district court's discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971).*

#### B. Discussion

Olympia seeks leave to amend its answer to delete a portion of the Second Affirmative Defense (sub-sections (a)-(d)), and the Fourth, Fifth, Eighth, Ninth, and Tenth Affirmative Defenses in their entirety. Def. Mot. at 2. Although Defendant contests the motion to dismiss, it does not make any specific arguments regarding the motion to amend. In light of the resolution of Olympia's motion to dismiss, its motion to amend [Doc. No. 60] is **granted**.

### IV. Conclusion

For the reasons stated herein, Olympia's motion to dismiss certain of its counterclaims without prejudice [Doc. No. 60] is **granted**. Olympia's motion to amend [Doc. No. 60] is **granted**.

SO ORDERED.

Dated at New Haven, Connecticut, February __, 2004.

Peter C. Dorsey

Senior United States District Judge

LEXSEE 2003 US DIST LEXIS 3879

**A&G HEALTHPLANS, INC. and A&G FINANCIAL CONSULTANTS, INC., Plaintiffs,–against–NATIONAL NETWORK SERVICES, INC.., Defendant.**

**99 cv 12153(GBD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 3879*

**March 12, 2003, Decided
March 14, 2003, Filed**

**DISPOSITION:** [*1] Plaintiffs' motion to dismiss the counterclaims was granted in part and denied in part..

**LexisNexis(R) Headnotes**

**COUNSEL:** For A&G Healthplans, Inc, A&G Financial Consultants, Inc, PLAINTIFFS: Judd Burstein, Burstein & McPherson LLP, New York, NY USA.

For National Network Services, Inc, DEFENDANT: Dennis M Rothman, Lester Schwab Katz & Dwyer, New York, NY USA.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINIONBY:** GEORGE B. DANIELS

**OPINION:**

MEMORANDUM OPINION & ORDER

GEORGE B. DANIELS, DISTRICT JUDGE:

Plaintiffs commenced this action seeking a permanent injunction against defendant for breach of contract, misappropriation of trade secrets, and tortious interference with business relations. Defendant responded with an answer which included several counterclaims. Plaintiffs thereafter moved to dismiss the portion of defendant's counterclaims that sought an equitable accounting, as well as the second counterclaim which alleged a breach of fiduciary duty. That motion was granted. With leave of the court, plaintiffs filed an amended complaint. Defendant responded with an answer to the amended complaint which included counterclaims for violations of Section 43(a) of the Lanham [*2] Act, *15 U.S.C. § 1125(a)*, constructive trust, misappropriation and conversion of trade secrets, common law unfair competi-

tion, and breach of contract. Defendant named Norman Payson, Chief Executive Officer and President of A&G Healthplans, Inc. and A&G Financial Consultants, Inc. as an additional counterclaim–defendant on all of the counterclaims except for the breach of contract counterclaim. Plaintiffs thereafter moved to dismiss defendant's counterclaims for failure to state a claim upon which relief can be granted pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.

In reviewing a motion to dismiss counterclaims for failure to state a claim, a court must take the allegations in the counterclaims as true. See *Hosp. v. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 48 L. Ed. 2d 338, 96 S. Ct. 1848 (1976); Miree v. DeKalb County, 433 U.S. 25, 27 n. 22, 53 L. Ed. 2d 557, 97 S. Ct. 2490 (1977)*. All reasonable inferences must be drawn in the claimant's favor. See *Bolt Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995)*. The counterclaims should be dismissed only where it appears beyond [*3] a doubt that the claimant can prove no set of facts in support of his claim entitling him to relief. See *Conley v. Gibson, 355 U.S. 41, 45–46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)* (footnote omitted); *Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985)*. Although a court considering a motion to dismiss for failure to state a claim is limited to the facts as stated in the pleadings, the pleadings include any written instrument attached as an exhibit and any statements or documents incorporated by reference therein. See *Paulemon v. Tobin, 30 F.3d 307, 308–309 (2d Cir. 1994)*. The court may not consider factual allegations in briefs or memoranda. See *Fonte v. Bd. of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988)*. The facts upon which a claimant bases his claim need not be set out in detail, but must give his adversary fair notice of the nature of his claim and the grounds upon which it rests. See *Greenberg v. New York State, 919 F. Supp. 637, 640 (E.D.N.Y. 1996)*, citing *Conley, 355 U.S. at 47*.

