MR. BUFFINGTON                                              129

1        and we think if we extend this, you are going to

2        terminate the agreement yourselves and enter the market

3        with generic paclobutrazol"?

4    A.  Repeat the question.

5    Q.  Well, you have told us that it's your belief that

6        Uniroyal had the intention, if you had renewed the

7        supply agreement, of terminating the supply agreement so

8        that it could market generic paclobutrazol.

9            What evidence do you have for this theory?

10           MR. MEO:  Objection to form.

11   A.  I think our -- we held the concern at Syngenta that

12       Uniroyal would continue on a year-to-year basis with

13       the present contract, and when they were close enough to

14       holding their own registration is that they would then

15       cancel the agreement.

16   Q.  Now answer my question.

17   A.  I did.

18   Q.  No, you didn't.

19           MR. MEO:  Objection.

20           MR. CORCORAN:  I would like the question be

21           read again.

22   Q.  Listen to it and answer it, please.

23           (WHEREUPON, the question was read back,

24           as requested.)

25   Q.  What evidence do you have, sir?



WESTMORELAND    REPORTING, INC.

MR. BUFFINGTON                                                    130

1   A.   I would say conversations with two people in the

2        industry.

3   Q.   Who?

4   A.   As I stated before, Jim Barrett and Ed Adams.

5   Q.   Mr. Barrett told you this?

6   A.   He goes back to -- he discussed that there was some

7        testing taking place.  I don't know where, how, or when.

8        And the same with Ed Adams.

9   Q.   Ed Adams told you there was some testing taking place?

10  A.   Yes.

11  Q.   All right.  And haven't we already seen at least one

12       document that says Uniroyal intended to enter the

13       generic market only if Syngenta terminated the supply

14       agreement?

15  A.   That was --

16            MR. MEO:  Objection to form.

17  Q.   That was from Mr. Dickinson; correct?

18            MR. MEO:  Objection to form.

19  A.   It didn't say only if, I don't believe.

20  Q.   Fine.  They couldn't have done both at the same time

21       unless they were silly; correct?

22            MR. MEO:  Objection to form.

23  A.   They would not have marketed both.

24  Q.   All right.  So it's your testimony that Mr. Barrett told

25       you this, that Uniroyal had a plan to continue along



MR. BUFFINGTON                                                    131

1      with the supply agreement with Syngenta, and then when

2      it got its registration to a particular point for

3      generic paclobutrazol to terminate the relationship with

4      Syngenta and to market its own generic paclobutrazol?

5           Mr. Barrett told you this?

6           MR. MEO:  Objection to form.

7    A.  No.

8    Q.  He didn't tell you that, did he?

9           Okay.  Is there any reason why Uniroyal would be

10      required to provide notice to Syngenta if it was

11      considering marketing generic paclobutrazol?

12   A.  If it was considering marketing, it would be not

13      required by the contract.

14   Q.  All right.  And do you know when, if ever, Uniroyal

15      registered its generic paclobutrazol?

16   A.  They submitted for registration --

17   Q.  When?

18   A.  -- in 2003.

19   Q.  After the termination by Syngenta; correct?

20           MR. MEO:  Objection to form.

21   Q.  Correct?

22   A.  The registration was sent in after the termination, but

23      you certainly would have had to have studies ongoing

24      prior to the termination to submit to EPA, as well as

25      formulation development, and other projects would have



WESTMORELAND          REPORTING, INC.

MR. BUFFINGTON                                              132

1      been ongoing months, and if not years, in advance of the

2      cancellation.

3  Q.  And wouldn't any prudent company which felt itself in

4      jeopardy of losing Bonzi by virtue of termination by

5      Syngenta do exactly that as a self-defensive or

6      insurance policy?

7          MR. MEO:  Objection to form.

8  A.  I don't know what other companies would do.

9  Q.  Wouldn't that be a logical thing to do?

10 A.  I don't know.

11 Q.  You don't know that that would be logical?

12 A.  The -- it would be a potential route to take.

13 Q.  Of course.

14     Let's take a look at Paragraph 23, Uniroyal brings

15     this lawsuit to conceal an attempt to interfere directly

16     with the business relationships of Syngenta, to impede

17     Syngenta's ability to sell Bonzi, and to gain a

18     competitive advantage over Syngenta in the sale of

19     paclobutrazol products by limiting the uses for which

20     Syngenta may market and sell Bonzi.

21     That's what it says; correct?

22         MR. MEO:  Well, Objection.  Are you -- are you

23         purporting to quote that verbatim?

24         MR. CORCORAN:  I believe I have quoted it --

25         MR. MEO:  I think you left something out.

MR. BUFFINGTON                                            133

1           MR. CORCORAN:  There is a lacuna.

2  Q.  "Uniroyal brings this lawsuit" -- and then I left out a

3       few words -- "to conceal an attempt" -- that's the claim

4       -- "to interfere directly with the business

5       relationships of Syngenta, to impede Syngenta's ability

6       to sell Bonzi, and to gain a competitive advantage over

7       Syngenta in the sale of paclobutrazol products by

8       limiting the uses for which Syngenta may market and sell

9       Bonzi."

10          My question is, How does this lawsuit impede

11      Syngenta's ability to sell Bonzi?

12 A.   Their lawsuit seeks to severely restrict our ability to

13      sell the product with those rights and for those uses

14      that we hold rights to in the marketplace.

