**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 3:02cv02253 (AHN) |
| v. | : | |
| | : | |
| SYNGENTA CROP PROTECTION, INC. | : | |
| | : | |
| Defendant. | : | August 19, 2004 |

**MOTION TO STRIKE AND DISMISS COUNTERCLAIMS**

Pursuant to Federal Rules of Civil Procedure 12(f) and 12(b)(6), the plaintiff,

Uniroyal Chemical Company, Inc., d/b/a Crompton Manufacturing Company, hereby

moves to strike, or in the alternative, to dismiss, the defendant's counterclaims dated July

16, 2004. The defendant's filing of its counterclaims without permission from the court

was improper and the counterclaims should therefore be stricken. In addition, the

defendant's purported counterclaims fail to state claims upon which relief may be

granted. A memorandum of law in support of this motion is submitted herewith.

Respectfully submitted,
THE PLAINTIFF, UNIROYAL CHEMICAL
COMPANY, INC. d/b/a CROMPTON
MANUFACTURING COMPANY

By:___ /s/_____
        Charles F. Corcoran, III (ct 04299)
        David S. Hardy (ct 20904)
        Carmody & Torrance LLP
        195 Church Street, P.O. Box 1950
        New Haven, CT 06509-1950
        Tel: (203) 777-5501
        Fax: (203) 784-3199
        E-mail: ccorcoran@carmodylaw.com
        E-mail: dhardy@carmodylaw.com
        *Its Attorneys*

{N0721188}

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
R. Michael Meo, Jr.
(Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT  06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: rmeo@goodwin.com

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Amy E. Souchuns (Fed.Bar No ct21223)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com
E-mail: asouchuns@goodwin.com


_/s/_____
David S. Hardy

{N0721188}

-2-

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNIROYAL CHEMICAL COMPANY, INC.,   :
d/b/a CROMPTON MANUFACTURING   :
COMPANY   :
   :   Civil Action No.
      Plaintiff,   :   3:02cv02253 (AHN)
   :
     v.   :
   :
SYNGENTA CROP PROTECTION, INC.   :
   :
      Defendant.   :   August 19, 2004

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE AND/OR DISMISS COUNTERCLAIMS

### I.    INTRODUCTION

Through its Amended Answer dated July 16, 2004, the defendant has improperly attempted to inject new controversy into this action through untimely and meritless counterclaims. The defendant filed its Amended Answer, Affirmative Defenses and Counterclaims in response to the plaintiff's May 18, 2004 Amended Complaint, which the plaintiff had amended to set forth a cause of action under the Connecticut Unfair Trade Practices Act ("CUTPA") and a claim for unjust enrichment. The plaintiff's modest amendment of its complaint did not open the door for the defendant to allege, for the first time, counterclaims that it could have asserted in its initial response to the plaintiff's complaint. Under the Federal Rules of Civil Procedure, the defendant must obtain permission from the court to file such counterclaims. Having failed to do so, the

{N0721188}

defendant's counterclaims should be stricken. Moreover, even if the defendant had moved for permission to file its counterclaims, as it was required to, it would not be entitled to such permission. Finally, if the defendant's counterclaims are deemed permitted, they should be dismissed for failing to state claims upon which relief may be granted.

## II.   <u>PROCEDURAL BACKGROUND</u>

The plaintiff filed its original complaint in this matter on December 20, 2002 seeking legal and equitable relief against the defendant for breach of contract (Count I), conversion (Count II), breach of the covenant of good faith and fair dealing (Count III), violation of the Delaware Franchise Security Law (Count IV), and promissory estoppel (Count V). The plaintiff's claims arise out of certain Supply and Development Agreements concerning the defendant's granting to plaintiff exclusive rights to develop, register, market and sell defendant's plant growth regulating chemical "Bonzi," and to develop register, sell and market new formulations of the product.

The defendant first responded to the complaint by moving to dismiss the claim for violation of the Delaware Franchise Security Law (Count IV). The court granted the defendant's motion by Ruling dated September 30, 2003. Thereafter, the defendant filed its Answer and Affirmative Defenses on October 30, 2003. The defendant did not assert any counterclaims in response to the complaint.

{N0721188}

By motion dated May 18, 2004, the plaintiff moved to amend its complaint to add a claim for violation of CUTPA and a claim for unjust enrichment. The defendant consented to the motion with respect to the addition of the CUTPA claim and the court granted the motion as to both counts. These amendments simply presented new theories of recovery and did not inject substantial or significant new facts into the action. (See Am. Compl., Counts VI and VII.) The plaintiff did not significantly change its demand for relief other than to seek the statutory damages available under CUTPA. On July 16, 2004, the defendant filed its response to the plaintiff's Amended Complaint, which response included, for the first time, the counterclaims that are the subject of this motion. Discovery in this matter has been protracted and is ongoing. The trial originally scheduled in this matter for June of 2004 has been delayed.

## III.    NATURE OF DEFENDANT'S COUNTERCLAIMS

The defendant asserts two counterclaims. The first alleging tortious interference with business expectancies, and the second alleging violation of the Connecticut Unfair Trade Practices Act. The sole basis for both counterclaims is the plaintiff's bringing of this lawsuit, which the defendant characterizes as "sham litigation." [1]

The defendant provides, in essence, a counterstatement of facts to the plaintiff's allegations, characterizing the business relationship between the parties and their conduct

---

[1] The defendant alleges that the plaintiff has undertaken a wrongful course of conduct against it "by, among other things, prosecuting this action insofar as it seeks equitable relief barring and/or limiting Syngenta's ability to market and sell Bonzi without any good faith basis for doing so." (Counterclaim, ¶ 25.) Nowhere in the counterclaims however does the defendant identify any wrongful conduct beyond the commencement of this lawsuit.

