UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY : : : : Plaintiff, : : v. : : SYNGENTA CROP PROTECTION, INC. : : Defendant. : | Civil Action No. 3:02cv02253 (AHN) OCTOBER 28, 2004 |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION
TO DEFENDANT'S MAY 12, 2004 MOTION TO COMPEL CONCERNING
REQUEST FOR PRODUCTION NO. 10**

On October 13, 2004, the court (United States Magistrate Judge Holly B. Fitzsimmons) heard argument on the defendant's Motion to Compel dated May 12, 2004 and the plaintiff's opposition thereto. The court permitted the plaintiff to submit a supplemental brief regarding defendant's Request for Production No. 10, which seeks:

> All documents concerning Uniroyal's consideration of marketing its own generic paclobutrazol, including but not limited to:
> (a) Data compensation pursuant to FIFRA Section 3(c)(1)(F);
> (b) EPA submissions pursuant to FIFRA;
> (c) Projected or forecasted sales and/or profits from Uniroyal's sale of generic paclobutrazol;
> (d) Documents concerning the impact of Uniroyal's sale of generic paclobutrazol on Syngenta's sales and/or profits;
> (e) Documents concerning the impact, if any, of Uniroyal's sale of generic paclobutrazol and the claims asserted in this case; and
> (f) Marketing materials for the generic paclobutrazol.

The plaintiff initially objected to this request on the ground that it sought highly confidential and proprietary documents whose disclosure would cause competitive harm

{N0723628;2}

to the plaintiff and on the ground that this request is not likely to lead to the discovery of admissible evidence. (*See* Pl.'s Mem. in Opp., d. June 9, 2004 at 9-10.) After the plaintiff filed this objection, the defendant filed two counterclaims against the plaintiff alleging that this lawsuit is a sham. The essence of the counterclaims is that the plaintiff's lawsuit is a ploy designed to disrupt the sale of Bonzi until such time as the plaintiff is able to market a generic competitor. The counterclaim alleges that the plaintiff began furtive efforts at developing a generic competitor to Bonzi before the termination of the Supply and Development Agreement. At the October 13, 2004 hearing before this court, counsel for the defendant argued that the information sought in Request No. 10 was relevant to the allegations of the counterclaims. Accordingly, counsel for the plaintiff requested permission to file this supplemental objection to this request based upon recent deposition testimony given by certain of the defendant's employees.[1]

The plaintiff's initial objection to this request should be sustained and is further bolstered by the recent deposition testimony of three employee-representatives of the defendant: Charles Buffington (the defendant's Ornamental Marketing Manager), Travis Dickinson, Jr. (the defendant's Head of Business Development) and Keelan Pulliam (the defendant's Manager of Turf and Ornamentals). As is set forth below, these witnesses have testified (1) the Supply and Development Agreement at the center of this lawsuit did not prohibit the plaintiff from exploring the development and marketing of a generic competitor to Bonzi, (2) the plaintiff only explored developing and marketing a generic

---

[1] The parties have received notice from the Court dated October 28, 2004 that plaintiff's motion to dismiss the counterclaims was granted pursuant to Local Rule 9(a) on October 26, 2004. A copy of this order is attached hereto.

{N0723628;2}                                2

competitor to protect itself in the event that the defendant terminated its supply of Bonzi and only focused on marketing a generic competitor when the defendant breached the agreement and cut off the plaintiff's supply of Bonzi, (3) there is no evidence of malice on the part of the plaintiff in filing this lawsuit, and (4) the defendant has suffered no ascertainable competitive harm as a result of this lawsuit or any other vaguely alleged, but as yet unidentified, action taken by the plaintiff.

1. Charles Buffington confirmed that during the existence of the parties' Development and Supply agreement, the plaintiff was free to explore the possibility of bringing a generic brand to market (Buffington, 148-149).[2] Mr. Dickinson also agreed that there was nothing unlawful about plaintiff's exploration of this possibility while it was under contract with the defendant. (Dickinson 102-104.) Indeed, the defendant never claimed that the plaintiff had violated the terms of the development agreement (Pulliam, 58.)

2. Contrary to the defendants' allegations, Mr. Pulliam conceded that he had no basis to believe that the plaintiff's exploration of the possibility of marketing a generic competitor to Bonzi was for the purpose of competing with Bonzi. (Pulliam 143-144.) In fact, Mr. Buffington testified that the defendant anticipated and expected that the plaintiff would attempt to introduce a generic product into the market if the defendant cut off its supply of Bonzi. (Buffington 121, 152-53.) Mr. Dickinson also testified that he had no evidence that the plaintiff was exploring the possibility of bringing a generic product to market for any other purpose than in the event that Syngenta decided to

---

[2] Copies of all cited transcript segments cited are attached.

