UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY : : : : : | |
| Plaintiff, : | Civil Action No. 3:02cv02253 (AHN) |
| v. : : : | |
| SYNGENTA CROP PROTECTION, INC. : : | |
| Defendant. : | JANUARY 5, 2005 |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENA

Defendant Syngenta Crop Protection, Inc. ("Syngenta") respectfully submits this Memorandum in Opposition to plaintiff Uniroyal Chemical Company, Inc.'s ("Uniroyal") Motion for Protective Order and/or to Quash Subpoena dated November 15, 2004. The documents sought by the subpoena duces tecum served upon former Uniroyal employee Dr. F. David Judge are highly relevant to the issues presented in this case. Production of those documents does not unduly burden Uniroyal or Dr. Judge, and the subpoena should be permitted to stand.

### BACKGROUND

Uniroyal commenced this action against Syngenta by Complaint dated December 19, 2002. Plaintiff's Complaint stems from its allegations that Syngenta breached two agreements entered into between the parties in January 1991, a Development Agreement and a Supply Agreement. By those agreements, Syngenta granted to Uniroyal, for a certain time

period and under certain terms and conditions, the right to sell Syngenta's chemical plant growth regulator paclobutrazol, sold under the trade name "Bonzi," and to develop, sell and market new uses and formulations of Bonzi pursuant to strictly defined contractual parameters.

The Development Agreement granted to Uniroyal the "exclusive right to develop, register, market and sell new uses of Bonzi," for various defined "permitted uses." It also provided sales and marketing rights to Uniroyal for five years from the date of registration of any new use or formulation in consideration of certain annual expenditures by Uniroyal. On June 26, 2002, Syngenta advised Uniroyal, in accordance with the agreement's terms, that the Supply Agreement would terminate effective December 31, 2002.

Through discovery in this matter, Syngenta has learned that during the period of the agreements, Uniroyal began research and development of a generic competitor to Bonzi. Moreover, it discovered that Uniroyal had failed to satisfy several of its obligations under the Supply and Development Agreements. In July 2004, Syngenta filed counterclaims against Uniroyal based upon its conclusion that this lawsuit is a sham, designed to limit competition against Uniroyal's own proposed generic paclobutrazol. Syngenta accordingly has filed discovery requests on the issues related to its counterclaims, including Uniroyal's development of its generic pacobutrazol competitor to Bonzi.

In November 2004, Syngenta served a subpoena duces tecum (the "Subpoena") on Dr. F. David Judge, Uniroyal's former head of product development. Among the documents requested by the Subpoena are those related to Uniroyal's development of a generic paclobutrazol product. By agreement of the parties, Dr. Judge was deposed on December 23,

2004, subject to Uniroyal's Motion for Protective Order and/or to Quash Subpoena. At his deposition, Dr. Judge testified that the only documents in his possession responsive to the Subpoena were several personal notebooks, or "diaries" kept by him during his employment at Uniroyal. However, rather than producing these notebooks in their entirety, Dr. Judge, with the assistance of Uniroyal's counsel, produced only a limited number of pages that Uniroyal -- in its sole discretion -- deemed relevant to this lawsuit. Specifically omitted from those pages were any references to Uniroyal's development of generic paclobutrazol, which information goes to the very heart of Syngenta's counterclaims.

Separate and apart from the subpoenaed documents' relevance to Syngenta's counterclaims, the notebooks also are relevant to Syngenta's defense against Uniroyal's claims. The notebooks could have bearing on several key issues, including the uses developed by Uniroyal during the term of the agreements; costs incurred by Uniroyal to develop new Bonzi uses; steps taken by Uniroyal to ensure field trial data remained proprietary; and cooperator agreements with third party entities for the testing of potential new Bonzi uses. Thus, Syngenta's need for these documents goes beyond the scope of its counterclaims and also involves its ability to present an adequate defense.

## ARGUMENT

### The Documents Requested in the Judge Subpoena Are Highly Relevant and Do Not Pose an Undue Burden on Uniroyal or Dr. Judge

Federal Rule of Civil Procedure 45 governs a motion to quash. "(T)he rule provides that the court may order production of such documents under specified conditions where the party on whose behalf the subpoena is issued shows a substantial need for the material

3

and that it is unable to meet that need without undue hardship. Fed. R. Civ. P. 45(c)(3)(B)(iii). The court may consider a movant's non-party status when weighing the burdens imposed in connection with the subpoena at issue." SEC v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268, 269 (D.Conn. 1996) (citing Katz v. Batavia Marine & Sporting Supplies Inc., 984 F.2d 422, 424 (Fed. Cir. 1993)).

To develop its defense, Syngenta has served numerous discovery demands on Uniroyal beginning in March 2003. Those requests have sought information and documents related to Uniroyal's research and development expenditures for new uses of Bonzi; Uniroyal's alleged development of new Bonzi uses; persons with knowledge of the allegations of Uniroyal's Complaint; and the development of a generic Bonzi competitor. However, Uniroyal has repeatedly objected to many of these requests, delayed its responses and refused to produce information without intervention by the Court. Yet at no point since discovery began did Uniroyal disclose the Judge notebooks or their existence, which are certainly relevant, even if they do in fact contain proprietary or confidential information.

