UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
UNIROYAL CHEMICAL COMPANY, INC. :
d/b/a CROMPTON MANUFACTURING :
COMPANY :
: Civil Action No.
Plaintiff, : 3:02CV02253 (AHN)
:
v. :
:
SYNGENTA CROP PROTECTION, INC. :
:
Defendant. : MAY 5, 2005
------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
### OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**DEFENDANT SYNGENTA
CROP PROTECTION, INC.**

**Respectfully Submitted by:**

William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo, Jr. (Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT 06901
(203) 324-8100 (Tel.)
(203) 324-8199 (Fax)
wruskin@goodwin.com
rmeo@goodwin.com
Its Attorneys

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| **TABLE OF AUTHORITIES** | i-ii |
| **PRELIMINARY STATEMENT** | 1 |
| **FACTS** | 2 |
|     **The Parties** | 2 |
|     **The Agreements** | 3 |
|         **The Supply Agreement** | 3 |
|         **The Development Agreement** | 5 |
|         **Uniroyal's Rights Expired on July 15, 1998** | 8 |
|         **Termination of the Agreements** | 9 |
|     **Uniroyal's Claims** | 9 |
| **ARGUMENT** | 10 |
|     **Point I** | 10 |
|         **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE, PURSUANT TO THE DEVELOPMENT AGREEMENT, UNIROYAL'S RIGHTS TO ANY "NEW USES" IT DEVELOPED HAVE EXPIRED** | 10 |

**Point II** .................................................................................... 17

    IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE UNIROYAL'S CLAIMS MUST BE LIMITED TO THOSE PLANTS AND PRODUCT USE SITES DESIGNATED BY THE SUPPLY AGREEMENT AND DEVELOPMENT AGREEMENT .......................... 17

**Point III** ................................................................................... 22

    SUMMARY JUDGMENT SHOULD BE GRANTED AS TO EACH OF UNIROYAL'S REMAINING NON-CONTRACTUAL CAUSES OF ACTION ......... 22

    A.    Conversion............................................................ 22

    B.    Breach of the Covenant of Good Faith and Fair Dealing ................................................. 23

    C.    Promissory Estoppel ........................................... 25

    D.    Unjust Enrichment .............................................. 26

    E.    CUTPA Violation ................................................ 27

**CONCLUSION**.................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

Arnold v. Society for Sav. Bancorp, 678 A.2d 533 (Del. 1996) ........................................... 23

Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 520 A.2d 1008 (1987) .................. 28

Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024 (Del., 2003) ............................. 26

Comrie v. Enterasys Networks, Inc., 837 A.2d 1 (Del. Ch. 2003) ................................. 12, 14

Council of Dorset Condo. Apartments v. Gordon, 801 A.2d 1 (Del. 2002) .......................... 13

Demetree v. Commonwealth Trust Co., No. 14353, 1996 Del. Ch. LEXIS 112
(Del. Ch. Aug. 27, 1996) ......................................................................................... 12

Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 635 A.2d 843 (1993) ....................... 23

Drug, Inc. v. Hunt, 168 A. 87 (1933) ................................................................................ 23

D'Ulisse-Cupo v. Board of Dir. of Notre Dame High Sch., 202 Conn. 206, 520 A.2d 217
(1987) ..................................................................................................................... 25

Dwight v. JP Morgan Chase Bank, No. 3:03-CV-117 (JCH), 205 U.S. Dist. LEXIS 5351
at *14 (D. Conn., Mar. 31, 2005) ............................................................................. 23

Eagle Indus. v. DeVilbiss Health Care, 702 A.2d 1228 (Del. 1997) .................................... 13

Felekey v. AT&T, No. 3:02-CV-691 (CFD), 2004 U.S. Dist. LEXIS 25443 (D. Conn.,
2004) ...................................................................................................................... 24

Gagne v. Vaccaro, 255 Conn. 390, 766 A.2d 416 (2001) ................................................... 27

General Motors Corp. v. Watson Enters., Inc., No. 04 CV 120 (WWE), 2004 U.S. Dist.
LEXIS 22166, at *10 (D. Conn., Oct. 27, 2004) ........................................................ 25

Greater Eastern Transport LLC v. Waste Mgmt. of Conn., Inc., 211 F. Supp. 2d 499
(S.D.N.Y. 2002) ...................................................................................................... 16

