does not grant or even suggest the granting of perpetual rights. The purpose of stating that this provision survives the termination of the Development Agreement is clear: it is to ensure that Uniroyal's five-year window of exclusivity extends beyond that agreement's December 31, 1996 termination date (but not more than five years beyond).[7]

Uniroyal's position completely ignores, and is entirely inconsistent with, the second sentence of paragraph 4. Uniroyal's interpretation of paragraph 4 cannot be reconciled with the five year limitation set forth in that paragraph's second sentence. To paraphrase one Court in this Circuit, "[Uniroyal's] reading ... requires a determination that effectively nullifies some language of the Agreement as either meaningless or surplusage, and to that extent, solely on the basis of one party's interpretation, frustrates a plausible construction of the entire clause and the expectation associated with such a complete provision." Greater Eastern Transport, LLC v. Waste Management of Connecticut, Inc., 211 F.Supp.2d 499, 504 (S.D.N.Y. 2002)

---

[7] For example, if Uniroyal developed and registered a new use on December 30, 1996, paragraph 4 would grant Uniroyal exclusive marketing and sales rights to that new use for five years, through December 30, 2001, notwithstanding that the Development Agreement expired on December 31, 1996. However, a new use developed and registered by Uniroyal on January 1, 1997 would carry no five year exclusive marketing and sales rights. However, this point is moot because Uniroyal admits that all the new uses to which Uniroyal claims exclusive rights were developed and registered no later than July 15, 1993, meaning those rights expired no later than July 15, 1998.

(granting summary judgment to defendant based on the plain language of the parties' contract).[8]

The plain language of the Development Agreement provides that the rights Uniroyal seeks to enforce expired no later than five years following registration of the new uses with the EPA. As a matter of law, Uniroyal no longer retains any marketing or sales rights to Bonzi. Accordingly, Syngenta is entitled to summary judgment on Uniroyal's breach of contract count, as well as every other remaining count of the Complaint.[9]

## POINT II

### IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE UNIROYAL'S CLAIMS MUST BE LIMITED TO THOSE PLANTS AND PRODUCT USE SITES DESIGNATED BY THE SUPPLY AGREEMENT AND DEVELOPMENT AGREEMENT

In the event that the Court denies Syngenta's Motion for Summary Judgment based on the expiration of Uniroyal's marketing and sales rights with regard to "new uses," Syngenta should still be granted partial summary judgment limiting the scope of Uniroyal's

---

[8] Furthermore, accepting Uniroyal's interpretation would effectively nullify the Supply Agreement, and the termination provision therein. If Uniroyal did have ongoing rights to new uses of Bonzi lasting indefinitely, it would need to acquire that product from Syngenta pursuant to the Supply Agreement. Under such a scenario, the Supply Agreement could never be terminated, and section 2.1 of that agreement would be rendered meaningless.

[9] See Point III, infra.

claim to those "new uses" which are specifically authorized by the Supply Agreement and the Development Agreement.

In the Complaint, Uniroyal makes allegations regarding Uniroyal's rights as laid out in the Supply Agreement. Most notably, the Complaint alleges, "In the supply agreement, defendant granted to plaintiff the exclusive right to develop, register and sell the product in the 'Marketing Area' for use on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interior and exterior landscapes excluding turf and commercial rights of way." Complaint, ¶ 48. Plaintiff further alleges that the Supply Agreement grants Uniroyal the exclusive right to "develop, register, sell and market new formulations of 'Bonzi®' in the marketing area for the described uses." Complaint, ¶ 49.

However, despite the clear definitions both of the described "development" uses in the Supply Agreement, and of "Development Field" in the Development Agreement, Uniroyal claims it retained marketing and sales rights to plants and product use sites that are nowhere discussed in those agreements. Specifically, in paragraph 36 of the Complaint, Uniroyal alleges that,

> The development agreement granted to plaintiff the exclusive right to 'develop, register, market and sell' 'Bonzi®' for new uses, in addition to the then current EPA registered uses: **greenhouse flowers**; said new uses were to include use on woody ornamentals, shrubs, shade trees, and interior and exterior landscapes in the U.S. and its territories, excluding turf and commercial rights of way."

