UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., | : | |
| d/b/a CROMPTON MANUFACTURING | : | |
| COMPANY | : | |
| | : | Civil Action No. |
| Plaintiff, | : | 3:02CV02253 (AHN) |
| | : | |
| v. | : | |
| | : | |
| SYNGENTA CROP PROTECTION, INC. | : | |
| | : | |
| Defendant. | : | JULY 12, 2005 |

### AFFIDAVIT OF R. MICHAEL MEO, JR.

| | | |
|---|---|---|
| STATE OF CONNECTICUT | ) | |
| | ) | ss.:  Stamford |
| COUNTY OF FAIRFIELD | ) | |

**R. MICHAEL MEO, JR.,** being duly sworn, deposes and states:

1.    I am a member of the law firm of Shipman & Goodwin LLP, counsel for Syngenta Crop Protection, Inc. ("Syngenta") in the above-entitled litigation and, as such, am fully familiar with all the facts and circumstances heretofore had herein.  I am admitted to practice before this Court.

2.    This Affidavit is submitted in support of Syngenta's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment dated May 5, 2005, made pursuant to Rule 56 of the Federal Rules of Civil Procedure.

3.    A true copy of relevant portions of the deposition of Laureen C. Treu, a Uniroyal employee, taken on January 12, 2004, is attached hereto as Exhibit A.

4.    A true copy of relevant portions of the deposition of Kevin L. Kelley, a Uniroyal employee, taken on November 17, 2003, is attached hereto as Exhibit B.

WHEREFORE, Syngenta respectfully requests that the Court grant its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, together with such other and further relief as the Court deems proper.

R. Michael Meo, Jr.

Sworn to before me this
12th day of July 2005.

Notary Public
My Commission Expires:
**SONYA R. TINSLEY**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES MAY 31, 2006

123321 v.01

2

Exhibit A

1          UNITED STATES DISTRICT COURT
              DISTRICT OF CONNECTICUT
2                   VOLUME I                    **COPY**

3

4
   - - - - - - - - - - - - - -x
5  UNIROYAL CHEMICAL COMPANY, INC.:
   d/b/a CROMPTON MANUFACTURING    :
6  COMPANY,                        :
                     Plaintiff,    :
7  vs.                             :   CIVIL ACTION NO.
                                   :   3:02CV02253
8                                  :
   SYNGENTA CROP PROTECTION, INC. :
9                    Defendant.    :
   - - - - - - - - - - - - - -x
10

11

12

13          Deposition of LAUREEN C. TREU, taken

14  pursuant to the Federal Rules of Civil Procedure,

15  before Melissa J. Kelly, RPR, CRR, Licensed

16  Shorthand Reporter #00307, and Notary Public within

17  and for the State of Connecticut, held at the

18  offices of Shipman & Goodwin LLP, 300 Atlantic

19  Street, Stamford, Connecticut, on January 12, 2004,

20  at 10:25 a.m.

21

22

23          DEL VECCHIO REPORTING SERVICES, LLC
               PROFESSIONAL SHORTHAND REPORTERS
24                    117 RANDI DRIVE
                   MADISON, CT  06443
25  HARTFORD          203 245-9583          STAMFORD

14

```
1        Q.    What happened then?
2        A.    That's when I moved into specialty
3   products.
4        Q.    And did you take over responsibility for
5   Bonzi?
6        A.    Yes, I did.
7        Q.    Who had been responsible for the Bonzi up
8   until the fourth quarter of 1992?
9        A.    A gentleman by the name of John Kitzmiller.
10       Q.    And when you began working in specialty
11  products in the end of 1992, what did
12  Mr. Kitzmiller do?
13       A.    He took a sales territory in the Memphis,
14  Tennessee area.
15       Q.    What does Mr. Kitzmiller do today?
16       A.    Mr. Kitzmiller has been retired for -- I'm
17  not certain as to how long.  I would guess ten or
18  so years.
19       Q.    Do you know where he resides?
20       A.    Not offhand.
21       Q.    Were you involved in the negotiation of the
22  Bonzi agreements in 1991?
23       A.    No.
24       Q.    Were you aware that they were going on?
25       A.    No.
```

Q.    Before I go into that, can you just tell me beginning with high school, your education.

A.    I graduated from high school.

Q.    What high school?

A.    Naugatuck High School.  I graduated from Teiyko Post University.  I graduated from -- that's with a bachelor's.  I graduated from University of New Haven with an MBA.

