UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., d/b/a CROMPTON MANUFACTURING COMPANY | : : : : |
| Plaintiff, | : Civil Action No. : 3:02cv02253 (AHN) |
| v. | : : : |
| SYNGENTA CROP PROTECTION, INC. | : : |
| Defendant. | : August 5, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

**I.    PROCEDURAL BACKGROUND**

The plaintiff filed its original complaint in this matter on December 20, 2002 seeking legal and equitable relief against the defendant for breach of contract (Count I), conversion (Count II), breach of the covenant of good faith and fair dealing (Count III), violation of the Delaware Franchise Security Law (Count IV), and promissory estoppel (Count V).  The plaintiff's claims arise out of certain Supply and Development Agreements concerning the defendant's granting to plaintiff exclusive rights to develop, register, market and sell defendant's plant growth regulating chemical "Bonzi," and to develop register, sell and market new formulations of the product.

The defendant responded first to the complaint by moving to dismiss the claim for violation of the Delaware Franchise Security Law (Count IV).  The Court granted the

{N0735054}

defendant's motion by ruling dated September 30, 2003. Thereafter, the defendant filed its answer and affirmative defenses on October 30, 2003. The defendant did not assert any counterclaims in response to the complaint.

By motion dated May 18, 2004, the plaintiff moved to amend its complaint to add a claim for violation of CUTPA and a claim for unjust enrichment. The defendant consented to the motion with respect to the addition of the CUTPA claim, and the Court granted the motion as to both counts. On July 16, 2004, the defendant filed its response to the plaintiff's amended complaint, which response included the counterclaims that are the subject of this motion.[1]

## II.    NATURE OF DEFENDANT'S COUNTERCLAIMS

The defendant asserts two counterclaims, the first alleging tortious interference with business expectancies, and the second alleging violation of the Connecticut Unfair

---

[1] The plaintiff originally filed a "motion to strike and dismiss counterclaims" on August 19, 2004. On March 23, 2005, the Court denied the motion to strike on the merits and also denied the motion to dismiss "without prejudice to refiling after the required pre-motion conference is held." March 23, 2005 Order at p. 7. The parties attended a filing conference on April 4, 2005, where they informed the Court of an upcoming mediation scheduled for May 11, 2005. The plaintiff agreed to re-file the present motion following the mediation in the event that the mediation was unsuccessful. The plaintiff has revised the motion and this memorandum to delete all reference to the motion to strike the counterclaims. It is otherwise unchanged from the original motion filed on August 19, 2004. The defendant has briefed its opposition to the present motion in its brief dated October 12 2004.

Trade Practices Act. The sole basis for both counterclaims is the plaintiff's bringing of this lawsuit, which the defendant characterizes as "sham litigation."[2]

The defendant provides, in essence, a counterstatement of facts to the plaintiff's allegations, characterizing the business relationship between the parties and their conduct under the Supply and Development Agreements. (Counterclaim, ¶¶ 1-20.) Based on the conduct of the parties alleged by the defendant and its reading of the Supply and Development Agreements, the defendant claims it did not breach the Agreements since "(i) Uniroyal's right to develop New Uses pursuant to the Development Agreement expired on December 31, 1996, and (ii) the Development Agreement grants to Uniroyal marketing and sales rights to New Uses only for a period of five years from the date of registration of those New Uses with the EPA." (Id., ¶ 20.)

Based on its interpretation of the Supply and Development Agreements, the defendant concludes, "Uniroyal's lawsuit, including the equitable relief [sought], is a sham, and is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. There are no provable facts in the Complaint that could justify [the relief sought by the plaintiff]…" (Id., ¶ 22.) The defendant therefore infers that "Uniroyal brings this lawsuit, and seeks the foregoing equitable relief, to conceal an attempt to interfere directly with the business relationships of Syngenta, to impede Syngenta's ability to sell Bonzi, and to gain a competitive advantage

---

[2] The defendant alleges that the plaintiff has undertaken a wrongful course of conduct against it "by, among other things, prosecuting this action insofar as it seeks equitable relief barring and/or limiting Syngenta's ability to market and sell Bonzi without any good faith basis for doing so." (Counterclaim, ¶ 25.) Nowhere in the counterclaims however does the defendant identify any "wrongful" conduct other than the commencement of this lawsuit.

