UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNIROYAL CHEMICAL COMPANY, INC., <br> d/b/a CROMPTON MANUFACTURING <br> COMPANY <br><br> Plaintiff, <br><br> v. <br><br> SYNGENTA CROP PROTECTION, INC., <br><br> Defendant. | Civil Action No. <br> 3:02cv02253 (AHN) <br><br><br><br><br><br> SEPTEMBER 14, 2005 |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

### I.  INTRODUCTION

By motion dated August 5, 2005, plaintiff Uniroyal Chemical Company, Inc. ("Uniroyal") moves to dismiss the counterclaims filed by defendant Syngenta Crop Protection, Inc. ("Syngenta") in its Answer, Affirmative Defenses and Counterclaims dated July 16, 2004 (the "Counterclaims"). Syngenta opposes this Motion on the grounds that the Counterclaims state valid causes of action for tortious interference and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Syngenta respectfully requests that the Court deny Uniroyal's Motion.

As fully set forth below, Syngenta pleads valid causes of action of tortious interference, and violation of CUTPA. Those Counterclaims allege with specificity the "sham litigation" exception to the Noerr-Pennington doctrine. Accordingly, plaintiff's Motion to Dismiss those Counterclaims should be denied.

## II. FACTUAL ALLEGATIONS

Syngenta alleges that in January 1991, Syngenta's predecessor-in-interest, ICIA, and Uniroyal entered into the Bonzi Chemical Supply Agreement (the "Supply Agreement") and Bonzi Development Agreement (the "Development Agreement"). By the Supply Agreement, ICIA agreed to sell and deliver exclusively to Uniroyal, and Uniroyal agreed to purchase and receive exclusively from ICIA, ICIA's paclobutrazol product known as "Bonzi," in specified quantities. ICIA also granted Uniroyal the right to sell Bonzi in a defined market and to develop, register, sell and market Bonzi in that area for a defined and limited range of "Permitted Uses." Counterclaims, ¶ 10. The term of the Supply Agreement was January 1, 1991 to December 31, 1996, with successive annual terms thereafter unless terminated by either party on 180 days written notice. Counterclaims, ¶ 11.

In the companion Development Agreement, ICIA granted Uniroyal the right to develop and register new uses and formulations of Bonzi for use in the contractually defined "Development Field." The Development Agreement also granted Uniroyal the marketing and sales rights for each new use and formulation as to "Permitted Uses" of Bonzi for a period of five years from the date of its registration with the EPA. Counterclaims, ¶ 12. By its terms, the Development Agreement expired on December 31, 1996. Counterclaims, ¶ 13. As the result of the operation of these two agreements, Uniroyal had the exclusive right to sell and market Bonzi for the "Permitted Uses" in the United States commencing on January 29, 1991. Counterclaims, ¶ 14.

Despite having these exclusive rights, as early as 2000, Uniroyal began to conduct internal discussions about developing its own generic paclobutrazol product to compete with Bonzi. Counterclaims, ¶ 15. Beginning by early 2002, while Uniroyal was still marketing and selling Bonzi, it investigated how it might market its own generic paclobutrazol. Counterclaims,

¶ 16. Since that time, Uniroyal has registered its own generic paclobutrazol product with the EPA and submitted a proposed label for that product, which label includes several of the allegedly "new uses" that Uniroyal claims it developed during the term of the Development Agreement. Counterclaims, ¶ 17-18.[1]

In June 2002, Syngenta gave Uniroyal the requisite 180 day notice that it was terminating the Supply Agreement as of December 31, 2002. Counterclaims, ¶ 19. Within a few months, on December 19, 2002 Uniroyal filed this lawsuit against Syngenta. Counterclaims, ¶ 20. By this lawsuit, Uniroyal seeks to bar Syngenta's ability to market and sell its Bonzi product and thus compete with Uniroyal's generic paclobutrazol. It seeks to accomplish this through the entry of preliminary and permanent injunctions prohibiting Syngenta from advertising, promoting and selling Bonzi, not only for the "new uses" for which Uniroyal claims to have ongoing rights under the Development Agreement, but for <u>any</u> <u>uses</u> whatsoever, including uses that pre-existed the parties' 1991 agreements, to which Uniroyal has no possible claim of entitlement. Counterclaims, ¶ 21.

Uniroyal filed its Amended Complaint -- with Syngenta's consent -- on May 18, 2004. The Amended Complaint added two new theories of recovery: a CUTPA claim and a claim for unjust enrichment. In response to that Amended Complaint, and in light of new evidence and other information only learned in 2004 during discovery, Syngenta filed its Counterclaims on July 16, 2004. Those counterclaims assert causes of action against Uniroyal for tortious interference with business expectancies, and violation of CUTPA.

