LEXSEE 2003 US DIST LEXIS 3879

**A&G HEALTHPLANS, INC. and A&G FINANCIAL CONSULTANTS, INC., Plaintiffs,-against-NATIONAL NETWORK SERVICES, INC.., Defendant.**

99 cv 12153(GBD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 3879

March 12, 2003, Decided
March 14, 2003, Filed

**DISPOSITION:** [*1] Plaintiffs' motion to dismiss the counterclaims was granted in part and denied in part..

**LexisNexis(R) Headnotes**

**COUNSEL:** For A&G Healthplans, Inc, A&G Financial Consultants, Inc, PLAINTIFFS: Judd Burstein, Burstein & McPherson LLP, New York, NY USA.

For National Network Services, Inc, DEFENDANT: Dennis M Rothman, Lester Schwab Katz & Dwyer, New York, NY USA.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINIONBY:** GEORGE B. DANIELS

**OPINION:**

MEMORANDUM OPINION & ORDER

GEORGE B. DANIELS, DISTRICT JUDGE:

Plaintiffs commenced this action seeking a permanent injunction against defendant for breach of contract, misappropriation of trade secrets, and tortious interference with business relations. Defendant responded with an answer which included several counterclaims. Plaintiffs thereafter moved to dismiss the portion of defendant's counterclaims that sought an equitable accounting, as well as the second counterclaim which alleged a breach of fiduciary duty. That motion was granted. With leave of the court, plaintiffs filed an amended complaint. Defendant responded with an answer to the amended complaint which included counterclaims for violations of Section 43(a) of the Lanham [*2] Act, 15 U.S.C. § 1125(a), constructive trust, misappropriation and conversion of trade secrets, common law unfair competition, and breach of contract. Defendant named Norman Payson, Chief Executive Officer and President of A&G Healthplans, Inc. and A&G Financial Consultants, Inc. as an additional counterclaim-defendant on all of the counterclaims except for the breach of contract counterclaim. Plaintiffs thereafter moved to dismiss defendant's counterclaims for failure to state a claim upon which relief can be granted pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.

In reviewing a motion to dismiss counterclaims for failure to state a claim, a court must take the allegations in the counterclaims as true. See *Hosp. v. Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740, 48 L. Ed. 2d 338, 96 S. Ct. 1848 (1976)*; *Miree v. DeKalb County, 433 U.S. 25, 27 n. 22, 53 L. Ed. 2d 557, 97 S. Ct. 2490 (1977)*. All reasonable inferences must be drawn in the claimant's favor. See *Bolt Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995)*. The counterclaims should be dismissed only where it appears beyond [*3] a doubt that the claimant can prove no set of facts in support of his claim entitling him to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)* (footnote omitted); *Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985)*. Although a court considering a motion to dismiss for failure to state a claim is limited to the facts as stated in the pleadings, the pleadings include any written instrument attached as an exhibit and any statements or documents incorporated by reference therein. See *Paulemon v. Tobin, 30 F.3d 307, 308-309 (2d Cir. 1994)*. The court may not consider factual allegations in briefs or memoranda. See *Fonte v. Bd. of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir. 1988)*. The facts upon which a claimant bases his claim need not be set out in detail, but must give his adversary fair notice of the nature of his claim and the grounds upon which it rests. See *Greenberg v. New York State, 919 F. Supp. 637, 640 (E.D.N.Y. 1996)*, citing *Conley, 355 U.S. at 47*.

Defendant's first counterclaim alleges that plaintiffs violated Section [*4] 43(a) of the Lanham Act, *15 U.S.C. § 1125(a)*. A violation of this section has occurred if there is a "likelihood of confusion as to the origin of the goods [or services] in issue at the consumer level." *Berlitz Schools of Languages of America, Inc. v. Everest House, 619 F.2d 211, 215 (2d Cir. 1980)*. Defendant alleges that plaintiffs falsely represented an association with defendant to defendant's patient-clients and to medical providers under contract with defendant in order to obtain discounts. See Answer to Amended Complaint PP 25-30. Defendant's pleading focuses primarily on medical providers. Id. at PP 26-30. However, medical providers are not consumers in this context, and therefore defendant can prove no set of facts that demonstrate a likelihood of confusion to consumers. Accordingly, plaintiffs' motion to dismiss defendant's first counterclaim with respect to medical providers under contract with defendant is granted with prejudice. Additionally, because defendant's pleading focused on medical providers, defendant has also failed to allege a cognizable claim under the Lanham Act with respect to its patient-clients. Therefore, [*5] plaintiffs' motion to dismiss defendant's first counterclaim with respect to defendant's patient-clients is granted without prejudice.

