```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| UNIROYAL CHEMICAL CO. | : |
| | : |
| v. | :  Civil NO. 3:02cv2253(AHN) |
| | : |
| SYNGENTA CROP | : |
|     PROTECTION, INC. | : |

<u>RULING ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS</u>

Plaintiff Uniroyal Chemical Co. ("Uniroyal") brings this action for breach of contract and related claims against defendant Syngenta Crop Protection ("Syngenta"). Uniroyal asserts six causes of action against Syngenta:[1] (1) breach of contract, (2) conversion, (3) breach of the covenant of good faith and fair dealing, (4) promissory estoppel, (5) unjust enrichment, and (6) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b. Uniroyal seeks compensatory and punitive damages and injunctive relief against Syngenta.[2] Syngenta has filed counterclaims alleging

---

[1] Uniroyal also brought a claim against Syngenta for violation of Delaware's Franchise Security Law, 6 Del. C. § 2552. However, the court dismissed this claim on September 30, 2003, finding that the Delaware Franchise Security Law did not apply to Uniroyal because that corporation had not paid more than $100 to enter the Agreements and did not have a place of business in Delaware.

[2] Uniroyal seeks an injunction ordering Syngenta (1) not to advertise, promote, or sell Bonzi; (2) to deliver up to Uniroyal for destruction all labels, promotional materials, etc., that have been created in violation of the agreements; (3) to notify all members of the trade to whom it has sold Bonzi that it has improperly labeled the product; and (4) to recall all Bonzi products that have been improperly labeled.

that Uniroyal's suit is a sham that no reasonable plaintiff could expect to win, and constitutes (1) a tortious interference with business expectancies and (2) a violation of CUTPA. Now pending before the court are Syngenta's motion for summary judgment and alternative motion for partial summary judgment [doc # 120] and Uniroyal's motion to dismiss Syngenta's counterclaims [doc # 129].

This action arises out of two contracts -- a Development Agreement and a Supply Agreement -- between Uniroyal and Syngenta's predecessor in interest that granted Uniroyal certain marketing and sales rights for Bonzi, a chemical for which Syngenta held the patent. The Development Agreement terminated on December 31, 1996. Syngenta terminated the Supply Agreement in 2002, and now markets Bonzi itself. Uniroyal asserts that its right to market the new uses it developed for Bonzi survive in perpetuity under the terms of the Development Agreement. Syngenta's motion for summary judgment asserts that, under the plain meaning of the Development Agreement, Uniroyal's right to market new uses it developed for Bonzi expired in 1998, five years after such uses were registered with the EPA, and thus it cannot have breached the Development Agreement by marketing those uses since that time. Uniroyal moves to dismiss Syngenta's counterclaims on the grounds that its breach of contract claim against Syngenta is protected by the Noerr-Pennington doctrine.

In opposition to that motion, Syngenta argues that Uniroyal's suit is a sham that is not entitled to First Amendment protection under the Noerr-Pennington doctrine.

For the following reasons, the court concludes that pursuant to the unambiguous language of the Development Agreement, Uniroyal's marketing rights for new uses of Bonzi expired on July 15, 1998, and therefore Syngenta did not breach the Agreements. Accordingly, Syngenta's motion for summary judgment on Uniroyal's complaint is granted. The court also determines that Uniroyal's suit is not objectively meritless, and is thus entitled to immunity under the Noerr-Pennington doctrine. Thus, the court grants Uniroyal's motion to dismiss Syngenta's counterclaims.

## STATEMENT OF FACTS

All of the material facts are undisputed. Uniroyal and Syngenta both manufacture and sell a variety of chemical products, including those used in the growing and care of plants. Bonzi is a chemical that is used to regulate the size and growth of ornamental plants. Syngenta's predecessor in interest, ICI Americas, Inc. ("ICIA"), owned the patent to paclobutrazol, the chemical compound that constitutes Bonzi. On January 29, 1991, ICIA and Uniroyal entered into two agreements titled the Bonzi Chemical Supply Agreement ("the Supply Agreement") and the Bonzi Development Agreement ("the Development Agreement").