Defendant's first counterclaim alleges that plaintiffs violated Section [*4] 43(a) of the Lanham Act, *15 U.S.C. § 1125(a)*. A violation of this section has occurred if there is a "likelihood of confusion as to the origin of the goods [or services] in issue at the consumer level." *Berlitz Schools of Languages of America, Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980)*. Defendant alleges that plaintiffs falsely represented an association with defendant to defendant's patient-clients and to medical providers under contract with defendant in order to obtain discounts. See Answer to Amended Complaint PP 25-30. Defendant's pleading focuses primarily on medical providers. Id. at PP 26-30. However, medical providers are not consumers in this context, and therefore defendant can prove no set of facts that demonstrate a likelihood of confusion to consumers. Accordingly, plaintiffs' motion to dismiss defendant's first counterclaim with respect to medical providers under contract with defendant is granted with prejudice. Additionally, because defendant's pleading focused on medical providers, defendant has also failed to allege a cognizable claim under the Lanham Act with respect to its patient-clients. Therefore, [*5] plaintiffs' motion to dismiss defendant's first counterclaim with respect to defendant's patient-clients is granted without prejudice.

Defendant's second counterclaim for constructive trust is founded upon plaintiffs' alleged unauthorized use of defendant's relationships and the profits they purportedly earned therefrom. Under New York law, the elements which may be used to impose a constructive trust are "(1) a *confidential* or fiduciary relationship; (2) a promise, express or implied; (3) a transfer in reliance on the promise; and (4) unjust enrichment." *Artist Mgmt. Office, Inc. v. Worldvision Enter., Inc., 1997 U.S. Dist. LEXIS 5144, 1997 WL 188937, at *6 (S.D.N.Y. 1997)*, citing *Sharp v. Kosmalski, 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976)* (emphasis added). However, these elements should not be rigidly construed See *Golden Budha Corp. v. Canadian Land Co. of Am., N.V., 931 F.2d 196, 202 (2d Cir. 1991)*, citing *Simonds v. Simonds 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978)*. "The purpose of a constructive trust is said to be the prevention of unjust enrichment ... To impose a constructive trust, what is required, generally, [*6] is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." Id. (internal quotations and citations omitted).

The contract between the parties, which is incorporated by reference into the pleadings, specifies that the parties may exchange confidential information during their relationship and that they agree not to use such information for their own benefit. See Client Service Agreement P 8. Defendant alleges that plaintiffs wrongfully used

confidential information obtained during the parties' contractual relationship for plaintiffs' own benefit and profited therefrom. See Answer to Amended Complaint PP 33-36. These allegations are sufficiently plead to state a claim for the imposition of a constructive trust. Therefore, plaintiffs' motion to dismiss defendant's second counterclaim is denied.

Defendant's third counterclaim alleges misappropriation of trade secrets. To support this claim, defendant must prove that "(1) it possessed a trade secret, and (2) [plaintiffs are] using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990)* [*7] (internal quotation marks omitted), quoting *Rapco Foam, Inc. v. Scientific Applications, Inc., 479 F. Supp. 1027, 1029 (S.D.N.Y. 1979)*. Under New York law,

> a trade secret is defined as any device which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it ... Six factors are to be considered in determining whether a trade secret exists: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803, 453 N.Y.S.2d 470, 472 (1982)*, quoting RESTATEMENT OF TORTS § 757 cmt. b (internal quotation marks omitted); see also *Integrated Cash Mgmt., 920 F.2d at 173*.

The contract [*8] between the parties specifies that the parties may exchange "non-public confidential information" or "Trade Secrets" during their relationship. See Client Service Agreement P 8. Defendant alleges that plaintiffs wrongfully used defendant's confidential business relationships with medical providers to obtain discounts from these providers. See Answer to Amended Complaint PP 7, 38. These allegations are sufficiently plead to state a claim for misappropriation of trade secrets. Plaintiffs' motion to dismiss defendant's third counterclaim is therefore denied.