15 Q.   But you have not yet been severely so restricted because

16      we haven't had a trial in this case; right?

17 A.   So --

18 Q.   It's merely a request that we have made of the court?

19 A.   You are certainly seeking to request us --

20 Q.   Right.

21 A.   -- to stop sale.

22 Q.   Right.  But that -- that request which we have made of

23      the court does not by itself impede Syngenta's ability

24      to sell Bonzi, because the court hasn't acted on it yet;

25      right?

MR. BUFFINGTON                                        134

1   A.   The court has not impeded our efforts in the

2        marketplace.   There has been instances in the

3        marketplace where letters have gone out and propaganda

4        sent to customers in regards to the lack of our labeling

5        being restrictive -- more restrictive.

6   Q.   Let's deal with that in a moment, but go back to -- to

7        my initial question.

8             This lawsuit does not impede Syngenta's ability to

9        sell Bonzi in any way, shape, or form at this point,

10       does it?

11            MR. MEO:   Objection to form.

12  Q.   You haven't lost a single sale because of this lawsuit,

13       have you?

14  A.   The --

15  Q.   Answer my question.

16  A.   If the lawsuit completes is --

17  Q.   Sure.

18  A.   -- it potentially could.

19  Q.   We expect that it will.   But up to this point it hasn't,

20       has it?

21  A.   So the lawsuit itself has interfered with our business

22       ability to operate in the marketplace and has burned up

23       valuable time and effort that could have been focused on

24       the sale of the product in the marketplace.

25  Q.   Can you point to one sale of Bonzi which you have lost

MR. BUFFINGTON                                                    135

1        because of the pendency of this lawsuit?

2    A.  The -- I have not asked our sales reps specifically to

3        come up with a list of sales that were blocked by

4        Uniroyal in the marketplace --

5    Q.  Because of this lawsuit?

6            MR. MEO:  Objection.

7    A.  -- because of propaganda issued.

8    Q.  Answer my -- we'll deal with, well, propaganda or

9        advertising in a minute.

10           Right now we are dealing with what you say in

11       Paragraph 23, and I don't want to spend the whole day on

12       this.  What you are saying is that the lawsuit impedes

13       your ability to sell Bonzi.

14           My question is, How has this lawsuit -- forget the

15       propaganda.  Forget the request on which the court has

16       not yet acted but will act.

17           How has the pendency of this lawsuit impeded

18       Syngenta's ability to sell any Bonzi?

19   A.  First off, the statement talks about -- it brings the

20       lawsuit, not the lawsuit itself.  It's talking about

21       Uniroyal submitting the lawsuit is -- is interfering

22       indirectly.

23   Q.  How has that happened?

24   A.  That is what I have stated before.  It is taking up

25       resources.



MR. BUFFINGTON                                                    136

1   Q.   Okay.

2   A.   It is taking up time.

3   Q.   Distraction?

4   A.   Distraction.

5   Q.   All right.  Fine.

6            Anything besides the distraction factor?

7   A.   So it has impacted some business relationships with

8        customers.

9   Q.   Are your sales reps spending time on this lawsuit?

10  A.   No, but they have had to deal with the difference in

11       labeling issues with the channel and with the end-use

12       customers.

13  Q.   All right.  The difference in labeling issue was

14       something which Syngenta elected to do; correct?

15  A.   Yes.

16  Q.   Okay.  Paragraph 25, "Since commencing this lawsuit and

17       continuing until the present, Uniroyal has engaged in a

18       scheme and course of conduct aimed at interfering with

19       Syngenta's business relationships with existing and

20       prospective customers and end-users of Bonzi by, among

21       other things, prosecuting this action insofar as it

22       seeks equitable relief barring and/or limiting

23       Syngenta's ability to market and sell Bonzi without any

24       good faith basis for doing so."

25            Do you see that?



MR. BUFFINGTON                                                    137

1   A.   Yes.

2   Q.   What other things?

3   A.   The -- we talked about the nuisance value of this case,

4        of burning up --

5   Q.   Now --

6   A.   -- resources.   The --

7   Q.   It says --

8             MR. MEO:   Mr. Corcoran, please let the witness

9        answer the question.

10  Q.   That is included.   Okay?   Do you see where it says, "by,

11       among other things, prosecuting this action"?   That's

12       included.

13            In other words, what this paragraph says is,

14       Uniroyal has engaged in a scheme to interfere with

15       Syngenta's business relationships by prosecuting this

16       action, among other things.

17            I know that prosecuting the action is one of the

18       claims in this paragraph, which Syngenta alleges is part

19       of Uniroyal's scheme.

20            What I'm interested in getting at from you now is,

21       What are the other things which are part of Uniroyal's

22       scheme to interfere with Syngenta's business

23       relationship --

24  A.   Beyond --

25  Q.   -- other than the lawsuit?



MR. BUFFINGTON                                                    138

1   A.   Other than the lawsuit.  Okay.  The -- we have seen

2        Uniroyal correspondence to channel, to the end user,

3        stating about our ability, first off, to not be able to

4        deliver product in January of 2003, which, by the way,

5        we did.

6            The second thing was in regards to the labeling.

7        Before they had ever even seen a label, they told

8        customers, both channel and end-user, that our label was

9        going to be vastly inferior to the Bonzi label.