{N0721188}

-3-

under the Supply and Development Agreements. (Counterclaim, ¶¶ 1-20.)  Based on the conduct of the parties alleged by the defendant and its reading of the Supply and Development Agreements, the defendant concludes it did not breach the Agreements since "(i) Uniroyal's right to develop New Uses pursuant to the Development Agreement expired on December 31, 1996, and (ii) the Development Agreement grants to Uniroyal marketing and sales rights to New Uses only for a period of five years from the date of registration of those New Uses with the EPA." (Id., ¶ 20.)

Based on its interpretation of the Supply and Development Agreements, the defendant concludes, "Uniroyal's lawsuit, including the equitable relief [sought], is a sham, and is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  There are no provable facts in the Complaint that could justify [the relief sought by the plaintiff]…" (Id., ¶ 22.)  The defendant therefore infers that "Uniroyal brings this lawsuit, and seeks the foregoing equitable relief, to conceal an attempt to interfere directly with the business relationships of Syngenta, to impede Syngenta's ability to sell Bonzi, and to gain a competitive advantage over Syngenta in the sale of paclobutrazol products by limiting the uses for which Syngenta may market and sell Bonzi." (Id., ¶ 23.)  Finally, the defendant alleges, in conclusory terms, that the plaintiff's actions constitute tortious interference with business expectancies and a violation of CUTPA. (Id., ¶¶ 24-33.)

## IV.     ARGUMENT

### A.     *The defendant may not assert its counterclaims in response to the plaintiff's Amended Complaint as of right and they should therefore be stricken.*

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party amends its pleading with leave of the court or by consent of the adverse party- as the plaintiff did here- the adverse party "shall plead *in response* to [the] amended pleading." (emphasis added). Based on this rule, the courts have held that an adverse party may not, as a matter of right, assert new claims, defenses and allegations in an amended answer that do not directly respond to the new matters raised in the amended complaint. See e.g. Wechsler v. Hunt Health Systems, Ltd., 186 F.Supp.2d 402, 415-416 (S.D.N.Y. 2002) (where defendants filed an amended answer that asserted new claims, defenses and allegations that were "not in response to the Amended Complaint, and because their time to amend their answer as of right had expired under Fed.R.Civ.P. 15(a), defendants should have obtained prior leave of the Court before submitting their Amended Answer."); Equal Employment Opportunity Commission v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002) ("If every amendment, no matter how minor or substantive, allowed defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause. This would deprive the Court of its ability to effectively manage the litigation."); Nolan v. City of Yonkers, 1996 WL 120685 at *4 (S.D.N.Y. March 19, 1996) (rejecting defendants' claim that "plaintiffs amended their complaint at their peril, opening themselves up to any and

{N0721188}

-5-

all counterclaims that defendants chose to assert" and holding that "defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had a right to assert counterclaims in their original answer.")[2] But see American Home Products Corporation v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) (permission not required for defendant to add new counterclaim following plaintiff's amendment of complaint).

In Chrysler Corporation v. Fedders Corporation, 540 F.Supp. 706 (S.D.N.Y. 1982), the plaintiff, with leave of the court and permission from the defendant, amended its complaint to add a new claim to enforce a prepayment clause in a Note that was already the subject of the litigation. In response to the amended complaint, the defendant filed an amended answer in which it added new counterclaims for malicious prosecution and abuse of process. Thereafter, the plaintiff moved to strike the defendant's new counterclaims pursuant to Federal Rule 15 as untimely and prejudicial. The plaintiff also moved to dismiss the counterclaims under Rule 12 (b)(6) for failure to state a claim upon which relief could be granted. The defendant argued that since the plaintiff was given the opportunity to amend its complaint that the defendant was "absolutely entitled" to add new counterclaims. The court rejected the defendant's argument and held that its counterclaims should be stricken. Id., 540 F. Supp. at 708, 713.

---

[2] Copies of all unreported cases cited herein are attached.
{N0721188}

The court premised its holding on the interplay between Federal Rules 13 and 15.[3]
While observing that Rule 15 does not expressly limit the issues that can be alleged in
response to an amended pleading, the court noted that "Rule 15 does state that the
pleading must be 'in response to the amended pleading'." Id., 540 F.Supp. at 712-713.
Since Rule 15 speaks of a "pleading", the court then looked to the provisions of Rule
13(a). While acknowledging that Rule 13(a) "was not written principally to address the
problem of counterclaims asserted in response to amended complaints", the court found
significant that the rule directs that "a pleading shall state as a counterclaim any claim…
which the pleader has against the opposing party." Id. The court continued:

> Furthermore, Rule 13's broad requirement that pleader 'shall state…
> counterclaim(s)' in his responsive papers applies only to claims existing

---

[3] Rule 15 provides, in pertinent party, as follows:

(a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a
responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the
action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days
after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written
consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead
in response to an amended pleading within the time remaining for response to the original pleading or
within 10 days after service of the amended pleading, whichever period may be the longer, unless the court
otherwise orders.

(d) Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such
terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences
or events which have happened since the date of the pleading sought to be supplemented. Permission may
be granted even though the original pleading is defective in its statement of a claim for relief or defense. If
the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order,
specifying the time therefor.

> 'at the time of serving the pleading' and only if 'they arise( ) out of the transaction or occurrence that is the subject matter of the opposing party's claim.' A pleader must seek the permission of the court to assert claims which were omitted from the original pleading, Rule 13(f)[4], or which matured after the original pleading, Rule 13(e)[5], or which arise out of more recent transactions or occurrences, Rule 15(d)[6]. On balance, then, given the treatment of various types of counterclaims under the Federal Rules of Civil Procedure, the Court finds that [the defendant] does not have a right to assert new counterclaims at this time in the same way that it had a right to assert counterclaims in its original answer."

Id., 540 F.Supp. at 713.