{N0723628;2}  3

terminate its supply (Dickinson 102-103.) To the contrary, Mr. Dickinson conceded that this was not the case and that he knew that plaintiff only intended to market a generic competitor if the supply of Bonzi was cut off. (Dickinson 136-138, 144-45.) In fact, the plaintiff did not submit for registration of a generic paclobutrazol until 2003, after the termination of the Bonzi supply contract by the defendant (Buffington 148-149). Finally, to date, the plaintiff has not begun sales of a generic competitor. (Pulliam 146.)

Moreover, there was nothing furtive about the plaintiff's exploration of marketing a generic competitor to Bonzi. Mr. Pulliam confirmed that paragraph 16 of the counterclaim, insofar as it alleges "Uniroyal gave no notice to Syngenta that it was [exploring whether to market a generic competitor to Bonzi during the existence of the Supply and Development Agreements]" is unequivocally false. To the contrary, Pulliam explained that the plaintiff had in fact notified the defendant that it was exploring the possibility of marketing its own generic product prior to the termination of the contract (Pulliam 140-141.)

3. Mr. Dickinson believes there is nothing improper about the plaintiff filing a lawsuit if it feels its rights have been violated by the breach of the Development and Supply Agreement and could point to no malicious conduct committed by the plaintiff in response to the termination of the Agreement. (Dickinson 158-59.) Similarly, Mr. Pulliam is not aware of any evidence that supports his belief that the plaintiff has filed this lawsuit in bad faith. (Pulliam 157.)

4. Although the counterclaim vaguely asserts that the plaintiff has done "other things" besides file the lawsuit to interfere with Syngenta's customer relationships,

Mr. Pulliam could not identify any such "other things" (Pulliam 155-156.) Mr. Buffington could not identify any purportedly wrongful conduct on the part of the plaintiff than the filing of this lawsuit, except to the extent that he believes the plaintiff's lawful buying and selling of Bonzi under the development and supply agreement was somehow motivated to "interfere with our business relationship." (Buffington 143-146.) In any event, the only harm flowing from this lawsuit that these witnesses could identify was the "distraction" of it. (Dickinson 113, 118.) Moreover, Mr. Dickinson testified that he had no knowledge of any "scheme" by Uniroyal aimed at interfering with Syngenta's business relationship with its customers. Id. Nor is Mr. Dickinson aware of any customers being lost as a result of the lawsuit or any other conduct alleged in counterclaim. (Dickinson 120-121.) Similarly, Mr. Pulliam is unaware of any calculable financial loss resulting from the plaintiff's actions and cannot identify any customers or sales that have been lost as a result of the plaintiff's actions. (163-164).

Based on the foregoing, it is clear that the defendant's counterclaim is utterly meritless. The information sought in Request No. 10 is not likely to lead to admissible evidence with respect to either the underlying complaint or the counterclaim, and, even if it were, its disclosure would undoubtedly cause economic and competitive harm to the plaintiff. Accordingly, the motion to compel production of documents responsive to request No 10 should be denied. In the alternative, this Court should order production of these documents on an "attorneys' eyes-only" basis.

Respectfully submitted,

THE PLAINTIFF
UNIROYAL CHEMICAL COMPANY, INC. d/b/a CROMPTON MANUFACTURING COMPANY

/s/
_____
Charles F. Corcoran, III (ct 04299)
Anne D. Peterson (ct20181)
Carmody & Torrance LLP
195 Church Street, P.O. Box 1950
New Haven, Connecticut 06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
E-mail: ccorcoran@carmodylaw.com
E-mail: apeterson@carmodylaw.com
*Its Attorneys*

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

| | |
|---|---|
| William A. Ruskin | Paul D. Sanson (Fed. Bar No. ct05477) |
| (Fed. Bar No. ct20898) | Karen T. Staib (Fed. Bar No. ct21119) |
| R. Michael Meo, Jr. | Amy E. Souchuns (Fed.Bar No ct21223) |
| (Fed. Bar No. ct16318) | Shipman & Goodwin LLP |
| Shipman & Goodwin LLP | One Constitution Plaza |
| 300 Atlantic Street | Hartford, CT 06103-1919 |
| Stamford, CT 06901 | Telephone: (860) 251-5000 |
| Telephone: (203) 324-8100 | Facsimile: (860) 251-5600 |
| Facsimile: (203) 324-8199 | E-mail: psanson@goodwin.com |
| E-mail: wruskin@goodwin.com | E-mail: kstaib@goodwin.com |
| E-mail: rmeo@goodwin.com | E-mail: asouchuns@goodwin.com |

/s/
_____
Charles F. Corcoran, III