Uniroyal argues that the notebooks sought by Syngenta contain confidential and proprietary information and therefore they should either not be produced or produced with redactions and subject to a protective order. See Memorandum of Law in Support of Motion for Protective Order and/or to Quash Subpoena dated November 15, 2004, at 3 (the "Memorandum"). However, Uniroyal has offered nothing more than unsupported statements to explain why the notebooks are irrelevant, or why compliance with the Subpoena constitutes an undue burden. Dr. Judge is a local resident who resides in Cheshire, Connecticut. His

notebooks are easily accessible; they are not stored on an antiquated computer system or in a remote archive facility. It would be quite simple to produce them.[1]

What is not evident from Uniroyal's Motion and Memorandum is the relevance of Judge's notebooks to the issues raised in Uniroyal's Amended Complaint and Syngenta's counterclaims, as well as the clear failure of Uniroyal to produce them during discovery. Dr. Judge was a high level employee of Uniroyal for many years. During that tenure, he was intimately involved with product use, development and sales. In fact, during the deposition of Uniroyal employee Kevin Donovan, the Uniroyal employee primarily responsible for Bonzi development, he stated that Judge was his immediate supervisor and he had relied in part upon Judge for documents responsive to Syngenta's discovery requests. In light of his position, the notebooks Judge kept during the course of his employment most likely contain highly relevant information about Uniroyal's development of new Bonzi uses, research into a generic paclobutrazol and development expenditures with respect to Bonzi. As the diaries are Dr. Judge's own records, it is clear that Syngenta would not be able to obtain these documents from any other source or in any other manner.

Moreover, Uniroyal has advised the Court in oral argument and in written submissions that many of the documents sought by Syngenta were destroyed during a recent corporate office relocation. Thus, these notebooks may be the only remaining written evidence of key issues in this case. There is also a substantial need for them in light of their relevance to

---

[1] In fact, Dr. Judge did bring his original notebooks to his deposition on December 23, 2004. However, they were not "produced," and Syngenta's counsel was not given access to them (other than to confirm their identity).

both Syngenta's defense and its counterclaims, particularly its allegation that this lawsuit is a pretext to minimize competition with Uniroyal's generic paclobutrazol. Consequently, the subpoena must be permitted to stand.

Although these notebooks might contain confidential or proprietary information, a mechanism already exists to protect that detail: the confidentiality order entered into by the parties and awaiting the Court's signature. Uniroyal asserts that because the Court has not yet ruled on the pending Motion to Strike and Dismiss Counterclaims dated August 19, 2004, the generic paclobutrazol information is "proprietary and a trade secret." See Memorandum at 3. This position is undermined by the very agreement that allows the parties to provide information without fear of public disclosure. At Syngenta's urging, the parties developed and finalized the terms by which trade secrets or proprietary information will be protected during this litigation. Dr. Judge's notebooks can be produced as Level III "attorneys' eyes only" documents, which would satisfy Syngenta's desire for disclosure while resolving Uniroyal's concern about confidentiality. Uniroyal's argument about the Judge notebooks is disingenuous at best and arguably evasive given the confidentiality order it has agreed to enter to resolve precisely this type of issue without repeated Court involvement.

Taken as a whole, Uniroyal's Motion should be viewed skeptically by this Court. Dr. Judge's notebooks are undoubtedly relevant to the issues presented in this case and should have been provided in response to Syngenta's discovery requests to Uniroyal, not through its Subpoena to Dr. Judge. This omission leads Syngenta to question the thoroughness of Uniroyal's document review and responses. Moreover, this Motion is baseless in light of the

parties' confidentiality order. When Uniroyal seeks a "protective order" for any proprietary information, it fails to acknowledge that such an order already exists. Consequently, there is no basis to quash the Judge Subpoena.

## CONCLUSION

Uniroyal has failed to demonstrate that the Judge Subpoena should be quashed. Given Dr. Judge's role at Uniroyal, any information he has will likely be highly relevant to these proceedings. Uniroyal made no attempt to explain how or why these notebooks are irrelevant. The alternative position -- entry of a protective order -- needs no action by this Court; the existing confidentiality agreement resolves this concern. Accordingly, Syngenta respectfully requests that the Court deny the Motion.

DEFENDANT,
SYNGENTA CROP PROTECTION, INC.

By /s/
William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo, Jr. (Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: wruskin@goodwin.com
E-mail: rmeo@goodwin.com

and

Amy E. Souchuns (Fed. Bar No. ct21223)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103-1919
Phone: (860) 251-5000
Fax:    (860) 251-5318
E-mail:  asouchuns@goodwin.com
Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition was sent via U.S. Mail, postage prepaid, on this 5th day of January 2005, to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

_____
R. Michael Meo, Jr.

390320 v.01