H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129 (Del. Ch. 2003) ..................................... 11

Hoskins v. Titan Value Equities Group, Inc., 252 Conn. 789, 749 A.2d 1144 (2000) .......... 24

InteractiveCorp. v. Vivendi Universal, S.A., No. 20260, 2004 Del. Ch. LEXIS 90, at *30 (Del. Ch. June 30, 2004) ............ 12, 20

Interim Healthcare, Inc. v. Spherion Corp., 2005 Del. Super. LEXIS 32 (Del. Super. Ct. Feb. 4, 2005) ............ 13, 14

Kaiser Aluminum Corp. v. Matheson, 681 A.2d 392 (Del. 1996) ............ 12, 13, 14, 20, 21

Lawrence v. The Richman Group Capital Corp., 358 F. Supp. 2d 29 (D. Conn. 2005) ............ 22, 24, 26, 28

Lord v. Souder, 748 A.2d 393 (Del. 1999) ............ 26

Macomber v. Travelers Property & Casualty Corp., 261 Conn. 620, 804 A2d. 180 (2002) ............ 23

Motorola, Inc. v. Amkor Tech, Inc., 849 A2d. 931 (Del. 2004) ............ 13

O'Brien v. Progressive Northern, Ins. Co., 785 A.2d 281 (Del. 2001) ............ 13

Reznitsky v. Phoenix Systems Integration, LLC, No. 020395725S, 2004 Conn. Super. LEXIS 2319 (Conn. Super. Ct., Aug. 16, 2004) ............ 24

Rhone-Polenc Basic Chems. Co. v. American Motorists Ins. Co., 616 A.2d 1192 (Del. 1992) ............ 12, 13

Sanders v. Devine, No. 14679, 1997 Del. Ch. LEXIS 131 at *19 (Del. Ch. Sept. 24, 1997) ............ 24

Schock v. Nash, 732 A.2d 217 (Del. 1999) ............ 27

Sussex Equipment Co. v. Anderson, No. 75,2004, 2004 Del. LEXIS 492, at *3 (Del. Sept. 22, 2004) ............ 12

Torringford Farms Ass'n v. City of Torrington, 75 Conn. App. 570, 816 A.2d 736 (2003), cert. denied, 263 Conn. 524, 821 A.2d 247 (2003) ............ 25

True North Communications, Inc. v. Publicis, S.A., 711 A.2d 34 (Del. Ch. 1997), aff'd, 705 A.2d 244 (Del. 1997) ............ 14, 21

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
UNIROYAL CHEMICAL COMPANY, INC. :
d/b/a CROMPTON MANUFACTURING :
COMPANY :
                                                      : Civil Action No.
       Plaintiff,                         : 3:02CV02253 (AHN)
                                                      :
       v.                                   :
                                                      :
SYNGENTA CROP PROTECTION, INC.   :
                                                      :
       Defendant.                       : MAY 5, 2005
------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
### OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

#### Preliminary Statement

       Defendant Syngenta Crop Protection, Inc. ("Syngenta") is entitled to summary judgment on each and every remaining count of the Complaint filed by plaintiff Uniroyal Chemical Company, Inc., d/b/a Crompton Manufacturing Company ("Uniroyal"). Uniroyal's Complaint seeks damages based on two agreements that were properly terminated. As a matter of fact and a matter of law, any residual rights Uniroyal may have been granted under those

agreements have expired. Uniroyal has no valid claims, and summary judgment should enter in favor or Syngenta.

Even if the Court were to find that Uniroyal had some remaining rights under those agreements, it is undisputed that the scope of those agreements is limited to those areas specifically designated in the agreements. As such, Uniroyal cannot recover for alleged damages that are not contained within the scope of the agreements. Accordingly, Syngenta is at least entitled to a partial summary judgment, limiting the scope of Uniroyal's claims.

## FACTS[1]

### The Parties

Uniroyal and Syngenta are both businesses that manufacture and sell a variety of chemical products, including those used in the growing and care of plants. In approximately 1990, Syngenta's predecessor-in-interest, ICI Americas, Inc. ("ICIA"), discussed with Uniroyal the possibility of ICIA licensing to Uniroyal a plant growth regulator ("PGR") called "Bonzi." See Amended Complaint dated May 18, 2004 (the "Complaint"), ¶¶ 26-28. ICIA owned the patent to Bonzi's underlying chemical compound, paclobutrazol, and also owned the

---

[1] Citations to all facts are set forth in defendant's accompanying Local Rule 56(a)1 Statement, unless otherwise indicated.

trademark to the name "Bonzi." See Complaint, ¶ 9. Bonzi is used to regulate the size and appearance of ornamental plants. See Complaint, ¶ 10.