18

Complaint, ¶ 36 (emphasis added).

Paragraph 36 of the Complaint incorrectly cites the text of the Development Agreement. The Development Agreement actually provides that Uniroyal was granted the exclusive right to develop and register new Bonzi uses for use in a defined "Development Field":

> ICIA grants to Uniroyal the exclusive right to develop, register, market and sell new uses of Bonzi on **woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes** in the U.S. and its territories excluding turf and commercial rights of way. ICIA further grants to Uniroyal exclusive rights to develop and register new ICIA Product formulations such as spikes and granules in the U.S. and its territories for use on woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes in the U.S. and its territories excluding turf and commercial rights of way (hereinafter the "Development Field").

Development Agreement, ¶ 2 (emphasis added). The term "greenhouse flowers" is simply not among the enumerated categories of plants and product use sites in the Development Agreement. Uniroyal provides no supporting authority for its claim of rights based upon its development of new uses other than in those categories of plants and product use sites defined in the Supply Agreement and Development Agreement.

Uniroyal's claim to rights for new uses other than those specifically delineated in the Supply Agreement and the Development Agreement is directly refuted by the plain language of those agreements. In paragraph 1.2 of the Supply Agreement and paragraph 2 of

the Development Agreement, the parties agreed that Uniroyal would have exclusive rights to "develop, register, market and sell" Bonzi for use on "woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes." Supply Agreement, ¶ 1.2; Development Agreement, ¶ 2. Neither agreement makes any reference whatsoever to other plants or product use sites, including "greenhouse flowers." Therefore, whatever rights Uniroyal may be entitled to under paragraph 4 of the Development Agreement -- to the extent that any rights survive -- cannot be broader in scope than what the agreements permit.

The Court is charged with the task of giving effect to the parties' intentions as expressed by the language of the contracts. See Kaiser Aluminum Corp., 681 A.2d at 395. The clear language of both the Supply and Development Agreements provides that Uniroyal's development rights to Bonzi are restricted to product development on "woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes." See InteractiveCorp., 2004 Del. Ch. LEXIS 90, at *30 n. 42 ("the Court should rely solely on the clear, literal meaning of the words" in the contract). It would be contrary to the parties' intent to construe the Supply and Development Agreements to include other categories of plants or product use sites not specifically authorized by the language of the agreements.

The parties designated the particular uses which were to be covered by the Development Agreement, thereby demonstrating that the absence of other development for

which Uniroyal would retain rights was intentional. No reasonable person in the position of the parties could expect that the agreements encompass uses that are not specifically addressed in either agreement. See True North Communications, Inc., 711 A.2d at 38; Kaiser Aluminum Corp., 681 A.2d at 395. Uniroyal's attempt to expand the scope of the agreements beyond that to which the parties agreed should not be permitted.

Moreover, Uniroyal's prayer for relief seeks money damages based on Syngenta's sales of Bonzi not only for "new uses" allegedly developed by Uniroyal, but for **all** uses. This preposterous claim reaches far beyond the scope of the agreements and constitutes nothing more than a blatant attempt to artificially inflate Uniroyal's alleged damages. There is nothing in the record that even remotely supports Uniroyal's entitlement to all uses of Bonzi, let alone the disputed "new uses." Uniroyal's claim must be limited to those plants and product use sites specifically designated by the agreements as Bonzi development areas to which Uniroyal could retain residuary rights, i.e.: woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes and landscapes excluding turf and commercial rights of way. See Supply Agreement, ¶ 1.2; Development Agreement, ¶ 2. Accordingly, Syngenta is entitled to a partial summary judgment limiting Uniroyal's claims to those plants and product use sites specifically set forth in the Supply Agreement and Development Agreement.