Q.    What kind of school is Teiyko Post University?

A.    I would say liberal arts business.

Q.    How do you spell it?

A.    T-E-I-Y-K-O P-o-s-t.

Q.    Is that in this country?

A.    Yes.

MR. CORCORAN:  It's in Waterbury.

THE WITNESS:  It's in Middlebury.

BY MR. RUSKIN:

Q.    And that's a four-year college?

A.    Yes.  Now, prior to that, I did attend Lasell College For Women in Boston.  I also attended Waterbury State Technical College for a brief period of time for a specific purpose.

Q.    What was that purpose?

A.    Data processing at the time.

CERTIFICATE

1
2          I hereby certify that I am a Notary
3     Public, in and for the State of Connecticut, duly
4     commissioned and qualified to administer oaths.
5          I further certify that the deponent
6     named in the foregoing deposition was by me duly
7     sworn, and thereupon testified as appears in the
8     foregoing deposition; that said deposition was
9     taken by me stenographically in the presence of
10    counsel and reduced to typewriting under my
11    direction, and the foregoing is a true and accurate
12    transcript of the testimony.
13         I further certify that I am neither of
14    counsel nor attorney to either of the parties to
15    said suit, nor am I an employee of either party to
16    said suit, nor of either counsel in said suit, nor
17    am I interested in the outcome of said cause.
18         Witness my hand and seal as Notary
19    Public this 15th of January, 2004.
20
21
22         Melissa J. Kelly, RPR, CRR
23         Licensed Shorthand Reporter #00307
24
25    My Commission expires:  September 30, 2008

1        I have read the foregoing 183

2    pages and hereby acknowledge the

3    same to be a true and correct

4    record of the testimony.

5

6

7

8

9

10                LAUREEN C. TREU

11

12

13

14

15

16    Subscribed and sworn to

17    Before me this _19_ day of _March_, 2004.

18

19

20    _Marlene P. Magore_

21            Notary Public

22

23    My Commission Expires: _April 30, 2005_

24

25

DEL VECCHIO REPORTING SERVICES, LLC

**Exhibit B**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT



----------------------------------

UNIROYAL CHEMICAL COMPANY, INC.
d/b/a CROMPTON MANUFACTURING
COMPANY,

        Plaintiff

        VS.

SYNGENTA CROP PROTECTION, INC.,

        Defendant

----------------------------------

Civil Action No.:
3:02CV02253(AHN)

 

Deposition of KEVIN L. KELLEY, taken
before Judi A. Roberts, Licensed Professional
Reporter, No. SHR.325, and Notary Public in and for
the State of Connecticut, pursuant to notice, at the
law offices of Shipman & Goodwin, LLP, 300 Atlantic
Street, Stamford, Connecticut, on November 17, 2003 at
10:12 A.M.

DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
HARTFORD    MADISON, CT 06443    STAMFORD
203-245-9583        FAX 245-2760        ``800-839-6867

1       Q.    And I direct your attention to paragraph

2    four of the Development Agreement.    The earlier

3    version we just looked at had two sentences typed in,

4    this has two additional sentences typed in.    Now,

5    paragraph four of the Development Agreement is four

6    sentences, not two, do you see that?

7       A.    Yes, looks like four sentences.

8       Q.    What were the circumstances surrounding the

9    addition of the two additional sentences at the end of

10   paragraph four of the Bonzi Development Agreement?