{N0735054}                                3

over Syngenta in the sale of paclobutrazol products by limiting the uses for which Syngenta may market and sell Bonzi." (Id., ¶ 23.) Finally, the defendant alleges, in conclusory terms, that the plaintiff's actions constitute tortious interference with business expectancies and a violation of CUTPA. (Id., ¶¶ 24-33.)

III. **ARGUMENT**

*The counterclaims fail to state claims upon which relief may be granted, since the plaintiff is immune from suit under the Noerr-Pennington doctrine.*

The standards governing motions to dismiss under Rule 12(b)(6) are well known to the Court. The Court's function on a motion to dismiss "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Festa v. Local 3 Int'l Board of Electrical Workers, 905 F.2d 35, 37 (2d Cir. 1990). Although the Court must limit its analysis to the four corners of the complaint, Kopec v. Coughlin, 922 F.2d 152, 154-55 (2d Cir., 1991), mere conclusory allegations or legal conclusions are not sufficient to withstand a Rule 12(b)(6) motion to dismiss. Briehl v. General Motors Corp., 172 F.3d 623, 627-28 (8th Cir., 1999); DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir., 1999).

The plaintiff is immune from the counterclaims asserted by the defendant under the Noerr-Pennington doctrine. "The Noerr-Pennington doctrine was established by the Supreme Court in a trilogy of antitrust cases…[and] is derived from First Amendment principles guaranteeing the right to petition the government." Hartford Life Insurance Company v. Variable Life Insurance Company, Inc., 964 F.Supp. 624, 626 (D. Conn. 1997) (internal citations omitted). In sum, "[t]he Noerr-Pennington doctrine protects a

litigant's First Amendment right to seek judicial redress of grievances by immunizing the litigant from a claim that the mere act of pursuing a lawsuit causes harm." Id., 964 F.Supp. at 625.

The Courts, however, have recognized a limited exception to the Noerr-Pennington doctrine known as the "sham" exception. Professional Real Estate Investors v. Columbia Pictures Industries, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). "Under the sham exception, litigation may be deprived of immunity if it constitutes 'a mere sham to cover… an attempt to interfere directly with the business relationships of a competitor.'" Hartford Life Insurance Company, 964 F.Supp. at 626-27 (internal citations omitted). Under Professional Real Estate Investors, *supra*, a two-part test is used to determine when litigation will be considered a sham not immunized under Noerr:

> First the lawsuit must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail." If the court concludes that the challenged litigation is objectively meritless, then the court must next consider the second prong of the test.
>
> The second prong involves an inquiry into the litigant's subjective motivation. An improper purpose will be found if the court determines that "the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' through the 'use [of] the governmental *process*--as opposed to the *outcome* of that process--as an anticompetitive weapon.'"
>
> Because the question of subjective intent is not considered unless a claim is first held to be objectively baseless, a finding that a lawsuit was instituted with probable cause is an absolute defense to a claim that the case is a sham regardless of litigant's subjective motivation. Probable cause to institute civil proceedings requires no more than a " 'reasonabl[e] belie[f] there is a chance that [a] claim may be held valid upon adjudication.' " Where there is no dispute over the predicate acts of the

> underlying proceedings, the court may determine probable cause as a matter of law.
>
> … Even if a lawsuit is ultimately lost, probable cause to pursue the action will exist if it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.' "

Hartford Life Insurance Company, 964 F.Supp. at 627 (internal citations omitted).

"Where possible, … this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." Agfa Corporation v. United Marketing Group, Inc., 2003 WL 21555087 at *3 (S.D.N.Y. July 10, 2003) (internal citations omitted).

Based on the Noerr-Pennington doctrine, the Second Circuit Court of Appeals has held that "the filing of a single non-sham lawsuit cannot form the basis of a claim under CUTPA or Connecticut's common law of tortious interference with a business expectancy." Suburban Restoration Co., Inc. v. ACMAT Corporation, 700 F.2d 98, 102 (2d Cir. 1983), cited with approval in Zeller Consolini, 59 Conn. App. 545, 553 (2000). Accordingly, the defendant may sustain its counterclaims only if it properly alleges the sham litigation exception to the Noerr-Pennington doctrine as set forth above. The defendant here has not done so.