On August 19, 2004, Uniroyal filed a "motion to strike and dismiss counterclaims." On March 23, 2005, the Court denied on the merits Uniroyal's motion to strike,

---

[1] Significantly, Syngenta disputes that Uniroyal independently developed these "new uses," or that the scientific studies underlying these uses were proprietary Uniroyal studies.

holding that because Uniroyal's two new claims in its Amended Complaint expanded the scope of the litigation, "it is only fair and equitable to allow Syngenta to do the same by adding the two counterclaims," and also denied Uniroyal's motion to dismiss "without prejudice to refiling after the required pre-motion conference is held." March 23, 2005 Order at p.7.

On or about August 5, 2005, Uniroyal filed the instant motion to dismiss Syngenta's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims on which relief may be granted.

### III.   ARGUMENT

#### THE COUNTERCLAIMS STATE VALID CLAIMS UPON WHICH RELIEF MAY BE GRANTED

"In reviewing a motion to dismiss counterclaims for failure to state a claim, a court must take the allegations in the counterclaims as true. All reasonable inferences must be drawn in the claimant's favor. The counterclaims should be dismissed only where it appears beyond a doubt that the claimant can prove no set of facts in support of his claim entitling him to relief." See A&G Healthplans, Inc. v. National Network Servs., Inc., No. 99 CV 12153 (GBD), 2003 U.S. Dist. Lexis 3879, at *2 (S.D.N.Y. Mar. 14, 2003) (internal citations omitted).[2] "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Waring v. Carrier Corp., No. 3:01 CV 1822(JBA), 2002 U.S. Dist. LEXIS 17650, at *5-6 (D. Conn. Aug. 21, 2002) (internal citations omitted); see also Courtenay Comm. Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003).

Uniroyal's claim that it is immune from suit under the Noerr-Pennington doctrine fails as a matter of law. The Noerr-Pennington doctrine, based on a line of antitrust cases,

---

[2] All unreported cases are attached as Exhibit A in the order in which they appear.

4

Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United States Mine Workers v. Pennington, 381 U.S. 657 (1965), holds that a party has the right to petition the government for relief. This doctrine establishes immunity from liability for a party's conduct seeking to influence government action, which includes the use of the courts. See California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).

However, the doctrine is not absolute. It does not provide immunity for "sham litigation." The Supreme Court has established a two part test to determine whether the lawsuit at issue constitutes sham litigation. In its decision in Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993), the Court ruled that the courts must assess the following:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor," through the "use [of] the governmental process — as opposed to the outcome of that process — as an anticompetitive weapon."

Id. at 60-61 (internal citations omitted).

In the context of a motion to dismiss, however, a party is not obligated to prove each of these elements at the outset. While the above sham litigation test establishes factors that must be pled, it does not alter the standard for motions to dismiss under Rule 12(b)(6).[3] "All that is required is that the complaint allege facts, which, if proven, show that the defendant is not

---

[3] Importantly, the Professional Real Estate Court applied the "sham litigation" test in the context of ruling on a motion for summary judgment, not a motion to dismiss, and thus was focused on an examination of the material facts, and not merely the allegations of the pleadings.

5

entitled to Noerr-Pennington immunity under the sham litigation exception." Jarrow Formulas, Inc. v. International Nutrition Co., 175 F. Supp. 2d 296, 310-11 (D. Conn. 2001); see also Moore U.S.A., Inc. v. Standard Register Co., 139 F. Supp. 2d 348, 359 (W.D.N.Y. 2001); Skinder-Strauss Assocs. v. Massachusetts Continuing Legal Educ., Inc., 870 F. Supp. 8, 10 (D. Mass. 1994).

In Jarrow, the Court determined that the allegations made in the complaint set forth a valid sham litigation claim. The plaintiffs sued for damages and injunctive relief stemming from related patent litigation. The defendants moved to dismiss several of the plaintiffs' claims, including those for tortious interference and a CUTPA violation. See Jarrow, 175 F. Supp. 2d at 309. The Court (Covello, J.) found that the complaint alleged that the patent litigation was "objectively baseless and that the litigation concealed an attempt to interfere directly with the business relationships of a competitor." Id. at 311. This language was sufficient to defeat the motion to dismiss. Id.