Defendant's second counterclaim for constructive trust is founded upon plaintiffs' alleged unauthorized use of defendant's relationships and the profits they purportedly earned therefrom. Under New York law, the elements which may be used to impose a constructive trust are "(1) a *confidential* or fiduciary relationship; (2) a promise, express or implied; (3) a transfer in reliance on the promise; and (4) unjust enrichment." *Artist Mgmt. Office, Inc. v. Worldvision Enter., Inc., 1997 U.S. Dist. LEXIS 5144, 1997 WL 188937, at *6 (S.D.N.Y. 1997)*, citing *Sharp v. Kosmalski, 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976)* (emphasis added). However, these elements should not be rigidly construed See *Golden Budha Corp. v. Canadian Land Co. of Am., N.V., 931 F.2d 196, 202 (2d Cir. 1991)*, citing *Simonds v. Simonds 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978)*. "The purpose of a constructive trust is said to be the prevention of unjust enrichment ... To impose a constructive trust, what is required, generally, [*6] is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it." Id. (internal quotations and citations omitted).

The contract between the parties, which is incorporated by reference into the pleadings, specifies that the parties may exchange confidential information during their relationship and that they agree not to use such information for their own benefit. See Client Service Agreement P 8. Defendant alleges that plaintiffs wrongfully used confidential information obtained during the parties' contractual relationship for plaintiffs' own benefit and profited therefrom. See Answer to Amended Complaint PP 33-36. These allegations are sufficiently plead to state a claim for the imposition of a constructive trust. Therefore, plaintiffs' motion to dismiss defendant's second counterclaim is denied.

Defendant's third counterclaim alleges misappropriation of trade secrets. To support this claim, defendant must prove that "(1) it possessed a trade secret, and (2) [plaintiffs are] using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990)* [*7] (internal quotation marks omitted), quoting *Rapco Foam, Inc. v. Scientific Applications, Inc., 479 F. Supp. 1027, 1029 (S.D.N.Y. 1979)*. Under New York law,

> a trade secret is defined as any device which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it ... Six factors are to be considered in determining whether a trade secret exists: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803, 453 N.Y.S.2d 470, 472 (1982)*, quoting RESTATEMENT OF TORTS § 757 cmt. b (internal quotation marks omitted); see also *Integrated Cash Mgmt., 920 F.2d at 173*.

The contract [*8] between the parties specifies that the parties may exchange "non-public confidential information" or "Trade Secrets" during their relationship. See Client Service Agreement P 8. Defendant alleges that plaintiffs wrongfully used defendant's confidential business relationships with medical providers to obtain discounts from these providers. See Answer to Amended Complaint PP 7, 38. These allegations are sufficiently plead to state a claim for misappropriation of trade secrets. Plaintiffs' motion to dismiss defendant's third counterclaim is therefore denied.

Defendant's fourth counterclaim alleges unfair com-

petition under the common law of the State of New York. This counterclaim must meet the same standard of likelihood of confusion to consumers as defendant's Lanham Act counterclaim, as well as meet an additional requirement of bad faith. See *Girl Scouts of the United States v. Bantam Doubleday Dell Publ'g Group, Inc.*, 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992), citing *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1283 (S.D.N.Y. 1990) and *Educ. Testing Serv. v. Touchstone Applied Science Assoc., Inc.*, 739 F. Supp. 847, 849 (S.D.N.Y. 1990); [*9] see also *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). For the same reasons stated earlier with respect to defendant's first counterclaim, plaintiffs' motion to dismiss defendant's fourth counterclaim as to the medical providers under contract with defendant is granted with prejudice, and plaintiffs' motion to dismiss defendant's fourth counterclaim with respect to defendant's patient-clients is granted without prejudice.

Defendant's fifth counterclaim alleges breach of contract. A claim for breach of contract must allege: "(1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach ... It is not necessary, however, for a [claim] alleging breach of contract to specifically state each element individually." *R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F. Supp. 986, 990-91 (S.D.N.Y. 1993), citing *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 561 (S.D.N.Y. 1985). Reading defendant's answer to the amended complaint as a whole, this Court finds that defendant has [*10] sufficiently plead these elements so as to give plaintiffs notice of the nature and grounds of this claim. Plaintiffs' motion to dismiss defendant's fourth counterclaim is therefore denied.