Under the terms of the Supply Agreement:

(1) ICIA would sell paclobutrazol exclusively to Uniroyal;

(2) Uniroyal would purchase and receive paclobutrazol exclusively from ICIA;

(3) ICIA granted Uniroyal the right to sell Bonzi in a defined "Marketing Area;"

(4) ICIA granted Uniroyal the right to develop, register, sell, and market Bonzi in the Marketing Area for certain "Permitted Uses," which are defined in the Agreement;

(5) The term of the Agreement was from January 1, 1991 to December 31, 1996. Thereafter, it would continue for successive annual terms unless either party terminated it on 180-days notice.

Under the terms of the Development Agreement:

(1) ICIA granted Uniroyal the exclusive right to develop, register, market, and sell new uses of Bonzi on "woody ornamentals, shrubs, shade trees, ornamental fruit trees, interiorscapes, and landscapes" throughout the United States;

(2) ICIA granted Uniroyal exclusive rights to develop and register new ICIA product formulations such as spikes and granules throughout the United States;

(3) Uniroyal agreed to spend $80,000 annually between 1992 and 1996 to develop new uses for Bonzi;

 (4) The Development Agreement was not subject to annual renewal, as was the Supply Agreement.

Paragraph Four of the Development Agreement ("Paragraph Four") also included the following language concerning residual rights, the interpretation of which forms the central issue in this case:

> For each new use and formulation developed by Uniroyal for use in the Development Field, ICIA will grant to Uniroyal marketing and sales rights as defined in Section 1.2 of the Bonzi Chemical Supply Agreement.  Said marketing and sales rights shall be granted for 5 years from the date of registration of any new use or formulation.  Uniroyal shall retain all marketing and sales rights for any new use or formulation which it develops under this Agreement.  This provision shall survive the termination of this Agreement provided termination is not the result of any breach by Uniroyal of this Agreement or the Supply Agreement.[3]

All of the "new uses" governed by this paragraph were registered with, and approved by, the U.S. Environmental Protection Agency ("the EPA") on July 15, 1993.  The Development Agreement expired by its own terms on December 31, 1996.  In a letter dated June 26, 2002, Syngenta notified Uniroyal of its intention to terminate the Supply Agreement.  This litigation followed.

### Syngenta's Motion for Summary Judgment

#### STANDARD

The court will grant summary judgment on a claim when the

---

[3] Syngenta does not allege that Uniroyal has forfeited any rights to market Bonzi through a breach of either the Supply or Development Agreement.

moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a) & (b); Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Summary judgment on a claim shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain summary judgment. See Celotex, 477 U.S. at 330 n.2. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis omitted). Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. See id. at 322-23. In the absence of such evidence going to issues on which the nonmoving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case. See Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).

No material facts are in dispute in this case, and the motion for summary judgment turns entirely on the interpretation of the contract, which is a question of law. See O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 286 (Del. 2001); Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992) ("[t]he proper construction of any contract . . . is purely a question of law").

## DISCUSSION

Uniroyal asserts that the clause in Paragraph Four granting it marketing and license rights, combined with the final sentence of that paragraph, indicating that "this provision" survives

termination of the contract, bestows on it perpetual rights to market new uses for Bonzi that it developed. Thus, it asserts that Syngenta did not have the authority to terminate Uniroyal's marketing rights and to begin marketing Bonzi itself. In opposition, Syngenta argues that the plain meaning of the second sentence of Paragraph Four grants to Uniroyal marketing rights to new uses for Bonzi for a period of only five years after Uniroyal registered with the EPA the new uses it developed.[4] Because there is no dispute that Uniroyal registered all new uses for Bonzi with the EPA on July 15, 1993, Syngenta contends that Uniroyal's right to market such uses expired on July 15, 1998. Accordingly, Syngenta maintains that Uniroyal has no residual rights to market Bonzi, and Syngenta did not breach the Agreement by marketing those uses itself.