Defendant's fourth counterclaim alleges unfair com-

petition under the common law of the State of New York. This counterclaim must meet the same standard of likelihood of confusion to consumers as defendant's Lanham Act counterclaim, as well as meet an additional requirement of bad faith. See *Girl Scouts of the United States v. Bantam Doubleday Dell Publ'g Group, Inc., 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992)*, citing *Weight Watchers Int'l, Inc. v. Stouffer Corp., 744 F. Supp. 1259, 1283 (S.D.N.Y. 1990)* and *Educ. Testing Serv. v. Touchstone Applied Science Assoc., Inc., 739 F. Supp. 847, 849 (S.D.N.Y. 1990)*; [*9] see also *Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980)*. For the same reasons stated earlier with respect to defendant's first counterclaim, plaintiffs' motion to dismiss defendant's fourth counterclaim as to the medical providers under contract with defendant is granted with prejudice, and plaintiffs' motion to dismiss defendant's fourth counterclaim with respect to defendant's patient-clients is granted without prejudice.

Defendant's fifth counterclaim alleges breach of contract. A claim for breach of contract must allege: "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach ... It is not necessary, however, for a [claim] alleging breach of contract to specifically state each element individually." *R.H. Damon & Co., Inc. v. Softkey Software Products,*

*Inc., 811 F. Supp. 986, 990–91 (S.D.N.Y. 1993)*, citing *Nordic Bank PLC v. Trend Group, Ltd., 619 F. Supp. 542, 561 (S.D.N.Y. 1985)*. Reading defendant's answer to the amended complaint as a whole, this Court finds that defendant has [*10] sufficiently plead these elements so as to give plaintiffs notice of the nature and grounds of this claim. Plaintiffs' motion to dismiss defendant's fourth counterclaim is therefore denied.

Finally, defendant's first, second, third, and fourth counterclaims name Norman Payson as an additional counterclaim-defendant. Defendant may not join Mr. Payson as a counterclaim-defendant on these claims absent allegations of his "independently tortious conduct." *Mendez v. City of New York, 259 A.D.2d 441, 687 N.Y.S.2d 346, 347–48 (App. Div. 1999)* (citations omitted); see also *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1177 (2d Cir. 1993)*. However, defendant has not made any such allegations. Plaintiffs' motion to dismiss defendant's counterclaims as asserted against Norman Payson is therefore granted without prejudice.

Dated: March 12, 2003

    SO ORDERED:

    GEORGE B. DANIELS

    United States District Judge

LEXSEE 2002 U.S. DIST. LEXIS 17650

**Waring v. Carrier Corp. et al.**

**No. 3:01cv1822(JBA)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

*2002 U.S. Dist. LEXIS 17650*

**August 21, 2002, Decided**

**DISPOSITION:** [*1] Plaintiff's motion to amend his complaint was granted and Carrier's and UTC's motion to dismiss was denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JOHN D. WARING, plaintiff: Gregg D. Adler, Deborah L. McKenna, Livingston, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT.

For JOHN D. WARING, plaintiff: Lawrence C. DiGiulio, Robert C. Weissflach, Jaeckle Fleischmann & Mugel, Buffalo, NY.

For CARRIER CORP, CARRIER INTL CORP, UNITED TECH CORP, defendants: Patricia M. Canavan, Day, Berry & Howard, Stamford, CT.

For CARRIER CORP, CARRIER INTL CORP, UNITED TECH CORP, defendants: Victoria Woodin Chavey, Day, Berry & Howard, Hartford, CT.

**JUDGES:** Janet Bond Arterton, United States District Judge.

**OPINIONBY:** Janet Bond Arterton

**OPINION:**

Ruling on Pending Motions [Docs. # # 21 & 43]

John Waring commenced this suit against Carrier Corp. ("Carrier"), Carrier International Corp. ("CIC") and United Technologies Corp. ("UTC"), alleging violations of the Age Discrimination in Employment Act, *29 U.S.C. § 621* et seq. ("ADEA"). Carrier and UTC (but not CIC) moved to dismiss the complaint under *Fed. R. Civ. P. 12(b)(6)*, asserting that the complaint fails to state a complaint [*2] them, as they are not liable as an "integrated enterprise" for the acts of CIC. Simultaneous with his filing of opposition to this motion, Waring moved to amend his complaint. n1 Carrier and UTC ("the mov-

ing defendants") oppose the amendment on the grounds of futility, asserting that even the facts as pled in the proposed Amended Complaint fail to establish that Carrier, UTC and CIC were an "integrated enterprise" subject to liability under ADEA.

n1 Waring nonetheless argues that even under his original complaint, the motion to dismiss should be denied.

For the reasons set out below, the Court grants Waring's motion to amend and denies the moving defendants' motion to dismiss.