10           They spoke to university people, who questioned

11       then us based on the lack of a label, whether -- and,

12       again, before they had seen the Syngenta label, they had

13       already been told by Uniroyal employees that the label

14       was vastly inferior, and nobody would be able to use it.

15  Q.   Are these oral communications or written communications?

16       You said correspondence to distributors.

17  A.   It was the COI.  It was oral.  There is at least one to

18       two documents that I have seen regarding the labeling

19       issue and the -- and then from a Uniroyal employee.

20           And then the third thing is, is based on hearsay

21       from a Uniroyal employee, there was an article written

22       by a channel representative that was sent across the

23       state of California with very poor information that

24       could have caused customers to react negatively to the

25       lawsuit.

MR. BUFFINGTON                                          139

1  Q.   Okay.

2              MR. CORCORAN:  We'll go off the record at this

3              point so you can change tapes.

4              VIDEOGRAPHER:  Off the record at 1:50.

5              (WHEREUPON, a short break was taken.)

6              VIDEOGRAPHER:  This begins Tape 3 of the

7              deposition of Charles Buffington.  On the

8              record at 1:59.

9  Q.   Mr. Buffington, we are going to go very quickly through

10      your answer at this point just to get some sources.

11           Are you claiming that any Uniroyal written

12      correspondence to distributors or to end users

13      constituted a violation of the agreement between

14      Uniroyal and Syngenta or not?

15 A.   The contract had already not been renewed.  It was in an

16      attempt to limit the sales of our product in 2003, the

17      correspondence.

18 Q.   Who were the university people you spoke to who

19      questioned you based on the lack of a label, having been

20      informed by Uniroyal employees, according to you, that

21      the label would be deficient?

22 A.   Jim Barrett specifically called me and asked me for a

23      copy of the label, the Syngenta label, which was then

24      forwarded on to Uniroyal.

25 Q.   And you said you have seen one to two documents



MR. BUFFINGTON                                              140

1        regarding the label issue.  What documents?

2  A.   There was correspondence from a sales rep -- Uniroyal

3        sales rep to distributors or end users.  I would have to

4        go back and review the actual letter.  You probably

5        found it in discovery in my files.

6             The other correspondence that I spoke to is a

7        newsletter across the state of California, I believe,

8        that was faxed in to me by one our reps, that was

9        authored by a western farm service rep with input from

10       Uniroyal.

11 Q.   It was not written by Uniroyal?

12 A.   It was --

13 Q.   It was not published under Uniroyal's name?

14 A.   But the source of information was Uniroyal.

15 Q.   But Uniroyal didn't publish it.  So how can Uniroyal be

16       responsible for what someone else wrote?

17             MR. MEO:  Objection to form.

18 A.   Bad source --

19 Q.   You don't know what Uniroyal said --

20 A.   -- it was bad information.

21 Q.   You don't know what Uniroyal said to that person, of

22       your own knowledge, anyway, do you?

23 A.   I know what the individual printed.

24 Q.   I'm sorry?

25 A.   I do know what the individual printed.

MR. BUFFINGTON                                           141

1   Q.   Right.  But that individual was not Uniroyal, was it?

2        Are you attempting to hold Uniroyal responsible for

3        something which somebody else wrote, sir?

4   A.   I believe that they should be held accountable for poor

5        information given to a writer.

6   Q.   Anything else?

7   A.   That I have direct knowledge of today, without going

8        more through my files and reviewing it, that's all I

9        have today --

10  Q.   Okay.

11  A.   -- for a specific.

12  Q.   Paragraph 27, "Uniroyal's interference with Syngenta's

13       business relationships, both existing and prospective,

14       has caused, and will continue to cause, harm to

15       Syngenta."

16       Okay.  Let's take out the will continue to cause,

17       focus on the past.  Uniroyal's interference with

18       Syngenta's business relationships, according to

19       Syngenta, has caused harm to Syngenta.

20       Has Syngenta lost any sales by virtue of this

21       alleged conduct, and, if so, to whom?

22  A.   Yes.

23  Q.   To whom?

24  A.   To the channel.

25  Q.   Which channel?


WESTMORELAND    W    REPORTING, INC.

MR. BUFFINGTON                                                     142

1   A.   To all our distributor partners.  At the end of the

2        contract agreement, Uniroyal chose to bring in -- I

3        believe it was approximately 6,000 gallons of product

4        that would not be sold in 2002.  And what they did is

5        they actually brought the product in and jammed it into

6        the channel, thereby reducing our sales by 6,000 gallons

7        in 2003.  At $350 a gallon that's close to $2 million

8        that they cost us by their willful --

9   Q.   By ordering -- by ordering supplies from you before the

10       expiration of the supply agreement?

11  A.   Correct, and --

12  Q.   So you are saying that by taking --

13            MR. MEO:  Mr. Corcoran, I don't believe the

14            witness has finished his answer.  Please let

15            him finish.

16            MR. CORCORAN:  I'm just having trouble

17            absorbing what he is saying.

18  A.   They took it in knowing that they were going to supply

19       it to end users, and those end users were going to use

20       it in 2003.

21            They even discounted the price to make sure it was

22       sold prior to our entry into the marketplace.