Here, the defendant's counterclaims do not respond to any new matters raised in the plaintiff's amended complaint and are not premised on facts that have occurred since the filing of the plaintiff's original complaint.[7] To the contrary, the defendant's counterclaims matured when the plaintiff filed its original complaint in December of 2002 and consist of allegations that the defendant could have made in its initial answer. Accordingly, the defendant may not assert its counterclaims as of right and can only assert them with the permission of the court under Rule 13(f). Because the defendant failed to obtain the court's permission, its counterclaims should be stricken.

---

[4] "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of the court set up the counterclaim by amendment."

[5] "A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."

[6] "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented…"

[7] Defendant's vague allegation that the plaintiff "has conceded in deposition" to the validity of defendant's interpretation of the Agreements does nothing to inform the defendant's conclusion that the plaintiff's complaint is a sham. Even if this "concession" were considered new, relevant information, it would not excuse the defendant from obtaining permission to assert a counterclaim based upon it. See Fed. R. Civ. P. 13(e).

{N0721188}

**B.**    *If the defendant were to request permission to assert its counterclaims, as is required, such permission would not be warranted under these circumstances.*

The defendant's counterclaims for sham litigation are compulsory ones that should have been pled in the defendant's initial answer to the complaint. Federal Rule 13(a) defines a compulsory counterclaim as "any claim which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…" The Second Circuit Court of Appeals has held, "[t]he test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) (internal citations omitted). Based on this test, the courts have held that a claim for sham litigation is a compulsory counterclaim. Critical-Val Filtration Corporation v. Minuteman International, Inc., 233 F.3d 697 (2d Cir. 2000) (plaintiff was required to assert sham litigation claim in prior litigation since it "had" the claim at that time); U.S. Philips Corporation v. Sears Roebuck & Co., 55 F.3d 592, 597 (Fed. Cir. 1995) ("the place to challenge litigation as sham is in the asserted sham litigation…").

Since the defendant's counterclaims for sham litigation are compulsory and were not filed in its initial answer to the complaint, the defendant must seek permission to file them under Rule 13(f) or 15(a). Chrysler Corporation, 540 F.Supp. at 713. In

{N0721188}

-9-

considering a motion to amend a pleading, "delay, accompanied by prejudice to the opposing party, is a fully adequate reason for denying leave to amend." Id., 540 F.Supp. at 716. In addition, Rule 13(f) places the burden upon the moving party to demonstrate oversight, inadvertence or excusable neglect in failing to set up a counterclaim or that justice requires leave to amend. See also Wechsler, 186 F.Supp.2d at 418-419 (denying request to amend answer *nunc pro tunc* where defendants were long aware of facts underlying new claims, defenses and allegations and where new matters raised by defendants would require new discovery, delay adjudication of case and prejudice plaintiff.) Finally, the Second Circuit has held that "futility" provides a solid ground on which to deny leave to amend. Marchi v. Board of Coop. Educ. Servs. Of Albany, 173 F.3d 469, 478 (2d Cir.), cert denied 528 U.S. 869 (1999).

Here, the defendant has proffered no grounds that would permit the filing of its counterclaims. If the defendant were permitted to assert its counterclaims, the trial of this matter would be further delayed. As is set forth below, the defendant's prosecution of its sham litigation claims will entail discovery on entirely new issues involving, among others, the subjective intent of the plaintiff corporation in pursuing this action. The plaintiff will be unduly prejudiced in that it will be required to retake depositions and expand the scope of previously served discovery to encompass the damages purportedly suffered by the defendant and the causal link between those damages on the plaintiff's lawsuit. The plaintiff will also suffer prejudice in that the injunctive relief and the recovery for ongoing damages it seeks will be further delayed. As discussed above, the

{N0721188}

-10-

only "fact" relied on the by the defendant to support the allegations in the counterclaims is the plaintiff's filing of the present lawsuit nearly two years ago.  There are no conceivable grounds to find this delay excusable, and there is likewise no doubt but that allowing these counterclaims to stand would be highly prejudicial to the plaintiff.  Finally, as set forth below, permitting the defendant's amendment of its answer to include these counterclaims would be futile since they fail to state claims upon which relief may be granted.

**C.**    ***The counterclaims fail to state claims upon which relief may be granted since the plaintiff is immune from suit under the Noerr-Pennington doctrine.***

The standards governing motions to dismiss under Rule 12(b)(6) are well known to the court.  The court's function on a motion to dismiss "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  <u>Festa v. Local 3 Int'l Board of Electrical Workers</u>, 905 F.2d 35, 37 (2d Cir. 1990).  Although the court must limit its analysis to the four corners of the complaint,  <u>Kopec v. Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir., 1991), mere conclusory allegations or legal conclusions are not sufficient to withstand a Rule 12(b)(6) motion to dismiss.  <u>Briehl v. General Motors Corp.</u>, 172 F.3d 623, 627-28 (8th Cir., 1999); <u>DM Research, Inc. v. College of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir., 1999).

The plaintiff is immune from the counterclaims asserted by the defendant under the Noerr-Pennington doctrine.  "The Noerr-Pennington doctrine was established by the Supreme Court in a trilogy of antitrust cases…[and] is derived from First Amendment

{N0721188}

-11-

principles guaranteeing the right to petition the government." <u>Hartford Life Insurance</u> <u>Company v. Variable Life Insurance Company, Inc.</u>, 964 F.Supp. 624, 626 (D. Conn. 1997) (internal citations omitted).  In sum,  "[t]he Noerr-Pennington doctrine protects a litigant's First Amendment right to seek judicial redress of grievances by immunizing the litigant from a claim that the mere act of pursuing a lawsuit causes harm."  <u>Id.</u>, 964 F.Supp. at 625.