As a result of their discussions, ICIA and Uniroyal entered into two agreements titled, respectively, the Bonzi Chemical Supply Agreement (the "Supply Agreement") and the Bonzi Development Agreement (the "Development Agreement"). As their titles suggest, the Supply Agreement governs the purchase and sale of Bonzi between the parties, while the Development Agreement governs Uniroyal's development of new uses for Bonzi.

## The Agreements

### The Supply Agreement

In the Supply Agreement, ICIA agreed to sell and deliver paclobutrazol exclusively to Uniroyal. In exchange, Uniroyal agreed to purchase and receive paclobutrazol exclusively from ICIA. ICIA also granted to Uniroyal the right to sell Bonzi in a contractually defined "Marketing Area," and to develop, register, sell and market Bonzi in the Marketing Area for certain contractually defined "Permitted Uses."

The "Marketing Area" and "Permitted Uses" are defined in paragraph 1.2 of the Supply Agreement, which also addresses Uniroyal's rights regarding the development of new uses of Bonzi. Specifically, paragraph 1.2 provides that,

>Except for Product purchased by others from ICIA prior to January 1, 1991, Uniroyal shall have the exclusive right to sell ICIA Product for presently registered uses as determined by the current U.S. approved label attached hereto as Exhibit B, in the U.S. and its territories (hereinafter "Marketing Area") on an exclusive basis and Uniroyal shall have the exclusive right to develop, register, sell and market ICIA product in the Marketing Area for use on **woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes,** excluding turf and commercial rights of way (hereinafter "Permitted Use"). Uniroyal shall also have the exclusive right to develop, register, sell and market new formulations of ICIA Product, such as spikes and granules, in The Marketing Area for the Permitted Use.

See Supply Agreement, ¶ 1.2, Exh. C to the accompanying Affidavit of William A. Ruskin dated May 5, 2005 (the "Ruskin Aff.") (emphasis added).

Paragraph 1.2 of the Supply Agreement provided Uniroyal the right to "sell" Bonzi on an exclusive basis for all "presently registered uses as determined by the current U.S. approved label," but specifically limited the plants and product use sites for which Uniroyal was provided the right to "develop" new Bonzi uses to only "woody ornamental fruit trees, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes." As paragraph 1.2 makes evident, Uniroyal had the exclusive right to sell Bonzi "for presently registered uses as determined by the current U.S. approved label," in contrast to Uniroyal's right to develop new uses for Bonzi to more specifically defined categories of plants and product use sites. This important distinction is drawn repeatedly throughout the Supply Agreement and the Development Agreement.

4

The term of the Supply Agreement was from January 1, 1991 to December 31, 1996. Thereafter, the Supply Agreement was continued for successive annual terms unless either party terminated the Supply Agreement on 180 days written notice. Except for the requirement of 180 days written notice, the right of either party to terminate the Supply Agreement during the successive annual terms is unconditional.

**The Development Agreement**

Pursuant to the Development Agreement, Uniroyal was granted the exclusive right to develop and register new uses and formulations[2] of Bonzi for use in a defined "Development Field":

> ICIA grants to Uniroyal the exclusive right to develop, register, market and sell new uses of Bonzi on **woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes** in the U.S. and its territories excluding turf and commercial rights of way. ICIA further grants to Uniroyal exclusive rights to develop and register new ICIA Product formulations such as spikes and granules in the U.S. and its territories for use on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes in the U.S. and its territories excluding turf and commercial rights of way (hereinafter the "Development Field").

---

[2] The Development Agreement provides that "Uniroyal shall retain all marketing and sales rights to any new use or formulation which it develops under this Agreement." In the Complaint, Uniroyal does not allege that it developed any new formulations of Bonzi, and therefore Syngenta omits all further references to "new formulations" throughout this memorandum.