## POINT III

## SUMMARY JUDGMENT SHOULD BE GRANTED AS TO EACH OF UNIROYAL'S REMAINING NON-CONTRACTUAL CAUSES OF ACTION

The foregoing authority establishes that, as a matter of law, Syngenta is entitled to summary judgment, or at least partial summary judgment, on Uniroyal's breach of contract cause of action based on the clear and unambiguous terms of the Development Agreement and the Supply Agreement. Each of Uniroyal's remaining causes of action -- conversion, breach of the covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and violation of CUTPA -- also is based on the premise that Uniroyal continues to possess rights to market and sell "new uses" of Bonzi that it developed during the term of the Development Agreement. As established above, that premise is false. Accordingly, Syngenta also is entitled to summary judgment on each of Uniroyal's remaining causes of action.[10]

### A. Conversion

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights." Lawrence

---

[10] Each of Uniroyal's remaining causes of action is either a tort, equitable or statutory claim. Since such claims would not appear to be governed by the Supply Agreement's and Development Agreement's Delaware choice of law provisions, Connecticut law is cited in support of granting summary judgment on these claims. However, to the extent that the Court finds that Delaware law may apply, Delaware law also is cited.

v. The Richman Group Capital Corp., 358 F. Supp. 2d 29, 35. n.13 (D. Conn. 2005) (citing Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 650, 804 A.2d 180, 199 (2002)). "To establish a conversion the plaintiff must demonstrate that the property converted belonged to him, the defendants deprived him of his property, the defendants' conduct was unauthorized, and that the defendants' conduct harmed him." Dwight v. JP Morgan Chase Bank, No. 3:03-CV-117 (JCH), 2005 U.S. Dist. LEXIS 5351 at *14 (D. Conn., Mar. 31, 2005) (citing Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 309, 635 A.2d 843, 846-47 (1993)).[11]

As demonstrated above, Uniroyal no longer retains any property rights to new uses, or any uses, of Bonzi. Accordingly, its claim for conversion fails as a matter of law, and summary judgment should be granted.

**B.      Breach of the Covenant of Good Faith and Fair Dealing**

"An action for breach of the covenant of good faith and fair dealing requires proof of three essential elements, which the plaintiff must duly plead: first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the

---

[11]      See also Arnold v. Society for Sav. Bancorp, Inc., 678 A.2d 533, 536 (Del. 1996) (citing Drug, Inc. v. Hunt, 168 A. 87, 93-94 (Del. 1933) ("Conversion is an 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'")).

plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith." Felekey v. AT&T, No. 3:02-CV-691 (CFD), 2004 U.S. Dist. LEXIS 25443 (D. Conn., Nov. 3, 2004), at *15-16 (citing Reznitsky v. Phoenix Sys. Integration, LLC, No. 020395725S, 2004 Conn. Super. LEXIS 2319 (Conn. Super. Ct., Aug. 16, 2004)). "As the Connecticut Supreme Court has reasoned as to a claim for breach of the covenant of good faith and fair dealing, 'It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract, or a contractual relationship.... [Thus,] the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." Lawrence, 358 F. Supp. 2d at 33-34 (citing Hoskins v. Titan Value Equities Group Inc., 252 Conn. 789, 749 A.2d 1144 (2000)).[12]

Here, Uniroyal has no ongoing contractual rights to Bonzi. Moreover, the language of the Development Agreement gave Uniroyal no reasonable expectation to receive

---

[12] See also Sanders v. Devine, No. 14679, 1997 Del. Ch. LEXIS 131, at *19 (Del. Ch. Sept. 24, 1997) (holding that since there was no contractual relationship between the plaintiff and any of the defendants, allegations that the alleged misrepresentations or omissions made in connection with the formation of the contract violate the covenant of good faith and fair dealing "does not bear analysis.").

such benefits beyond the 5-year window set forth in that agreement. Accordingly, Uniroyal's breach of the covenant of good faith and fair dealing claim fails as a matter of law, and summary judgment should be granted in favor of Syngenta.

**C.     Promissory Estoppel**

"The elements of promissory estoppel are: (1) a clear and definite promise which a promisor could reasonably have expected to induce reliance; (2) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (3) the other party must change its position in reliance on those facts, thereby incurring some injury." General Motors Corp. v. Watson Enters., Inc., No. 04 CV 120 (WWE), 2004 U.S. Dist. LEXIS 22166, at *10 (D. Conn., Oct. 27, 2004) (citing Torringford Farms Ass'n v. City of Torrington, 75 Conn. App. 570, 576, 816 A.2d 736, 741 n. 8 (2003), cert. denied, 263 Conn. 524, 821 A.2d 247 (2003)). "In order to be binding, the promise must be clear and definite and must contain the material terms that are essential to the formation of a contract." Id. (citing D'Ulisse-Cupo v.