11              MR. CORCORAN:    Objection to the form.

12      A.    I don't recall.

13      Q.    (By Mr. Ruskin)  Did you have any

14   discussions with ICI concerning adding two additional

15   sentences to paragraph four of the Development

16   Agreement?

17      A.    I don't recall.

18      Q.    Did you have any internal discussions with

19   your colleagues at Uniroyal concerning adding two

20   additional sentences to the end of paragraph four of

21   the Development Agreement?

22      A.    I don't recall.

23      Q.    So as we sit here today you don't have any

24   knowledge concerning how paragraph four came into

25   this.... came to appear as it appears in Exhibit 18?

DEL VECCHIO REPORTING
203-245-9583

1          A.     That's correct.

2          Q.     And do you have any recollection concerning

3     any negotiations you may have been part of with ICI

4     concerning paragraph four of the Development Agreement

5     or the additional last two sentences?

6                 MR. CORCORAN:   Objection, negotiations

7     you may have been part of.   You can answer.

8          A.     I don't recall the details of this

9     negotiation.

10         Q.     (By Mr. Ruskin)   Do you recall anything

11    about it?

12         A.     Just whatever I may have indicated so far, I

13    guess.

14         Q.     Which is what about paragraph four?

15         A.     Nothing specifically about paragraph four,

16    no recollection of this.

17         Q.     Okay.   Well, was not Uniroyal concerned that

18    it would not have a full five years of marketing

19    rights to new uses of Bonzi if the Development

20    Agreement was terminated before the expiration of the

21    five year period?

22                MR. CORCORAN:   Objection to the form of

23    the question.

24         A.     I don't recall any such concerns.

25         Q.     (By Mr. Ruskin)   Okay.   But wasn't it

1    Uniroyal's concern about obtaining the benefit of

2    these new uses of Bonzi for the full five year period

3    that ended up in the final version of the Development

4    Agreement that was later executed by the parties?

5              MR. CORCORAN:  Objection to the form of

6    the question.  The witness has just said he doesn't

7    remember.

8         A.    I don't recall.

9         Q.    (By Mr. Ruskin)  Do you know why in your

10   nine page letter to Mr. Meyding of October 30, 1990,

11   which is Exhibit 17, there's no mention whatsoever of

12   the proposed revision to paragraph four of the

13   Development Agreement adding these last two sentences?

14        A.    I don't recall any discussion on that.

15        Q.    Okay.  I'm going to show you what I'd like

16   to mark as Exhibit 19, which is a memo from you to

17   George Meyding dated January 18, 1991 on the subject

18   of the Bonzi agreements.

19                        (Deposition Exhibit

20   19, Memo, offered and marked.)

21             MR. RUSKIN:  We will mark as Exhibit 20

22   a letter addressed to Mr. Kevin Kelley dated January

23   23, 1991 from George Meyding at ICI, which is Bate

24   stamp No. CC02239 through 02240, which attaches a

25   draft agreement CC02241 through CC02249, which is the

1    Bonzi Supply and Development Agreements.

2                           (Deposition Exhibit

3    20, Memo dated January 23, 1991, offered and marked.)

4        Q.    (By Mr. Ruskin)   I direct your attention to

5    Exhibit 19, which is your memo to Meyding of January

6    18th, 1991; do you know why this correspondence to ICI

7    is by memo rather than by letter?

8        A.    No.

9        Q.    Do you see the reference to an interim

10   agreement?

11       A.    Yes.

12       Q.    What is that interim agreement?

13       A.    I don't know.

14       Q.    Do you know what the purpose of an interim

15   agreement was?

16       A.    No.

17       Q.    Have you reviewed the interim agreement

18   before coming here today?

19       A.    I don't believe so.

20       Q.    Do you know what comments Uniroyal was

21   transmitting to ICI under cover of your memo of

22   January 18, 1991?

23       A.    No I don't know.

24       Q.    Do you have any recollection concerning the

25   status of the negotiations over the Bonzi Supply

1   Agreement and Bonzi Development Agreement as they

2   stood on January 18, 1991?