As the Court made clear in Hartford Life Insurance Company, *supra*, mere allegations that the plaintiff will not prevail on its complaint fail to state a claim of sham litigation. Here, the defendant's counterclaim, at most, alleges disagreement with the plaintiff as to the meaning and effect of the Supply and Development Agreement and the parties' respective rights and obligations thereunder. The predicate allegations in the

defendant's counterclaim for sham litigation (Counterclaim, ¶¶ 1-20) contain no facts that would support the conclusion that the plaintiff's complaint is not "arguably warranted by existing law or at the very least was based on an objectively good faith argument for the extension, modification, or reversal of existing law." Instead, the defendant merely concludes that since its interpretation, and not the plaintiff's interpretation, of the Supply and Development Agreements is the correct one, "no reasonable litigant could realistically expect success on the merits" of the plaintiff's complaint. (Id., ¶¶ 20, 22.) Respectfully, the defendant has fallen far short alleging facts that, if proven, would support the inference that the plaintiff commenced this action without probable cause.

As was the case in Hartford Life Insurance Company , "[s]tripped of everything but its essentials, [defendant's] argument is that because its defenses ultimately will prevail, [plaintiff's] lawsuit must be 'objectively baseless' within the meaning of the sham exception." 964 F.Supp. at 628. But "[e]ven if [defendant] is correct in its assertion that it will win this lawsuit, it is incorrect in then concluding that [plaintiff's] claims must have been brought with no probable cause." Id. Accordingly, even when reading the allegations of the defendant's counterclaims as true "the court is left with nothing from which it can infer that [the plaintiff's] claims were not even arguably warranted by existing law when [plaintiff] commenced the underlying litigation." Id. Since the counterclaims do not allege facts that, if proven, would show that the plaintiff's complaint is objectively baseless, the first prong of the sham exception has not been met and there is no need to address the second prong. Id. Based on the foregoing, the

defendant's counterclaims fail to state claims upon which relief may be granted and should be dismissed.

## IV. <u>CONCLUSION</u>

The defendant's eleventh-hour attempt to inject into this action a new controversy based on facts long known to it should not be sanctioned. The defendant's counterclaims are meritless. Accordingly, the plaintiff respectfully requests that the Court grant its motion.

>  Respectfully submitted,
>
> THE PLAINTIFF,
> UNIROYAL CHEMICAL COMPANY, INC. d/b/a
> CROMPTON MANUFACTURING COMPANY
>
>
> By: __/s/_____
>  Charles F. Corcoran, III (ct 04299)
> For: Carmody & Torrance LLP
>  195 Church Street, P.O. Box 1950
>  New Haven, CT  06509-1950
>  Tel:  (203) 777-5501
>  Fax:  (203) 784-3199
>  E-mail: ccorcoran@carmodylaw.com
>  Its Attorneys

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been mailed, postage prepaid, on the above date, to:

| | |
|---|---|
| William A. Ruskin<br>(Fed. Bar No. ct20898)<br>Epstein, Becker & Green, P.C.<br>250 Park Avenue<br>New York, NY  10177<br>Telephone:  (212) 351-4740<br>Facsimile:  (212) 878-8740<br>E-mail:  wruskin@ebglaw.com | Paul D. Sanson (Fed. Bar No. ct05477)<br>Karen T. Staib (Fed. Bar No. ct21119)<br>Shipman & Goodwin LLP<br>One Constitution Plaza<br>Hartford, CT  06103-1919<br>Telephone: (860) 251-5000<br>Facsimile: (860) 251-5600<br>E-mail: psanson@goodwin.com<br>E-mail: kstaib@goodwin.com |

R. Michael Meo, Jr.
(Fed. Bar No. ct16318)
Shipman & Goodwin LLP
300 Atlantic Street
Stamford, CT  06901
Telephone: (203) 324-8100
Facsimile: (203) 324-8199
E-mail: rmeo@goodwin.com

                                                      __/s/_____
                                                      Charles F. Corcoran, III