Similarly, in Moore, the plaintiff filed an amended complaint, to which the defendant responded by filing new counterclaims in a case involving patents and licensing agreements. The plaintiff moved to dismiss the antitrust counterclaims on the basis of the Noerr-Pennington doctrine. See Moore, 139 F. Supp. 2d at 358. The counterclaims, however, alleged that the plaintiff knew its patent was not violated and that the plaintiff agreed to collaborate with its affiliates to thwart defendant's discovery and its defense. Id. at 359. The court concluded that these allegations, by themselves, were adequate to withstand a motion to dismiss. Id.

Finally, in Skinder-Strauss, the Court, in a copyright case, determined that a sham litigation claim was stated so long as the pleading alleged that the lawsuit was objectively baseless and concealed an attempt to interfere with a competitor's business. See Skinder-Strauss,

870 F. Supp. at 10. The court refused to apply any heightened pleading requirements, as argued by the plaintiff. Id.

Similar to the parties in Jarrow, Moore and Skinder-Strauss, Syngenta also has made detailed allegations concerning Uniroyal's conduct supporting its contention that Uniroyal's case is a sham. See, e.g., Counterclaims, ¶¶ 15-21. These detailed allegations contrast sharply with those in the cases cited by Uniroyal in which the Court dismissed a sham litigation claim. For example, in Hartford Life Insurance Co. v. Variable Annuity Life Insurance Co., 964 F. Supp. 624 (D. Conn. 1997), the defendant's basis for its conclusion that the litigation was baseless was nothing more than its belief that its defenses would prevail. The Court (Nevas, J.) concluded this was insufficient to survive a motion to dismiss. Id. at 628. A nearly identical situation occurred in Agfa Corporation v. United Marketing Group, Inc., No. 02 Civ 8468 (LAP), 2003 U.S. Dist. LEXIS 11760, at *8 (S.D.N.Y. 2003), in which the defendant did not even allege that the lawsuit was objectively baseless. Id.

Here, Syngenta carefully has alleged the sham litigation exception to the Noerr-Pennington doctrine. Specifically, among other things, Syngenta alleges that:

> Uniroyal's lawsuit, including the equitable relief set forth above, is a sham, and is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. There are no provable facts alleged in the Complaint that could justify completely barring Syngenta from advertising, promoting or selling Bonzi in any manner whatsoever. Moreover, there are no provable facts alleged in the Complaint that could justify barring Syngenta from advertising, promoting or selling Bonzi with a label containing any of the purported New Uses developed by Uniroyal, since any rights Uniroyal may have had to such New Uses have expired by the terms of the Development Agreement. Finally, Uniroyal has conceded in deposition that whatever marketing and sales rights were granted to Uniroyal -- assuming arguendo that Uniroyal retains any such rights, which Syngenta disputes — are limited to a narrow category of uses and use sites as defined in the Supply Agreement and Development Agreement.

> Uniroyal brings this lawsuit, and seeks the foregoing equitable relief, to conceal an attempt to interfere directly with the business relationships of Syngenta, to impede Syngenta's ability to sell Bonzi, and to gain a competitive advantage over Syngenta in the sale of paclobutrazol products by limiting the uses for which Syngenta may market and sell Bonzi.

Counterclaims, ¶¶ 22-23. Clearly, Syngenta's counterclaims far exceed the minimalist pleading that was rejected by the Court in Hartford Life and Agfa.

Uniroyal attempts to bolster its argument by mischaracterizing Syngenta's Counterclaims as a disagreement as to the meaning and effect of the Supply and Development Agreements and the parties' respective rights and obligations thereunder. However, even a cursory review of the Counterclaims reveals them to be much more than that. For example, even if Uniroyal's interpretation of those agreements were correct, at most Syngenta might be restricted in its ability to market and sell Bonzi for the limited number of "new uses" and use sites developed by Uniroyal. There is absolutely no interpretation of the agreements that would warrant a complete bar to Syngenta's rights to market and sell Bonzi -- a product that Syngenta indisputably owns -- in any manner whatsoever. Nor has Uniroyal pled such a theory in its Amended Complaint. Nevertheless, that is precisely among the relief that Uniroyal now seeks. No "reasonable litigant" -- not even Uniroyal -- could realistically expect success on the merits of this claim. The only reasonable and realistic interpretation of Uniroyal's pursuit of this and its other claims is to obtain a competitive advantage for its own generic paclobutrazol product. This is precisely the claim set forth in Syngenta's Counterclaims.