Finally, defendant's first, second, third, and fourth counterclaims name Norman Payson as an additional counterclaim-defendant. Defendant may not join Mr. Payson as a counterclaim-defendant on these claims absent allegations of his "independently tortious conduct." *Mendez v. City of New York*, 259 A.D.2d 441, 687 N.Y.S.2d 346, 347-48 (App. Div. 1999) (citations omitted); see also *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993). However, defendant has not made any such allegations. Plaintiffs' motion to dismiss defendant's counterclaims as asserted against Norman Payson is therefore granted without prejudice.

Dated: March 12, 2003

SO ORDERED:

GEORGE B. DANIELS

United States District Judge

LEXSEE 2002 U.S. DIST. LEXIS 17650

Waring v. Carrier Corp. et al.

No. 3:01cv1822(JBA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2002 U.S. Dist. LEXIS 17650

August 21, 2002, Decided

**DISPOSITION:** [*1] Plaintiff's motion to amend his complaint was granted and Carrier's and UTC's motion to dismiss was denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For JOHN D. WARING, plaintiff: Gregg D. Adler, Deborah L. McKenna, Livingston, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT.

For JOHN D. WARING, plaintiff: Lawrence C. DiGiulio, Robert C. Weissflach, Jaeckle Fleishchmann & Mugel, Buffalo, NY.

For CARRIER CORP, CARRIER INTL CORP, UNITED TECH CORP, defendants: Patricia M. Canavan, Day, Berry & Howard, Stamford, CT.

For CARRIER CORP, CARRIER INTL CORP, UNITED TECH CORP, defendants: Victoria Woodin Chavey, Day, Berry & Howard, Hartford, CT.

**JUDGES:** Janet Bond Arterton, United States District Judge.

**OPINIONBY:** Janet Bond Arterton

**OPINION:**

Ruling on Pending Motions [Docs. # # 21 & 43]

John Waring commenced this suit against Carrier Corp. ("Carrier"), Carrier International Corp. ("CIC") and United Technologies Corp. ("UTC"), alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Carrier and UTC (but not CIC) moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), asserting that the complaint fails to state a complaint against [*2] them, as they are not liable as an "integrated enterprise" for the acts of CIC. Simultaneous with his filing of opposition to this motion, Waring moved to amend his complaint. n1 Carrier and UTC ("the moving defendants") oppose the amendment on the grounds of futility, asserting that even the facts as pled in the proposed Amended Complaint fail to establish that Carrier, UTC and CIC were an "integrated enterprise" subject to liability under ADEA.

n1 Waring nonetheless argues that even under his original complaint, the motion to dismiss should be denied.

For the reasons set out below, the Court grants Waring's motion to amend and denies the moving defendants' motion to dismiss.

I. The Motion to Amend

Waring's original complaint in this case was filed September 24, 2001, and his motion to amend was filed February 11, 2002. The operative scheduling order [Doc. # 27] provides that motions to amend are due by April 1, 2002. Thus, the amendment is by all accounts timely filed.

The moving defendants' only objection [*3] to the motion to amend is that it is futile. Because, as discussed below, the Amended Complaint sufficiently states a claim against the moving defendants, it is not futile and the amendment will be permitted.

II. The Motion to Dismiss

A. The Allegations of the Amended Complaint

Waring was hired by defendants in 1982 as a Production Control Manager, and thereafter assumed various positions throughout Asia with defendants. Am. Compl. PP 15-17. In April 2000, the Vice President of Human Resources for CIC, Patrick Preux, asked Waring about his retirement plans, as did the President of CIC, Geraud Darnis, in June 2000. Id. P 20. Despite the fact that Waring was "well qualified for each of the job positions he held with defendants," id. P 18, his employment was terminated by Preux on August 8, 2000, id. P 21. While

Case 3:02-cv-02253-AHN    Document 140-2    Filed 09/15/2005    Page 5 of 10

Page 2
2002 U.S. Dist. LEXIS 17650, *3

Preux cited "behavior inconsistencies" and "serious violations of expense procedures," id., as the reasons for termination, the former term was never explained and the latter reason was unfounded, id. P 23. These reasons were "a pretext for unlawful and wilful age discrimination." Id.