    A.  <u>Breach of Contract</u>

Under Delaware contract law, a court must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole.[5] See <u>Council</u>

---

[4] Syngenta moves in the alternative for partial summary judgment to the extent that Uniroyal claims the use of Bonzi on greenhouse plants to be within the rights Uniroyal retains to market Bonzi. As the court concludes that Uniroyal has no residual rights to market new uses of Bonzi it will not consider Syngenta's alternative motion.

[5] The court defers to the parties' choice of law, expressed in the clauses of the Supply and Development Agreements that

of the Dorset Condo. Apartments v. Gordon, 801 A.2d 1, 7 (Del. 2002). Uniroyal and Syngenta both assert that this canon of contract interpretation supports their interpretation of Paragraph Four.

Uniroyal argues that reading the language in the second sentence ("Sentence Two") of Paragraph Four, that "marketing and sales rights shall be granted for 5 years from the date of registration of any new use or formulation," as a temporal limitation on such rights directly conflicts with the language in the two subsequent sentences, which state that Uniroyal shall retain all such "rights for any new use or formulation which it develops under this Agreement" ("Sentence Three"), and that "this provision shall survive the termination" of the Development Agreement ("Sentence Four"). According to Uniroyal, the language conferring sales and marketing rights for five years does not limit the time to "only" five years, but merely means that the rights are "granted for 5 years," and the final two sentence of Paragraph Four "confirm that at the expiration of five years, or following the termination of the Development or Supply Agreements, Uniroyal retains the rights to the uses it developed."

Syngenta, on the other hand, maintains that the only

---

identify Delaware law as applicable to claims involving construction of the Agreements.

reasonable interpretation of Paragraph Four that reconciles all three sentences is that the reference to "five years" in Sentence Two is a temporal limitation on Uniroyal's marketing rights, and that Sentences Three and Four merely provide that the five-year period would not end when the Development Agreement ended in 1996.  According to Syngenta, the plain language of Sentence Two gives Uniroyal marketing rights to new uses for Bonzi for five years, but because that five-year term could outlive the six-year life of the Development Agreement, the subsequent two sentences were included to clarify that Uniroyal would continue to hold such marketing rights if the Development Agreement expired before the five-year period expired.  In other words, as Syngenta reads Paragraph Four, Sentences Three and Four iterate that Uniroyal would continue to have the right to market the new uses for Bonzi that it developed and registered until the five-year life of such rights ran, even if the Development Agreement had already terminated.

Syngenta's construction, unlike Uniroyal's, gives effect to every term of the disputed paragraph.  Indeed, if the court were to adopt Uniroyal's reading of Paragraph Four as conferring to it perpetual marketing rights for new uses, the "for 5 years" language in Sentence Two would be meaningless surplusage. Because of that, Uniroyal's construction violates basic tenets of Delaware contract law.  See id. ("[a] court must interpret

10

contractual provisions in a way that gives effect to every term of the instrument. . ."). The only logical construction of Paragraph Four is that Sentence Two gives Uniroyal the right to market new uses it develops for Bonzi for five years, but in recognition of the fact that those five years could extend beyond the six-year term of the Development Agreement itself, Sentences Three and Four provide that the termination of the Development Agreement would not affect those rights and clarify that they could extend beyond the term of the Agreement.

Moreover, contrary to Uniroyal's suggestion that extrinsic evidence of the parties' intent is necessary to reconcile the three sentences of Paragraph Four, such evidence is not necessary because the Agreement is not ambiguous or susceptible to multiple interpretations. See O'Brien, 785 A.2d at 289 ("extrinsic evidence is not to be used to interpret contract language where that language is plain and clear on its face"); Twin City Fire Ins. Co. v. Del. Racing Ass'n, 840 A.2d 624, 628 (Del. 2003) ("[c]ontract language is ambiguous if it is reasonably susceptible of two or more interpretations or may have two or more different meanings"). The plain language of Paragraph Four provides that Uniroyal retained the marketing rights for the new uses it registered on July 15, 1993, for five years -- until July 15, 1998 -- even though the Development Agreement expired December 31, 1996, and that after July 15, 1998, the marketing

11

rights for those uses reverted to Syngenta.  The language is not susceptible to any other interpretation.