I. The Motion to Amend

Waring's original complaint in this case was filed September 24, 2001, and his motion to amend was filed February 11, 2002. The operative scheduling order [Doc. # 27] provides that motions to amend are due by April 1, 2002. Thus, the amendment is by all accounts timely filed.

The moving defendants' only objection [*3] to the motion to amend is that it is futile. Because, as discussed below, the Amended Complaint sufficiently states a claim against the moving defendants, it is not futile and the amendment will be permitted.

II. The Motion to Dismiss

A. The Allegations of the Amended Complaint

Waring was hired by defendants in 1982 as a Production Control Manager, and thereafter assumed various positions throughout Asia with defendants. Am. Compl. PP 15-17. In April 2000, the Vice President of Human Resources for CIC, Patrick Preux, asked Waring about his retirement plans, as did the President of CIC, Geraud Darnis, in June 2000. Id. P 20. Despite the fact that Waring was "well qualified for each of the job positions he held with defendants," id. P 18, his employment was terminated by Preux on August 8, 2000, id. P 21. While

Preux cited "behavior inconsistencies" and "serious violations of expense procedures," id., as the reasons for termination, the former term was never explained and the latter reason was unfounded, id. P 23. These reasons were "a pretext for unlawful and wilful age discrimination." Id.

In addition to alleging throughout the Amended Complaint that he [*4] was employed by "defendants" (plural), Waring asserts:

> Carrier, CIC, and UTC constitute an integrated enterprise, with common management, common ownership or financial control, centralized control of labor relations, and a functional interrelation of operations. CIC is a mere instrumentality and/ or alter ego of UTC.

Id. P 14. This allegation is given further context by Waring's claims that "the termination decision in this case [was] made by human resource personnel employed by Carrier and/ or UTC"; when Waring questioned his termination, those questions were answered by Carrier's Vice President for Human Resources and a UTC ombudsman; Waring's paychecks were issued by Carrier for several years after he was transferred to Carrier's Asian Pacific Operations "(a/ k/ a CIC)"; Waring "regularly reported to, and took direction from, executives at Carrier and UTC concerning operations"; "business plans by Mr. Waring were submitted to UTC and Carrier for approval and changes"; "benefit plans offered to Mr. Waring were Carrier and/ or UTC plans"; and UTC and Carrier oversaw Waring's duties as Director of Environmental Health and Safety and as Regional Dialog Coordinator. [*5] Id. P 28.

Beyond these allegations specific to his employment, Waring asserts that CIC's human resources and labor decisions were regularly made by UTC/Carrier human resources personnel; employees of the three corporations "regularly and routinely transferred between the corporate entities"; and the corporations share common management with regard to policies and procedures. Id. PP 28–29.

### B. Standard

When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).* A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45–46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).*

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but [*6] that is not the test." *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683, 71 Ohio Op. 2d 474 (1974).*

### C. Analysis

The basis for Carrier's and UTC's motion to dismiss is that neither company was Waring's "employer," and thus Waring has not stated a claim under ADEA against them. To determine when a parent company may be considered the employer of a subsidiary's employees, courts assess four factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or interest. *Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240–1241 (2d Cir. 1995).* The focus of the inquiry is on the second factor, centralized control of labor relations, *id. at 1241,* which "'has been further refined to the point that the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Id. at 1240* (quoting *Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)* (citations omitted)).

Carrier and UTC claim that the Amended Complaint is "deficient in its allegation [*7] of an integrated enterprise," Def.'s Reply [Doc. # 26] at 5, because it relies on inconsistent facts and conclusory allegations. Specifically, the moving defendants argue that Waring's allegation that Carrier and UTC participated in the decision to end his employment "directly contradicts the specific facts he alleged [in Am. Compl. P 24; that is,] only that Patrick Preux, Vice President of Human Resources for CIC, terminated his employment, told him the reasons for the termination, and attempted to negotiate a severance package with him." Def.'s Reply [Doc. # 26] at 6–7. The moving defendants further point out that "the only people Plaintiff claims were involved in the alleged age discrimination at issue in this case are CIC officials–Mr. Preux and Geraud Darnis, the President of CIC." Id. at 7. In addition to these claimed contradictions, the moving defendants argue that the Waring's allegations against them are "so conclusory or otherwise insufficient that [they] still fail[] to properly allege an integrated enterprise." Id. at 8.