23  Q.   Who sold that product to Uniroyal?

24  A.   We did.

25  Q.   So what is your complaint?



MR. BUFFINGTON                                                    143

1   A.   So they knowingly took it in to damage us.

2   Q.   They knowingly purchased -- anything more you want to

3        say?

4   A.   No.

5   Q.   Okay.  So what you are saying is they exercised their

6        rights under the supply agreement to buy Bonzi, and you

7        are claiming that that interfered with Syngenta's

8        business relationships?

9             Was buying Bonzi under the supply agreement a

10       violation of the supply agreement?

11            MR. MEO:  Objection to form.

12  A.   Buying the product was not a violation of the agreement.

13       Selling the product into the marketplace was certainly

14       done with the intent to harm Syngenta's sales in 2003.

15  Q.   Selling the product in the market pursuant to the then

16       existing marketing and sales agreement was a violation

17       of the agreement?

18            MR. MEO:  Objection to form.

19  A.   I did not say that them selling was a violation.  I said

20       it certainly -- by them selling it, it was certainly

21       interference with our business relationships with our

22       channel and our end users.

23  Q.   If they had -- if they had not bought it and sold it,

24       then, theoretically, you could have sold it yourself;

25       correct?



MR. BUFFINGTON                                                    144

1   A.   Correct.

2   Q.   But there was nothing improper or immoral or wrong about

3        their buying Bonzi during the period of the supply

4        agreement, was there?

5   A.   They --

6   Q.   Was there?

7   A.   They did have the opportunity --

8   Q.   Okay.

9   A.   -- to purchase the product.

10  Q.   And there was nothing --

11           MR. MEO:   Excuse me.   I do not think the

12           witness has finished his answer.

13  A.   But they -- it did not go to their ethical and moral of

14       dumping it in the marketplace as they were exiting the

15       market.

16  Q.   So you are saying they had a right to buy it under the

17       supply agreement, but they didn't have a right to sell

18       it; is that your argument?

19           So they just should have bought it and kept it?

20  A.   I'm not --

21           MR. MEO:   Objection to form.

22  A.   I'm not speaking to their rights.   I'm saying they

23       certainly did it to interfere with our business

24       relationships.

25  Q.   There was nothing wrongful about the purchase or the



MR. BUFFINGTON                                                    145

1        sale of Bonzi during the period of the agreement, was

2        there?

3              MR. MEO:   Objection to form.

4    A.   Repeat the question.

5    Q.   There was nothing wrongful or improper about the

6        purchase of Bonzi during the period of the supply

7        agreement or its resale by Uniroyal?

8              That was exactly what the agreement contemplated,

9        wasn't it --

10             MR. MEO:   Objection to --

11   Q.   -- that Uniroyal would buy it and they would sell it --

12       market it and sell it?

13             MR. MEO:   Objection to form.

14             You can answer.

15             (WHEREUPON, Ms. Laureen Treu left the

16             deposition room.)

17   A.   While they had the right to buy it, and they had the

18       right to sell it in 2002, is they certainly did sell

19       with the intent to disrupt our business relationships

20       and disrupt our customers in the marketplace due to

21       their strategies.

22   Q.   How do you know --

23   A.   It certainly was a disruptive strategy.

24   Q.   How do you know what their intent was?

25             Did they tell you that was what their -- how do you



MR. BUFFINGTON                                          146

1      know what their intent was, sir?  Did they tell you that

2      was their intent, that they weren't trying to make a

3      profit; they were just trying to hurt you?

4  A.  They did not call me up and ask me what -- tell me what

5      their intent was.

6  Q.  All right.  And you didn't ask them, when they put in an

7      order for 6,000 gallons, "What do you want to do with

8      this," did you?

9  A.  No.

10 Q.  You knew they wanted to sell it, of course?  They

11     weren't going to sit on it, were they?

12 A.  I was not -- since I was not privy to their inventory

13     situation, they certainly could have been backordered or

14     had customer orders that needed filling before year end,

15     which then would have certainly made sense.

16         But to go out in December, like they did, and cut

17     the price and load customers with three to six months'

18     worth of product does seem reckless behavior.

19         THE REPORTER:  This will be Number 9.

20         (WHEREUPON, Plaintiff's Exhibit Number 9

21         was marked for identification.)

22     MR. MEO:  Do you have --

23     MR. CORCORAN:  I do.  Sorry.  I forgot.

24     MR. MEO:  No problem.

25         Mr. Corcoran, is there any particular



WESTMORELAND    REPORTING, INC.

MR. BUFFINGTON                                                    166

STATE OF NORTH CAROLINA                   C E R T I F I C A T E

COUNTY OF ALLEGHANY

      I, Mildred P. Jones, CVR, Certified Verbatim

Reporter and Notary Public, do hereby certify that CHARLES

BUFFINGTON was duly sworn by me prior to the taking of the

Deposition; that said Deposition was taken and transcribed

under my supervision; and that the foregoing 165 pages are a

true and accurate transcription of the testimony of the said

deponent.

      I further certify that review and signing of the

transcript by the witness was reserved.

      I further certify that the persons were present as

stated.

      I further certify that I am not related to, of

counsel for or in the employment of any of the parties to

this action.

      IN WITNESS WHEREOF, I have hereunto subscribed my

name, this the 6th day of October 2004.