The courts, however, have recognized a limited exception to the Noerr-Pennington doctrine known as the "sham" exception.  <u>Professional Real Estate Investors</u> <u>v. Columbia Pictures Industries</u>, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).  "Under the sham exception, litigation may be deprived of immunity if it constitutes 'a mere sham to cover… an attempt to interfere directly with the business relationships of a competitor.'" <u>Hartford Life Insurance Company</u>, 964 F.Supp. at 626-27 (internal citations omitted).  Under <u>Professional Real Estate Investors</u>, *supra*, a two-part test is used to determine when litigation will be considered a sham not immunized under <u>Noerr</u>:

> First the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under <u>Noerr</u>, and an antitrust claim premised on the sham exception must fail."  If the court concludes that the challenged litigation is objectively meritless, then the court must next consider the second prong of the test.
>
> The second prong involves an inquiry into the litigant's subjective motivation.  An improper purpose will be found if the court determines that "the baseless lawsuit conceals 'an attempt to interfere *directly* with the

> business relationships of a competitor,' through the 'use [of] the governmental *process*--as opposed to the *outcome* of that process--as an anticompetitive weapon."'
>
> Because the question of subjective intent is not considered unless a claim is first held to be objectively baseless, a finding that a lawsuit was instituted with probable cause is an absolute defense to a claim that the case is a sham regardless of litigant's subjective motivation.  Probable cause to institute civil proceedings requires no more than a " 'reasonabl[e] belie[f] there is a chance that [a] claim may be held valid upon adjudication.' " Where there is no dispute over the predicate acts of the underlying proceedings, the court may determine probable cause as a matter of law.
>
> … Even if a lawsuit is ultimately lost, probable cause to pursue the action will exist if it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.' "

Hartford Life Insurance Company, 964 F.Supp. at 627 (internal citations omitted).

"Where possible, … this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." Agfa Corporation v. United Marketing Group, Inc., 2003 WL 21555087 at *3 (S.D.N.Y. July 10, 2003) (internal citations omitted).

Based on the Noerr-Pennington doctrine, the Second Circuit Court of Appeals has held that "the filing of a single non-sham lawsuit cannot form the basis of a claim under CUTPA or Connecticut's common law of tortuous interference with a business expectancy." Suburban Restoration Co., Inc. v. ACMAT Corporation, 700 F.2d 98, 102 (2d Cir. 1983), cited with approval in Zeller Consolini, 59 Conn. App. 545, 553 (2000).

{N0721188}

-13-

Accordingly, the defendant may only sustain its counterclaims if it properly alleges the sham litigation exception to the Noerr-Pennington doctrine as set forth above. The defendant here has not done so.

As the court made clear in <u>Hartford Life Insurance Company</u>, *supra*, mere allegations that the plaintiff will not prevail on its complaint fail to state a claim of sham litigation. Here, the defendant's counterclaim, at most, alleges disagreement with the plaintiff as to the meaning and effect of the Supply and Development Agreement and the parties' respective rights and obligations thereunder. The predicate allegations in the defendant's counterclaim for sham litigation (Counterclaim, ¶¶ 1-20) contain no facts that would support the conclusion that the plaintiff's complaint is not "arguably warranted by existing law or at the very least was based on an objectively good faith argument for the extension, modification, or reversal of existing law." Instead, the defendant merely concludes that since its interpretation, and not the plaintiff's interpretation, of the Supply and Development Agreements is the correct one, "no reasonable litigant could realistically expect success on the merits" of the plaintiff's complaint. (<u>Id.</u>, ¶¶ 20, 22.) Respectfully, the defendant has fallen far short alleging facts that, if proven, would support the inference that the plaintiff commenced this action without probable cause.

As was the case in <u>Hartford Life Insurance Company</u>, "[s]tripped of everything but its essentials, [defendant's] argument is that because its defenses ultimately will prevail, [plaintiff's] lawsuit must be 'objectively baseless' within the meaning of the sham exception." 964 F.Supp. at 628. But "[e]ven if [defendant] is correct in its assertion

{N0721188}

-14-

that it will win this lawsuit, it is incorrect in then concluding that [plaintiff's] claims must have been brought with no probable cause." Id.  Accordingly, even when reading the allegations of the defendant's counterclaims as true "the court is left with nothing from which it can infer that [the plaintiff's] claims were not even arguably warranted by existing law when [plaintiff] commenced the underlying litigation." Id.  Since the counterclaims do not allege facts that, if proven, would show that the plaintiff's complaint is objectively baseless, the first prong of the sham exception has not been met and there is no need to address the second prong. Id.  Based on the foregoing, the defendant's counterclaims fail to state claims upon which relief may be granted and should be dismissed.

## V.     **CONCLUSION**

The defendant's afterthought, eleventh-hour attempt to inject into this action new controversy based on facts long known to it should not be sanctioned.  The defendant's counterclaims are not properly joined in this action and, in any event, are meritless.  Accordingly, the plaintiff respectfully requests that the court grant its motion.

Respectfully submitted,

THE PLAINTIFF
UNIROYAL CHEMICAL COMPANY,
INC. d/b/a CROMPTON
MANUFACTURING COMPANY


By:____/s/_____
Charles F. Corcoran, III (ct 04299)
David S. Hardy (ct 20904)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, CT  06509-1950
Tel:  (203) 777-5501
Fax:  (203) 784-3199
E-mail: ccorcoran@carmodylaw.com
E-mail: dhardy@carmodylaw.com
Its Attorneys

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

William A. Ruskin
(Fed. Bar No. ct20898)
R. Michael Meo, Jr.
(Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT  06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: rmeo@goodwin.com

Paul D. Sanson (Fed. Bar No. ct05477)
Karen T. Staib (Fed. Bar No. ct21119)
Amy E. Souchuns (Fed.Bar No ct21223)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Telephone: (860) 251-5000
Facsimile: (860) 251-5600
E-mail: psanson@goodwin.com
E-mail: kstaib@goodwin.com
E-mail: asouchuns@goodwin.com


____/s/_____
David S. Hardy

{N0721188}

-16-

1996 WL 120685
1996 WL 120685 (S.D.N.Y.)
(Cite as: 1996 WL 120685 (S.D.N.Y.))

▷

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Colm NOLAN, et al., Plaintiffs,
v.
CITY OF YONKERS, et al., Defendants.