5

See Development Agreement, ¶ 2, Exh. B to Ruskin Aff. (emphasis added).[3] The list of plants and product use sites to which Uniroyal had exclusive development rights -- i.e., woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes -- is identical in both the Supply and Development Agreements. Although those agreements did not restrict in any way Uniroyal's ability to develop new uses for any type of plant and product use site in the course of its promotion and marketing of Bonzi, Uniroyal was not granted any residual rights for new Bonzi uses it developed for any plants or product use sites that did not fall within these designated categories, which were collectively defined as the "Development Field."

---

[3] In paragraph 36 of the Complaint, plaintiff alleges that, "The development agreement granted to plaintiff the exclusive right to 'develop, register, market and sell' 'Bonzi®' for new uses, in addition to the then current EPA registered uses: **greenhouse flowers**; said new uses were to include use on woody ornamentals, shrubs, shade trees, and interior and exterior landscapes in the U.S. and its territories, excluding turf and commercial rights of way." Complaint, ¶ 36 (emphasis added).

However, "greenhouse flowers" are not discussed anywhere in the Development Agreement. Rather, Uniroyal improperly attempts to add "greenhouse flowers" to the "Development Field" by gratuitously adding these types of plants, which is nowhere discussed in the agreements at issue, in an unwarranted attempt to inflate its claim. The front panel of the ICIA Bonzi label at the time the Development Agreement was entered into states that the product was "for use on container-grown flower and bedding plants grown in greenhouses and shade houses." See Complaint, ¶¶ 16, 17 and 34; ICIA label attached as Exhibit C to Complaint, and as Exhibit D to Ruskin Aff. Thus, Bonzi was already registered for use on container-grown flower and bedding plants grown in greenhouses.

6

The Development Agreement granted to Uniroyal marketing and sales rights for certain new uses of Bonzi it developed within the "Development Field" and "as defined in Section 1.2 of the Supply Agreement" as follows:

> For each new use and formulation developed by Uniroyal for use in the Development Field, ICIA will grant to Uniroyal marketing and sales rights as defined in Section 1.2 of the Bonzi Chemical Supply Agreement. **Said marketing and sales rights shall be granted for 5 years from the date of registration of any new use or formulation.** Uniroyal shall retain all marketing and sales rights to any new use or formulation which it develops under this Agreement. This provision shall survive the termination of this Agreement provided termination is not the result of any breach by Uniroyal of this Agreement or the Supply Agreement.

See Development Agreement, ¶ 4 (emphasis added).

The Development Agreement expired by its own terms on December 31, 1996, and does not provide for any annual renewal periods. Therefore, Uniroyal's rights to develop "new uses" of Bonzi terminated on December 31, 1996. Uniroyal's residuary rights to market and sell Bonzi for "new uses" it developed for Bonzi terminated five years after each "new use" was registered. After the contractual five year period expired, Uniroyal continued to have the exclusive right to sell Bonzi for all registered label uses, and the freedom to develop new Bonzi uses to better promote and market the product for however longer the Supply Agreement remained in effect. However, under the terms of the agreement, Uniroyal's residuary "marketing and sales rights" for new uses it developed pursuant to Paragraph 4 of

7

the Development Agreement expired five years "from the date of registration" of those new uses.

**Uniroyal's Rights Expired on July 15, 1998**

Uniroyal states in its responses to interrogatories that all of the new Bonzi uses it claims to have developed were registered on July 15, 1993. See Chart attached and incorporated by reference by Uniroyal as an exhibit to its response to Interrogatory No. 1 in its Supplemental Responses to Defendant's First Set of Interrogatories and Second Request for Production of Documents, dated July 24, 2003, and sworn to by Laureen C. Treu on July 21, 2003, Exh. J. to Ruskin Aff.

The deposition of Kevin Donovan, Uniroyal's Technical Manager and Manager of Product Development for Specialty Products, was taken on May 14, 2004. Uniroyal designated Mr. Donovan pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to testify on the corporation's behalf concerning, inter alia, "new uses of Bonzi that Uniroyal developed pursuant to the terms of the Development Agreement."

After testifying concerning how he assembled the information on the chart attached to Uniroyal's interrogatory response, Mr. Donovan testified that all of the new uses for Bonzi which Uniroyal claims it developed for use in the Development Field were approved by the United States Environmental Protection Agency ("EPA") on July 15, 1993. Moreover,

he testified that the Uniroyal label that resulted from the July 15, 1993 approval by EPA contained all of the new uses which Uniroyal claims in this case Syngenta should not be permitted to have on its label. See Depo. of Kevin Donovan, May 14, 2004 at 59-65, Exh. I to Ruskin Aff. Therefore, all of Uniroyal's Bonzi marketing and sales rights to which it lays claim in this litigation expired no later than July 15, 1998, the five year anniversary of the registration of those new uses with the EPA.