Bd. of Dir. of Notre Dame High Sch., 202 Conn. 206, 213, 520 A.2d 217, 221 (1987)).[13]

The language of the Development Agreement makes clear that no "promise" was made to Uniroyal that it would retain rights to market and sell Bonzi beyond the period set forth in paragraph 4 of that agreement. Rather, that agreement specifically limits those rights to a period of 5 years from the date of registration of any new use or formulation. Given that language, it was not reasonable for Uniroyal to expect to retain any greater rights. Accordingly, Uniroyal's promissory estoppel claim fails as a matter of law, and Syngenta is entitled to summary judgment thereon.

D.   **Unjust Enrichment**

"The three basic requirements of an unjust enrichment claim are that '(1) the defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment.'" Lawrence, 358 F. Supp. 2d

---

[13] See also Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024, 1032 (Del., 2003) (citing Lord v. Souder, 748 A.2d 393, 400 (Del. 1999)) (stating that "Under the doctrine of promissory estoppel, a plaintiff must demonstrate by clear and convincing evidence that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.").

at 40 (citing Gagne v. Vaccaro, 255 Conn. 390, 409, 766 A.2d 416, 427-28) (2001).[14] Because, as set forth above, Uniroyal's rights to market and sell Bonzi terminated upon Syngenta's termination of the Supply Agreement, as a matter of law there is nothing "unjust" about Syngenta's retention of any benefits it now receives by selling Bonzi directly into the marketplace. Nor is it "unjust" for Syngenta to market and sell Bonzi for specific "new uses" to which Uniroyal no longer retains any rights. Accordingly, Syngenta is entitled to summary judgment on Uniroyal's unjust enrichment claim.

### E. CUTPA Violation

"To state a claim that a practice is unfair under CUTPA, a plaintiff must allege: '(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -- whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or

---

[14] See also Schock v. Nash, 732 A.2d 217, 232 (Del. 1999) ("Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.' To obtain restitution, the plaintiffs were required to show that the defendants were unjustly enriched, that the defendants secured a benefit, and that it would be unconscionable to allow them to retain that benefit.").

27

unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].'" Lawrence, 358 F. Supp. 2d at 38, n.15 (citing Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 239, 520 A.2d 1008, 1012 (1987) (alternations in original)). "A simple breach of contract is insufficient to establish a claim under CUTPA." Lawrence, 358 F. Supp. 2d at 42.

As set forth above, as a matter of law Uniroyal no longer possesses any rights to market or sell Bonzi for any uses, including those "new uses" it claims to have developed. Therefore, there is nothing "unfair" or "deceptive" about Syngenta's conduct in marketing and selling Bonzi for any such uses. Accordingly, summary judgment should be granted in favor of Syngenta.

## CONCLUSION

Syngenta is entitled to summary judgment dismissing each of the remaining counts of the Complaint, together with such other and further relief as the Court deems proper.

In the alternative, Syngenta is entitled to partial summary judgment restricting each of Uniroyal's claims to uses of Bonzi that are specifically set forth in the Supply Agreement and Development Agreement, together with such other and further relief as the Court deems proper.

Dated: Stamford, Connecticut
       May 5, 2005

**DEFENDANT SYNGENTA
CROP PROTECTION, INC.**

By: _____
William A. Ruskin (Fed. Bar No. ct20898)
R. Michael Meo, Jr. (Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT 06901
(203) 324-8100 (Tel.)
(203) 324-8199 (Fax)
wruskin@goodwin.com
rmeo@goodwin.com
Its Attorneys

29

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May 2005, a copy of the foregoing Defendant's Memorandum of Law in Support of Motion for Summary Judgment was mailed, via First Class Mail, postage pre-paid, to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950

_____
William A. Ruskin

120012 v.04