3       A.   No.

4       Q.   I direct your attention to Exhibit 20, which

5   is George Meyding's letter to you of January 23, 1991

6   in which he provides execution copies of the Bonzi

7   Chemical Supply and Development Agreements.   Do you

8   have a recollection of having received Exhibit 20 from

9   Mr. Meyding?

10      A.   No.

11      Q.   Is there someone more familiar than you at

12  Uniroyal concerning these negotiations with ICI?

13      A.   I don't know.

14      Q.   Was there someone who was involved, who was

15  as involved with you in these negotiations at

16  Uniroyal?

17           MR. CORCORAN:  Objection to the form.

18  You may answer.

19      A.   Not that I know of.

20      Q.   (By Mr. Ruskin)  So you were the most

21  knowledgeable?

22      A.   I believe so.

23      Q.   How involved was Mr. Kittsmiller in the

24  contract negotiation process?

25           MR. CORCORAN:  Objection to the form.

132

```
 1    Compared to what?
 2                  MR. RUSKIN:    You may answer, Mr. Kelley.
 3                  THE WITNESS:    Could you repeat the
 4    question please.
 5        Q.    (By Mr. Ruskin)    How involved was Mr.
 6    Kittsmiller in these contract negotiations with ICI
 7    over the Bonzi Chemical Supply and Development
 8    Agreements?
 9        A.    Somewhat involved.
10        Q.    Well, did he review all of your
11    correspondence to ICI?
12                  MR. CORCORAN:    Objection.
13        A.    I don't know what he reviewed.
14        Q.    (By Mr. Ruskin)    Did he comment on to you
15    about all of the drafts that were received from ICI?
16        A.    He certainly had some comments, I can't
17    quantify it.
18        Q.    Well, how often did you speak to him during
19    the negotiations about the negotiations, was it
20    months?
21        A.    I don't recall.
22        Q.    Once a day, once a week, once a month?
23        A.    I don't recall.
24                  MR. CORCORAN:    Don't guess.
25        A.    I don't recall.
```

DEL VECCHIO REPORTING
203-245-9583

1      Q.   (By Mr. Ruskin)  Can you give me your best

2   approximation, whether it was once a day, twice a day,

3   once a week, twice a month?

4            MR. CORCORAN:  Don't guess.

5            MR. RUSKIN:  No one wants you to guess.

6      A.   I don't recall.

7      Q.   (By Mr. Ruskin)  Other than Mr. Kittsmiller,

8   was there anyone else who you would have kept

9   apprised.... Well, was there anybody that you can

10  recall sitting here today you kept apprised on a

11  regular basis concerning these negotiations?

12           MR. CORCORAN:  Objection to the form,

13  regular basis.

14     A.   I don't recall.

15     Q.   (By Mr. Ruskin)  Okay.  Directing your

16  attention to Exhibit 20, the letter of Mr. Meyding of

17  January 23, 1991, he says under the Supply Agreement

18  there's a reference to Section 4.4, do you see that?

19     A.   In Exhibit 20?

20     Q.   Exhibit 20 there's a reference to Section

21  4.4 of the Supply Agreement half way down the first

22  page.

23     A.   Okay.

24     Q.   And he says, "No, since new uses as well as

25  new formulations developed by Uniroyal give you a new

```
 1   five year clock for Section 4 of the Development
 2   Agreement."  Do you see that?
 3        A.   Yes.
 4        Q.   Do you know what he's saying "no" to?
 5        A.   No.
 6        Q.   Do you know what proposal of Uniroyal he's
 7   responding to?
 8        A.   No.
 9        Q.   And do you know what he's referring to when
10   he says that Section 4 of the Development Agreement
11   gives Uniroyal a new five year clock for new uses and
12   formulations?
13        A.   I'm not sure.  I don't know.
14        Q.   Okay.  Directing your attention to the
15   second page, he's making reference to the Development
16   Agreement.  Do you understand what that.... when he
17   says "okay" next to a paragraph that he's.... is it
18   your understanding that's he's okaying a proposed
19   change above Uniroyal?  Withdrawn.
20             Is it your understanding when the word
21   "okay" appears next to a particular section of the
22   Development Agreement, that he's going along with or
23   acquiescing to a proposed change suggested by
24   Uniroyal?
25             MR. CORCORAN:  Objection to the form.
```