Moreover, discovery has confirmed the objective lack of merit in Uniroyal's Amended Complaint. Syngenta's Counterclaims are warranted because of newly discovered evidence that came to light only after Syngenta filed its initial answer, without counterclaims, on

October 30, 2003. That new evidence goes to the heart of the issues raised by Syngenta's Counterclaims.

For example, at the deposition of Laureen Treu, Uniroyal's Vice President of Specialty Agricultural Products and for plant growth regulators, taken on January 12, 2004, Ms. Treu testified that Uniroyal began internally discussing coming out with a generic paclobutrazol as early as 2000. See Deposition of Laureen Treu, January 12, 2004, at 160-63 (attached as Exhibit B). Ms. Treu's supervisor, Alfred Ingulli, Uniroyal's Executive Vice President of the Crop Protection Division, testified at his deposition on April 14, 2004 about Uniroyal's objectives in bringing this lawsuit, and acknowledged that they included enhancing Uniroyal's sales of its own generic paclobutrazol product that will compete with Bonzi. See Deposition of Alfred Ingulli, April 14, 2004 ("Ingulli Dep."), at 177-79 (attached as Exhibit C). Uniroyal's Manager of Product Development for Specialty Products, Kevin Donovan, testified at his deposition that Uniroyal sought to identify potential customers for a generic paclobutrazol product among existing Bonzi customers in March 2002, several months before Syngenta placed Uniroyal on notice that it intended to terminate the Supply Agreement. See Deposition of Kevin Donovan, May 6, 2005, at 30-31 (attached as Exhibit D).[4]

In addition, while Syngenta has maintained from the outset of this litigation that Uniroyal's claims are meritless, only since the Uniroyal depositions and the filing of the Amended Complaint has Syngenta determined that Uniroyal's lawsuit rises to the level of a sham. For example, Mr. Ingulli acknowledged that the marketing and sales rights to Bonzi for which Uniroyal claims rights under the Development Agreement refer to the new uses and

---

[4] These three specific examples are not exclusive. Indeed, other Uniroyal witnesses also have testified at their depositions about Uniroyal's plans to develop and market a generic paclobutrazol product to compete with Bonzi. There is no evidence that Uniroyal apprised Syngenta that it was developing plans to launch a competitive product or that it was having discussions with Bonzi customers about these plans.

formulations developed by Uniroyal for use in the Development Field. See Ingulli Dep. at 62-63 (attached as Exhibit E). Kevin Donovan affirmed this understanding at his own deposition on May 14, 2004. See Deposition of Kevin Donovan, May 14, 2004 at 43-44 (attached as Exhibit F). Thus, no fewer than two Uniroyal executives have effectively admitted that any marketing and sales rights that were granted to Uniroyal are limited to a narrow category of uses and use sites defined in the Development and Supply Agreements.

Despite these admissions, Uniroyal's Amended Complaint -- filed <u>after</u> the above depositions -- seeks an injunction barring Syngenta from marketing and selling Bonzi for <u>all</u> uses, rather than only for the much more limited scope of "new uses" described above. In the face of the clear language of the operative agreements, and Uniroyal's witnesses' own testimony concerning their understanding of those agreements, there can be no good faith basis for Uniroyal to seek such extraordinary relief. Rather, the only reasonable conclusion to be drawn is that Uniroyal is pursuing this claim in an effort to interfere with Syngenta's business and to gain a competitive advantage for Uniroyal's generic Bonzi competitor.[5]

---

[5] Of course, as set forth in its Counterclaims, Syngenta's claims of sham litigation and tortious interference are not limited to this single claim for relief, but also are based on other improper conduct by Uniroyal.

## IV. CONCLUSION

Syngenta's Counterclaims set forth valid causes of action. Accordingly, plaintiff's Motion to Dismiss Counterclaims should be denied, together with such other and further relief as the Court deems proper.

DEFENDANT,
SYNGENTA CROP PROTECTION, INC.

By /s/ William A. Ruskin
William A. Ruskin (Fed. Bar No. ct20898)
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211
Telephone: (212) 351-4740
Facsimile: (212) 878-8740
E-mail: wruskin@ebglaw.com

and

One Landmark Square, Suite 1800
Stamford, Connecticut 16901-2681
(203) 348-3737

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Opposition to Plaintiff's Motion to Dismiss Counterclaims, was sent via U.S. Mail, postage prepaid, on this 14th day of September 2005, to:

Charles R. Corcoran, III, Esq.
Carmody & Torrance LLP
195 Church Street
P.O. Box 1950
New Haven, CT  06509-1950

_David J. Clark_
David J. Clark

NY:715239v2