In addition to alleging throughout the Amended Complaint that he [*4] was employed by "defendants" (plural), Waring asserts:

> Carrier, CIC, and UTC constitute an integrated enterprise, with common management, common ownership or financial control, centralized control of labor relations, and a functional interrelation of operations. CIC is a mere instrumentality and/ or alter ego of UTC.

Id. P 14. This allegation is given further context by Waring's claims that "the termination decision in this case [was] made by human resource personnel employed by Carrier and/ or UTC"; when Waring questioned his termination, those questions were answered by Carrier's Vice President for Human Resources and a UTC ombudsman; Waring's paychecks were issued by Carrier for several years after he was transferred to Carrier's Asian Pacific Operations "(a/ k/ a CIC)"; Waring "regularly reported to, and took direction from, executives at Carrier and UTC concerning operations"; "business plans by Mr. Waring were submitted to UTC and Carrier for approval and changes"; "benefit plans offered to Mr. Waring were Carrier and/ or UTC plans"; and UTC and Carrier oversaw Waring's duties as Director of Environmental Health and Safety and as Regional Dialog Coordinator. [*5] Id. P 28.

Beyond these allegations specific to his employment, Waring asserts that CIC's human resources and labor decisions were regularly made by UTC/Carrier human resources personnel; employees of the three corporations "regularly and routinely transferred between the corporate entities"; and the corporations share common management with regard to policies and procedures. Id. PP 28-29.

B. Standard

When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but [*6] that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683, 71 Ohio Op. 2d 474 (1974).

C. Analysis

The basis for Carrier's and UTC's motion to dismiss is that neither company was Waring's "employer," and thus Waring has not stated a claim under ADEA against them. To determine when a parent company may be considered the employer of a subsidiary's employees, courts assess four factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or interest. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-1241 (2d Cir. 1995). The focus of the inquiry is on the second factor, centralized control of labor relations, id. at 1241, which "'has been further refined to the point that the critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" Id. at 1240 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983) (citations omitted)).

Carrier and UTC claim that the Amended Complaint is "deficient in its allegation [*7] of an integrated enterprise," Def.'s Reply [Doc. # 26] at 5, because it relies on inconsistent facts and conclusory allegations. Specifically, the moving defendants argue that Waring's allegation that Carrier and UTC participated in the decision to end his employment "directly contradicts the specific facts he alleged [in Am. Compl. P 24; that is,] only that Patrick Preux, Vice President of Human Resources for CIC, terminated his employment, told him the reasons for the termination, and attempted to negotiate a severance package with him." Def.'s Reply [Doc. # 26] at 6-7. The moving defendants further point out that "the only people Plaintiff claims were involved in the alleged age discrimination at issue in this case are CIC officials–Mr. Preux and Geraud Darnis, the President of CIC." Id. at 7. In addition to these claimed contradictions, the moving defendants argue that the Waring's allegations against them are "so conclusory or otherwise insufficient that [they] still fail[] to properly allege an integrated enterprise." Id. at 8.

First, the claim that Waring's allegations are contradictory is without merit. Specifically identifying Preux as the conveyor of the [*8] termination decision is not inconsistent with Waring's claims that the actual decision to terminate his employment was made by Carrier and/ or UTC human resources personnel, or that Carrier, UTC and CIC are so interrelated that they form a single inte-

grated enterprise.

Second, Waring's complaint is not conclusory with regard to the allegations that Carrier, UTC and CIC form a single integrated enterprise. Waring sets out in detail his allegations of interrelated operations, centralized control of labor relations, common management, and common ownership or interest, providing concrete examples of the types of functions the defendants' are alleged to perform jointly.

A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," *Fed. R. Civ. P. 8(a)(2)*, and must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious [*9] claims." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002)* (citations omitted). Waring has sufficiently satisfied this standard, and is entitled to use the discovery mechanisms provided for in the Federal Rules of Civil Procedure to further assess and refine his claims.

III. Conclusion

For the reasons set out above, Plaintiff's motion to amend his complaint [Doc. # 43] is GRANTED and Carrier's and UTC's motion to dismiss [Doc. # 21] is DENIED. The Clerk is directed to docket the Amended Complaint.

IT IS SO ORDERED.