    B.  <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

    Uniroyal also alleges that Syngenta has breached the covenant of good faith and fair dealing by disregarding the terms of Paragraph Four that Uniroyal insists grant it perpetual rights to market Bonzi.  However, the plain language of Paragraph Four precludes Uniroyal from recovering on its claim for breach of the covenant of good faith and fair dealing.  The law is settled that where the terms of a contract expressly address the terms of a dispute, those express contractual terms -- not an implied covenant of good faith and fair dealing -- govern the parties' relations.  <u>See</u> <u>Sanders v. Devine</u>, Civ. No. 14679, 1997 Del. Ch. LEXIS 131, at *19 (Del. Ch. Sept. 24, 1997); <u>Gilbert v. El Paso Co.</u>, 575 A.2d 1131, 1143 (Del. 1990) (holding that the mere exercise of a contractual right to terminate an offer cannot constitute a breach of its implied covenant of good faith and fair dealing).

    In this case, under the terms of the Development Agreement, Uniroyal's marketing rights to Bonzi expired on July 15, 1998.  The plain language of the Development Agreement controls, and this court cannot imply terms into the contract through the covenant of good faith and fair dealing.  Thus, Uniroyal's claim for breach of the covenant fails.

C. <u>Uniroyal's Other Claims</u>

Uniroyal's claims of conversion, promissory estoppel, unjust enrichment, and violations of CUTPA are also without merit. Each of these claims is based on Uniroyal's claim that Syngenta has unlawfully exercised the marketing rights to new uses of Bonzi. Because the Development Agreement provides that those rights expired on July 15, 1998, summary judgment is appropriate on these remaining claims.

<u>Uniroyal's Motion to Dismiss Syngenta's Counterclaims</u>

<u>STANDARD</u>

Fed. R. Civ. P. 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the court may not consider matters outside the pleadings, but may consider documents attached to pleadings, referenced in the pleadings, or integral to the pleadings. See <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002). The court must take all factual allegations in the complaint and its exhibits as true, and construe all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Sharp Int'l Corp. v. State St. Bank & Trust Co.</u>, 403 F.3d 43, 49 (2d Cir. 2005). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether it is entitled to offer evidence to support its claims. <u>See</u> <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir. 2005).

13

Accordingly, dismissal is appropriate only if it appears that the plaintiff would not be able to prove any facts in support of its claim which would entitle it to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

In its counterclaims, Syngenta alleges that Uniroyal, by the very act of filing this lawsuit for breach of contract -- which Syngenta says is utterly without merit -- has engaged in an unfair trade practice and has interfered with Syngenta's business expectancies.  Uniroyal has moved to dismiss Syngenta's counterclaims on the grounds that they do not allege facts that, if proved, would establish that Uniroyal's complaint is a sham and thus not entitled to immunity under the Noerr-Pennington doctrine, which protects First Amendment rights of plaintiffs to petition courts for redress of grievances.  In opposition, Syngenta maintains that the Noerr-Pennington doctrine does not bar its counterclaims because it has alleged facts that, if proved, would demonstrate that Uniroyal's suit is a sham that is not subject to the protections of the First Amendment.  The court disagrees with Syngenta and finds that Uniroyal's suit is entitled to First Amendment protection.

The Supreme Court has held that the right to petition the government contained in the First Amendment protects the right of plaintiffs to file certain suits.  See BE&K Constr. Co. v. NLRB,

536 U.S. 516, 525 (2002); Cal. Motor Trans. Co. v. Trucking Unlimited, 404 U.S. 508, 510-11 (1972).  Thus, the Court has held that the mere act of petitioning the judicial branch for resolution of a dispute cannot constitute anticompetitive behavior for which liability may be imposed under federal antitrust and other statutes.  See id.