First, the claim that Waring's allegations are contradictory is without merit. Specifically identifying Preux as the conveyor of the [*8] termination decision is not inconsistent with Waring's claims that the actual decision to terminate his employment was made by Carrier and/ or UTC human resources personnel, or that Carrier, UTC and CIC are so interrelated that they form a single inte-

grated enterprise.

Second, Waring's complaint is not conclusory with regard to the allegations that Carrier, UTC and CIC form a single integrated enterprise. Waring sets out in detail his allegations of interrelated operations, centralized control of labor relations, common management, and common ownership or interest, providing concrete examples of the types of functions the defendants' are alleged to perform jointly.

A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," *Fed. R. Civ. P. 8(a)(2)*, and must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious [*9] claims." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)* (citations omit-

ted). Waring has sufficiently satisfied this standard, and is entitled to use the discovery mechanisms provided for in the Federal Rules of Civil Procedure to further assess and refine his claims.

III. Conclusion

For the reasons set out above, Plaintiff's motion to amend his complaint [Doc. # 43] is GRANTED and Carrier's and UTC's motion to dismiss [Doc. # 21] is DENIED. The Clerk is directed to docket the Amended Complaint.

IT IS SO ORDERED.

/s/

Janet Bond Arterton

United States District Judge

**Dated at New Haven, Connecticut, this 21st day of August, 2002.**

LEXSEE 2003 U.S. DIST. LEXIS 11760

**AGFA CORPORATION, Plaintiff,–against–UNITED MARKETING GROUP, INC., and PROFICO, LTD., Defendants.**

**02 Civ. 8468 (LAP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 11760*

**July 10, 2003, Decided
July 14, 2003, Filed**

**DISPOSITION:** Plaintiff's motion to dismiss defendant's counterclaim granted. Defendant's cross–motion to dismiss plaintiff's complaint denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Agfa Corporation, PLAINTIFF: Murray J Laulicht, Pitney, Hardin, Kipp & Szuch, LLP, New York, NY USA.

**JUDGES:** [*1] LORETTA A. PRESKA, United States District Judge.

**OPINIONBY:** LORETTA A. PRESKA

**OPINION:** MEMORANDUM AND ORDER

LORETTA A. PRESKA, United States District Judge:

Presently pending are plaintiff Agfa Corporation's ("Agfa") motion to dismiss the counterclaim of defendants United Marketing Group, Inc. and Profico, Ltd. (collectively, the "defendants") and defendants' cross–motion to dismiss plaintiff's complaint. For the reasons stated herein, plaintiff's motion is granted, and defendants' cross–motion is denied.

BACKGROUND

Plaintiff's complaint alleges the following pertinent facts. Agfa is engaged in the business of manufacturing and selling graphic arts films, papers, chemicals, accessories and electronic prepress equipment and proofing products. (Complaint, hereafter, "Compl.," at P 9). Among the products manufactured and sold by Agfa are categories of products known as recording films and papers (referred to throughout plaintiff's complaint as "Recording Product"), which are used extensively in the graphics arts industry. (Id.). Agfa distributes Agfa–branded Recording Product in the United States primarily through authorized Agfa dealers (hereafter, "Authorized Dealers") pursuant to [*2] an express Authorized Dealer agreement. (Id. at P 10). The dealer agreement utilized by Agfa provides that Authorized Dealers are obligated to purchase all of their requirements for Agfa–branded products, including Recording Products, from Agfa. (Id. at P 11). In addition to its system of Authorized Dealers, Agfa also sells Recording Product in the United States through alternative channels of distribution. (Id. at P 16). However, Recording Product sold by Agfa through such alternative channels of distribution is not intended to be sold by Agfa's Authorized Dealers. (Id. at P 17).

According to plaintiff's complaint, defendants are engaged in the sale of Recording Product to graphic arts suppliers. (Compl. at P 19). Defendants have not contracted with Agfa to participate in Agfa's distribution channels in any capacity. (Id. at P 20). Upon information and belief, defendants acquired Agfa–branded Recording Product on the "gray market," that is, they purchased Recording Product that had either been improperly diverted from Agfa's official distribution system or they imported the Recording Product from foreign markets. (Id. at P 21). Defendants then re–sold the [*3] Agfa–branded Recording Product to one or more graphic arts suppliers known to defendants to be Agfa Authorized Dealers. (Id. at P 22). At the time of such sales, defendants were aware of the contractual obligation of Agfa's Authorized Dealers to purchase all of their Agfa–branded Recording Product exclusively from Agfa. (Id. at P 23). In at least one case, defendants made sales of more than $750,000 to an entity known by them to be an Agfa Authorized Dealer. (Id. at P 24).