               Mildred P. Jones, CVR
               Certified Verbatim Reporter and
               Notary Public

My Commission Expires

August 14, 2008





WESTMORELAND REPORTING, INC.

Exhibit G



## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNIROYAL CHEMICAL COMPANY, INC., :
d/b/a CROMPTON MANUFACTURING :
COMPANY :
 : Civil Action No.
  Plaintiff, : 3:02cv02253 (AHN)
 :
v. :
 :
SYNGENTA CROP PROTECTION, INC. :
 :
  Defendant. : August 2, 2004

## PLAINTIFF'S SECOND SET OF INTERROGATORIES AND THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

The plaintiff hereby requests, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, that the defendant answer within thirty (30) days after service hereof, in writing and under oath the following Interrogatories, and to produce copies of the following documents, or afford counsel for the defendants the opportunity to inspect, copy, photograph or otherwise reproduce said documents. The production of such documents shall take place at Carmody & Torrance, 195 Church Street, New Haven, Connecticut. This request is continuing in nature and the defendants are requested to supplement their responses any time up to and including the date of trial.

## DEFINITIONS AND INSTRUCTIONS:

1. As used herein, the terms "You", "Your", "Defendant", and/or "Syngenta Crop Protection Inc.", shall include any of the Defendant's agents, servants, attorneys, representatives, and all other persons acting, understood to act, or purporting to act in

Defendants' direction or control, including but not limited to its predecessor in interest, ICI Americas Inc.

2.    The term "Counterclaim" or "Counterclaims" shall refer to the Counterclaims contained in Syngenta's Amended Answer, Affirmative Defenses and Counterclaims dated July 16, 2004.

3.    The term "Affirmative Defense" shall refer to the Affirmative Defenses contained in Syngenta's Amended Answer, Affirmative Defenses and Counterclaims dated July 16, 2004.

4.    The terms "Supply Agreement" and "Development Agreement" shall refer to those agreements described in Paragraph 9 of the Counterclaims.

5.    The term "Document" or "Documents" includes, without limitation, the original and all copies and translations of any information in any written, recorded or graphic form however produced or reproduced including, but not limited to, correspondence, letters, telegrams, telex, other written communications, compilations, summaries, contracts, agreements, notes, memoranda, circulars, releases, articles, prospectuses, analyses, projections, work papers, diaries, charts, calendars, computer software, computer data, books, accounts, photographs, advertising materials, reports, records, financial statements, transcripts, deposition transcripts and exhibits, intra-office communications, inter-office communications, charts, checks, check stubs, delivery tickets, bills of lading, invoices, price lists, quotations, claims documents, bulletins, brochures, manuals, summaries, graphs, computer files, word-processor files, electronic, magnetic, tape or photographic recordings or reproductions of any nature whatsoever, or

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law                        Post Office Box 1950
                                              New Haven, CT 06509-1950
                                              Telephone: 203 777-5501

any other written, recorded, transcribed, punched, taped, filmed or graphed matter, however produced or reproduced, including copies of the foregoing which are different in any way from the original (whether by inter-lineation, receipt stamp, notation, indication of copies sent or received, or otherwise), regardless of whether designated "confidential", "privileged", "private", or otherwise, now or at any time in your possession, custody or control or that of your attorneys or any other agent or representative, and refers both to originals and copies and to documents now in your possession or subject to your control, or documents which you may have delivered to a third party.

6.      The term "relating to" shall mean relating to, discussing, concerning or pertaining to, in any way, directly or indirectly, the event, act, subject or occurrence specified in the request.

7.      To the extent not otherwise specifically mentioned in these Interrogatories and Production Requests ("Discovery Requests"), the term "statement" shall be defined as set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure.

8.      The term "Communication" means any written, oral, telephonic or other inquiry, examination, notice, representation, discussion, conversation, correspondence, telegram, negotiation, review, claim, agreement, understanding, meeting or interview.

9.      "Identify", when used in reference to a person, means to state his full name and present or last known address, the profession or business in which he is engaged, and, if applicable, each of his or her employers and title with respect to the period covered by the Interrogatories and the dates of each such employment or title.

CARMODY & TORRANCE LLP        195 Church Street
Attorneys at Law              Post Office Box 1950
                              New Haven, CT 06509-1950
                              Telephone: 203 777-5501

10.    "Identify", when used in reference to a document, means to state the title of each document with sufficient particularity to enable the same to be identified; the date of each document bears or, if undated, the date it was written; the date each document was executed, if different from the date it bears; the name, address and telephone number of each person to whom the document is addressed; the name, address and telephone number of each person who signed the document; the name, address and telephone number of each recipient of the document; the name, address and telephone number of each person to whom a copy of the document was furnished; and if the document or copy thereto is no longer in your possession or control, the name, address and telephone number of the person who has possession or control of it.

11.    Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine.

12.    If you at any time had possession or control of a document requested to be identified or produced, and if that document has been lost, destroyed, purged or is not presently in your possession or control, you shall described the document, the date of its loss, destruction, purge or separation from your possession or control and, if known, you shall identify the person last known by you to have possession or control of the document.

13.    If any information contained in the answers to these Discovery Requests is not within your personal knowledge, so state.  The answers to these Discovery Requests should identify each person, document, and communication upon which you rely for the information contained in any answer not based solely on your own personal knowledge.