No. 92 CIV. 6067 (KMW).

March 19, 1996.

OPINION AND ORDER

KIMBA M. WOOD, District Judge.

**\*1** Presently before the court are motions for reconsideration of three separate orders of Magistrate Judge Kathleen A. Roberts [FN1] in this civil rights action arising out of an incident (the "Incident") that occurred in the early morning hours of December 2, 1991 in the parking lot of the Coach 'N Four Restaurant (the "Restaurant") in Yonkers, New York. Plaintiffs were celebrants at a party at the Restaurant in honor of the christening of the daughter of plaintiffs Patrick and Theresa McNulty. Defendants are police officers who responded to a call regarding the Incident.

For the reasons set forth below, I deny all of the motions for reconsideration.

*I. Analysis*
*A. The Standard of Review*

District courts reviewing pretrial orders entered by magistrate judges on nondispositive matters determine only whether the magistrate's order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

*B. Defendants' Motion for Reconsideration of the May 4, 1994 Order*

Defendants seek reconsideration of that part of Magistrate Judge Roberts's May 4, 1994 Order that denied disclosure of the redacted portions of a document entitled a "Quick Case Status Report" (the "Report"). The Report is a document produced by plaintiffs' counsel, Brian O'Dwyer ("O'Dwyer"), after he met with several of the plaintiffs on December 5, 1991, three days after the Incident. The Report was primarily based on a interview with Patrick McNulty ("McNulty"). O'Dwyer prepares such a report after meeting with each new client, in order to summarize the client's version of the incident, evaluate the injuries and assess the case. Such a document is protected from disclosure by attorney-client privilege and attorney work product privilege, unless these privileges have been waived.

At a federal criminal trial, charges were brought against defendant officers Michael Buono ("Buono") and Bruce Nickels ("Nickels") for allegedly violating the civil rights of plaintiffs McNulty, Patrick Lilly ("Lilly"), and Margaret Nolan during the Incident. [FN2] The indictment brought against Buono and Nickels charged, *inter alia,* that after McNulty and Lilly were arrested at the parking lot of the Restaurant and handcuffed, Buono and Nickels stopped on the way to the precinct, pulled McNulty and Lilly from the police car and beat them again (in the "Second Beating"). Having obtained a limited waiver of attorney-client privilege and work product privilege with respect to the Report from McNulty and O'Dwyer, respectively, the government attempted to call O'Dwyer as a witness and, if need be, to introduce a partially redacted version of the Report in order to rebut defendants Buono and Nickels's claim that the story about the Second Beating was of recent fabrication. However, the trial court refused to allow the government to present a rebuttal case.

Defendants claim that in light of the limited waiver of attorney-client and work product privileges in the federal criminal case, they are entitled to the production of the entire Report in this civil action. Plaintiffs concede that defendants are entitled to that portion of the Report concerning the Second Beating over which attorney-client and work product privileges were waived so that they could be introduced at the federal criminal trial. However, plaintiffs argue that defendants have no right to the other, redacted portions of the report. On May 16, 1994, Magistrate Judge Roberts "memo endorsed" and "so ordered" a letter from defendants' counsel, stating that she had undertaken an *in camera* review of the entire Report, found that plaintiffs had disclosed all portions pertinent to the Second Beating, and that no further portions of the Report need be disclosed to defendants.

**\*2** When a client selectively discloses portions of communications otherwise protected by the attorney-

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

client privilege, the "subject matter waiver" doctrine requires that other communications about the same subject matter also be disclosed. *See In re Von Bulow,* 828 F.2d 94, 101-102 (2d Cir. 1987); *Brock Equities Ltd. v. Josephthal, Lyon & Ross, Inc.,* No. 92 Civ. 8588, 1993 WL 350026, *1 (S.D.N.Y. Sept. 9, 1993) ("A party can only waive the attorney-client privilege as to certain subjects as a whole, and may not select only certain testimony or documents to produce while leaving other evidence shrouded in privilege."). Thus, "[i]t has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut. From that has grown the rule that testimony as to part of a privileged communication, in fairness, requires production of the remainder." *In re Von Bulow,* 828 F.2d at 101 (citation omitted). The purpose of this "fairness rule" is to ensure that factfinding, and the judicial process, are not distorted by the introduction of selectively disclosed and potentially misleading evidence. *See id.; Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co.,* 521 F. Supp. 638, 641 (S.D.N.Y. 1981).

The Second Circuit has stated that because the subject matter waiver rests on these fairness considerations, it "has been invoked most often where the privilege-holder has attempted to use the privilege as both 'a sword' and 'a shield' or where the attacking party has been prejudiced at trial." *In re Von Bulow,* 828 F.2d at 103 (collecting cases). Although it was technically the government and not any of the plaintiffs who attempted to use of the Report in the federal criminal trial, plaintiff McNulty and his attorney did consent to the use of the Report, and plaintiffs' civil case, which was pending at the time of the federal criminal trial, would have benefitted from a criminal conviction of these officers. Thus, the attempt to introduce the Report at the federal criminal trial constituted an affirmative use of this document as a sword by one of the plaintiffs.

The limited issue raised by the parties is whether the subject matter waiver requires the production of the entire Report. After conducting my own *in camera* review of the entire Report, I agree with Magistrate Judge Roberts that in this case, McNulty waived attorney client privilege only as to the subject matter of the Second Beating, not as to all of the subject matter related to the entire Incident.

Recognizing only such a limited subject matter

waiver here comports with the principle of fairness underlying the subject matter waiver doctrine. It was the defendants in the federal criminal trial who argued that the charges of a Second Beating had been recently fabricated. McNulty and his lawyer reasonably consented to waive their privileges with respect to the Second Beating portions of the Report, in an attempt to refute these charges. Plaintiffs were not attempting to distort factfinding or the judicial process by selectively disclosing potentially misleading evidence. *Cf. In re Von Bulow,* 828 F.2d at 101 (The fairness doctrine "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information."); *Teachers Ins. & Annuity Ass'n,* 521 F. Supp. at 641 ("When a party discloses part of an otherwise privileged communication, he must in fairness disclose the entire communication, or at least so much of it as will make the disclosure complete and not misleadingly one-sided.").