**Termination of the Agreements**

In 2002, Syngenta's business plan for Bonzi changed, and it decided to bring the marketing and sale of Bonzi back in-house. Syngenta's business decision necessitated the termination of the Supply Agreement relationship with Uniroyal. This decision was, in part, motivated by the imminent entry into the marketplace of a generic paclobutrazol product to compete with Bonzi. Syngenta believed it was better able than Uniroyal to sell Bonzi in a market with generic brand competition. Accordingly, on June 26, 2002, Syngenta sent a letter to Uniroyal notifying it that the Supply Agreement would terminate as of December 31, 2002.

**Uniroyal's Claims**

On the eve of the Supply Agreement's termination, in December 2002 Uniroyal commenced this action against Syngenta. On or about May 18, 2004, Uniroyal filed its Amended Complaint. The operative Amended Complaint sets forth seven counts, all based on

9

Syngenta's termination of the Development Agreement and Supply Agreement and its decision to sell Bonzi under its own label. Those claims include: breach of contract; conversion; breach of the covenant of good faith and fair dealing; promissory estoppel; unjust enrichment; and violation of the Connecticut Unfair Trade Practices Act (CUTPA).[4]

As set forth below, each of Uniroyal's claims fails as a matter of law. Because there is no genuine issue as to any material fact, Syngenta is entitled to summary judgment dismissing each remaining count of Uniroyal's Complaint.

## ARGUMENT

### POINT I

**SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE, PURSUANT TO THE DEVELOPMENT AGREEMENT, UNIROYAL'S RIGHTS TO ANY "NEW USES" IT DEVELOPED HAVE EXPIRED**

At the heart of this dispute is Uniroyal's claim that Syngenta has breached the parties' agreements by marketing and selling Bonzi for uses to which Uniroyal claims it still

---

[4] An additional count, for violation of the Delaware Franchise Security Law, was dismissed by the Court (Nevas, J.) on September 30, 2003.

retains exclusive rights.  Under Delaware law,[5] to establish a breach of contract claim, the plaintiff must plead and prove: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff."  H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003).[6]

The parties do not dispute the existence of the contracts at issue here.  Rather, the issue before the Court is whether Uniroyal's marketing and sales rights for new uses of Bonzi have expired, or whether those rights exist in perpetuity.  The clear language of the Development Agreement provides that it terminated on December 31, 1996, and that Uniroyal's rights to the new uses it developed terminated five years from their registration date.  Because Uniroyal concedes that all of its claimed new Bonzi uses were registered on July 15, 1993, Uniroyal's marketing and sales rights to new Bonzi uses expired no later than July 15, 1998, several years prior to Syngenta's termination of the Supply Agreement on December 31, 2002.  Accordingly, there is no genuine issue of material fact as to Uniroyal's rights to the

---

[5] Pursuant to its terms, the Supply Agreement and performance thereunder "shall be construed and governed by the laws of the State of Delaware."  Supply Agreement, ¶ 11.3.  Similarly, pursuant to its terms, the validity, construction and performance of the Development Agreement "shall be governed by the internal laws of the State of Delaware."  Development Agreement, ¶ 11.

[6] Copies of all Delaware and other unreported decisions are attached hereto in alphabetical order.

11

new uses, and Syngenta is entitled to judgment as a matter of law.

It is well-settled that where, as here, a party to a contract alleges a breach by the other, the Court must examine the language of the contract to determine whether the parties' intent can be discerned from the contract's express terms. See Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 13 (Del. Ch. 2003). In construing a contract, the primary objective for any court is "to give effect to the parties' intent." Sussex Equip. Co. v. Burke Equip. Co., No. 75,2004, 2004 Del. LEXIS 492, at *3 (Del. Sept. 22, 2004). The determination of the parties' rights and obligations under the contract is a question of law to be resolved by the courts. Id. (citing Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992)).