135

1       A.    I don't know.

2       Q.    (By Mr. Ruskin)  You don't know?

3       A.    I'm not sure.

4       Q.    You don't know in this exchange of

5   correspondence with Mr. Meyding what the word "okay"

6   means when he indicates in a paragraph adjacent to the

7   Supply Agreement or Development Agreement what that's

8   referring to?

9       A.    Only what it says in the letter.

10      Q.    Well, what does "okay" signify to you?

11      A.    I don't know.

12      Q.    Well, when he says "no", for example next to

13  4.4 of the Supply Agreement, what does "no" signify to

14  you?

15      A.    He doesn't agree to it.

16      Q.    He doesn't agree to a change proposed by

17  Uniroyal, correct?

18      A.    I believe that's the case.

19      Q.    So "okay" would refer to something he does

20  agree to, correct?

21      A.    I assume so.

22      Q.    Okay.  So in the next page of the

23  Development Agreement he's okaying under paragraph 4

24  of the Development Agreement a reference to adding a

25  reference to 1.2 of the Supply Agreement?

1          MR. CORCORAN:  Could that question be

2    read back please, sorry.

3              (Whereupon, the question was read by the

4    reporter.)

5          MR. CORCORAN:    Objection.   You're

6    asking.... It's one thing to ask what "okay" means.

7    It's another thing to ask what a fragment of a

8    sentence meant in the mind of a person who wrote this

9    letter thirteen years ago.  I object.  If you know,

10   you can answer.  It's also a mischaracterization.

11         Q.   (By Mr. Ruskin)  Do you know?

12         A.   No, I'm not sure what that refers to.

13         Q.   Directing your attention to the second to

14   the last page of this exhibit, which is the first

15   page of the Development Agreement which is Bate stamp

16   No. CC02248.

17         A.   Yes.

18         Q.   All right.   Mr. Meyding's letter, he refers

19   to a new five year clock for Section 4 of the

20   Development Agreement in the first page of his letter

21   of January 23rd, 1991, does he not?

22         A.   The letter of January....

23         Q.   Twenty-three, 1991, Exhibit 20, right?

24         A.   Yes.

25         Q.   And if you turn to that last, second to last

1   page of that Exhibit CC02248, the reference to a new

2   five year clock refers, does it not, to the final

3   sentence of paragraph four of the Development

4   Agreement?

5              MR. CORCORAN:  Objection to the form.

6        A.   It refers to 1.2, I see that.

7        Q.   (By Mr. Ruskin)  My question though is, does

8   the reference to the five year clock in Mr. Meyding's

9   cover letter refer to the final sentence of paragraph

10  four of the Development Agreement?

11       A.   I don't understand the question.

12       Q.   The sentence says, "This provision shall

13  survive the termination of this agreement provided a

14  termination is not the result of any breach by

15  Uniroyal of this agreement or the Supply Agreement."

16  That's the final sentence of paragraph four....

17       A.   Oh, paragraph four.

18       Q.   .... of the Development Agreement.  Now, is

19  Mr. Meyding's letter in referring to a new five year

20  clock referring to the final sentence of paragraph

21  four of the Development Agreement which I just read?