/s/

Janet Bond Arterton

United States District Judge

**Dated at New Haven, Connecticut, this 21st day of August, 2002.**

LEXSEE 2003 U.S. DIST. LEXIS 11760

AGFA CORPORATION, Plaintiff,-against-UNITED MARKETING GROUP, INC., and PROFICO, LTD., Defendants.

02 Civ. 8468 (LAP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2003 U.S. Dist. LEXIS 11760

July 10, 2003, Decided
July 14, 2003, Filed

**DISPOSITION:** Plaintiff's motion to dismiss defendant's counterclaim granted. Defendant's cross-motion to dismiss plaintiff's complaint denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Agfa Corporation, PLAINTIFF: Murray J Laulicht, Pitney, Hardin, Kipp & Szuch, LLP, New York, NY USA.

**JUDGES:** [*1] LORETTA A. PRESKA, United States District Judge.

**OPINIONBY:** LORETTA A. PRESKA

**OPINION:** MEMORANDUM AND ORDER

LORETTA A. PRESKA, United States District Judge:

Presently pending are plaintiff Agfa Corporation's ("Agfa") motion to dismiss the counterclaim of defendants United Marketing Group, Inc. and Profico, Ltd. (collectively, the "defendants") and defendants' cross-motion to dismiss plaintiff's complaint. For the reasons stated herein, plaintiff's motion is granted, and defendants' cross-motion is denied.

BACKGROUND

Plaintiff's complaint alleges the following pertinent facts. Agfa is engaged in the business of manufacturing and selling graphic arts films, papers, chemicals, accessories and electronic prepress equipment and proofing products. (Complaint, hereafter, "Compl.," at P 9). Among the products manufactured and sold by Agfa are categories of products known as recording films and papers (referred to throughout plaintiff's complaint as "Recording Product"), which are used extensively in the graphics arts industry. (Id.). Agfa distributes Agfa-branded Recording Product in the United States primarily through authorized Agfa dealers (hereafter, "Authorized Dealers") pursuant to [*2] an express Authorized Dealer agreement. (Id. at P 10). The dealer agreement utilized by Agfa provides that Authorized Dealers are obligated to purchase all of their requirements for Agfa-branded products, including Recording Products, from Agfa. (Id. at P 11). In addition to its system of Authorized Dealers, Agfa also sells Recording Product in the United States through alternative channels of distribution. (Id. at P 16). However, Recording Product sold by Agfa through such alternative channels of distribution is not intended to be sold by Agfa's Authorized Dealers. (Id. at P 17).

According to plaintiff's complaint, defendants are engaged in the sale of Recording Product to graphic arts suppliers. (Compl. at P 19). Defendants have not contracted with Agfa to participate in Agfa's distribution channels in any capacity. (Id. at P 20). Upon information and belief, defendants acquired Agfa-branded Recording Product on the "gray market," that is, they purchased Recording Product that had either been improperly diverted from Agfa's official distribution system or they imported the Recording Product from foreign markets. (Id. at P 21). Defendants then re-sold the [*3] Agfa-branded Recording Product to one or more graphic arts suppliers known to defendants to be Agfa Authorized Dealers. (Id. at P 22). At the time of such sales, defendants were aware of the contractual obligation of Agfa's Authorized Dealers to purchase all of their Agfa-branded Recording Product exclusively from Agfa. (Id. at P 23). In at least one case, defendants made sales of more than $750,000 to an entity known by them to be an Agfa Authorized Dealer. (Id. at P 24).

As a result of defendants' activities, Agfa purportedly lost selling opportunities to one or more Authorized Dealers, incurred exposure to end-users' warranty and rebate claims without consideration, and mistakenly ex-

tended credits and rebates to one or more Authorized Dealers. (Compl. at P 25). In at least one case, Agfa was compelled to terminate its relationship with an Authorized Dealer as a result of that Dealer's purchases from defendants. (Id. at P 26).

Defendants' counterclaim, in turn, alleges that defendants purchased certain Agfa products in the stream of interstate and foreign commerce from sellers other than Agfa. (Defendants' counterclaim, hereafter, "Defs' Counterclaim," at P 7). [*4] According to defendants, they have never had a contractual relationship with Agfa and have "every right" to purchase Agfa products from the stream of interstate and foreign commerce without interference by Agfa. (Id. at P 9).