The Court, however, has recognized a narrow exception to this immunity.  An action that is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor may not be entitled to the protections of the First Amendment.  See BE&K, 536 U.S. at 525-26; Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc. ("Noerr"), 365 U.S. 127, 144 (1961); see also United Mine Workers v. Pennington ("Pennington"), 381 U.S. 657, 660, 669-70 (1965) (applying Noerr to petitions of the executive branch).  The Court has established a two-step test for determining whether a suit is a sham and therefore exempt from immunity.  First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.  If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust or similar claim premised on the sham exception must fail.  See BE&K, 536 U.S. at 526; Prof'l Real Estate Investors v. Columbia

15

Pictures Indus., 508 U.S. 49, 60 (1993).

Only if challenged litigation is objectively meritless may the court examine the litigant's subjective motivation. Under this second part of the test, the court focuses on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process -- as opposed to the outcome of that process -- as an anticompetitive weapon. See id. at 60-61.

Syngenta argues that Uniroyal's breach of contract suit satisfies the objective meritlessness prong for identifying sham litigation because no reasonable plaintiff could expect to win based on the facts alleged in the complaint. As the parties have no material disputes about the facts, Syngenta's claim rests on whether Uniroyal's interpretation of the contract is wholly unreasonable. Uniroyal, of course, asserts that its interpretation of the contract, granting it perpetual rights to new uses of Bonzi, is correct.

Although the court has found Syngenta's construction of the Agreement is correct, such a finding does not mean that Uniroyal's position was objectively meritless. Indeed, counsel for Syngenta conceded at oral argument that Paragraph Four of the Development Agreement is not a model of clarity. And Uniroyal's claim that it was granted perpetual marketing and sales rights to new uses it developed and registered for Bonzi arguably had some

16

textual support in Sentences Three and Four of Paragraph Four of the Development Agreement. An objective litigant could thus conclude that Uniroyal's suit was reasonably calculated to elicit a favorable outcome, and thus is entitled to immunity under the Noerr-Pennington doctrine.[6]  See id.

Further, the fact that Uniroyal sought extensive equitable relief, including an injunction ordering Syngenta not to advertise, promote, or sell Bonzi for any use, not just new uses Uniroyal developed, does not change this conclusion, even if, as Syngenta argues, such relief is totally unwarranted by Uniroyal's claim. A lawsuit is not rendered a sham merely because one form of relief sought may be objectively unreasonable. The rationale of the Noerr-Pennington doctrine is to protect the right of plaintiffs to petition the government unless the plaintiffs have no reasonable claim. See BE&K, 536 U.S. at 525-26. If the court were to embrace Syngenta's argument, then the First Amendment protections for objectively reasonable claims could be undermined simply because an attorney overreaches in the remedies he or she seeks. Syngenta's interpretation would, in effect, measure the merit of a suit by its weakest aspect, not its strongest claim as

---

[6] Because the court finds that Syngenta has not established the first prong of the test, the court does not determine the subjective intent prong.

the Noerr-Pennington doctrine clearly contemplates.[7]  Rather, as Uniroyal correctly argues, the mere fact that a plaintiff has sought one form of relief that may be objectively unreasonable cannot vitiate the First Amendment protections afforded underlying claims that are not objectively without merit.  Uniroyal's claims are therefore immunized under the Noerr-Pennington doctrine from Syngenta's counterclaims for violation of CUTPA and interference with business expectancies.

## CONCLUSION

For the foregoing reasons, Syngenta's motion for summary judgment [doc # 120] is GRANTED.  Uniroyal's motion to dismiss Syngenta's counterclaims [doc # 129] is also GRANTED.  The clerk is directed to enter judgment accordingly and close this case.

SO ORDERED this 28th day of February, 2006, at Bridgeport, Connecticut.

                                        /s/
                                  Alan H. Nevas
                                  United States District Judge

---

[7] For the same reason, this court has expressed "serious doubts as to whether a CUTPA violation even could be based on a mere subset of allegedly 'sham' claims within an otherwise legitimate 'non-sham' lawsuit as a whole. . . ." Light Sources, Inc. v. Cosmedico Light, Inc., 360 F. Supp. 2d 432, 437 (D. Conn. 2005).