As a result of defendants' activities, Agfa purportedly lost selling opportunities to one or more Authorized Dealers, incurred exposure to end–users' warranty and rebate claims without consideration, and mistakenly ex-

tended credits and rebates to one or more Authorized Dealers. (Compl. at P 25). In at least one case, Agfa was compelled to terminate its relationship with an Authorized Dealer as a result of that Dealer's purchases from defendants. (Id. at P 26).

Defendants' counterclaim, in turn, alleges that defendants purchased certain Agfa products in the stream of interstate and foreign commerce from sellers other than Agfa. (Defendants' counterclaim, hereafter, "Defs' Counterclaim," at P 7). [*4] According to defendants, they have never had a contractual relationship with Agfa and have "every right" to purchase Agfa products from the stream of interstate and foreign commerce without interference by Agfa. (Id. at P 9).

On October 23, 2002, plaintiff filed an original Complaint (the "Complaint") against defendants alleging tortious interference with contract. On January 31, 2003, defendants filed an Answer, Affirmative Defense, and Counterclaim (the "Counterclaim"). n1 In their Counterclaim, defendants allege that the filing of this action by Agfa constitutes a violation of sections one and two of the *Sherman Act* and of the *Donnelly Act*, the New York analog of the *Sherman Act*.

> n1 Although plaintiff's motion to dismiss the Counterclaim refers to both an original Answer and Counterclaim, filed on November 15, 2002, and an Amended Answer and Counterclaim, filed on November 19, 2002, (Pl's Br. at 3), the official Court docket contains only a single Answer and Counterclaim, docketed on January 31, 2003. The motion will be considered with respect to the docketed Answer and Counterclaims only.

[*5]

On December 9, 2002, plaintiff moved to dismiss the Counterclaim. On February 12, 2003, defendants cross-moved to dismiss the Complaint.

DISCUSSION

I. Legal Standard

When deciding a motion to dismiss under *Rule 12(b)(6)*, I must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the [pleader's] favor." *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).* "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)* (quoting *Scheuer v. Rhodes, 416 U.S. 232, 235-36, 40 L. Ed. 2d*

*90, 94 S. Ct. 1683 (1974)).* Dismissal is proper only when "it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); accord Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994).*

II. The Noerr-Pennington Doctrine and Plaintiff's [*6] Motion to Dismiss the Counterclaim

The Noerr-Pennington doctrine provides immunity from liability for conduct seeking to influence government action. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669-70, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965).* "Essentially, the Doctrine protects under the *First Amendment* efforts to influence governmental action through litigation, lobbying, and the like. Such activities are immunized from antitrust liability, provided that such activities are more than a mere 'sham.'" *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., No. 007302, 2000 U.S. App. LEXIS 25440, at *3 (2d Cir. Oct. 11, 2000)* (affirming district court's dismissal of a claim under the Noerr-Pennington doctrine). Immunity under the Noerr-Pennington doctrine attaches regardless of whether the claim is based on a state or a federal cause of action. See *Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128-29 (3d Cir. 1999)* (applying Noerr-Pennington to state tort [*7] law claims because "we have been presented with no persuasive why these state tort claims, based on the same petitioning activity as the federal claims, would not be barred by the Noerr-Pennington doctrine"); *H.L. Hayden Co. v. Siemens Medical Sys., Inc., 672 F. Supp. 724, 745 (S.D.N.Y. 1987)* (granting summary judgment on state *Donnelly Act* claim because summary judgment was appropriate on federal *Sherman Act* claims).

To invoke the "sham" exception to the doctrine, a party must allege that the lawsuit is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Bath Petroleum, 2000 U.S. App. LEXIS 25440,* [WL] at *3-4 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 56-57, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993).* If a court first determines that the challenged litigation is objectively meritless, that court may then examine the subjective motivation of the litigant. See *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc., 312 F.3d 90, 99 (2d Cir. 2002);* see also *Cheminor Drugs, 168 F.3d at 122-23.* "Where [*8] possible, ... this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,*