CARMODY & TORRANCE LLP        195 Church Street
Attorneys at Law                          Post Office Box 1950
                                                    New Haven, CT 06509-1950
                                                    Telephone: 203 ```-5501

14.     If you claim a privilege for any communications or document, or any portion thereof, about which information is requested by these Discovery Requests, specify the privilege claimed, and provide a privilege log that is in full compliance with Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Rule 9(b).

15.     Where documents are claimed to be outside the possession and control of the defendants, please describe all efforts by the defendants to obtain or locate the requested documents; identify the name and address of the person or entity who the defendants believe currently has possession, custody or control of the requested documents; and provide all information contained in the document which the defendants have knowledge in lieu of producing the requested documents.

## Interrogatories

1.     State each term of the Development Agreement and/or Supply Agreement between Uniroyal and Syngenta that Syngenta claims Uniroyal breached, as alleged in the Second Affirmative Defense.

2.     State all facts that support your allegation that Uniroyal has breached "confidentiality agreements between the parties, including but not limited to that certain Confidential Information (Out) agreement between ICI and Uniroyal dated May 23, 1990", as alleged in the Third Affirmative Defense.

3.     State all facts that support your allegation that "Uniroyal's interpretation of its rights under the development agreement would lead to a result that is anti-competitive and accordingly against public policy", as alleged in the Seventh Affirmative Defense.

{N0720381}

5

4.      State all facts that support your allegation that Uniroyal's claim "is barred, in whole or in part, by its unclean hands and failure to act in good faith."

5.      State all those uses of Bonzi that are listed on the current version of Syngenta's label that were not on the label at the time Uniroyal and ICI entered the Development and Supply Agreement.

6.      Identify each person whom to your knowledge has knowledge or information concerning the allegations in Paragraphs 15-18, 21-23 and 24-27 of the Counterclaims.

7.      State all facts that support your allegation in Paragraph 23 of the Counterclaim, that Uniroyal "brings this lawsuit .. to conceal an attempt to interfere directly with the business relationships of Syngenta, to impede Syngenta's ability to sell Bonzi, and to gain a competitive advantage over Syngenta in the sale of paclobutrazol products by limiting the uses for which Syngenta may market and sell Bonzi."

8.      State all facts that support your allegation in Paragraph 25 of the Counterclaim that "Uniroyal has engaged in a scheme and course of conduct aimed at interfering with Syngenta's business relationships with existing an prospective customers and end-users of Bonzi by, among other things, prosecuting this action insofar as it seeks equitable relief barring and/or limiting Syngenta's ability to market and sell Bonzi without any good faith basis for doing so."

9.      Does Syngenta allege that any agent or employee of Uniroyal has made any improper contact with any "existing or prospective" customers of Syngenta with respect to the sale or marketing of paclobutrazol?

CARMODY & TORRANCE LLP        195 Church Street
Attorneys at Law                            Post Office Box 1950
                                                    New Haven. CT 06509-1950
                                                    Telephone: 203 ---5501

10.    If the answer to the preceding interrogatory is affirmative, for each such contact state the following:

      (a)    the Uniroyal agent or employee making such improper contact;

      (b)    the date upon which said alleged contact was made;

      (c)    the existing or prospective Syngenta customer contacted; and

      (d)    the nature and scope of the alleged contact.

11.    State all facts that support your allegation in Paragraph 26 of the Counterclaim that "This scheme and course of conduct has been conducted in bad faith and with malice for purposes of causing harm to Syngenta and diverting to Uniroyal the customers and end-users of Bonzi and the prospective customers and end-users of Bonzi."

12.    State all facts that support your allegation that Uniroyal's alleged "interference" with Syngenta's business relationships has caused harm to Syngenta.

13.    List separately each item of actual damage that you claim to have sustained as a result of the incidents alleged in the Counterclaims, including reference to any documents that support each item of alleged damage.

14.    State all facts that support your allegation in Paragraph 30 of the Counterclaim that Uniroyal's conduct was unfair and/or deceptive in violation of the Connecticut Unfair Trade Practices Act (CUTPA).

15.    With respect to the claim that the defendant engaged in unfair trade practices, please answer the following:

      (a)    State the specific act(s) by the defendant that you contend are unfair trade practices;

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

(b)    The date(s) of their occurrence;

(c)    The representative of the defendant who engaged in those acts that you contend are unfair trade practices;

### Document Production Requests

1.    All documents concerning your response to Interrogatory No. 2

2.    All documents concerning your response to Interrogatory No. 4.

3.    All documents concerning your response to Interrogatory No. 7.

4.    All documents concerning your response to Interrogatory No. 8.

5.    All documents concerning your response to Interrogatory No. 10.

6.    All documents concerning your response to Interrogatory No. 11.

7.    All documents concerning your response to Interrogatory No. 12.

8.    All documents concerning your response to Interrogatory No. 13.

9.    All documents supporting any allegation by Syngenta that Uniroyal breached either the Supply Agreement or the Development Agreement.

10.    All documents concerning your allegation that Uniroyal's interpretation of its rights under the Development Agreement would "lead to a result that is anti-competitive and accordingly against public policy."