*3 Moreover, recognizing a wider subject matter waiver under the circumstances of this case would actually impede the factfinding and judicial process by making it less likely that victims in criminal cases would consent to the government's request for limited waivers of attorney client privilege for fear that such limited waivers would later be expanded by means of the application of the subject matter waiver doctrine.

For these reasons, no further disclosures of redacted portions of the Report need be made.

*C. Defendants' Motion for Reconsideration of the June 6, 1994 Order*

Defendants move for reconsideration of an Order of Magistrate Judge Roberts dated June 6, 1994, denying defendants' motion to transfer this action to White Plains pursuant to Rules 21(a) and 22 of the Southern District of New York Rules for the Division of Business Among District Court Judges.

Defendants brought the present motion for reconsideration on June 1, 1995, almost one year after Magistrate Judge Roberts entered the Order being challenged. Rule 72(a) of the Federal Rules of Civil Procedure states that a party may file objections to a pretrial order on a nondispositive matter entered by a magistrate judge within ten days after being served with a copy of the magistrate's order. Fed. R. Civ. R. 72(a). The Rule specifically states that "a party may not thereafter assign as error a defect in the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1996 WL 120685
(Cite as: 1996 WL 120685, *3 (S.D.N.Y.))

Page 6

magistrate's order to which objection was not timely made." *Id.*

In the declaration submitted by defendants in support of this motion for reconsideration, defendants argue, without citing any case law, that this court has discretion to grant the motion for reconsideration and to transfer this case to White Plains despite the fact that the motion for reconsideration was not timely, because plaintiffs "*twice* deliberately violat[ed] the rules and misplac[ed] their cause in Manhattan." June 27, 1995 Cohn Decl. at ¶ 7. However, I find that there is no legal basis for this court to entertain this untimely motion for reconsideration. [FN3]

Plaintiffs request that I impose sanctions on defendants pursuant to 28 U.S.C. § 1927 or Rule 11 of the Federal Rules of Civil Procedure for bringing this motion and thus "unreasonably requiring plaintiffs to respond to this time-barred and frivolous application." June 20, 1995 Neufield Decl. at ¶ 3. Although it was inappropriate for defendants to file this clearly time-barred motion, I find that this action does not rise to the level of conduct that is sanctionable under 28 U.S.C. § 1927.

A finding of bad faith is ordinarily required to sanction a party under 28 U.S.C. § 1927. *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A] n award under Sec. 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."), *cert. denied,* 480 U.S. 918 (1987). Although the motion for reconsideration was clearly time-barred, defendants' attorney apparently filed the motion on the theory that due to the alleged flagrant violations of the filing rules committed by plaintiffs, this court could ignore the untimeliness of the motion and grant the transfer to White Plains as a sanction against plaintiffs. Thus, the motion was not necessarily filed in bad faith.

*4 A Rule 11 sanction would also be inappropriate in this case. Under Rule 11, as amended, the party moving for a sanction must have served the opposing party with the Rule 11 motion and given the opposing party an opportunity to withdraw the allegedly frivolous motion before filing the Rule 11 motion with the court. Fed. R. Civ. P. 11(c)(1). Plaintiffs nowhere allege that they gave defendants an opportunity to withdraw this motion for reconsideration before filing it.

*D. Plaintiffs' Motion for Reconsideration of the*

*March 31, 1995 Order*

Plaintiffs move for reconsideration of an order of Magistrate Judge Roberts dated March 31, 1995, denying plaintiffs' motion to strike and to dismiss the counterclaims asserted by defendants Buono, Linda Rousseau, and Nickels in their Answers to the Second Amended Complaint.

On November 30, 1994, after having received Magistrate Judge Roberts's permission to do so, plaintiffs filed their Second Amended Complaint. That Complaint substituted the names of two officers for two defendants previously identified only as "John Doe" defendants. On December 7, 1994, defendants served answers to the Second Amended Complaint. In these answers, three of the five original defendants asserted new counterclaims against certain of the plaintiffs for assault and battery.

Defendants initially contend that they were entitled to assert any counterclaims they chose in their answers to the Second Amended Complaint, without requesting leave of the court, because the answers were not amended answers but rather were original answers to the Second Amended Complaint. Essentially, they claim that plaintiffs amended their complaint at their peril, opening themselves up to any and all counterclaims that defendants chose to assert. Plaintiffs contend that defendants did not have an absolute right to add any counterclaims they chose in their answers to the Second Amended Complaint, because Rule 15 of the Federal Rules of Civil Procedure requires that a "party shall plead in *response* to an amended pleading ...." Fed. R. Civ. P. 15(a) (emphasis added). Thus, plaintiffs argue, defendants could only assert as of right in their answers to the Second Amended Complaint counterclaims that responded to the specific amendments made in the Second Amended Complaint. I am persuaded by the discussion of the interplay of Rules 13, governing counterclaims, and 15, governing amended pleadings, of the Federal Rules of Civil Procedure presented in *Chrysler Corporation v. Fedders Corporation,* 540 F. Supp. 706, 712-13 (S.D.N.Y. 1982), and find that defendants did not have a right to assert new counterclaims unrelated to the amendment in their answers to the Second Amended Complaint in the same way that they had a right to assert counterclaims in their original answer. *Id.* at 713.

However, because defendants belatedly requested permission to amend their answers to assert the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

counterclaims at issue, I must consider (1) whether Magistrate Judge Roberts's order should be construed as having granted permission for defendants to file their counterclaims and (2) whether that grant of permission was clearly erroneous or contrary to law.