The standard rules of contract interpretation require a court to determine the intent of the parties from the language of the contract. See Kaiser Aluminum Corp. v. Matheson, 681 A.2d 392, 395 (Del. 1996). If the language of a contract is clear on its face, "the Court will rely solely on the clear, literal meaning of those words." InteractiveCorp. v. Vivendi Universal, S.A., No. 20260, 2004 Del. Ch. LEXIS 90, at *30 n. 42 (Del. Ch. June 30, 2004) (citing Demetree v. Commonwealth Trust Co., No. 14354, 1996 Del. Ch. LEXIS 112 (Del. Ch. Aug. 27, 1996). "Contract terms ... [are] ... controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have

no expectations inconsistent with the contract language." Eagle Indus. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997); see Motorola, Inc. v. Amkor Tech, Inc., 849 A.2d 931, 938 (Del. 2004).

"As a general rule, whenever it is possible, a court must preserve the reasonable expectations that form the basis of the parties' contractual relationship." Motorola, 849 A.2d at 938 (citations omitted). Therefore, in determining the intent of the parties, a contract should "be read as a whole and, if possible, interpreted to reconcile all of the provisions of the document." Kaiser Alum. Corp., 681 A.2d at 395 (citations omitted); see also Council of Dorset Condo. Apartments v. Gordon, 801 A.2d 1, 7 (Del. 2002) (the Court "[m]ust interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole").

Where the language of a contract clearly and unambiguously reflects the parties' intent, "the Court's interpretation of the contract must be confined to the document's 'four corners.'" Interim Healthcare, Inc. v. Spherion Corp., No. 00C-09-180-JRS, 2005 Del. Super. LEXIS 32, at *93 (Del. Super. Ct. Feb. 4, 2005) (citing O'Brien v. Progressive Northern Ins. Co., 785 A.2d 281, 288-89). A contract is not rendered ambiguous simply because the parties disagree upon the meaning of its terms. See Interim Healthcare, Inc., 2005 Del. Super. LEXIS 32, at *92; Eagle Indus., Inc., 702 A.2d at 1233, n.8 (citing Rhone-

13

Poulenc, 616 A.2d at 1196); Kaiser Aluminum Corp., 681 A.2d at 395. "Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Kaiser Aluminum Corp., 681 A.2d at 395. "[T]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Id.; see also Interim Healthcare, Inc., 2005 Del. Super. LEXIS 32, at *93 (citing Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 13 (Del. Ch. 2003)) (If the terms of the contract are clear on their face, "the Court must apply the meaning that would be ascribed to the language by a reasonable third party."); True North Communications, Inc. v. Publicis S.A., 711 A.2d 34, 38 (Del. Ch. 1997), aff'd, 705 A.2d 244 (Del. 1997).

Here, the Development Agreement clearly and unambiguously provides that Uniroyal's marketing and sales rights to new uses of Bonzi it developed are limited to a five year term. The second sentence of paragraph 4 of that agreement states: "**Said marketing and sales rights shall be granted for 5 years from the date of registration of any new use or formulation.**" There is nothing unclear or ambiguous about that language. As set forth above, where the language of a contract is clear and unambiguous, the Court must give effect to its clear terms. Given the plain language of the Development Agreement, any reasonable person would expect that Uniroyal's marketing and sales rights to "new uses" would be subject

14

to a five-year window. The Court should not torture this contract language to import ambiguity where the ordinary meaning of the terms of the contract leaves no room for doubt or ambiguity. The Court also must read meaning into each provision of the Development Agreement. Any interpretation that Uniroyal's rights would exist in perpetuity is inconsistent with the clear contract language, and would assume that the parties intended to insert inconsistent and contradictory provisions into the Development Agreement. As a matter of law, such an interpretation cannot be sustained.

Uniroyal's claim that it is entitled to rights to the new uses in perpetuity appears to be based on the third and fourth sentences of paragraph four of the Development Agreement: "Uniroyal shall retain all marketing and sales rights to any new use or formulation which it develops under this Agreement. This provision shall survive the termination of this Agreement provided termination is not the result of any breach by Uniroyal of this Agreement or the Supply Agreement." However, this language does not create rights in perpetuity to new uses of Bonzi developed by Uniroyal, particularly when read together with the rest of paragraph four. It merely says that Uniroyal shall retain certain rights; not that it shall retain those rights **forever**. Indeed, there is no temporal reference in the third sentence whatsoever, which makes sense because the time limitation -- five years -- is already set forth in the immediately preceding sentence. The fourth and last sentence of paragraph 4 similarly

15