22       A.   Repeat the question please.

23       Q.   The reference to a five year clock in Mr.

24  Meyding's cover letter refers, does it not, to the

25  final sentence of paragraph four of the Development

158

```
 1   Agreement?
 2            MR. CORCORAN:  Objection to the form of
 3   the question.
 4        A.    I'm not sure.
 5            MR. CORCORAN:  I think you're
 6   mischaracterizing grossly what's going on here.  We
 7   can all see what the letter says, and the letter....
 8   Well, I won't say more.  I object to the form of the
 9   question, and I think you're mischaracterizing what's
10   going on.
11            MR. RUSKIN:  You may answer the question,
12   Mr. Kelley.  Is there an answer?
13            MR. CORCORAN:  You disbursed to my
14   objection with an answer which the witness doesn't
15   know.
16        Q.    (By Mr. Ruskin)  What aren't you sure about?
17            MR. CORCORAN:  He answered your question.
18   Objection.
19            MR. RUSKIN:  If I talk through your
20   depositions with my client I'm sure you won't object
21   either.
22        A.    I don't make the connection, frankly.  I
23   don't understand the connection.
24        Q.    (By Mr. Ruskin)  Okay.  Do you have any idea
25   what paragraph four of the Development Agreement
```

139

1    purports to do?

2              MR. CORCORAN:  Objection to the form of

3    the question, purports.

4         A.   No.

5         Q.   (By Mr. Ruskin)  Okay.  Now, your

6    letter.... Actually, skip that.

7              MR. RUSKIN:  Exhibit 21, a memo from

8    Kevin Kelley that appears to be an internal Uniroyal

9    Chemical Company memorandum, it's one page.

10                            (Deposition Exhibit

11   21, Memo, offered and marked.)

12        Q.   (By Mr. Ruskin)  Mr. Kelley, I show you

13   what's been marked as Exhibit 21, and ask if you wrote

14   this memo?

15        A.   I don't know.

16        Q.   Does anything look familiar to you?

17             MR. CORCORAN:  Objection to the form of

18   the question.

19        A.   It looks like a familiar format.

20        Q.   (By Mr. Ruskin)  But you don't know whether

21   you wrote it or not?

22        A.   Well, I don't see any signature on it so....

23        Q.   So the answer is "no"?

24        A.   I don't know.

25        Q.   Do you know to whom it was circulated?

1      A.   No.

2      Q.   Do you know if the statement at the bottom

3  of the page that there were no issues with regard to

4  the Development Agreement as of January 24, 1991 is

5  correct?

6      A.   I don't know that.

7      Q.   Okay.

8           MR. RUSKIN:   I'd like to mark as Exhibit

9  22 an internal Uniroyal memorandum from Kevin Kelley

10  dated February 18, 1991 regarding Bonzi project status

11  update.

12                          (Deposition Exhibit

13  22, Memo, offered and marked.)

14      Q.   (By Mr. Ruskin)   Okay.   Do you recognize

15  Exhibit 22?

16      A.   It's my signature.

17      Q.   Does the memo look familiar?

18      A.   In form.

19      Q.   Does the substance of the memo look

20  familiar?

21      A.   No.

22      Q.   Am I correct from this memo that the Supply

23  Agreement would run from January 1, 1991 to December

24  31, 1996?

25      A.   That's what it says.

```
 1                     STATE OF CONNECTICUT

 2

 3             I hereby certify that I am a Notary

 4    Public, in and for the State of Connecticut, duly

 5    commissioned and qualified to administer oaths.

 6             I further certify that the deponent named

 7    in the foregoing deposition was by me duly sworn, and

 8    thereupon testified as appeared in the foregoing

 9    deposition; that said deposition was taken by me

10    stenographically in the presence of counsel and

11    reduced to typewriting under my direction, and the

12    foregoing is a true and accurate transcript of the

13    testimony.

14             I further certify that I am neither of

15    counsel nor attorney to either of the parties to said

16    suit, nor am I an employee of either party to said

17    suit, nor of either counsel in said suit, nor am I

18    interested in the outcome of said cause.

19             IN WITNESS THEREOF, I have hereunto set

20    my hand and affixed my seal this 1st of December,

21    2003.

22

23    _____

24    Judi A. Roberts, Notary Public
      Licensed Professional Reporter
      No. SHR.325
25    My commission expires:
      July 31, 2007
```

DEL VECCHIO REPORTING
203-245-9583