On October 23, 2002, plaintiff filed an original Complaint (the "Complaint") against defendants alleging tortious interference with contract. On January 31, 2003, defendants filed an Answer, Affirmative Defense, and Counterclaim (the "Counterclaim"). n1 In their Counterclaim, defendants allege that the filing of this action by Agfa constitutes a violation of sections one and two of the *Sherman Act* and of the *Donnelly Act*, the New York analog of the *Sherman Act*.

> n1 Although plaintiff's motion to dismiss the Counterclaim refers to both an original Answer and Counterclaim, filed on November 15, 2002, and an Amended Answer and Counterclaim, filed on November 19, 2002, (Pl's Br. at 3), the official Court docket contains only a single Answer and Counterclaim, docketed on January 31, 2003. The motion will be considered with respect to the docketed Answer and Counterclaims only.

[*5]

On December 9, 2002, plaintiff moved to dismiss the Counterclaim. On February 12, 2003, defendants cross-moved to dismiss the Complaint.

DISCUSSION

I. Legal Standard

When deciding a motion to dismiss under *Rule 12(b)(6)*, I must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the [pleader's] favor." *Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)*. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)* (quoting *Scheuer v. Rhodes, 416 U.S. 232, 235-36, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974))*. Dismissal is proper only when "it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*; accord *Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994)*.

II. The Noerr-Pennington Doctrine and Plaintiff's [*6] Motion to Dismiss the Counterclaim

The Noerr-Pennington doctrine provides immunity from liability for conduct seeking to influence government action. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961)*; *United Mine Workers of Am. v. Pennington, 381 U.S. 657, 669-70, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965)*. "Essentially, the Doctrine protects under the *First Amendment* efforts to influence governmental action through litigation, lobbying, and the like. Such activities are immunized from antitrust liability, provided that such activities are more than a mere 'sham.'" *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P., No. 007302, 2000 U.S. App. LEXIS 25440, at *3 (2d Cir. Oct. 11, 2000)* (affirming district court's dismissal of a claim under the Noerr-Pennington doctrine). Immunity under the Noerr-Pennington doctrine attaches regardless of whether the claim is based on a state or a federal cause of action. See *Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 128-29 (3d Cir. 1999)* (applying Noerr-Pennington to state tort [*7] law claims because "we have been presented with no persuasive why these state tort claims, based on the same petitioning activity as the federal claims, would not be barred by the Noerr-Pennington doctrine"); *H.L. Hayden Co. v. Siemens Medical Sys., Inc., 672 F. Supp. 724, 745 (S.D.N.Y. 1987)* (granting summary judgment on state *Donnelly Act* claim because summary judgment was appropriate on federal *Sherman Act* claims).

To invoke the "sham" exception to the doctrine, a party must allege that the lawsuit is "objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits." *Bath Petroleum, 2000 U.S. App. LEXIS 25440, [WL] at *3-4* (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 56-57, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993)*. If a court first determines that the challenged litigation is objectively meritless, that court may then examine the subjective motivation of the litigant. See *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc., 312 F.3d 90, 93 (2d Cir. 2002)*; see also *Cheminor Drugs, 168 F.3d at 122-23*. "Where [*8] possible, ... this analysis should be addressed to the face of the complaint, in order to avoid chilling a litigant's exercise of the right to petition." *Twin City Bakery Workers & Welfare Fund v. Astra Aktiebolag,*

*207 F. Supp. 2d 221, 223 (S.D.N.Y. 2002).*

Here, defendants do not argue that consideration of Noerr-Pennington immunity is improper but only that the "sham" exception applies. (Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Counterclaim and in Support of Defendants' Motion to Dismiss the Complaint, hereafter, "Defs' Br.," at 2). Defendants, however, have not carried their burden on this argument. As a threshold matter, defendants do not allege, in their Counterclaim, that Agfa's lawsuit is "objectively baseless." See *Bath Petroleum, 2000 U.S. App. LEXIS 25440,* [WL] at *3-4. To the contrary, defendants do not even address the merit of the claims set forth in Agfa's Complaint, viz., defendants' alleged tortious interference with contract and interference with prospective economic advantage. Instead, defendants assert their own right to purchase Agfa products and to resell them on the secondary market. (Defs' [*9] Counterclaim at PP 7-9). Defendants then allege, in conclusory fashion, that Agfa's Complaint constitutes a violation of the *Sherman Act* and the *Donnelly Act*. (Id. at PP 10-11). Such a conclusion is inconsistent with the requirement, as set forth in the prior case law, that allegations of "sham" litigation be contained in the pleadings, see, e.g., *Twin City Bakery Workers, 207 F. Supp. 2d at 223,* and is, as such, insufficient to defeat the application of the Noerr-Pennington doctrine. In any event, Agfa has pleaded the elements of tortious interference with contract and interference with prospective economic advantage, see section III, infra, and has included facts in its Complaint to support its claims. Thus, defendants have failed to carry their burden on the first step of the sham litigation exception to the Noerr-Pennington doctrine of showing the claim to be objectively baseless. See *T.F.T.F. Capital Corp., 312 F.3d at 93.*