2003 U.S. Dist. LEXIS 11760, *8

*207 F. Supp. 2d 221, 223 (S.D.N.Y. 2002).*

Here, defendants do not argue that consideration of Noerr–Pennington immunity is improper but only that the "sham" exception applies. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaim and in Support of Defendants' Motion to Dismiss the Complaint, hereafter, "Defs' Br.," at 2). Defendants, however, have not carried their burden on this argument. As a threshold matter, defendants do not allege, in their Counterclaim, that Agfa's lawsuit is "objectively baseless." See *Bath Petroleum, 2000 U.S. App. LEXIS 25440,* [WL] at *3–4. To the contrary, defendants do not even address the merit of the claims set forth in Agfa's Complaint, viz., defendants' alleged tortious interference with contract and interference with prospective economic advantage. Instead, defendants assert their own right to purchase Agfa products and to resell them on the secondary market. (Defs' **[*9]** Counterclaim at PP 7–9). Defendants then allege, in conclusory fashion, that Agfa's Complaint constitutes a violation of the *Sherman Act* and the *Donnelly Act.* (Id. at PP 10–11). Such a conclusion is inconsistent with the requirement, as set forth in the prior case law, that allegations of "sham" litigation be contained in the pleadings, see, e.g., *Twin City Bakery Workers, 207 F. Supp. 2d at 223,* and is, as such, insufficient to defeat the application of the Noerr–Pennington doctrine. In any event, Agfa has pleaded the elements of tortious interference with contract and interference with prospective economic advantage, see section III, infra, and has included facts in its Complaint to support its claims. Thus, defendants have failed to carry their burden on the first step of the sham litigation exception to the Noerr–Pennington doctrine of showing the claim to be objectively baseless. See *T.F.T.F. Capital Corp., 312 F.3d at 93.*

Proceeding directly to the second step of the sham litigation exception, plaintiff's motivation, defendants introduce evidence in the form of two affidavits (one from the President of defendants, **[*10]** the other from one of the attorneys for defendants) of efforts by Agfa to acquire defendants' list of suppliers during pre-litigation, settlement-type discussions. Relying on those affidavits, defendants assert that the instant case is a sham because it was filed only after defendants refused to share the pertinent list of suppliers with Agfa and for the sole purpose of obtaining this list, which defendants maintain is a trade secret. (Defs' Br. at 4–6).

First, because this is a motion to dismiss not converted to summary judgment, it is not clear that the affidavits may even be considered. Second, assuming, arguendo, that the conversations discussed in defendants' affidavits would be admissible (which they almost certainly would not be), such evidence is insufficient to render Agfa's claim a

sham because motivation may only be considered if the claim is found to be objectively meritless. Here, as noted above, I cannot so find. Accordingly, defendants have not satisfied their burden of demonstrating the sham litigation exception to the Noerr–Pennington doctrine, and, therefore, Agfa is entitled to invoke immunity from defendants' Counterclaim under that doctrine. Accordingly, **[*11]** Agfa's motion is granted, and defendants' Counterclaim is dismissed.

### III. Defendants' Cross–Motion to Dismiss

Under New York law, the elements of a claim for tortious interference with contract are: "(1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; and (4) damages." *G–1 Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 252 (S.D.N.Y. 2001);* see also *Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).* To state a claim for tortious interference with prospective economic advantage, "a plaintiff must also plead facts that demonstrate that the defendant acted with the sole purpose of harming the plaintiff or that the defendant used dishonest, unfair or improper or wrongful means." *G–1 Holdings, 179 F. Supp. 2d at 254* (internal citations omitted).

Here, Agfa's Complaint alleges that Agfa had a contractual relationship with its authorized dealers, in particular one dealer to whom defendants purportedly sold over $750,000 in Recording Product. (Compl. **[*12]** at PP 10, 24). The Complaint alleges that defendants were aware of the contractual relationship and the requirement that the dealer purchase all of their Agfa-branded Recording Product exclusively from Agfa. (Id. at P 23). Moreover, the Complaint details the actions of defendants to induce Agfa's dealer to breach its dealer agreement. (Id. at PP 21–24). The Complaint also alleges that Agfa suffered damages as a result of defendants' actions. (Id. at PP 25–26).

As to the interference with prospective economic advantage claim, the Complaint also alleges, in addition to the facts recited above, that defendants maliciously and intentionally interfered with Agfa's prospective economic relationship with its authorized dealers, including a dealer by the name of Arkin Medo, Inc. (Id. at PP 37–38).