C A R M O D Y  &  T O R R A N C E  LLP     195 Church Street
Attorneys at Law                    Post Office Box 1950
                                    New Haven, CT 06509-1950
                                    Telephone: 203 777-5501

PLAINTIFF, UNIROYAL CHEMICAL
COMPANY, INC. d/b/a CROMPTON
MANUFACTURING COMPANY

By: _____
Charles F. Corcoran, III (ct 04299)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, CT 06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
E-mail: ccorcoran@carmodylaw.com
Its Attorneys

## **CERTIFICATION**

This is to certify that the foregoing has been mailed, postage prepaid, on the above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT 06901-3522
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Shipman & Goodwin LLP
One American Row
Hartford, CT 06103
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com

_____
Charles F. Corcoran, III

CARMODY & TORRANCE LLP        195 Church Street
Attorneys at Law              Post Office Box 1950
                              New Haven, CT 06509-1950
                              Telephone: 203 777-5501



RECEIVED
OCT - 4 2004

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNIROYAL CHEMICAL COMPANY, INC.,     :
d/b/a CROMPTON MANUFACTURING     :
COMPANY     :
    :     Civil Action No.
            Plaintiff,     :     3:02cv02253 (AHN)
    :
v.     :
    :
SYNGENTA CROP PROTECTION, INC.     :
    :
            Defendant.     :     October 1, 2004

## PLAINTIFF'S THIRD SET OF INTERROGATORIES AND FOURTH REQUEST
## FOR PRODUCTION OF DOCUMENTS

The plaintiff hereby requests, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, that the defendant answer within thirty (30) days after service hereof, in writing and under oath the following Interrogatories, and to produce copies of the following documents, or afford counsel for the defendants the opportunity to inspect, copy, photograph or otherwise reproduce said documents. The production of such documents shall take place at Carmody & Torrance, 195 Church Street, New Haven, Connecticut. This request is continuing in nature and the defendants are requested to supplement their responses any time up to and including the date of trial.

## DEFINITIONS AND INSTRUCTIONS:

1.     As used herein, the terms "You", "Your", "Defendant", and/or "Syngenta", shall include any of the Defendant's agents, servants, attorneys, representatives, and all other persons acting, understood to act, or purporting to act in Defendants' direction or control, including but not limited to its predecessor in interest, ICI Americas Inc.

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law            Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203-777-5501

2.       The terms "Supply Agreement" and "Development Agreement" shall refer to those agreements described in Paragraph 9 of Syngenta's Counterclaims.

3.       The term "Relevant Time Period" refers to that period time commencing on the date after Syngenta terminated the Supply Agreement and Development Agreement with Uniroyal, and continuing through to the present.

4.       The term "Document" or "Documents" includes, without limitation, the original and all copies and translations of any information in any written, recorded or graphic form however produced or reproduced including, but not limited to, correspondence, letters, telegrams, telex, other written communications, compilations, summaries, contracts, agreements, notes, memoranda, circulars, releases, articles, prospectuses, analyses, projections, work papers, diaries, charts, calendars, computer software, computer data, books, accounts, photographs, advertising materials, reports, records, financial statements, transcripts, deposition transcripts and exhibits, intra-office communications, inter-office communications, charts, checks, check stubs, delivery tickets, bills of lading, invoices, price lists, quotations, claims documents, bulletins, brochures, manuals, summaries, graphs, computer files, word-processor files, electronic, magnetic, tape or  photographic recordings or reproductions of any nature whatsoever, or any other written, recorded, transcribed, punched, taped, filmed or graphed matter, however produced or reproduced, including copies of the foregoing which are different in any way from the original (whether by inter-lineation, receipt stamp, notation, indication of copies sent or received, or otherwise), regardless of whether designated "confidential", "privileged", "private", or otherwise, now or at any time in your possession, custody or

{N0722182;2}                                        2

CARMODY & TORRANCE llp        195 Church Street
Attorneys at Law                      Post Office Box 1950
                                            New Haven, CT 06509-1950
                                            Telephone: 203 777-5501

control or that of your attorneys or any other agent or representative, and refers both to originals and copies and to documents now in your possession or subject to your control, or documents which you may have delivered to a third party.

5.    To the extent not otherwise specifically mentioned in these Interrogatories and Production Requests ("Discovery Requests"), the term "statement" shall be defined as set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure.

6.    The term "Communication" means any written, oral, telephonic or other inquiry, examination, notice, representation, discussion, conversation, correspondence, telegram, negotiation, review, claim, agreement, understanding, meeting or interview.

7.    "Identify", when used in reference to a person, means to state his full name and present or last known address, the profession or business in which he is engaged, and, if applicable, each of his or her employers and title with respect to the period covered by the Interrogatories and the dates of each such employment or title.

8.    "Identify", when used in reference to a document, means to state the title of each document with sufficient particularity to enable the same to be identified; the date of each document bears or, if undated, the date it was written; the date each document was executed, if different from the date it bears; the name, address and telephone number of each person to whom the document is addressed; the name, address and telephone number of each person who signed the document; the name, address and telephone number of each recipient of the document; the name, address and telephone number of each person to whom a copy of the document was furnished; and if the document or copy

{N0722182;2}

CARMODY & TORRANCE ...
Attorneys at Law

195 Church Street
Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 777-5501

3

thereto is no longer in your possession or control, the name, address and telephone number of the person who has possession or control of it.