**\*5** The counterclaims at issue arose out of the same occurrence that is the subject matter of the original complaint and thus are compulsory counterclaims. Fed. R. Civ. P. 13(a). Because these counterclaims could have been asserted in response to the original pleading, they must be treated as omitted counterclaims pursuant to Rule 13(f) of the Federal Rules of Civil Procedure. Rule 13(f) states that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f). Rule 15(a) states that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In interpreting Rule 15(a), the Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).

Although this request to amend defendants' answer to add counterclaims was made more than two years after the counterclaims could have been asserted in the original answer, the court permits the amendment because plaintiffs assert no significant prejudice resulting from allowing it. In addition, these counterclaims are so intimately connected to the claims made by defendants that judicial economy requires that they be tried at the same time. Therefore, I find that the magistrate judge did not clearly err in granting the defendants' request to amend their answer to add these counterclaims.

Plaintiffs claim that the counterclaims, even if properly added, should be dismissed as time-barred because the statute of limitations has already run on these claims. N.Y. Civ. Prac. L. & R. § 215 (McKinney 1990). However, Rule 15(c) provides that an amendment of a pleading relates back to the date of the original pleading when, *inter alia,* "the claim or

defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...." Fed. R. Civ. P. 15(c). *See also Banco Para el Comercio Exterior de Cuba v. First National City Bank,* 744 F.2d 237, 242-43 (2d Cir. 1981) ("*Bancec*") ("The Federal Rules are to be construed so as to secure the just determination of every action, Fed. R. Civ. P. 1, and trial courts in this Circuit have accordingly ruled that a counterclaim amended pursuant to Rule 13(f) may relate back to the date of the original answer when the counterclaim arises out of the same transaction that was pleaded in the answer and there is no prejudice to the opposing party's ability to defend the merits of the counterclaim.").

**\*6** Plaintiffs argue that *Bancec* is distinguishable from this case (1) because it concerns the amendment of a previously asserted counterclaim and not the assertion of wholly new counterclaims; and (2) because it involved a counterclaim for an offset, whereas here the counterclaiming defendants are seeking affirmative damages. However, the counterclaim at issue in *Bancec* could be viewed as a mere amendment of a previously asserted counterclaim, the Second Circuit stated that "to the extent that [the counterclaim] should be considered first raised in the [later] amended answer, the Second Circuit conclude[d] that the counterclaim related back to the date of the original answer." *Id.* at 242. In addition, in *Bancec* the Second Circuit nowhere states that it is relevant that the counterclaims at issue were for an offset, not for affirmative damages.

## II. *Conclusion*

I deny all three motions for reconsideration.

SO ORDERED.

> FN1. After the issuance of the last of these three orders, dated March 31, 1995, this case was reassigned to Magistrate Judge Andrew J. Peck.

> FN2. Buono and Nickels were acquitted of all charges.

> FN3. I note that even had this motion for reconsideration been timely, I would have found that the magistrate judge's determination was not clearly erroneous or contrary to law.

1996 WL 120685 (S.D.N.Y.)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1996 WL 120685                                                    Page 8
(Cite as: 1996 WL 120685, *6 (S.D.N.Y.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 WL 21555087 (S.D.N.Y.)
(Cite as: 2003 WL 21555087 (S.D.N.Y.))

Page 1

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

AGFA CORPORATION, Plaintiff,
v.
UNITED MARKETING GROUP, INC., and Profico,
Ltd., Defendants.

No. 02 Civ. 8468(LAP).

July 10, 2003.

Photographic paper manufacturer sued unauthorized distributors for tortious interference with contract. Distributors asserted antitrust counterclaim. On cross-motions to dismiss, the District Court, Preska, J., held that: (1)photographic paper manufacturer was entitled to immunity, under *Noerr-Pennington* doctrine, from claim that its tortious interference suit against unauthorized distributors was illegally anticompetitive, and (2) photographic paper manufacturer stated claims against unauthorized distributors for tortious interference with contract and tortious interference with prospective economic advantage.

Plaintiff's motion granted; defendants' motion denied.

West Headnotes

[1] Monopolies ☞12(16.5)
265k12(16.5)

Photographic paper manufacturer was entitled to immunity, under *Noerr-Pennington* doctrine, from claim that its tortious interference suit against unauthorized distributors was illegally anticompetitive, regardless of manufacturer's actual motive, absent showing that its suit was objectively baseless.

[2] Torts ☞10(3)
379k10(3)

[2] Torts ☞12
379k12

Under New York nt.

DISCUSSION

I. Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), I must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the [pleader's] favor." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235-36, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is proper only when "it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994).

II. The *Noerr-Pennington* Doctrine and Plaintiff's Motion to Dismiss the Counterclaim

[1] The *Noerr-Pennington* doctrine provides immunity from liability for conduct seeking to influence government action. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc. .,* 365 U.S. 127, 136, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 669-70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). "Essentially, the Doctrine protects under the First Amendment efforts to influence governmental action through litigation, lobbying, and the like. Such activities are immunized from antitrust liability, provided that such activities are more than a mere 'sham." ' *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.,* No. 00- 7302, 2000 U.S.App. LEXIS 25440, at *3 (2d Cir. Oct. 11, 2000) (affirming district court's dismissal of a claim under the *Noerr-Pennington* doctrine). Immunity under the *Noerr-Pennington* doctrine attaches regardless of whether the claim is based on a state or a federal cause of action. *See Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 128-29 (3d Cir.1999) (applying *Noerr-Pennington* to state tort law claims because "we have been presented with no persuasive why these state tort claims, based on the same petitioning activity as the federal claims, would not be barred by the *Noerr-Pennington* doctrine"); *H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 672 F.Supp. 724, 745 (S.D.N.Y.1987) (granting summary judgment on state Donnelly Act claim because summary judgment was

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 21555087, *2 (S.D.N.Y.))

appropriate on federal Sherman Act claims).