Proceeding directly to the second step of the sham litigation exception, plaintiff's motivation, defendants introduce evidence in the form of two affidavits (one from the President of defendants, [*10] the other from one of the attorneys for defendants) of efforts by Agfa to acquire defendants' list of suppliers during pre-litigation, settlement-type discussions. Relying on those affidavits, defendants assert that the instant case is a sham because it was filed only after defendants refused to share the pertinent list of suppliers with Agfa and for the sole purpose of obtaining this list, which defendants maintain is a trade secret. (Defs' Br. at 4-6).

First, because this is a motion to dismiss not converted to summary judgment, it is not clear that the affidavits may even be considered. Second, assuming, arguendo, that the conversations discussed in defendants' affidavits would be admissible (which they almost certainly would not be), such evidence is insufficient to render Agfa's claim a sham because motivation may only be considered if the claim is found to be objectively meritless. Here, as noted above, I cannot so find. Accordingly, defendants have not satisfied their burden of demonstrating the sham litigation exception to the Noerr-Pennington doctrine, and, therefore, Agfa is entitled to invoke immunity from defendants' Counterclaim under that doctrine. Accordingly, [*11] Agfa's motion is granted, and defendants' Counterclaim is dismissed.

III. Defendants' Cross-Motion to Dismiss

Under New York law, the elements of a claim for tortious interference with contract are: "(1) existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of the breach of that contract; and (4) damages." *G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 252 (S.D.N.Y. 2001);* see also *Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996).* To state a claim for tortious interference with prospective economic advantage, "a plaintiff must also plead facts that demonstrate that the defendant acted with the sole purpose of harming the plaintiff or that the defendant used dishonest, unfair or improper or wrongful means." *G-I Holdings, 179 F. Supp. 2d at 254* (internal citations omitted).

Here, Agfa's Complaint alleges that Agfa had a contractual relationship with its authorized dealers, in particular one dealer to whom defendants purportedly sold over $750,000 in Recording Product. (Compl. [*12] at PP 10, 24). The Complaint alleges that defendants were aware of the contractual relationship and the requirement that the dealer purchase all of their Agfa-branded Recording Product exclusively from Agfa. (Id. at P 23). Moreover, the Complaint details the actions of defendants to induce Agfa's dealer to breach its dealer agreement. (Id. at PP 21-24). The Complaint also alleges that Agfa suffered damages as a result of defendants' actions. (Id. at PP 25-26).

As to the interference with prospective economic advantage claim, the Complaint also alleges, in addition to the facts recited above, that defendants maliciously and intentionally interfered with Agfa's prospective economic relationship with its authorized dealers, including a dealer by the name of Arkin Medo, Inc. (Id. at PP 37-38).

Other than alleging that plaintiff's claim is "sham" litigation, defendants do not specify any pleading deficiency in plaintiff's claims. Because, on a motion to dismiss, all allegations in the non-movant's pleadings are presumed to be true, see *Chambers, 282 F.3d at 152,* and because Agfa's complaint pleads the elements of its causes of action for tortious interference [*13] with existing contrac-

tual relations and tortious interference with prospective economic advantage, defendants' cross-motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, Agfa's motion to dismiss the Counterclaim (docket entry no. 5) is granted. Defendants' cross-motion to dismiss the Complaint (docket entry no. 9) is denied.

Counsel shall confer as to the steps necessary to resolve this action and shall appear for a conference on July 28, 2003 at 9:30 a.m. in Courtroom 12A at 500 Pearl Street, New York, New York.

SO ORDERED:

LORETTA A. PRESKA, U.S.D.J.