Other than alleging that plaintiff's claim is "sham" litigation, defendants do not specify any pleading deficiency in plaintiff's claims. Because, on a motion to dismiss, all allegations in the non-movant's pleadings are presumed to be true, see *Chambers, 282 F.3d at 152,* and because Agfa's complaint pleads the elements of its causes of action for tortious interference **[*13]** with existing contrac-

2003 U.S. Dist. LEXIS 11760, *13

tual relations and tortious interference with prospective economic advantage, defendants' cross-motion to dismiss is denied.

### CONCLUSION

For the foregoing reasons, Agfa's motion to dismiss the Counterclaim (docket entry no. 5) is granted. Defendants' cross-motion to dismiss the Complaint (docket entry no. 9) is denied.

Counsel shall confer as to the steps necessary to resolve this action and shall appear for a conference on July 28, 2003 at 9:30 a.m. in Courtroom 12A at 500 Pearl Street, New York, New York.

SO ORDERED:

LORETTA A. PRESKA, U.S.D.J.

Exhibit B

1
          UNITED STATES DISTRICT COURT
            DISTRICT OF CONNECTICUT
2                    VOLUME I                ORIGINAL

3

4
    - - - - - - - - - - - - - - -x
5   UNIROYAL CHEMICAL COMPANY, INC.:
    d/b/a CROMPTON MANUFACTURING   :
6   COMPANY,                       :
                        Plaintiff, :
7   vs.                            :  CIVIL ACTION NO.
                                   :  3:02CV02253
8                                  :
    SYNGENTA CROP PROTECTION, INC. :
9                       Defendant. :
    - - - - - - - - - - - - - - -x

10

11

12

13          Deposition of LAUREEN C. TREU, taken

14   pursuant to the Federal Rules of Civil Procedure,

15   before Melissa J. Kelly, RPR, CRR, Licensed

16   Shorthand Reporter #00307, and Notary Public within

17   and for the State of Connecticut, held at the

18   offices of Shipman & Goodwin LLP, 300 Atlantic

19   Street, Stamford, Connecticut, on January 12, 2004,

20   at 10:25 a.m.

21

22

23
              DEL VECCHIO REPORTING SERVICES, LLC
24              PROFESSIONAL SHORTHAND REPORTERS
                      117 RANDI DRIVE
25                  MADISON, CT  06443
    HARTFORD          203 245-9583          STAMFORD

1    BY MR. RUSKIN:

2        Q.    Now, Mr. Kelley, in the bottom of Uniroyal

3    Exhibit 30, says either party may terminate on 180

4    days notice.

5        A.    Uh-huh.

6        Q.    Is that your understanding of what the

7    parties may do under the agreement?

8        A.    My understanding -- clearly, my

9    understanding, I'm going back in memory from prior

10   interpretation of the supply agreement is if you

11   didn't notify by the end of June -- you notify by

12   June, it was 180 days notice.  If you didn't notify

13   until after June, you could not terminate until a

14   year from that December.

15            That's my understanding.

16       Q.    When did Uniroyal first consider coming out

17   with a generic Paclobutrazol?

18       A.    After we were receiving signals within

19   Syngenta/Zeneca that the agreement may be in

20   jeopardy.

21       Q.    When was that?

22       A.    Probably around -- I'd have to review

23   documents, but probably my best guess is around

24   2000.

25       Q.    Before the Novartis/Zeneca merger?

1      A.    Yeah.   I'd say about the time.

2             MR. CORCORAN:  Don't guess.

3             THE WITNESS:  I'm guessing.

4             MR. CORCORAN:  Please don't.  That last

5          answer was a guess.

6    BY MR. RUSKIN:

7      Q.    Well, in 1995, when there was some

8    indication that the -- well, in 1995, when the

9    Development Agreement only had one year left on it,

10   did Uniroyal consider its options if the supply

11   agreement was not renewed?

12            MR. CORCORAN:  Objection to the form of

13         the question.  I don't know what "its

14         options" means, if anything.

15            The witness can answer if she knows.

16            THE WITNESS:  I don't know.  I don't

17         recall.

18   BY MR. RUSKIN:

19     Q.    You don't recall whether in 1995 there was

20   any consideration of sourcing a generic

21   Paclobutrazol?

22     A.    I believe that's highly unlikely in 1995.

23     Q.    Did Uniroyal make the decision that it was

24   making more money under the supply agreement with

25   Zeneca than it could make by sourcing the product