9. If any information contained in the answers to these Discovery Requests is not within your personal knowledge, so state. The answers to these Discovery Requests should identify each person, document, and communication upon which you rely for the information contained in any answer not based solely on your own personal knowledge.

10. If you claim a privilege for any communications or document, or any portion thereof, about which information is requested by these Discovery Requests, specify the privilege claimed, and provide a privilege log that is in full compliance with Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Rule 9(b).

11. Where documents are claimed to be outside the possession and control of the defendants, please describe all efforts by the defendants to obtain or locate the requested documents; identify the name and address of the person or entity who the defendants believe currently has possession, custody or control of the requested documents; and provide all information contained in the document which the defendants have knowledge in lieu of producing the requested documents.

### Interrogatories

1. Identify Defendant's officers, employees and agents who are the most knowledgeable concerning the Defendant's development, advertising, promotion and sale of Bonzi during the Relevant Time Period.

## **Production Requests**

1.     With respect to Bonzi, all documents and things referring or relating to:

    (a)    the total quantity by volume sold for each year during the Relevant

        Time Period;

    (b)    the total dollar value of sales of Bonzi for each year or any portion

        thereof during the Relevant Time Period;

    (c)    the gross profits and losses, including, but not limited to, each

        document and thing referring or relating to the element deducted

        from gross sales to obtain the value for gross and net profits from

        sales of Bonzi during the Relevant Time Period.

2.     All documents and things which evidence, refer or relate to the sale,

marketing, and distribution activities by or on behalf of the Defendant of Bonzi during

the Relevant Time Period, including but not limited to:

    (a)    all monthly sales and gross profit reports for Bonzi;

    (b)    all records reflecting the inventory of Bonzi sold in the United

        States that has been shipped into and out of the Defendant's

        warehouse(s);

    (c)    all weekly sales reports retained by the Defendant in connection

        with sales of Bonzi;

    (d)    all invoices regarding orders for Bonzi sold to the Defendant's

        customers and/or provided to their customers;

{N0722182;2}                5

CARMODY & TORRANCE ᴸᴸᴾ    195 Church Street
Attorneys at Law           Post Office Box 1950
                New Haven, CT 06509-1950
                Telephone: 203 777-5501

(e)     a listing of the Defendant's customers of Bonzi;

(f)     all invoices and/or reports reflecting the current sales of Bonzi to the Defendant's customers;

(g)     all commissions received by the sales representatives of Defendant regarding the sales of Bonzi;

(h)     all agreements or the identification of agreements between Defendant and its sales representatives;

3.     All documents and things relating to or concerning sales forecasts for Bonzi beginning in 1995 and continuing through to the present.

4.     All documents and things that refer or relate to or comment upon consumer dissatisfaction and/or complaints received by Defendant in connection with Bonzi beginning in 1995 and continuing through to the present.

5.     All documents and things that refer or relate to the cost of manufacture and production of Bonzi during the Relevant Time Period, including but not limited to detailed cost accounting reports, analyses, and allocation of cost across product line.

6.     All documents and things relating to or concerning any inter-company or inter-divisional charges included in computing gross profit or any other cost of producing or selling Bonzi during the Relevant Time Period.

7.     All tax returns, both state and federal, including all supporting work papers, filed by the Defendant during the Relevant Time Period.

{N0722182;2}

CARMODY & TORRANCE ⅲ      195 Church Street
Attorneys at Law                  Post Office Box 1950
                                  New Haven, CT 06509-1950
                                  Telephone 203 ⁻⁻⁻-5501

6

8.    All financial statements and work papers, including but not limited to income statements, balance sheets, general ledgers and journals, prepared by or on behalf of the Defendant during the Relevant Time Period.

9.    All accounts receivable reports and supporting details regarding Bonzi, by customer, including all documents supporting any entry therein during the Relevant Time Period.

10.    All cash receipt records, bank statements, cancelled checks or deposits relating to sales of Bonzi during the Relevant Time Period.

11.    All documents and things that refer or relate to Defendant's advertising expenditures for Bonzi and a breakdown by media of such expenditures during the Relevant Time Period.

12    All documents and things that refer or relate to or Defendant's marketing strategies or promotional programs for Bonzi; including but not limited to, price lists, catalogs, promotional literature, advertisements and selling sheets dating from 1995 through to the present.

13.    All product literature, catalogs, photographs, videotapes, price lists, advertisements, promotional material, product label, papers published or presented and exhibits or displays prepared by or on behalf of Syngenta referring or relating to Bonzi during the relevant time period.

{N0722182;2}

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203 ---5501

7

Respectfully submitted,

PLAINTIFF, UNIROYAL CHEMICAL
COMPANY, INC. d/b/a CROMPTON
MANUFACTURING COMPANY

By: _____

Anne D. Peterson (ct 20181)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, CT 06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
E-mail:apeterson@carmodylaw.com
*Its Attorneys*

## CERTIFICATION

This is to certify that the foregoing has been mailed, postage prepaid, on the
above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
R. Michael Meo, Jr.
(Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: rmeo@goodwin.com

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Amy E. Souchuns (Fed.Bar No ct21223)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com
E-mail: asouchuns@goodwin.com

_____
Anne D. Peterson

{N0722182;2}

CARMODY & TORRANCE LLP    195 Church Street
Attorneys at Law    Post Office Box 1950
New Haven, CT 06509-1950
Telephone: 203-777-5501

8