**\*3** To invoke the "sham" exception to the doctrine, a party must allege that the lawsuit is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Bath Petroleum,* 2000 U.S.App. LEXIS 25440, at \*3-4 (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,* 508 U.S. 49, 56-57, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). If a court first determines that the challenged litigation is objectively meritless, that court may then examine the subjective motivation of the litigant. *See T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.,* 312 F.3d 90, 93 (2d Cir.2002); *see also Cheminor Drugs,* 168 F.3d at 122-23. "Where possible, ... this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,* 207 F.Supp.2d 221, 223 (S.D.N.Y.2002).

Here, defendants do not argue that consideration of *Noerr-Pennington* immunity is improper but only that the "sham" exception applies. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaim and in Support of Defendants' Motion to Dismiss the Complaint, hereafter, "Defs' Br.," at 2). Defendants, however, have not carried their burden on this argument. As a threshold matter, defendants do not allege, in their Counterclaim, that Agfa's lawsuit is "objectively baseless." *See Bath Petroleum,* 2000 U.S.App. LEXIS 25440, at \*3-4. To the contrary, defendants do not even address the merit of the claims set forth in Agfa's Complaint, *viz.,* defendants' alleged tortious interference with contract and interference with prospective economic advantage. Instead, defendants assert their own right to purchase Agfa products and to resell them on the secondary market. (Defs' Counterclaim at ¶¶ 7-9). Defendants then allege, in conclusory fashion, that Agfa's Complaint constitutes a violation of the Sherman Act and the Donnelly Act. (*Id.* at ¶¶ 10-11). Such a conclusion is inconsistent with the requirement, as set forth in the prior case law, that allegations of "sham" litigation be contained in the pleadings, *see, e.g., Twin City Bakery Workers,* 207 F.Supp.2d at 223, and is, as such, insufficient to defeat the application of the *Noerr-Pennington* doctrine. In any event, Agfa has pleaded the elements of tortious interference with contract and interference with prospective economic advantage, *see* section III, *infra,* and has included facts in its Complaint to support its claims. Thus, defendants have failed to carry their burden on the first step of the sham

litigation exception to the *Noerr-Pennington* doctrine of showing the claim to be objectively baseless. *See T.F.T.F. Capital Corp.,* 312 F.3d at 93.

Proceeding directly to the second step of the sham litigation exception, plaintiff's motivation, defendants introduce evidence in the form of two affidavits (one from the President of defendants, the other from one of the attorneys for defendants) of efforts by Agfa to acquire defendants' list of suppliers during pre-litigation, settlement-type discussions. Relying on those affidavits, defendants assert that the instant case is a sham because it was filed only after defendants refused to share the pertinent list of suppliers with Agfa and for the sole purpose of obtaining this list, which defendants maintain is a trade secret. (Defs' Br. at 4-6).

**\*4** First, because this is a motion to dismiss not converted to summary judgment, it is not clear that the affidavits may even be considered. Second, assuming, *arguendo,* that the conversations discussed in defendants' affidavits would be admissible (which they almost certainly would not be), such evidence is insufficient to render Agfa's claim a sham because motivation may only be considered if the claim is found to be objectively meritless. Here, as noted above, I cannot so find. Accordingly, defendants have not satisfied their burden of demonstrating the sham litigation exception to the *Noerr-Pennington* doctrine, and, therefore, Agfa is entitled to invoke immunity from defendants' Counterclaim under that doctrine. Accordingly, plaintiff's motion is granted, and defendants' Counterclaim is dismissed.

### III. Defendants' Cross-Motion to Dismiss

**[2]** Under New York law, the elements of a claim for tortious interference with contract are: "(1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; and (4) damages." *G-I Holdings, Inc. v. Baron & Budd,* 179 F.Supp.2d 233, 252 (S.D.N.Y.2001); *see also Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). To state a claim for tortious interference with prospective economic advantage, "a plaintiff must also plead facts that demonstrate that the defendant acted with the sole purpose of harming the plaintiff or that the defendant used dishonest, unfair or improper or wrongful means." *G-I Holdings,* 179 F.Supp.2d at 254 (internal citations omitted).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Page 3

Here, Agfa's Complaint alleges that Agfa had a contractual relationship with its authorized dealers, in particular one dealer to whom defendants purportedly sold over $750,000 in Recording Product. (Compl. at ¶¶ 10, 24). The Complaint alleges that defendants were aware of the contractual relationship and the requirement that the dealer purchase all of their Agfa-branded Recording Product exclusively from Agfa. (*Id.* at ¶ 23). Moreover, the Complaint details the actions of defendants to induce Agfa's dealer to breach its dealer agreement. (*Id.* at ¶¶ 21-24). The Complaint also alleges that Agfa suffered damages as a result of defendants' actions. (*Id.* at ¶¶ 25-26).

As to the interference with prospective economic advantage claim, the Complaint also alleges, in addition to the facts recited above, that defendants maliciously and intentionally interfered with Agfa's prospective economic relationship with its authorized dealers, including a dealer by the name of Arkin Medo, Inc. (*Id.* at ¶¶ 37-38).

Other than alleging that plaintiff's claim is "sham" litigation, defendants do not specify any pleading deficiency in plaintiff's claims. Because, on a motion to dismiss, all allegations in the non-movant's pleadings are presumed to be true, *see Chambers,* 282 F.3d at 152, and because Agfa's complaint pleads the elements of its causes of action for tortious interference with existing contractual relations and tortious interference with prospective economic advantage, defendants' cross-motion to dismiss is denied.

CONCLUSION

**\*5** For the foregoing reasons, Agfa's motion to dismiss the Counterclaim (docket entry no. 5) is granted. Defendants' cross-motion to dismiss the Complaint (docket entry no. 9) is denied.

Counsel shall confer as to the steps necessary to resolve this action and shall appear for a conference on July 28, 2003 at 9:30 a.m. in Courtroom 12A at 500 Pearl Street, New York, New York.

SO ORDERED:

2003 WL 21555087 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

.          1:02CV08468          Docket)
(Oct. 23, 2002)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works